Jason D. Boren (#7816)
Nathan R. Marigoni (#14885)
BALLARD SPAHR LLP
One Utah Center, Suite 800
201 South Main Street
Salt Lake City, Utah 84111-2221
Telephone: (801) 531-3000
Facsimile: (801) 531-3001
borenj@ballardspahr.com
marigonin@ballardspahr.com

Richard W. Miller (GA #65257)
*Pro hac vice to be submitted*
BALLARD SPAHR LLP
999 Peachtree Street, NE
Suite 1000
Atlanta, GA 30309-3915
Telephone: (678) 420-9340
Facsimile: (678) 420-9301
millerrw@ballardspahr.com

Attorneys for Plaintiff, Larada Sciences, Inc.

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **LARADA SCIENCES, INC., a Delaware Corporation,**<br><br>        **Plaintiffs,**<br><br>**v.**<br><br>**PEDIATRIC HAIR SOLUTIONS CORPORATION, a North Carolina Corporation,**<br><br>        **Defendants.** | **COMPLAINT**<br><br><br>**Case No.:  2:18-cv-00551-BCW**<br><br>**Magistrate Judge Brooke C. Wells** |

DMWEST #17897923 v5

Plaintiff, Larada Sciences, Inc. ("Larada" or "LSI"), by and through its undersigned counsel, Ballard Spahr LLP, hereby complains against Defendant Pediatric Hair Solutions Corporation ("PHS" or "Licensee"), as follows:

## PARTIES

1.      Larada is a corporation organized under the laws of Delaware and with its principal place of business at 154 East Myrtle Ave., Ste 304, Murray, Utah 84107.

2.      PHS is a corporation incorporated under the laws of North Carolina with its principal address at 6923 Shannon Willow Rd., Ste 100, Charlotte, NC 28226-1331.

3.      PHS operates head lice treatment centers in North Carolina, South Carolina, and Ohio.

## JURISDICTION AND VENUE

4.      This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00 and complete diversity of citizenship exists.

5.      This Court has subject-matter jurisdiction over Larada's Lanham Act claims under 28 U.S.C. § 1331.

6.      This Court has supplemental jurisdiction over Larada's state-law claims under 28 U.S.C. § 1367.

7.      PHS has consented to personal jurisdiction and venue in the District of Utah pursuant to a series of License Agreements entered into between PHS and Larada.

8.      This Court has personal jurisdiction over PHS pursuant to Utah's long-arm statute, Utah Code Ann. § 78B-3-205(1), and the forum-selection clause of the License Agreements entered into between Larada and PHS.

9.      Venue is proper in this court Under 28 U.S.C. § 1391 as PHS is subject to the Court's personal jurisdiction in this venue pursuant to the forum-selection clause of the License Agreements entered into between Larada and PHS.

## GENERAL ALLEGATIONS

10.     Larada manufactures and markets devices for the treatment of head lice through a patented method of applying heated air to the scalp (the "Devices").

11.     Larada grants licenses to others to use the Devices and related products in the operation of independent head-lice-treatment clinics ("Clinics") pursuant to license agreements.

12.     On or about August 31, 2015, Larada and PHS entered into a series of license agreements which allowed PHS to use Larada's Devices at numerous Clinics operated by PHS in Georgia, South Carolina, North Carolina, and Ohio (the "License Agreements").

13.     The License Agreements state, among other things,

**5.      License Payment, Handling, Shipping, Taxes:**

a.      During the Term, Licensee shall make the following payments:

i.      One-time, non-refundable License Payment equal to $5,000;

ii.     Per-treatment Use Fee of $25 for each Treatment;

iii.    $500 Refundable Deposit for each Device and

iv.     Actual shipping and handling costs per Device, Treatment Products and Consumables, which shall be due at the time of shipment by LSI.

\*\*\*

**9.       Payments and Fees, Terms of Payment, Taxes, Record Keeping and Audit Rights**

   a.  The Use Fee for each Device shall be paid by Licensee on or before the tenth business day of the month following the month in which the Use Fee was calculated.

   b.  The Use Fee for each Device that is due under this Agreement shall be paid by the use of Credit Card Payments…. If Licensee fails to have a sufficient credit limit on the due date for each Device and/or Use Fee, Licensee may be assessed a $50.00-per-Device late fee ("Late Fee"). LSI may also charge interest on the missing or late payment at the greater of eighteen percent (18%) per annum or the maximum amount permitted by the law of the state in which Licensee is located ("Default Rate") plus court costs and reasonable attorneys' fees and collection fees, with or without suit, incurred in collecting any past due balance….

