Christine T. Greenwood (8187)
  greenwood@mcgiplaw.com
Geoffrey K. Biehn (13445)
  biehn@mcgiplaw.com
**MAGLEBY CATAXINOS &
GREENWOOD**
170 South Main Street, Suite 1100
Salt Lake City, Utah 84101-3605
Telephone: 801.359.9000
Facsimile: 801.359.9011

Andrew G. Strickland (*pro hac vice*)
  Andrew.Strickland@leehayes.com
**LEE & HAYES PLLC**
1175 Peachtree Street, NE
100 Colony Square, Suite 2000
Atlanta, Georgia 30361
Telephone: 404.815.1900
Facsimile: 509.323.8979

Sarah E. Elsden (*pro hac vice*)
  Sarah.Elsden@leehayes.com
**LEE & HAYES PLLC**
601 W. Riverside, Suite 1400
Spokane, Washington 99201
Telephone: 509.324.9256

Attorneys for Defendant Pediatric Hair Solutions Corporation

---

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **LARADA SCIENCES, INC., a Delaware corporation,**<br><br>      **Plaintiff/Counterdefendant,**<br><br>v.<br><br>**PEDIATRIC HAIR SOLUTIONS CORPORATION, a North Carolina corporation,**<br><br>      **Defendant/Counterclaimant.** | **DEFENDANT PEDIATRIC HAIR SOLUTION'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**<br><br>**JURY TRIAL DEMANDED**<br><br><br>**Case No.:  2:18-CV-551**<br><br>**Honorable Brooke C. Wells** |

Defendant Pediatric Hair Solutions Corporation ("Defendant") answers, asserts affirmative defenses, and counterclaims against Plaintiff Larada Sciences, Inc. ("Plaintiff") as follows. Except where expressly admitted, Defendant denies each allegation in Plaintiff's Complaint and denies Plaintiff is entitled to any relief requested.

## PARTIES

1.     Paragraph 1 alleges facts concerning Plaintiff and, therefore, Defendant is without knowledge sufficient to admit or deny this allegation, and therefore denies the allegation.

2.     Defendant admits the allegations in paragraph 2.

3.     Defendant admits that it operates multiple head lice treatment centers in North Carolina and South Carolina, but only one head lice treatment center in Ohio.

## JURISDICTION AND VENUE

4.     Defendant admits the allegations in paragraph 4.

5.     Defendant admits the allegations in paragraph 5.

6.     Defendant admits the allegations in paragraph 6.

7.     Defendant admits the allegations in paragraph 7.

8.     Defendant admits the License Agreements entered between Plaintiff and Defendant provide the jurisdiction and venue for any proceeding related to the Agreements shall be in a court of competent jurisdiction in Salt Lake City, Utah. Defendant denies the rest of the allegations in paragraph 8.

9.     Defendant admits the License Agreements entered between Plaintiff and Defendant provide the jurisdiction and venue for any proceeding related to the Agreements shall be in a court of competent jurisdiction in Salt Lake City, Utah. Defendant denies the rest of the allegations in paragraph 9.

## GENERAL ALLEGATIONS

10.     Paragraph 10 alleges facts concerning Plaintiff and, therefore, Defendant is without knowledge sufficient to admit or deny this allegation, and therefore, denies the same.

11.     Paragraph 11 alleges facts concerning Plaintiff and, therefore, Defendant is without knowledge sufficient to admit or deny this allegation, and therefore, denies the same.

12.     Defendant admits the allegations in paragraph 12.

13.     Defendant admits that some, but not all, of the License Agreements contain the language quoted in paragraph 13. Defendant denies the remaining allegations in paragraph 13.

14.     Defendant admits it made payments to Plaintiff, but denies the remaining allegations in paragraph 14.

15.     Defendant admits that Sheila Fassler sent an email on February 1, 2017, to Claire Roberts, which contains, in part, the quoted language identified in paragraph 15, but denies the remaining allegations in paragraph 15.

16.     Defendant admits the allegations in paragraph 16.

17.     Defendant admits that on or about February 17, 2017, counsel for Defendant proposed an amendment to the License Agreements to Claire Roberts to reflect a lower per-use fee calculation structure under the License Agreements "to represent a compromise position" which would allow Plaintiff "to avoid the substantial financial liability of refunding [Defendant] its license fees" due to Plaintiff's anticipated breach of the License Agreements.

18.     Defendant admits that on or around February 22, 2017, Ms. Roberts informed PHS that Larada would respond to PHS's proposal if PHS were to bring its account(s) current and pay all of the amounts presented as due, but denies the remaining allegations in paragraph 18.