\*\*\*

**10.  Proprietary Information and Innovation**

\*\*\*

   b.  During the Term of this Agreement and following its expiration or termination for any reason, Licensee agrees that without LSI's prior written consent, which consent may be granted or denied for any reason or for no reason, it shall not . . . disassemble, reverse-engineer, or otherwise replicate, duplicate or copy any component or portion of the Device or any Consumable . . . .

\*\*\*

**13.  Default, Termination, Surrender and Remedies**

   a.  Subject only to Force Majeure, effective upon receipt of written notice, said notice presented to Licensee in accordance with Section 18 below, LSI may terminate this agreement without providing the Licensee any right to cure upon the occurrence of any one or more of the following events (each of which event is deemed to be an "Incurable Default"):

\*\*\*

    iii.  Licensee fails to have a sufficient credit limit such that LSI is unable to charge Licensee's credit card for any amount due hereunder within ten (10) days after receiving notice that such fees or amounts are overdue.

***

c.      Upon termination of this Agreement by either party as permitted herein, Licensee shall: (i) immediately pay all amounts then due to LSI in accordance with the terms of this Agreement; (ii) within five (5) business days after such termination, surrender and return to LSI all Devices and all unused consumables; (iii) remove any signage or indication that Licensee has the right to offer Treatments using the Device or that contain the Marks; and, (iv) take such other commercially reasonable steps as may be necessary to dissociate Licensee from LSI….

***

**18.      Miscellaneous Provisions**

***

h.      This Agreement shall be interpreted in accordance with the laws of the state of Utah without consideration of any conflict of laws.  Jurisdiction and venue for any proceeding related to this Agreement shall be in a court of competent jurisdiction in Salt Lake County, Utah.  Licensee specifically covenants and agrees that the choice of law, venue, and jurisdiction are fair and reasonable.

***

o.      In the event that either Party brings any action in reference to this Agreement, the "Prevailing Party" in such action shall be awarded all reasonable attorneys' fees, expert witness fees, court costs and discovery costs incurred.  For purposes of this Agreement, the Prevailing Party shall be deemed that Party that has prevailed on a majority of the issues decided by the trier of fact, law or equity.

14.      PHS made timely payments under the agreement until late 2016 or early 2017, when PHS ceased making payments to Larada.

15.      On or about February 1, 2017, PHS's President, Sheila Fassler, sent an email to Claire Roberts, Larada's Chief Executive Officer, acknowledging that PHS had not made its payments "in a timely fashion," because it was "trying to get a loan," and had been advised to "keep [its] revolving debt low and [its] cash flow high."

16.     On February 12, 2017, Ms. Roberts advised PHS of the late fees and interest that could be charged pursuant to the License Agreements and advised PHS of Larada's right to terminate the License Agreements if payments were not made.

17.     On or about February 17, 2017, counsel for PHS requested a lowered fee structure which PHS proposed be retroactively applied to January 1, 2017.

18.     On or about February 22, 2017, Ms. Roberts informed PHS that Larada would only consider a revised fee schedule if PHS were to bring its account(s) current and pay all of the amounts then presently due.

19.     PHS informed Larada that it would not be making the past due payments unless Larada agreed to the new fee schedule and retroactively applied that schedule.

20.     PHS failed and/or refused to cure the past due payments or to make any subsequent payments as required by the License Agreements.

21. Accordingly, on or about March 10, 2017, Larada provided PHS with written notice that the License Agreements were terminated by virtue of PHS's default of those agreements.

22. This letter instructed PHS to: "(i) immediately pay all amounts currently due to Larada; (ii) within five (5) business days of receipt of this letter, surrender and return to Larada … all Devices and all unused Consumables; (iii) remove any signage or indication that [PHS] ha[s] the right to offer Treatments using the Device, including any signage inside or outside of your business and any of Larada's Marks, including photos and videos, on your website and any other social media pages; (iv) destroy any hard copies and digital copies of marketing materials that use Larada's Marks; and (v) take such other steps necessary to disassociate yourself from Larada."

23.     PHS has failed and refused to pay Larada the amounts due and owing.

24.     On information and belief, PHS continues to hold and possess one of Larada's Devices.

25.     PHS has failed to take the required steps to dissociate itself from Larada including, but not limited to, failing to remove all references to Larada and/or its Marks, Devices, and/or other Intellectual Property from its online marketing materials and internet websites for which PHS has the authority or ability to do so.