19.     Defendant admits that, due to Larada's breach of the License Agreements, PHS offered depositing the January 2017 fees in escrow in its counsel's law firm's trust account while the parties finalized an agreement on the

new proposed rate structure to be retroactively applied to January 1, 2017, but denies the remaining allegations in paragraph 19.

20.     Defendant denies the allegations in paragraph 20.

21.     Defendant admits the allegations in paragraph 21.

22.     Defendant admits the allegations in paragraph 22.

23.     Defendant admits it has not paid the amounts Plaintiff alleges are due and owing, but denies the remaining allegations in paragraph 23.

24.     Defendant denies the allegations in paragraph 24.

25.     Defendant denies the allegations in paragraph 25.

26.     Defendant denies the allegations in paragraph 26.

27.     Defendant admits that it has not paid the amounts Plaintiff alleges are due and owing, but denies the remaining allegations in paragraph 27.

28.     Defendant denies the allegations in paragraph 28.

29.     Defendant denies the allegations in paragraph 29.

## <u>FIRST CAUSE OF ACTION</u>
### *(Breach of Contract)*

30.     Defendant incorporates, as if fully set forth herein, its answers to the allegations contained in the foregoing paragraphs.

31.     Defendant admits it entered into License Agreements with Plaintiff on or around August 31, 2015. The remaining allegations in paragraph 31 state a legal

conclusion to which no answer is required. To the extent a response is required, Defendant denies the same.

32.    Defendant denies the allegations in paragraph 32.

33.    Defendant denies the allegations in paragraph 33.

34.    Defendant denies the allegations in paragraph 34.

35.    Defendant denies the allegations in paragraph 35.

36.    Defendant denies the allegations in paragraph 36.

## <u>SECOND CAUSE OF ACTION</u>
*(Breach of Implied Covenant of Good Faith and Fair Dealing)*

37.    Defendant incorporates, as if fully set forth herein, its answers to the allegations contained in the foregoing paragraphs.

38.    Defendant admits it entered into License Agreements with Plaintiff on or around August 31, 2015. The remaining allegations in paragraph 38 state a legal conclusion to which no answer is required. To the extent a response is required, Defendant denies the same.

39.    Defendant denies the allegations in paragraph 39.

40.    Defendant denies the allegations in paragraph 40.

41.    Defendant denies the allegations in paragraph 41.

42.    Defendant denies the allegations in paragraph 42.

43.    Defendant denies the allegations in paragraph 43.

## THIRD CAUSE OF ACTION
### *(Trespass to Chattels)*

44.    Defendant incorporates, as if fully set forth herein, its answers to the allegations contained in the foregoing paragraphs.

45.    Defendant admits that under the License Agreements, Plaintiff licensed the right to use one or more of its devices. The remaining allegation in paragraph 45 states a legal conclusion to which no answer is required. To the extent a response is required, Defendant denies the same.

46.    Defendant admits that Plaintiff provided it with notice that the License Agreements were terminated and demanded devices and unused consumables be returned to Plaintiff, but denies the remaining allegations in paragraph 46.

47.    Defendant denies the allegations in paragraph 47.

48.    Defendant denies the allegations in paragraph 48.

49.    Defendant denies the allegations in paragraph 49.

50.    Defendant denies the allegations in paragraph 50.

## FOURTH CAUSE OF ACTION
### *(Conversion)*

51.    Defendant incorporates, as if fully set forth herein, its answers to the allegations contained in the foregoing paragraphs.

52.     Defendant admits that under the License Agreements, Plaintiff licensed the right to use one or more of its devices. The remaining allegation in paragraph 52 states a legal conclusion to which no answer is required. To the extent a response is required, Defendant denies the same.

53.     Defendant denies the allegations in paragraph 53.

54.     Defendant denies the allegations in paragraph 54.

55.     Defendant denies the allegations in paragraph 55.

56.     Defendant denies the allegations in paragraph 56.

**FIFTH CAUSE OF ACTION**
*(Unjust Enrichment)*

57.     Defendant incorporates, as if fully set forth herein, its answers to the allegations contained in the foregoing paragraphs.

58.     Defendant admits it entered into License Agreements with Plaintiff on or around August 31, 2015. Defendant also admits that under the License Agreements, Plaintiff licensed the right to use one or more of its devices, but denies the remaining allegations in paragraph 58.