26.     PHS has failed to timely return all of Larada's Devices and unused Consumables.

27.     PHS continued to use Devices through April 2017, and has not paid Larada for use of the Devices from January 2017 through April 2017 under the License Agreements or otherwise.

28.     On information and belief, PHS disassembled, reverse-engineered, or otherwise replicated, duplicated, or copied the Device to create a competing product called the FloSonix device, in violation of Section 10 of the License Agreements.

29.     PHS owes Larada $84,810.00 under the License Agreements for order fees, treatment fees, territory fees, and device late fees through April 2017, exclusive of interest.

## FIRST CAUSE OF ACTION
### (*Breach of Contract*)

30.     Larada incorporates by reference all allegations of this Complaint as though fully set forth herein.

31.     Larada and PHS entered into contractually binding License Agreements on or about August 31, 2015.

32. Except as excused by law or PHS's material breaches, Larada performed all of its obligations under the License Agreements.

33.     PHS breached the terms of the License Agreements by, without limitation, failing to make the payments required pursuant to the License Agreements, failing to timely return the Devices and unused Consumables upon the termination of the License Agreements, and failing to dissociate itself from Larada.

34.     PHS breached the terms of the License Agreements by, without limitation, disassembling, reverse-engineering, or otherwise replicating, duplicating, or copying the Device or a component or portion of the Device to create the FloSonix device.

35.     As a direct result of PHS's breaches of the License Agreements, Larada has been damaged in an amount to be determined at trial but, in any event, no less than $84,810.00 plus interest at the statutory rate.

36.     Larada is entitled to an award of its reasonable attorney fees incurred in this action pursuant to the terms of the License Agreements.

**SECOND CAUSE OF ACTION**
(*Breach of Implied Covenant of Good Faith and Fair Dealing*)

37.     Larada incorporates by reference all allegations of this Complaint as though fully set forth herein.

38.     Larada and PHS entered into a series of contractually binding License Agreements on or about August 31, 2015, which, like all contracts under Utah Law, contain an implied covenant of good faith and fair dealing.

39.     Except as excused by law or PHS's material breaches, Larada performed all of its obligations under the License Agreements.

40.     PHS unfairly interfered with Larada's right to receive the benefits of the License Agreements by defaulting on the past-due Use Fees and knowingly maintaining wrongful possession of the Devices and unused Consumables without payment thereof.

41.     PHS breached the covenant of good faith and fair dealing by withholding payment due under the contract in an attempt to force Larada to agree to payment terms more favorable to PHS.

42.     As a direct result of PHS's breach of the implied covenants of the License Agreements, Larada suffered damages in an amount to be determined at trial but, in any event, no less than $84,810.00 plus interest at the statutory rate.

43.     Larada is entitled to an award of its reasonable attorney fees incurred in this action pursuant to the terms of the License Agreements.

## THIRD CAUSE OF ACTION
### (*Trespass to Chattels*)

44.     Larada incorporates by reference all allegations of this Complaint as though fully set forth herein.

45.     Larada, at all times material hereto, was the lawful owner of the Devices, and PHS was merely a licensee entitled to use Larada's Devices in accordance with the License Agreements.

46.     After PHS breached the License Agreements, Larada provided PHS with notice that the License Agreements were terminated and demanded that Larada's Devices and unused Consumables be returned to Larada.

47.     PHS failed to return the Devices to Larada and therefore willfully interfered with Larada's possession of the Devices without lawful justification.

48.     By maintaining possession of the Devices and failing to pay Larada for its possession or use thereof, PHS wrongfully exercised control over Larada's personal property in violation of Larada's right to possession.

49.     The trespass represents a willful disregard for the rights of Larada, thereby entitling Larada to an award of punitive damages against PHS.

50.     Larada has been damaged by PHS's trespass in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**
(*Conversion*)

51.     Larada incorporates by reference all allegations of this Complaint as though fully set forth herein.

52.     Larada, at all times material hereto, was the lawful owner of the Devices, and PHS was merely a licensee entitled to use Larada's Devices in accordance with the License Agreement.

53.     PHS interfered with Larada's exclusive right to possession of the Devices by wrongfully retaining possession of the Devices without payment, even after Larada provided PHS with proper notice of termination of the License Agreements and a demand for the return of the Devices.

54.     On information and belief, PHS converted Larada's Devices with an intent to deprive Larada of its possession or use for a period of time.

55.     The conversion represents a willful disregard for the rights of Larada, thereby entitling Larada to an award of punitive damages against PHS.