59.     Defendant denies the allegations in paragraph 59.

60.     Defendant denies the allegations in paragraph 60.

61.     Defendant denies the allegations in paragraph 61.

62.     Defendant denies the allegations in paragraph 62.

## SIXTH CAUSE OF ACTION
### *(Trademark Infringement and Unfair Competition)*

63.     Defendant incorporates, as if fully set forth herein, its answers to the allegations contained in the foregoing paragraphs.

64.     Defendant admits that, on its face, Plaintiff is the apparent owner of the registration referred to in paragraph 64. Defendant is without knowledge sufficient to admit or deny the remaining allegations in paragraph 64, and therefore denies the allegations.

65.     Defendant admits that an apparent copy of the federal registration for the AIRALLE mark is attached to Plaintiff's Complaint, but Defendant is without knowledge sufficient to admit or deny the remaining allegations as to the authenticity of the attachment described in paragraph 65, and therefore denies the allegations.

66.     The allegations in paragraph 66 state legal conclusions to which no answer is required. To the extent a response is required, Defendant denies the same.

67.     Defendant is without knowledge sufficient to admit or deny the allegations in paragraph 67, and therefore denies the allegations.

68.     Defendant is without knowledge sufficient to admit or deny the allegations in paragraph 68, and therefore denies the allegations.

69.     Defendant is without knowledge sufficient to admit or deny the allegations in paragraph 69, and therefore denies the allegations.

70.     Defendant denies the allegations in paragraph 70.

71.     Defendant admits that it undertakes commercial marketing efforts on its social media sites related to its services. The remaining allegations in paragraph 71 state a legal conclusion to which no answer is required. To the extent a response is required, Defendant denies the same.

72.     Defendant admits the allegations in paragraph 72.

73.     Defendant denies the allegations in paragraph 73.

74.     Defendant denies the allegations in paragraph 74.

75.     Defendant denies the allegations in paragraph 75.

76.     Defendant denies the allegations in paragraph 76.

77.     Defendant denies the allegations in paragraph 77.

78.     Defendant denies the allegations in paragraph 78.

**<u>PRAYER FOR RELIEF</u>**

The remainder of Plaintiff's Complaint consists of Plaintiff's request for relief, to which no response is required. To the extent a response is required, Defendant denies Plaintiff is entitled to the relief sought in the Complaint or to any relief whatsoever.

## **AFFIRMATIVE DEFENSES**

As affirmative defenses to Plaintiff's Complaint, Defendant states:

1.     Plaintiff's claims are barred by Plaintiff's own material breaches of contract, which excused Defendant from further performance under the License Agreements.

2.     Plaintiff's claims are barred or must be reduced by Plaintiff's failure to avoid or mitigate damages.

3.     Plaintiff's claims are barred or must be reduced due to payment and/or set off amounts owed, if any.

4.     Plaintiff's claims are barred by unclean hands.

5.     Plaintiff's claims are barred, in whole or in part, because Plaintiff fails to satisfy the legal and factual requirements sufficient to maintain the cited causes of action.

6.     Plaintiff's claims are barred in whole or in part by the doctrine of justification, waiver, and/or equitable estoppel.

7.     Plaintiff, by its acts, conduct, and/or omissions, has ratified the acts, conduct and omissions, if any, of Defendant; therefore, Plaintiff is barred from seeking any relief.

8.      Plaintiff's copyright infringement claim is barred by the doctrine of de

minimus copying, if any.

Defendant reserves the right to rely on any additional defenses that become

available or apparent during the proceedings in this action and specifically reserves

the right to amend its Answer and Affirmative Defenses.

## COUNTERCLAIMS

Defendant/Counterclaimant Pediatric Hair Solutions Corporation, by and

through its undersigned counsel, incorporates its answers and affirmative defenses

as set forth above, and alleges against Plaintiff/Counterdefendant Larada Sciences,

Inc. as follows:

## NATURE OF THE COUNTERCLAIM

1.      Defendant/Counterclaimant Pediatric Hair Solutions Corporation

("PHS") and Plaintiff/Counterdefendant Larada Sciences, Inc. ("Larada")

(collectively, the "Parties") entered into a series of License Agreements on or

around August 31, 2015, for the exclusive use of a lice treatment device.

2.      PHS brings counterclaims against Larada for breach of contract,

breach of the covenant of good faith and fair dealing, and copyright infringement,

and seeks a permanent injunction.

3.      Specifically, Larada breached the License Agreements between the Parties, and unlawfully infringed and continues to infringe PHS's federally-registered copyright.

4.      Despite PHS's repeated attempts to convince Larada that its actions were wrongful and in violation of state and federal laws, Larada instead terminated the License Agreements, refused to stop using PHS's copyrighted work, and initiated the instant action.