56.     Larada has been damaged by PHS's trespass in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**
(*Unjust Enrichment*)

57.     Larada incorporates by reference all allegations of this Complaint as though fully set forth herein.

58.     Beginning on or about August 31, 2015, upon the commencement of the relationship under the License Agreements, Larada conferred a benefit on PHS by licensing Larada's technology for PHS's use in accordance with the License Agreements.

59.     PHS knew of and appreciated that benefit.

60.     PHS has retained that benefit without payment to Larada following PHS's default under the License Agreements and Larada's termination of the License Agreements.

61.      It is inequitable for PHS to retain the benefit without paying Larada sufficient value in return.

62.     PHS has been unjustly enriched in an amount to be determined at trial.

**SIXTH CAUSE OF ACTION**
(*Trademark Infringement and Unfair Competition
Under the Lanham Act, 15 U.S.C. §§ 1051, et seq.*)

63.     Larada incorporates by reference all allegations of this Complaint as though fully set forth herein.

64.     Larada is the owner of a federal registration of the mark, AIRALLÉ, which is assigned Federal Registration Number 4,653,717 and is used on Larada's Devices.

65.     A true and correct copy of the federal registration for the AIRALLÉ mark is attached to this complaint as Exhibit A.

66.     The AIRALLÉ mark is an arbitrary and fanciful mark, and is entitled to the highest level of protection afforded by law.

67.     Larada has used the AIRALLÉ mark for many years in connection with its AirAllé® device. The AIRALLÉ signifies high quality products originating from Larada.

68.     Based on Larada's extensive advertising, sales, and the wide use of Larada's products to treat lice, AIRALLÉ has acquired secondary meaning so that any product bearing the AIRALLÉ mark is immediately associated by consumers, the public, and the trade as being a product of Larada.

69.     Larada has gone to great lengths to protect its name and to enforce the AIRALLÉ mark.

70.     The License Agreements provided PHS with knowledge that Larada has rights to enforce the AIRALLÉ mark against PHS.

71.     PHS's commercial marketing of its services on its social media sites, which are offered in the same channels of commerce and to the same class of consumers as the services associated with the AIRALLÉ mark, is aimed at and occurs across state lines and via the internet to consumers in all fifty states.

72.     Since the termination of the License Agreements, Larada has not authorized nor consented to PHS's use of the AIRALLÉ mark.

73.     PHS continued to use the AIRALLÉ mark in connection with its products and services, even after the termination of the License Agreements.

74.     PHS's use of the AIRALLÉ mark is likely to cause confusion or mistake among ordinary consumers about the source, sponsorship, affiliation, connection, association, and/or

approval of the goods and services offered by PHS, by creating false, deceiving, and/or misleading impression(s) that such goods and services are created by Larada, and/or are sponsored by, affiliated with, or approved by Larada.  Such confusingly similar use constitutes trademark infringement and unfair competition in violation of the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a).

75.     On information and belief, as a direct and proximate cause of PHS's acts as alleged herein, Larada has suffered, and will continue to incur, actual and statutory damages.

76.     Larada is entitled to disgorgement of all of PHS's profits relating to their bad faith, willful infringement of the AIRALLÉ mark, all damages sustained by Larada in amounts to be proven at trial, and the costs of this action.

77.     Upon information and belief, PHS has acted with reckless disregard for Larada's rights, and has willfully and maliciously engaged in infringing activities. Thus, this is an exceptional case pursuant to 15 U.S.C. § 1117(a)..

78.     PHS's wrongful conduct has caused, and will continue to cause, Larada to suffer irreparable injury for which no adequate remedy at law exists.  Accordingly, Larada is entitled to an order permanently enjoining PHS (i) from any further use of the AIRALLÉ mark, and (ii) from any other acts of infringement of any of Larada's marks.

### PRAYER FOR RELIEF

WHEREFORE, Larada respectfully requests the following:

A.     Damages in an amount to be proven at trial, but no less than $84,810.00.

B.     For all costs of suit incurred, including reasonable attorneys' fees and costs;

C.     Pre- and post-judgment interest at the statutory rates;

D.      Exemplary/punitive damages;

E.      Injunctive relief prohibiting PHS from infringing Larada's intellectual property;
and

F.      For such other relief as the Court deems proper.

DATED this 11th day of July, 2018.


                                    /s/ Jason D. Boren
                                    Jason D. Boren
                                    Richard W. Miller
                                    Nathan R. Marigoni
                                    BALLARD SPAHR LLP
                                    *Attorneys for Plaintiff, Larada Sciences, Inc.*