5.      PHS asserts these counterclaims to recover damages to which it is entitled under United States Copyright Law and Utah state law, and to offset amounts, if any, owed by Larada.

## PARTIES

6.      PHS is a corporation organized and existing under the laws of the State of North Carolina, with its principal place of business located at 6923 Shannon Willow Road, Ste. 100, Charlotte, NC 28226-1331.

7.      Larada is a corporation organized under the laws of the State of Delaware, with its principal place of business located at 154 East Myrtle Ave., Ave. 304, Murray, Utah 84107.

8.      PHS operates head lice treatment centers in North Carolina, South Carolina, and Ohio.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over this dispute under 28 U.S.C. §§ 1331 and 1338(a) because the copyright counterclaim arises under the copyright laws of the United States, 17 U.S.C. §§ 101, et seq.

10.     This Court has supplemental jurisdiction over PHS's state-law counterclaims under 28 U.S.C. § 1367.

11.     This Court has personal jurisdiction over Larada because Larada (a) maintains its principal place of business is in this District; (b) transacts business in this District; (c) has substantial contacts in this District; and/or (d) has availed itself of the jurisdiction of this Court.

12.     Venue is proper in this District because the License Agreements provide that the venue for any proceeding related to the Agreements shall be in a court of competent jurisdiction in Salt Lake City, Utah.

## FACTUAL BACKGROUND

13.     PHS is a family-owned and operated business founded in December 2010 by Sheila Fassler, RN and operated by John Fassler, MD, its Medical Director.

14.     Prior to PHS's inception, Sheila extensively helped families with childhood ailments, including the treatment of head lice infestation, while working as a school nurse for nearly a decade.

15.     Through her work, Sheila recognized the need for a professional resource for parents within her community. That realization inspired Sheila to form PHS.

16.     PHS began with one clinic and now includes eight clinics scattered throughout North Carolina, South Carolina, and Ohio.

17.     PHS's success is attributed to Sheila Fassler's 30-year nursing and school health background together with Dr. John Fassler's extensive medical background. PHS provides families with safe, effective, and professional care to combat head lice infestation through its full-service professional lice treatment centers.

18.     In or around November 2010, PHS entered into a lease agreement with Larada for use of a lice treatment device used to kill head lice in a single, one-hour treatment through the application of direct heat.

19.     On or around August 31, 2015, the Parties converted that lease agreement to multiple license agreements.

14

20.     The license agreements provided PHS with exclusive rights to use Larada's lice treatment device in defined territories ("License Agreements").

21.     Section 1 of the License Agreements provided, in part, that the "license granted by [Larada] to [PHS] hereunder shall be exclusive, meaning that [Larada] shall not grant a license or permission to any party of than [PHS] to use one or more Devices and related products in the Territory during the Term . . . ."

22.     The License Agreements required Larada to use commercially reasonable efforts to attempt to support PHS's business in the defined territories through training, certification, and website development.

23.     Similarly, Larada was required to provide nationwide support as PHS expanded its business from one clinic to nine, and to use its best efforts to send treatment leads to PHS to support PHS's business efforts.

24.     The "device" exclusively licensed to PHS under the License Agreements is referred to as the "AirAllé" device and defined as "the patented LSI Heated Air Device also known as the 'AirAllé® device.'"

25.     In exchange for PHS's exclusive right to use the AirAllé device in the defined territories and to receive support from Larada to promote PHS's business, PHS was required to pay a one-time license payment; a per-treatment use fee; a

refundable deposit; shipping and handling costs per device; and certain territory license fees.

26.   Larada explicitly disclosed its knowledge of devices known as the "The Lice Device" and/or "The Dehydration Station" in the License Agreements.

27.   Specifically, Exhibit C to the License Agreements provided that "[i]f, on the date that is two years from the Effective Date, The Lice Device and/or The Dehydration Station and/or any other device that is identical to either of them, or any other device that uses heated air to eradicate head lice, regardless of the device's name, is still being legally commercially operated for lice removal purposes in the United States, [PHS] will have the option, upon notice to [Larada], to unwind [the] Agreement and receive a refund of all collected Territory Fees and machine deposits paid to that date."

28.   The "Effective Date" is defined in the Lease Agreements as August 31, 2015.

29.   Section 18(f) of the License Agreements provided that "[a]ny provision, term, covenant or condition of [the] Agreement that by its terms must extend beyond termination or expiration of [the] Agreement in order to remain enforceable shall continue in full force and effect subsequent to and notwithstanding the termination or expiration of [the] Agreement."

*Pediatric Hair Solutions' success*

30.     At the outset of the Parties' relationship, Larada recognized PHS had quickly become one of its most successful licensees.

31.     PHS informed Larada its success was attributed to the fact that PHS is a medical clinic offering personalized professional care.

32.     On information and belief, Larada's other lessees and, later, licensees, did not offer medical services.

33.     On information and belief, following PHS's proven success as a full-service medical clinic, Larada formed Lice Clinics of America Network in 2014 to provide personalized lice treatment services.

34.     When the Parties entered into the License Agreements, Larada entered into a Consulting Agreement with Dr. Fassler to become Lice Clinics of America Network's Medical Director.

35.     By virtue of PHS's proven success and the long-standing working relationship between the Parties, in or around 2016, Sheila Fassler was appointed to Lice Clinics of America Network's Executive Board.

***Larada breaches the License Agreements***
***through its Home Treatment Kit marketing campaign***

36.     Unbeknownst to PHS and the Fasslers, and despite the purpose of and

exclusivity provisions in the License Agreements, Larada began developing a

handheld "Home Treatment Kit" to market nationwide ("HTK").

37.     On or around August 26, 2016, Larada's Chief Executive Officer

Claire Roberts and Kelly Broadback presented the HTK device to the Lice Centers

of America Network's Executive Board.

38.     Understandably, the Executive Board - comprised primarily of top

revenue producing licensees throughout the country, including Sheila Fassler on

PHS's behalf - were incensed because businesses like PHS would suffer.

39.     On information and belief, Larada began marketing and advertising its

HTK in 2016.

40.     By December 2016, Larada reconfirmed its intent to sell the HTK

despite Larada's existing exclusive License Agreements with and contractual

obligations to PHS.

41.     On January 31, 2017, Larada transmitted a letter to PHS stating

Larada intended to roll out its HTK over 2017.

42.     On information and belief, Larada began selling its HTK on

January 3, 2017.

43.     The exclusivity provision in Section 1 of the License Agreements, provides, in part, that the exclusive license granted by Larada to PGS covers the AirAllé device and "related products."

44.     Similarly, Exhibit C to the License Agreements provides, in part, that Larada must ensure that "any other device that uses heated air to eradicate head lice, regardless of the device's name" must not be "legally commercially operated for lice removal purposes in the United States."

45.     The HTK uses heated air to eradicate head lice and, therefore, is a "related product" under the License Agreements that, like AirAllé, uses heated air to eradicate head lice.

46.     Under the License Agreements' explicit provisions, Larada was prohibited from marketing, using, commercially operating, or offering for sale its HTK for lice removal purposes in the United States.

47.     Notwithstanding, Larada's spokesman and AirAllé alleged inventor Dr. Dale Clayton affirmed on the Good Morning America Utah television show aired on ABC in or around January 2017, that the HTK is wonderful because usually you would have to go to a clinic to get this kind of treatment but now you can do it at home.

48.     Larada's blatant HTK marketing and advertising campaign was designed to effectively obliterate the need for PHS's medical clinic services by promoting a nearly identical heated air device available to the public for in-home use.

49.     Larada breached the License Agreements by failing to use commercially reasonable efforts to attempt to support PHS's business in its defined territories.

50.     Larada also breached the License Agreements by violating the exclusivity provisions in the License Agreements.

### *Larada continues to disregard its contractual obligations under the License Agreements*

51.     At or around the time PHS discovered Larada's intent to compete with PHS's lice treatment services by openly marketing the HTK, PHS learned Larada also failed to prevent The Lice Device and/or The Hydration Station from commercially operating for license removal purposes in the United States.

52.     On information and belief, Larada entered into a settlement with the owner of The Lice Device and/or The Hydration Station, Picky Pam at the Beach, LLC, in or around May 2016.

53.     On information and belief, that settlement, however, did not enjoin Picky Pam at the Beach, LLC's use of The Lice Device and/or The Hydration Station heated air devices to eradicate head lice.

54.     Larada breached the License Agreements by failing to prevent Picky Pam at the Beach, LLC from operating its device(s) for lice removal purposes in the United States.

55.     PHS is entitled to unwind the License Agreements.

56.     PHS is entitled to receive a refund of all collected territory fees and machine deposits paid to Larada to date.

57.     Larada has been unjustly enriched by retaining the territory fees and machine deposits PHS paid.

### *PHS seeks to modify the License Agreements*

58.     Left without any other recourse to thwart Larada's cannibalization of PHS's business through its HTK marketing efforts - short of litigation - PHS sought to renegotiate the terms of the License Agreements to compensate PHS for Larada's material breaches.

59.     Up to January 2017, PHS had never missed a single payment to Larada over the course of the Parties' seven-year business relationship.

60.     On January 17, 2017, Dr. John and Sheila Fassler sent an email to Claire Roberts to request a meeting in Utah to "discuss recent developments at Larada and [the Parties'] relationship moving forward."

61.     Dr. and Sheila Fassler traveled to Utah on or around February 10, 2017, to meet with Claire Roberts.

62.     During the Parties' meeting on February 10, 2017, PHS put Larada on notice that Larada was in breach of the License Agreements for its marketing and promotion of the HTK devices.

63.     Notwithstanding, Larada refused to renegotiate the terms of the License Agreements and, instead, on February 12, 2017, demanded payments from PHS under the License Agreements.

64.     On February 17, 2017, PHS's counsel reiterated PHS's serious concerns about Larada's HTK rollout and reiterated PHS's right to terminate its agreements with Larada under the License Agreements.

65.     PHS's counsel proposed settling the issues between the Parties by restructuring the per-use fees as defined in the License Agreements, which were to be retroactively applied to January 1, 2017.

66.     On February 22, 2017, Claire Roberts advised PHS's counsel in an email that Larada refused to renegotiate and, again, demanded payment.

67.     That same day, PHS's counsel informed Claire Roberts that PHS was current on all amounts owed to Larada as of December 31, 2016, but the January 2017 payment would not be made because the proposed fee restructuring, if effectuated, would be retroactively applied to January 1, 2017.

68.     In a good faith effort, PHS's counsel offered to deposit the January 2017 fees in escrow at PHS's counsel's law firm's trust account while the Parties continued to renegotiate the terms of the License Agreements.

69.     Larada refused to accept PHS's offer to place the January 2017 fees in an escrow account.

70.     Instead, on March 10, 2017, Larada provided a "termination notice" to PHS, claiming PHS owed Larada $33,960, and demanding the return of 25 devices.

71.     On March 24, 2017, PHS's counsel confirmed to Larada's counsel that PHS would ship Larada's devices and any unused consumables to Larada.

72.     As of May 11, 2017, PHS returned all AirAllé devices and unused consumables to Larada.

73.     PHS also took all steps to immediately dissociate itself from Larada, including, but not limited to, removing all references to Larada, Larada's

trademarks, devices, and any other intellectual property of Larada, if any, from PHS's websites and marketing materials.

### *Larada infringes PHS's federally-registered copyright*

74.     In 2014, PHS spent a substantial amount of time and effort to create a head lice treatment comparison informational chart entitled "Get the Facts" for its patients. A true and correct copy of PHS's 2014 "Get the Facts" sheet is attached as **Exhibit A**.

75.     PHS first published the "Get the Facts" sheet on June 1, 2014.

76.     On October 23, 2015, the United States Copyright Office issued Registration No. TX 8-125-209 for the copyrighted work. A true and correct copy of Reg. No. TX 8-125-209 is attached hereto as **Exhibit B**.

77.     In or around February 2016, Sheila Fassler attended a National Camping Convention in Chicago, Illinois.

78.     Sheila Fassler visited Larada's Lice Centers of America Network booth and noticed what appeared to be PHS's "Get the Facts" sheet displayed on Larada's table.

79.     Sheila Fassler immediately approached and informed Larada's then-Director of Marketing, Perri Simpson, that the "Get the Facts" chart is PHS's copyright-protected work that Larada unlawfully took from PHS's website.

80.     Perri Simpson denied that chart belonged to, or derived from, PHS's copyright-protected work.

81.     In early 2017, Sheila Fassler discovered Larada continued to use a substantially similar derivation of PHS's "Get the Facts Sheet" in its marking marketing and online materials.

82.     Attached as **Exhibit C** is a true and correct copy of a website screenshot taken from http://lcaconnecticut.com/2016/01/11/how-lca-compares-to-our-competitors (lasted visited 09/21/2018).

83.     On March 24, 2017, PHS's counsel informed Larada's counsel that Larada was using PHS's treatment comparison chart in its marketing materials and online in violation of PHS's copyright registration.

84.     Despite PHS's first notice in 2015 and second written notice on March 24, 2017, Larada shamelessly continues to post the treatment comparison chart in its online marketing materials.

85.     Such blatant infringement has been and continues to be detrimental to PHS.

86.     As a result of Larada's deliberate and intentional infringement and misrepresentation, Larada has unlawfully profited, and PHS has suffered and will

continue to suffer irreparable harm for which there is no adequate remedy at law. *Compare* Exhibit A, *with* Exhibit C.

### FIRST COUNTERCLAIM
**Breach of Contract**

87.     PHS incorporates, as if fully set forth herein, its allegations contained in the foregoing paragraphs of its Counterclaim.

88.     The Parties have a valid, binding contract wherein Larada is legally obligated and contractually bound to exclusively license use of the AirAllé device and related products to PHS in the defined territories.

89.     Except as excused by Larada's material breaches, PHS performed all its obligations under the License Agreements.

90.     Larada breached the License Agreements by using one or more devices or related products in the defined territories during the term of the License Agreements.

91.     In addition, Larada breached the License Agreements by failing to use commercially reasonable efforts to attempt to support PHS's business in the defined territories.

92.     Larada also failed to provide nationwide support to PHS, in direct violation of the License Agreements.

93.     Larada also breached the License Agreements by failing to prevent The Lice Device and/or The Dehydration Station and/or any other device that is identical to either of them, or any other device that uses heated air to eradicate head lice, regardless of the device's name, from being legally commercially operated for lice removal purposes in the United States.

94.     As a direct result of Larada's breaches of the License Agreements, PHS has been damaged in an amount to be determined at trial, but in any event, no less than approximately $65,000, plus interest at the statutory rate.

95.     PHS is entitled to an award of its reasonable attorneys' fees, expert witness fees, court costs and discovery costs incurred.

## SECOND COUNTERCLAIM
### Breach of Covenant of Good Faith and Fair Dealing

96.     PHS incorporates, as if fully set forth herein, its allegations contained in the foregoing paragraphs of its Counterclaim.

97.     The Parties entered contractually binding License Agreements on or around August 31, 2015, which contain an implied covenant of good faith and fair dealing under Utah law.

98.     Except as excused by Larada's material breaches, PHS performed all its obligations under the License Agreements.

99.   Larada breached the covenant of good faith and fair dealing as evidence by a letter dated May 1, 2017, wherein Larada admitted that it strategically waited to "issue" its HTK to consumers "on the two year mark contemplated in Paragraph 5 of Exhibit C of the license agreement."

100.   As a direct result of Larada's breach of the covenant of good faith and fair dealing, PHS suffered damages in an amount to be determined at trial.

101.   PHS is entitled to an award of its reasonable attorneys' fees, expert witness fees, court costs and discovery costs incurred.

## THIRD COUNTERCLAIM
### Copyright Infringement
### 17 U.S.C. § 501

102.   PHS incorporates, as if fully set forth herein, its allegations contained in the foregoing paragraphs of its Counterclaim.

103.   Factual compilations may contain protectable expression so long as there exists an original selection or arrangement of facts.

104.   Under 17 U.S.C. § 101, to be copyrightable, a compilation must be a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship.

105.   In 2014, PHS spent a substantial amount of time and effort to create a head lice treatment comparison chart for its patients entitled "Get the Facts."

106.   On October 23, 2015, the United States Copyright Office issued Registration No. TX 8-125-209 to PHS for the "Get the Facts" compilation.

107.   The PHS's "Get the Facts" sheet, Reg. No. TX 8-125-209, is a valid copyright subject to protection under 17 U.S.C. § 103.

108.   On information and belief, Larada has unlawfully copied constituent elements of PHS's work that are original to PHS.

109.   For example, Larada's infringing work mirrors the vertical five-column by seven-column grid depicted in PHS's work.

110.   Larada's infringing work also includes the same "Get the Facts" main title heading.

111.   The selection, order, sequence, and arrangement of the information presented in Larada's infringing work is also nearly identical to and presented in the same way as PHS's copyright-protected work.

112.   Larada's infringing work appears to use the same typeface and nearly identical horizontal and vertical column headings as PHS's work.

113.   Stripping away the non-protectable facts, the selection, coordination, and arrangement of facts as they appear in Larada's infringing work as a whole are substantially similar to PHS's work.

114.   Larada's infringing work lacks creative contributions, rendering its reproduction substantially similar to and an infringement of the elements of PHS's copyrighted work that are legally protected.

115.   On information and belief, Larada copied, made, and publicly displayed unauthorized reproductions of PHS's copyrighted work on its website and in its advertising materials without PHS's consent.

116.   Larada's conduct violates PHS's exclusive right to control reproduction, distribution, creation of derivative works, and public display of its copyrighted works, in violation of 17 U.S.C. §§ 106–122.

117.   Larada knew it infringed PHS's copyright, or was reckless in its disregard of that possibility by systematically copying, altering, and using PHS's copyrighted work over an extended period of time.

118.   Larada's misappropriation of PHS's copyrighted work is intentional and willful.

119.   Larada's wrongful conduct, as set forth herein, has harmed, and will continue to harm, PHS in an amount not yet ascertained.

120.   Larada admits that it used PHS's copyrighted work as described with specificity above.

121.   Notwithstanding PHS's demand to cease use of PHS's "Get the Facts" copyrighted work, Larada continues to use its infringing reproduction. This blatant disregard for the law evidences that Larada is likely to engage in future wrongful conduct. *See Harolds Stores, Inc. v. Dillard Dept. Stores*, *Inc.*, 82 F.3d 1533, 1555 (10th Cir. 1996).

122.   Larada's intentional and willful infringement merits an award of reasonable attorney's fees under 17 U.S.C. § 505.

123.   Unless Larada is enjoined, PHS does not have an adequate remedy at law to guard against future infringement by Larada.

124.   As a direct and proximate result of Larada's deliberate and intentional infringement and misrepresentation, Larada has unlawfully profited, and PHS has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.

125.   PHS requests a permanent injunction be entered against Larada prohibiting continued infringement of PHS's copyrights pursuant to 17 U.S.C. § 502(a).

## RESERVATION OF RIGHTS

Defendant/Counterclaimant PHS reserves the right to amend these counterclaims during discovery because, on information and belief, PHS believes Larada has engaged in other concealed acts contrary to PHS's interest under the License Agreements, and amendment of these counterclaims may be required to realize substantial justice.

## PRAYER FOR RELIEF

Wherefore, Defendant/Counterclaimant, having completely and fully provided their Answer to Plaintiff's Complaint, prays for a final judgment against Plaintiff, respectfully requesting the following relief:

1.   A judgment that the Complaint be dismissed with prejudice;

2.   A judgment rescinding the License Agreements and awarding PHS reimbursement of its territory fees and deposit costs.

3.   A judgment that Larada's display and use of PHS's copyrighted work constitutes an infringement of PHS's copyright;

4.   An order prohibiting and permanently enjoining Larada, and each of Larada's officers, agents, employees, and those acting in concert or conspiracy with Larada, from using PHS's copyrighted material;

32

5.    Judgment against Larada to the extent allowed by law, including,

without limitation:

    a.    actual monetary damages sustained by PHS or statutory

        damages, per election by PHS prior to judgment;

    b.    statutory damages for any individual act of copyright

        infringement for which actual damages cannot be readily

        identified;

    c.    the profits unlawfully earned by Larada as a result of the

        unlawful acts, as set forth herein;

    d.    treble damages; and

    e.    costs of suit, prejudgment interest, reasonable attorneys' fees,

        expert fees, consulting fees, and other fees and expenses

        incurred herein.

6.    Such other and further relief as the Court deems appropriate and just

under the circumstances.

DATED this 21st day of September, 2018.

**MAGLEBY CATAXINOS & GREENWOOD**

<u>/s/ Christine T. Greenwood</u>
Christine T. Greenwood
Geoffrey K. Biehn

**LEE & HAYES PLLC**

/s/ Sarah E. Elsden
Andrew G. Strickland
Sarah E. Elsden

*Attorneys for Defendant Pediatric Hair Solutions Corporation*

# CERTIFICATE OF SERVICE

I certify I am employed by the law firm of Lee & Hayes PLLC, 601 W.

Riverside, Suite 1400, Spokane, Washington 99201, and pursuant to Federal Rules

of Civil Procedure Rule 5(b), a true and correct copy of the foregoing **Defendant**

**Pediatric Hair Solution's Answer, Affirmative Defenses, and Counterclaims**

was delivered to the following this 21st day of September, 2018, by:

[ ] Hand Delivery
[ ] Depositing the same in the U.S. Mail, postage prepaid
[X] CM/ECF System
[ ] Electronic Mail

Jason D. Boren
borenj@ballardspahr.com
Nathan R. Marigoni
marigonin@ballardspahr.com
BALLARD SPAHR, LLP
One Utah Center, Suite 800
201 South Main Street
Salt Lake City, Utah 84111

Richard W. Miller (*pro hac vice*)
millerrw@ballardspahr.com
Ballard Spahr LLP
999 Peachtree Street, NE
Suite 1000
Atlanta, Georgia 30309

*Attorneys for Plaintiff, Larada Sciences, Inc.*

/s/ Sarah E. Elsden