# EXHIBIT 1

LARADA • SCIENCES™

Clinic #: _154070C_

## LICENSE AGREEMENT
Atlanta, GA - Conversion

This License Agreement ("Agreement") is made and effective this 31 day of August, 2015 (the "Effective Date"), by and between Larada Sciences, Inc., a Delaware corporation ("LSI"), whose address is 455 North 400 West, Salt Lake City, Utah, 84103, U.S.A. and Pediatric Hair Solutions Corporation, a North Carolina corporation ("Licensee") having an address of 6923 Shannon Willows, Charlotte, NC 28226 ("Business Address"). LSI and Licensee may sometimes be referred to as a "Party" or jointly as the "Parties."

**1.      License; Milestones; Transfer of License.**

LSI hereby licenses the right to use one or more Devices and related products in the operation of Licensee's Business, and Licensee agrees to license the right to operate the Device(s) pursuant to the terms and conditions of this Agreement. Pursuant to the terms and conditions of this Agreement, the Device(s) are hereby licensed for the Clinic location in the zip code-based territory identified in Exhibit A attached hereto ("Territory"). The license granted by LSI to Licensee hereunder shall be exclusive, meaning that LSI shall not grant a license or permission to any party other than Licensee to use one or more Devices and related products in the Territory during the Term, subject to the provisions of Section 2 of Exhibit A. During the Term of this Agreement, Licensee shall be required to perform certain performance milestones as more specifically set forth on Exhibit B attached hereto. Any license granted under this Agreement shall be transferable subject to (a) payment to LSI by Licensee of a $5,000 transfer fee, (b) the consent of LSI and (c) the execution and delivery by transferee of an agreement in form and substance acceptable to LSI. It is understood and agreed that Licensee may open a Clinic and any Satellites under its own brand name or LSI's "Lice Clinics of America" brand name; provided, however, if Licensee opens a Clinic or Satellite under the *Lice Clinics of America* brand name, Licensee must not incorporate its business entity as *Lice Clinics of America*, or any derivation thereof, but must market such brand name utilizing the phrase "*Lice Clinics of America*™ – [location]" where location is the name of a city or region within Licensee's Territory.

**2.      Term.**

The Term of this Agreement is five (5) years from the Effective Date of this Agreement. It is understood and agreed that Licensee may license additional Territories and Licensee shall be required to enter into a separate license agreement with LSI for each Clinic location. The Term may be extended for additional periods of time upon mutual agreement of the Parties (each a "Renewal Term").

**3.      Devices, Products, Training.**

During the Term of this Agreement, LSI shall provide the following to Licensee:

a       Up to four (4) Devices per Clinic;

b.      Any and all Treatment Products related to the operation of Devices and performance of a treatment;

c.      Device Training and Certification of owners, managers and two staff per Clinic;

d       Two days of onsite training for an owner, at a clinic location of LSI's choosing.

e       Its best efforts to send treatment leads to Licensee.

f.      Initial website development for Licensee, if Licensee so desires

**4.      Location and Use of Devices**

© 2015 All Rights Reserved. Larada Sciences, Inc
Rev 3/15

Licensee Initials

OMWEST #12023030 v5

At all times, each Device shall be kept at the Business Address; except that the Licensee may store or use any Device at a fixed location other than the Business Address, so long as Licensee maintains a record of the location and shall provide LSI such record upon request. Licensee may use any Device in all mobile operations (such as for in-home Treatments) and in all services provided at Licensee's Clinic(s) in adherence to the methods, procedures and quality standards taught in Larada Sciences' Training Program and provided within the *AirAllé®* Operator's Manual, consistent with *Lice Clinics of America's*™ standard offering of screening, diagnosis and Treatment options to Clients.

5. **License Payment, Handling, Shipping, Taxes:**

a. During the Term, Licensee shall make the following payments:

    i. One-time, non-refundable License Payment equal to $5,000;

    ii. Per-treatment Use Fee of $25 for each Treatment;

    iii. $500 Refundable Deposit for each Device and

    iv. Actual shipping and handling costs per Device, Treatment Products and Consumables, which shall be due at the time of shipment by LSI.

b. In addition to the provision of certain Consumables related to the Devices under this Agreement, Licensee shall be entitled and obligated to purchase the Consumables from LSI. LSI has the right at any time, upon 30 days written notice to Licensee, to change the prices charged for the Consumables.

c. As an exception to the terms in Section 5(a)iv, the shipping for the initial order of Treatment Products will be covered by the License Payment.

d. If the Parties mutually agree to extend the Term, and unless otherwise specified in Exhibit B, Licensee will pay $5,000 for a five-year Renewal Term, due 30 days before the end of the Term.

6. **Sales of Retail Products by LSI.**

Notwithstanding anything in this Agreement to the contrary, LSI shall be entitled to sell consumer and retail products within the Territory or any other location.

2

© 2015 All Rights Reserved. Larada Sciences, Inc
Rev 4/15

Licensee Initials

7. **Definitions:**

Any capitalized term not otherwise defined in the body of this Agreement shall have the following meaning:

a. "ACH" is the acronym for "Automated Clearing House" and refers to the network that processes electronic financial transactions in the United States.

b. "Business" shall mean the lice-removal business operated by the Licensee.

c. "Certificate of Treatment" shall mean LSI's standard proof-of-treatment certificate that is provided to each individual Client after treatment using the Device.

d. "Certification" or "Certified" shall mean the certificate issued by LSI to each Certified Operator after he or she has successfully completed Device Training and is competent to use the Device.

e. "Certified Operator" shall mean that person or persons who have been Certified by LSI in the use of the Device and follows the instructions for use, also called the *AirAllé®* "Operator's Manual."

f. "Certified Operator Agreement" is found at Exhibit 2.

g. "Client" shall refer to the recipient of the Treatment supplied by the Licensee.

h. "Clinic" shall mean a place of business with a physical location and storefront that is marketed as an authorized *AirAllé®* treatment center where Treatments are provided. The Clinic must contain at least two salon-style treatment chairs and perform services on a floor plan that is no less than 400 square feet.

i. "Complaint" shall mean any communication from any source, including Clients that alleges deficiencies related to the identity, quality, durability, reliability, safety, effectiveness, or performance of the Treatment, Device or Consumables.

j. "Consent for Treatment" form shall mean a standard LSI-provided template that describes the relative risks and benefits of treatment using the Device.

k. "Consumables" shall refer to any hoses, filters, replacement parts, and any other goods or items that are specifically designed for the Device and must be replaced in order to repair or maintain the Device. Consumables shall not refer to Treatment Products or retail products under the brands of either *I Hate Lice*™ or *AirAllé®*. LSI may add Consumables at its discretion.

l. "Credit Card Payments" shall mean the credit card that Licensee has on file with LSI that can be used automatically to pay for any fees or costs due under this Agreement.

m. "Default Rate" shall have the meaning given to it in Section 9.

n. "Device(s)" shall mean the patented LSI Heated Air Device also known as the "*AirAllé®* device".

o. "Device Training" shall refer to training program that LSI delivers to the Licensee and any of its employees on the safe and efficacious use of the Device, also called the "Training Program".

p. "Documents" shall refer to the Consent for Treatment forms, product fact sheets and any electronic media or other written materials that LSI may offer from time to time.

q. "Effective Date" shall have the meaning given to it in the introductory paragraph.

r. "Force Majeure" shall mean that, except for the monetary obligations of Licensee hereunder which are due regardless of Force Majeure, if either Party shall be delayed or hindered in or prevented from the performance of any act required under this Agreement by reason of strikes, lock-outs, transportation delays, labor troubles, inability to procure materials, Devices, Consumables or Documents, failure of power, restrictive Governmental laws or regulations, riots, insurrection, war, or other causes beyond the reasonable control of the Party required to perform the terms of this Agreement, then performance of such act shall be excused for the period of the delay, but in no event

3

© 2015 All Rights Reserved. Larada Sciences, Inc
Rev 4/15

Licensee Initials

DMWEST #12023030 v5

to exceed ninety (90) days from the date that performance was to be delivered.

s. "Government" shall mean any domestic or foreign national, state or municipal government or multinational body and any subdivision, agency, commission, or authority thereof, and any quasi-governmental or private body exercising any regulatory or taxing authority over the Device, or the use or licensing of the Device.

t. "Incurable Default" shall have the meaning given to it in Section 13 and elsewhere in this Agreement.

u. "Indemnified Party" shall be the Party that is indemnified by the other Party in accordance with Section 15.

v. "Late Fee" shall have the meaning given to it in Section 9.

w. "Licensee Parties" shall mean the officers, directors, shareholders, employees, agents, and Certified Operators of the Licensee.

x. "License Payment" shall refer to the one-time, non-refundable payment made to LSI by the Licensee to enter into this Agreement.

y. "LSI Parties" shall mean officers, directors, shareholders, employees and agents of LSI.

z. "Marks" shall refer to LSI's marks, including "AirAllé®", "Certified AirAllé Operator™", "I Hate Lice™", "Lice Clinics of America™", "Urgent Care for Head Lice™", and any other trademarks, trade names, logos, service marks or similar commercial symbols or names as such Marks are identified herein or which may be added, changed or deleted from time to time by LSI.

aa. "Proof of Authenticity" shall mean the acknowledgement sticker that is attached to a Certificate of Treatment as proof that a new single-use Applicator Tip was used in the Treatment.

bb. "Proprietary Information" shall have the meaning given to it in Section 10 below.

cc. "Renewal Term" shall mean an extension of the Term to operate in the Territory. If

mutually agreed, Licensee and LSI would enter into a new agreement for any Renewal Term.

dd. "Replacement Price" means the current price that LSI charges for the applicable Device, Consumable, Document or other item.

ee. "Satellite(s)" shall mean any secondary place of business (the first place being the Clinic) within the Territory that is marketed as an authorized AirAllé® treatment center where Treatments are provided. Licensee can open Satellites only within the Territory and only after a Clinic has been opened. All Treatments performed at Satellites will be combined and reported with Clinic Treatments as though they occurred at the Clinic.

ff. "Taxes" shall mean all sales, use, excise, personal property, occupation and similar taxes, taxes arising from Licensee's particular use of the Device, Consumables and Documents, and all governmental assessments, fees and charges incurred during the Term and any Renewal Term, if any, with respect to the Device, any Consumables and the Documents and/or incurred as a result of the ownership, possession, rental, transportation or delivery thereof; except that LSI shall pay and bear all net income and gross receipt taxes on or measured by rentals payable to LSI hereunder.

gg. "Term" shall have the meaning given to it in Section 2.

hh. "Territory" shall have the meaning set forth in Section 1.

ii. "Training Materials" shall have the meaning given to it in Section 11.

jj. "Treatment" shall mean any and all treatments for head lice delivered to a Client by a Certified Operator using the Device.

kk. "Treatment Products" shall refer to the bulk size comb-out mousse, bulk size dimethicone oil and one-time-use applicator tips ("Applicator Tips") used during Treatment. LSI may add Treatment Products at its discretion.

ll. "Use Fee" shall refer to a flat-rate fee that Licensee pays to LSI for every time Licensee and/or Licensee's Certified Operators perform a Treatment using a Device.

4

© 2015 All Rights Reserved. Larada Sciences, Inc
Rev 4/15

DMWEST #12023030 v5

Licensee Initials

mm.   "User Manuals" shall refer to the manuals delivered with the Device that prescribe how the Device is to be used.

5

© 2015 All Rights Reserved.  Larada Sciences, Inc
Rev 4/15

Licensee Initials

DMWEST #12023030 v5

8.    **Devices, Consumables, Documents, Maintenance, Repair and Ownership**

a.    Licensee understands that LSI has represented that the Device is a medical device and its design and use are strictly regulated by one or more Governmental entities.  The Device must be operated only by a Certified Operator who operates the Device only in strict adherence to the methods, procedures and quality standards taught in the Device Training, identified in the User Manuals, and otherwise delivered to Licensee by LSI from time to time.  Breach of this covenant shall be material and may, at the option of LSI, be deemed to be an Incurable Default.

b.    Licensee shall purchase all Consumables only from LSI. The prices for Consumables may change from time to time and such changes shall be communicated to the Licensee by advance written notice in accordance with Section 5(b) hereof.

c.    The Licensee must use an Applicator Tip only one time per Client.  **It may not be reused on the same Client and may not be reused on any other person or Client for any reason or purpose.**  Use or re-use of an Applicator Tip in violation of this covenant shall be deemed an Incurable Default under Section 13 below.

d.    Licensee is solely responsible for the normal, routine maintenance and upkeep of the Device as required or recommended by LSI, and as so disclosed to Licensee, and for keeping on hand a sufficient supply of Consumables.  Licensee shall immediately notify LSI in writing or by facsimile of any inoperable Device or Consumable, specifying in sufficient detail the nature of the problem (including photographs, if possible).  Within forty-eight (48) hours after receiving such notification, LSI shall instruct Licensee to either repair the Device or Consumable on-site or to ship the problematic Device or Consumable to LSI at Licensee's initial cost, and LSI shall simultaneously ship any replacement Device or Consumable back to Licensee at LSI's cost.

e.    Each Device is owned solely by LSI.  By signing this Agreement and using a Device, Licensee acquires no right, title or interest in or to the Device, except for the limited license of use expressed herein. Licensee agrees that, upon request, it will execute all reasonable agreements or notifications that serve to confirm ownership of the Device in the name of LSI.

9.    **Payments and Fees, Terms of Payment, Taxes, Record Keeping and Audit Rights**

a.    The Use Fee for each Device shall be paid by Licensee on or before the tenth business day of the month following the month in which the Use Fee was calculated.

b.    The Use Fee for each Device that is due under this Agreement shall be paid by the use of Credit Card Payments.  Licensee will make arrangements with LSI to accept Credit Card Payments prior to the delivery of the first Device with the understanding that the right to use the Credit Card Payment system will be applicable for all Devices in Licensee's possession.  No Device will be delivered unless the payment arrangements have first been made.  LSI will charge Licensee's credit card on the date that it is due the Use Fee.  If Licensee fails to have a sufficient credit limit on the due date for each Device and/or Use Fee, Licensee may be assessed a $50.00-per-Device late fee ("Late Fee").  LSI may also charge interest on the missing or late payment at the greater of eighteen percent (18%) per annum or the maximum amount permitted by the law of the state in which Licensee is located ("Default Rate") plus court costs and reasonable attorneys' fees and collection fees, with or without suit, incurred in collecting any past due balance. Licensee agrees and hereby consents, in order for LSI to service Licensee's account(s), including all past and current accounts, or to collect any amounts Licensee may owe for any past or current account(s), LSI may contact Licensee by telephone at any telephone number, including wireless telephone numbers, which could result in charges to Licensee.  Licensee also agrees that LSI may also contact Licensee by sending text messages or e-mails to any of Licensee's phone numbers or e-mail accounts.  Methods of contact may include using pre-recorded/artificial voice messages and/or use of an automatic dialing device, as applicable. Licensee acknowledges that this subsection does not constitute LSI's agreement to accept any payment after it is due or a commitment to extend credit to, or otherwise finance the operation of Licensee's Business.  The

6

© 2015 All Rights Reserved.  Larada Sciences, Inc
Rev 4/15

Licensee Initials

collection of any Late Fee and the acceptance of any late payment will not diminish LSI's right to any other remedies available under this Agreement or at law or in equity. Notwithstanding any designation by Licensee as to the application of a payment, LSI shall allocate any payments first to any Late Fees and interest owed, then to any past due Use Fees, then to current Use Fees owed to LSI. The allocation set forth above shall not serve to postpone any payments that are due on any current or future due date.

c    Payment for all Consumables, Documents and any other goods or services purchased by Licensee from LSI shall be paid in accordance with the terms approved between LSI and Licensee. If such purchases are charged to the Licensee's account, then payment will be made by Credit Card Payment in the same manner as described in the previous subsection.

d.    Licensee agrees to keep all Consent for Treatment and Certificate of Treatment forms for each Device (or an acceptable Licensee-provided equivalent form) for a period of two (2) years after each Treatment is completed. Licensee further agrees to retain all records, sales slips, orders, sales tax reports, and any other business records and related background material related to the use of the Device at the Business, for a period of two (2) years following the end of the year in which the items were generated.

e.    The right of LSI to collect the Use Fee and all other amounts and fees due hereunder is independent of any other covenant found herein. Licensee shall not be permitted to offset any claim it may have against LSI against any amounts due hereunder.

10.    Proprietary Information and Innovation

a.    For purposes of this Agreement, "Proprietary Information" includes but is not limited to:

i.    The Device and the construction of, and the design, mechanics, patents, electronics, User Manuals, Consumables and all other components and parts that make up the Device;

ii.    All Documents;

iii.    The Marks as they may be added, changed or deleted from time to time;

iv.    The operating procedures and processes used to deliver the Treatment to the Client;

v.    All common law rights to the Marks and to any copyrighted materials; and,

vi.    Any trade secret processes, formulae or information of a similar nature deemed to be a "trade secret" as that term is defined by the Uniform Trade Secret Act of Utah as found at Title 13, Chapter 24 of the Utah Code.

b    During the Term of this Agreement and following its expiration or termination for any reason, Licensee agrees that without LSI's prior written consent, which consent may be granted or denied for any reason or for no reason, it shall not: (i) divulge, directly or indirectly, orally or in writing or electronically, to any person or entity, any component or portion of the Proprietary Information except such operating procedures and processes so used to deliver Treatments to the Client; or, (ii) disassemble, reverse-engineer, or otherwise replicate, duplicate or copy any component or portion of the Device or any Consumable; or (iii) otherwise take any action that may be commercially reasonably deemed to be an infringement upon any common law or statutory intellectual property and other exclusive rights in favor of LSI.

c.    Nothing in this Agreement shall require LSI to reveal any Proprietary Information to the Licensee.

d    Licensee agrees that LSI owns all of the right, title and interest in and to each component of the Proprietary Information in whatever form or medium. Nothing herein shall be construed as granting Licensee any right, title or interest in or to any component of the Proprietary Information except as described herein. To the

7

© 2015 All Rights Reserved. Larada Sciences, Inc
Rev 4/15

DMWEST #12023030 v5

Licensee Initials

extent that this Agreement is deemed to grant the Licensee a license to operate using any component of the Proprietary Information, such license is limited, non-exclusive and temporary, as described herein.

e. Licensee does have the limited right to disclose Proprietary Information only to such Licensee Parties as must have access to it in order to operate the Device to perform Treatments, or to prepare reports or to take action in furtherance of the covenants of this Agreement. Licensee shall obtain from each such Licensee Party a written agreement that such person shall not, during the course of his or her employment, representation, or agency with Licensee, or at any time thereafter, use, divulge, disclose or communicate, directly or indirectly, in any form or manner, to any person or business entity any component of the Proprietary Information.

f. Licensee may not under any circumstances use any Mark to identify its Business, any business entity or for any other purpose, unless permitted hereunder. Notwithstanding the foregoing, Licensee may provide notice to the public via media outlets, its website and other electronic media, and through standard marketing efforts or install a sign in the Business that its Business is "*Powered by AirAllé®* Technology" and has operators that are certified to use the *AirAllé®* Device, or that it is part of the "*Lice Clinics of America*™ Network". Licensee may also, with written permission from LSI, name its Clinic(s) "*Lice Clinics of America*" as stated in Section 1.

g. Licensee will promptly notify LSI in writing of any possible infringement of or use by others of any component of the Proprietary Information. Licensee acknowledges that LSI shall have the right, in its sole discretion, to determine whether any action will be taken because of any possible infringement or illegal use. LSI may commence or prosecute such action in its own name and may join Licensee as a party to the action if it is determined to be reasonably necessary for the continued protection and quality control of each component of the Proprietary Information. Licensee has no right to make any demand, or to prosecute any claim against the alleged infringer. Licensee must reasonably cooperate with LSI in any way necessary to protect such Proprietary Information with the understanding that LSI shall bear all costs and hold Licensee harmless with respect to such action.

h. LSI in its sole discretion shall have the right to: (i) modify or discontinue use of any portion of the Proprietary Information; (ii) modify the design of, or any component of the Device, the Consumables, the Documents and Treatment Products; and, (iii) develop additional components or substitutes for any such component of the Proprietary Information. Upon no less than sixty (60) days written notice from LSI, Licensee will take such reasonable action, at Licensee's sole expense, as may be necessary to comply with such modification, discontinuation, addition or substitution.

i. Any and all goodwill associated with any component of the Proprietary Information (including but not limited to the Marks and the Device), including any goodwill that might be deemed to have arisen through Licensee's activities related to the Device and excluding Licensee's activities not associated with the Device as described herein, shall inure directly and exclusively to the benefit of LSI and not to Licensee.

j. Licensee further agrees to:

i. Fully and strictly adhere to all reasonable security procedures prescribed by LSI for maintaining the secrecy of Proprietary Information;

ii. Refrain from using any component of the Proprietary Information in any other business or in any manner not specifically authorized or approved by LSI in writing; and,

iii. Exercise the highest degree of diligence and make every effort to maintain the absolute confidentiality of all such Property Information during and after the Term of this Agreement.

k. During the Term or any Renewal Term, Licensee may create, design or otherwise improve upon any component of the Proprietary Information (an "Innovation"). Any Innovation will be deemed the sole and exclusive property of LSI. Upon the creation of any Innovation, Licensee will immediately notify LSI in writing and in detail, the nature of the Innovation. LSI shall have the sole and exclusive right to approve or disapprove of any

8

© 2015 All Rights Reserved. Larada Sciences, Inc
Rev 4/15

Licensee Initials

DMWEST #12023030 v5

such Innovation for any reason or for no reason at all. If it is approved, LSI may permit Licensee and any other Licensees of LSI to use the Innovation. Licensee agrees that LSI does now and will own the right, title and interest to the Innovation. Licensee agrees to take any action necessary to insure that LSI obtains such right, title and interest in any such Innovation, all at LSI's expense. To the extent necessary, any such Innovation will be deemed to be a "work made for hire" that was specifically ordered and commissioned by LSI. Licensee acknowledges and agrees such work made for hire belongs to and shall be the sole and exclusive property of LSI.

l.      The obligations of this Section 10 shall not apply to any information which was (i) in the public domain at the time of LSI's communication thereof to Licensee; (ii) enters the public domain through no fault of the Licensee subsequent to the time of LSI's communications thereof to Licensee; (iii) was in Licensee's possession free of any obligation of confidence at the time of LSI's communication thereof to Licensee; (iv) was received independently by Licensee from a third party who was free to lawfully disclose such information to Licensee; or (v) was developed by employees or agents of Licensee or by Licensee independently of and without the use of any of the Proprietary Information.

11.     **Training and Certification**

a.      LSI has represented that the Device is deemed by the United States Food and Drug Administration to be a medical device. In addition, LSI has represented that other Government and regulatory bodies have also deemed it to be a medical device. In order to insure continued regulatory compliance with applicable Government regulations, to maintain its registrations as a medical device and in order to insure the health and safety of the Clients, Certified Operators and others, Licensee and any personnel that Licensee determines will use the Device to perform Treatments must take Device Training and obtain Certification. No Treatment shall be provided by Licensee until Device Training and Certification have been completed by the Operator intending to do the Treatment.

b.      Immediately upon Licensee's receipt of the Device(s), LSI shall provide Device Training and individual Certifications for Licensee's owner, manager and two staff, per Clinic. All Device Training will be Internet-based and will include all instructional presentations, videos, tests, manuals and printed materials ("Training Materials") necessary for Certification.

c.      Licensee may request additional Device Training sessions and Certifications at any time and such Device Training and Certification will be at Licensee's sole cost and expense, including associated travel expenses, room, board, and employee expenses if travel is required. Further, LSI may charge its then-current fee for such additional Device Training and Certification.

d.      Prior to offering the first Treatment, each Certified Operator must sign and return to LSI the Certified Operator Agreement found as Exhibit 2 that is attached hereto.

e.      The use of the Device by any person other than a Certified Operator shall result in the immediate termination of this Agreement.

12.     **Quality Control**

a.      Licensee shall use the Device, Consumables, Treatment Products and Documents in strict compliance with the terms of this Agreement.

b.      Licensee acknowledges that LSI has used reasonable efforts to provide to Licensee notice of, and Licensee agrees to comply with, all applicable laws, ordinances and regulations, or rulings of every nature whatsoever which in any way regulate or affect the operation of the Licensee's Business or the use of the Device so as to insure the continued compliance with Government regulations and the continuous operation of the Business and the Device. Licensee further understands and agrees that licensing separate from Certification may be required by any Government in order to operate Licensee's Business and/or the Device. Licensee shall obtain

9

© 2015 All Rights Reserved. Larada Sciences, Inc
Rev 4/15

DMWEST #12023030 v5

Licensee Initials

all such licensing prior to opening the Business and shall continually update such licensing as necessary to insure the continuous operation of the Business.

c.　LSI has provided Licensee a copy of Device Government requirements.　In order to meet Government requirements, Licensee must deliver to each Client who completes Treatment using the Device a dated and signed Certificate of Treatment with a Proof of Authenticity affixed thereon.

d.　Licensee shall not modify or remove any labels affixed to the Device, the Consumables, the Treatment Products or Documents and shall further refrain in any manner from altering the Device, a Consumable, a Treatment Product or a Document.

e.　Licensee shall at all times keep the Device, Consumables, Treatment Products and Documents free and clear of all levies, liens or encumbrances, it being understood that the Licensee shall in no way encumber the Device, Consumables, Treatment Products and Documents with any security agreement or financing statement except as permitted herein.

f　The Devices, as well as all promotional, packaging, and advertising material used in connection with the Devices and/or the offering and/or performance of any services under any of the Marks, shall include appropriate trademark designations or markings of "TM" or, with respect to Marks that have been registered with the United States Patent and Trademark Office, the circle-R (®) symbol.

g.　In the offering and performance of services under any of the Marks, Licensee hereby agrees to maintain standards of quality that conform to those quality standards under which such services are offered by LSI.　Licensee further agrees to, upon request by LSI, revise its performance of services under any of the Marks as needed in order to maintain such standards of quality.

h　LSI may request, and, upon request, Licensee agrees to provide, reasonable evidence establishing the quality of the services offered in connection with any of the Marks, including but not limited to allowing LSI to observe Licensee's performance of services under any of the Marks.

i.　In the event that, at LSI's sole discretion, the quality of the services offered by Licensee in connection with any of the Marks falls below an acceptable level, Licensee shall use its best efforts to restore such quality to the satisfaction of LSI.　Failure to restore such quality may result in the termination of this Agreement per Section 13b.

j.　Before Licensee sells or distributes any product bearing any of the Marks, Licensee shall submit samples of each proposed product to LSI for its prior written approval.

13.　Default, Termination, Surrender and Remedies

a.　Subject only to Force Majeure, effective upon receipt of written notice, said notice presented to Licensee in accordance with Section 18 below, LSI may terminate this Agreement without providing the Licensee any right to cure upon the occurrence of any one or more of the following events (each of which event is deemed to be an "Incurable Default"):

i.　Licensee ceases to operate the Business in which a Device is used or otherwise abandons such Business for a period of fourteen (14) consecutive days, or any shorter period that indicates Licensee's intent to discontinue operation of such Business.

ii.　Licensee becomes insolvent, as that term is commonly defined using generally accepted accounting principles; is adjudicated as bankrupt; if any action is taken by Licensee, or by others against Licensee under any insolvency, bankruptcy or reorganization act; if an assignment for the benefit of creditors is made by Licensee in reference to the Business; or if a receiver is appointed to the Business.

10

© 2015 All Rights Reserved. Larada Sciences, Inc
Rev 4/15

Licensee Initials

iii.     Licensee fails to have a sufficient credit limit such that LSI is unable to charge Licensee's credit card for any amount due hereunder within ten (10) days after receiving notice that such fees or amounts are overdue.

iv.     Licensee uses any component of the Proprietary Information in violation of this Agreement, or otherwise negligently or intentionally discloses any component of the Proprietary Information in violation of this Agreement.

v·     Licensee, upon receipt of notice informing Licensee of its failure to maintain, repair or replace any part of the Device in order to keep it operational at all times, fails to so remedy said failure within fifteen (15) days of notice thereof.

vi.     Licensee uses any Applicator Tip more than one time.

vii.     Licensee uses parts or goods in the repair, maintenance or use of the Device that are not approved by LSI.

viii.     Licensee: negligently, intentionally or fraudulently omits, misrepresents, misstates or otherwise misleads LSI in reference to any representation made to LSI in order to obtain the Device; makes any statement, gives any warranty, makes any guaranty, provides any report or claim that is fraudulent, or dishonest; or, conducts Licensee's Business in such a manner as to bring disrepute to LSI or the good will of the Device.

ix.     Licensee fails, for a period of fifteen (15) calendar days after notification of non-compliance by the appropriate Governmental authority, to comply with any law or regulation applicable to the operation of the Business or the Device.

x.     Licensee violates any term, covenant or condition of this Agreement that: (i) contains its own right to cure, and Licensee fails to cure such violation within such specified cure period; or (ii) is otherwise identified as an Incurable Default.

xi.     Licensee fails to commence operations of any Clinic within the Term set forth in Section 2 of this Agreement.

b·     LSI will have the right to terminate this Agreement effective upon fifteen (15) days written notice to Licensee if Licensee breaches any other term, covenant or condition of this Agreement not identified as an Incurable Default and fails to cure the default during such fifteen (15) day period. After the passage of said fifteen (15) day period without cure, this Agreement will terminate without further notice.

c·     Upon termination of this Agreement by either Party as permitted herein, Licensee shall: (i) immediately pay all amounts then due to LSI in accordance with the terms of this Agreement; (ii) within five (5) business days after such termination, surrender and return to LSI all Devices and all unused Consumables; (iii) remove any signage or indication that Licensee has the right to offer Treatments using the Device or that contain the Marks; and, (iv) take such other commercially reasonable steps as may be necessary to dissociate Licensee from LSI.  All unused Consumables shall be in a clean and reusable condition in its original packaging.  A restocking fee equal to 10% of the Consumables purchase price ("Restocking Fee") will be charged for each Consumable that is returned in the manner and condition set forth herein.  LSI shall pay the Licensee within thirty (30) business days of receipt the cost Licensee paid for all Consumables (less the Restocking Fee) that are returned in the condition required hereunder.  Each Device shall be in good, clean and useable condition, normal wear and tear excepted.  Licensee will pay all costs associated with the return of the items described here.  Should Licensee fail to return herein any good described herein, or if returned, should any good be in a condition other than required herein, LSI will have such rights against the Licensee as may be available at law or in equity, including the right to recover the full repair cost or full Replacement Price of any such good.  In addition, LSI shall have such additional rights as may be necessary or useful, including the right to obtain injunctive relief in order to

11

© 2015 All Rights Reserved. Larada Sciences, Inc
Rev 4/15

DMWEST #12023030 v5

Licensee Initials

insure that the Licensee ceases to deliver Treatments using the Device and ceases to use any component of the Proprietary Information.

d. Licensee agrees to provide LSI with no less than thirty (30) days written notice of any alleged breach of this Agreement by LSI, which notice shall set forth the nature of any such breach. Thereafter, LSI shall diligently pursue the cure of such breach and shall complete such cure within said thirty (30) day period. LSI's performance herein is subject to Force Majeure.

e. No right or remedy herein conferred upon or reserved to LSI or Licensee is exclusive of any other right or remedy available under this Agreement or by law or equity, but each shall be cumulative of every other right or remedy given hereunder or now or hereafter existing at law, in equity or by statute or otherwise. Any such remedy may be enforced concurrently therewith or from time to time.

f. Except for any Incurable Default for which no right to cure is granted, if a Party diligently pursues the cure of any breach of this Agreement within the time period required, and if the nature of the cure is such that it cannot reasonably be completed within said cure period, then the Party shall be granted additional time to cure the same, which cure in any event shall not exceed an additional ten (10) days.

14.   **Insurance and Lost or Stolen Devices**

a. At all times, and at Licensee's expense, Licensee shall maintain: (i) primary and noncontributing comprehensive general liability insurance covering the Licensee's Business and the use of each Device on an occurrence basis with a nationally recognized insurance company with the following minimum limits of liability: $1,000,000 for each occurrence, and $2,000,000 in the aggregate; (ii) professional liability insurance with the following minimum limits of liability: $500,000 per claim and $1,000,000 annual aggregate; (iii) property damage insurance in an amount sufficient to cover any loss, theft, or damage to each Device; and, (iv) worker's compensation insurance in the amount required by the state in which the Business is located. In all cases, LSI shall be named as an additional insured.

b. Licensee agrees to furnish LSI with certificates of insurance annually and will provide LSI with at least thirty (30) days' prior written notice in the event of cancellation or material reduction in coverage. Each insurer shall agree, by endorsement or by independent instrument furnished to LSI, that it will give LSI 30 days' prior written notice of the effective date of any alteration or cancellation of such policy.

c. Should any Device be lost or stolen, Licensee must notify LSI within seven (7) days of such event ("Loss Notification"). Within thirty (30) days of Loss Notification, Licensee must pay LSI the then-current Replacement Price of the Device, upon receipt of which LSI will ship to Licensee at Licensee's expense a replacement Device. If Licensee has paid a Security Deposit, the Security Deposit may not be used to offset the Replacement Price. The Security Deposit from the lost or stolen Device will however, be applied to the replacement Device so that the Licensee is not required to pay a new Security Deposit. Licensee is solely responsible for filing a police report or insurance claim, as applicable, for any stolen or lost Device. A copy of the police report or insurance claim shall be delivered to LSI within five (5) days of the date made.

15.   **Indemnification**

a. Licensee shall indemnify, defend and save LSI and all LSI Parties harmless from any and all claims, causes of action, damages, awards, losses, fees (including reasonable attorney's fees, expert witness fees, court costs and the like), injury, repair, replacement or maintenance costs, audit costs, quality control expenses and costs, or any loss from whatever cause (Claim) resulting from the Licensee's: (i) negligent or intentional misuse of the Device; (ii) failure to maintain or repair the Device in accordance with LSI standards as so disclosed to Licensee and in accordance with this Agreement; (iii) the use of a Device by a person that is not a Certified Operator; (iv) the reuse of an Applicator Tip; and, (v) Licensee's violation of any term, covenant or condition of this Agreement.

12

© 2015 All Rights Reserved. Larada Sciences, Inc
Rev 4/15

Licensee Initials

DMWEST #12023030 v5

b.      Notwithstanding the foregoing, Licensee shall not be liable for any Claim that arises solely because of a design or manufacturing defect in the Device (which defect has not arisen because of the Licensee's misuse of the Device or use of the Device for any purpose not authorized herein) and in such an event, LSI shall bear the costs and losses associated with prosecuting such defect claim and indemnify, defend, and hold Licensee and all Licensee Parties harmless from any and all claims, causes of action, damages, awards, losses, fees (including reasonable attorney's fees, expert witness fees, court costs and the like) injury, or any loss from whatever cause arising from a design or manufacture defect claim  LSI and Licensee shall have the right to use counsel of their own choosing.

c.      LSI further agrees to indemnify, defend and hold Licensee and Licensee's parties harmless from and against any and all liabilities, obligations, deficiencies, demands, claims, suits, actions or causes of action, assessments, losses, costs (including reasonable fees and expenses of attorneys, accountants and other experts and consultants), expenses, interest, fines or penalties, (individually and collectively , the "Losses") suffered, sustained, or incurred by Licensee relating to or resulting from, arising out of, or otherwise by: (a) any material inaccuracy in the representations or warranties of LSI; (b) the failure of LSI to perform any of its material covenants or obligations contained in this Agreement or any exhibit or schedule hereto.

d.      Included in any indemnification hereunder shall be the reimbursement or direct payment of any award, damage and costs reasonably incurred by the Indemnified Party in the defense of any Claim against the Indemnified Parties, including, without limitation, reasonable accountants', attorneys' and expert witness' fees, costs of investigation and proof of facts, court costs, and other litigation expenses.

16.    **Warranties**

a.      During the Term or any Renewal Term, LSI will repair or replace at its sole option, free of charge, any defective Device returned with prior authorization.  Hoses, power cords, applicator bases, and treatment timers are warranted against material and manufacturing defects for ninety (90) days from the date of delivery to Licensee and shall be replaced or repaired by LSI.  Single-use Applicator Tips are warranted for a single use for a period of two (2) years from the date of purchase.  All other Consumables, the Documents and any other goods or services identified in this Agreement are not warranted.  This warranty does not cover loss or damage resulting from abuse, misuse, improper storage, negligence or alteration of the Device, any Treatment Product or Consumable or any other warranted good.

b.      To obtain repairs or replacement under this warranty, contact LSI by telephone or email.  Licensee shall be responsible for all costs associated with shipping the Device to LSI; except that LSI will reimburse Licensee for such costs if the repair or replacement is covered by the above warranty.  If LSI determines that repair or replacement is necessitated by reason of an alteration or the misuse, abuse, negligence, improper storage or other cause at the hands of the Licensee or its Operators, Licensee shall pay the costs of repair or replacement and return shipping.  So long as the determination of causation shall be made in good faith, such determination by LSI shall be final.  If the warranty claim is proper, LSI shall replace or repair the defective good and will return the same to Licensee all at LSI's cost.

**THE FOREGOING IS THE SOLE WARRANTY PROVIDED BY LSI IN CONNECTION WITH THE DEVICE, THE CONSUMABLES, AND THE DOCUMENTS. LSI HEREBY DISCLAIMS AND LICENSEE UNDERSTANDS AND WAIVES ANY OTHER WARRANTIES, EXPRESS OR IMPLIED, ORAL OR WRITTEN, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.  ANY IMPLIED WARRANTIES AND OTHER TERMS THAT MAY BE IMPOSED BY LAW WILL BE LIMITED IN DURATION TO THE PERIOD OF THE ABOVE EXPRESS WARRANTY.**

**LSI SHALL NOT BE LIABLE FOR LOSS OF USE, LOST PROFITS, OR ANY OTHER SPECIAL, INCIDENTAL, CONSEQUENTIAL OR INDIRECT COSTS, EXPENSES OR DAMAGES.**

**EXCEPT AS OTHERWISE PROVIDED HEREIN, PRODUCTS ARE PROVIDED HEREUNDER "AS IS" AND "WHERE IS".**

13

© 2015 All Rights Reserved. Larada Sciences, Inc
    Rev 4/15

Licensee Initials

DMWEST #12023030 v5

17.   **Orders, Terms of Payment, Delivery and Returns**

a.      Orders for Devices, Consumables and Documents shall be made in writing using forms acceptable to LSI.  Each such order shall be delivered to LSI by email, facsimile, mail, courier or by any other means acceptable to the Parties.  Orders will be fulfilled by LSI in a commercially reasonable manner.

b.      Unless defined credit terms have been formally approved by LSI, payment in full for any order shall be made by Credit Card Payment.  LSI shall not be required to make any shipment until payment is made, consistent with the terms hereof.

c.      Licensee shall inspect the Device and each order of Treatment Products, Consumables and Documents promptly upon receipt thereof.  Licensee may reject any Device, Treatment Product, Consumable or Document that commercially reasonably fails in any material way to meet the specifications set forth for such good.  To reject a Device or any Treatment Product, Consumable or Document, Licensee shall notify LSI in writing or by facsimile, within ten (10) days of receipt, specifying in sufficient detail (including photographs, if possible) the nature of the problem with respect to such good and the reason for its rejection.  Within forty-eight (48) hours of receiving such notification, LSI shall instruct Licensee to either: (i) repair or replace the Device or Treatment Product or Consumable or Document at LSI's expense on-site; or (ii) to destroy at LSI's expense, the problematic Device, Treatment Product, Consumable or Document, upon which, simultaneously, LSI shall ship any replacement Device, Treatment Product, Consumable or Document to Licensee at LSI's cost; or (iii) to ship the problematic Device or Treatment Product or Consumable or Document to LSI at Licensee's initial cost, and LSI shall simultaneously ship any replacement Device or Treatment Product or Consumable or Document back to Licensee at LSI's cost.

18.   **Miscellaneous Provisions**

a.      This Agreement and the Exhibits hereto contain the entire understanding of the Parties and incorporates and merges herein all prior oral or written, express or implied conditions, agreements, contracts or understandings of the Parties.

b.      This Agreement may be modified only in a written agreement that is signed by all Parties. Notwithstanding the foregoing, LSI may modify the Device, the Treatment Products, the Consumables and the Documents at any time and the Licensee shall be responsible to use the Device, Treatment Products, Consumables and Documents as so modified after first receiving reasonable instructions on use and assuming such Device modification does not otherwise adversely affect Licensee's business operations and expectations as to the use and benefits of the Device(s) as described herein.

c.      No waiver by either Party of any condition or covenant contained in this Agreement or failure to exercise a right or remedy by a Party shall be considered to imply or constitute a further waiver by a Party of the same or any other condition, covenant, right or remedy.

d.      If any provision of this Agreement is held invalid by any tribunal in a final decision from which no appeal is or can be taken, such provision shall be deemed modified to the least extent possible so as to eliminate the invalid element and, as so modified, such provision shall be deemed a part of this Agreement as though originally included.

e.      Any notice required to be given pursuant to the terms and provisions hereof shall be in writing and shall be deemed to have been given and received (i) upon hand delivery, (ii) three days after being sent by certified or registered mail, return receipt requested or (iii) one (1) day after being sent by email or fax or by letter deposited with a recognized overnight courier with confirmation of next day delivery, addressed to a Party at the address provided to the other Party from time to time.

14

© 2015 All Rights Reserved. Larada Sciences, Inc
Rev 4/15

Licensee Initials

DMWEST #12023030 v5

f.      Any provision, term, covenant or condition of this Agreement that by its terms must extend beyond termination or expiration of this Agreement in order to remain enforceable shall continue in full force and effect subsequent to and notwithstanding the termination or expiration of this Agreement.

g.      The Parties agree that each covenant herein shall be construed to be independent of any other covenant or provision of this Agreement.

h.      This Agreement shall be interpreted in accordance with the laws of the state of Utah without consideration of any conflict of laws.  Jurisdiction and venue for any proceeding related to this Agreement shall be in a court of competent jurisdiction in Salt Lake County, Utah.  Licensee specifically covenants and agrees that the choice of law, venue, and jurisdiction are fair and reasonable.

i.      In all matters as between the Parties or between the Parties and the public, the only relationship between the Parties is that of licensor and licensee.  Nothing in this Agreement or the relationship created thereby constitutes a partnership, agency, joint venture, or other arrangement between the Parties.  Except as provided herein, each Party is: (i) liable for its own debts, liabilities, taxes, duties, obligations, defaults, compliance, intentional acts, wages, negligence, errors, or omissions and not that of the other Party; and, (ii) responsible for the management and control of its business including its daily operations and employee matters.  Each Party agrees not to hold itself out by action or inaction, contrary to the foregoing.  It is understood and agreed that the Agreement does not establish a fiduciary relationship between the Parties.

j.      Nothing in this Agreement shall be interpreted as implying that the Licensee will earn any revenue from the use of the Device and LSI and Licensee specifically disclaim any understanding, oral or written, express or implied to the contrary.  Licensee's use of the Device is at its own risk without the expectation of earning any level of revenue.

k.      Unless otherwise stated, a "day" shall refer to a calendar day.

l.      Any section and paragraph headings are for reference purposes only and shall not in any way affect the meaning and interpretation of this Agreement.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute the same instrument.  Electronic signatures or faxed signatures shall be deemed to effectively bind the Parties.

m.      The Parties further agree that the singular shall include the plural where applicable, the reference to one gender shall refer to the other gender and the use of the term "including" shall mean "including, but not limited to".

n.      The Parties further agree that this Agreement was drafted with the input from each Party.  As a result, any vague or inconsistent term, covenant or condition herein shall not be interpreted against that Party that drafted it merely because of such drafting.

o.      In the event that either Party brings any action in reference to this Agreement, the "Prevailing Party" in such action shall be awarded all reasonable attorneys' fees, expert witness fees, court costs and discovery costs incurred.  For purposes of this Agreement, the Prevailing Party shall be deemed that Party that has prevailed on a majority of the issues decided by the trier of fact, law or equity.

p.      LSI represents that as of the effective date of this Agreement, LSI is not subject to any Taxes applicable to Licensee.  In the event LSI becomes subject to any Taxes applicable to Licensee, LSI shall immediately provide written notice to Licensee describing the tax and the effective date of such tax, describing the calculation of the tax, and identifying the estimated amount of such tax.

q.      LSI is duly organized, validly existing and in good standing under the laws of the State of Utah with full legal power and authority to conduct its business, to enter into the Agreement to which it is a party and to carry out its obligations thereunder.

15

© 2015 All Rights Reserved.  Larada Sciences, Inc
Rev 4/15

Licensee Initials

r.      Licensee is duly organized, validly existing and in good standing under the laws of the state in which Licensee is located  with full legal power and authority to conduct its business, to enter into the Agreement to which it is a party and to carry out its obligations thereunder.

This License Agreement was executed by the Parties as of the Effective Date

**LSI**

**LARADA SCIENCES, INC.**

By: _____ (sign)

Name: _____ (print)

Title: _____

Date: _____9-24-15_____

**LICENSEE**

**PEDIATRIC HAIR SOLUTIONS CORPORATION**

By: _____ (sign)

Name: _____ (print)

Title: _____President_____

Date: _____9/4/15_____

Email: _____

16

© 2015 All Rights Reserved.  Larada Sciences, Inc
Rev 4/15

Licensee Initials

DMWEST #12023030 v6

**EXHIBIT A**
**TERRITORY**

TERRITORY EXCLUSIVITY

1. Territory

   a. Territory is comprised of the following zip code(s):

      i. 30067, 30068, 30080, 30305, 30308, 30309, 30319, 30324, 30326, 30327, 30328, 30338, 30339, 30342, 30346.

   b. The location of the Clinic is 4840 Roswell Rd., Ste. #201, Atlanta, GA 30342.

2. Exclusivity

   a. LSI, using commercially reasonable efforts, will attempt to support Licensee's business in its defined Territory.  LSI agrees not to enter into agreements with additional licensees in Territory, contingent on Licensee being current in all its financial and all other contractual obligations as outlined in this Agreement.

   b. LSI retains the right to sell consumer and retail products under the *AirAllé®* brand, *I Hate Lice*™ brand or *Lice Clinics of America*™,  within Territory.

   c. Licensee shall not advertise, market or conduct business in any territory where another *AirAllé®* licensee or provider has exclusivity.

3. Term

   a. Exclusivity for Territory is guaranteed until expiration or termination of this Agreement.

Unless prohibited by Device's contraindications, Licensee agrees to use Device in all services provided at Licensee's Clinic(s) within designated Territory and in all mobile operations (such as for in-home treatments), and may not conduct business in a closed territory.

17

© 2015 All Rights Reserved. Larada Sciences, Inc
Rev 4/15

Licensee Initial

DMWEST #12023030 v5



18

© 2015 All Rights Reserved. Larada Sciences, Inc
LB 00 64-1 EN Rev 1

DMWEST #12023030 v2

DMWEST #12023030 v4



Initials

**EXHIBIT B**
**PERFORMANCE MILESTONES**
(Dates will be based upon opening date)

1. Minimum Annual Requirements

    a. Perform a total of 630 *AirAllé*® treatments/year in FIRST YEAR (approximately 315 hours) per the following schedule:

        i. From \_\_\_\_\_ to \_\_\_\_\_, perform a total of 90  treatments (approximately 45  hours).

        ii. From \_\_\_\_\_ to \_\_\_\_\_, perform a total of 135  treatments (approximately 67.5  hours).

        iii. From \_\_\_\_\_ to \_\_\_\_\_, perform a total of 180  treatments (approximately 90  hours).

        iv. From \_\_\_\_\_ to \_\_\_\_\_, perform a total of 225  treatments (approximately 112.5  hours).

    b. During the last four years of the Term of this Agreement, perform a total of 1200 *AirAllé*® treatments each year (approximately 600 hours) per the following schedule:

        i. 300 treatments (approximately 150 hours) each quarter.

2. Performance

The above performance metrics apply to a single Clinic. Starting twelve (12) months after the date of opening the Clinic, If Licensee meets these performance metrics there will be no fee for renewing the License Agreement for the next 5 year period.  If the metrics are not met, LSI may, among other things, increase the renewal fee to $7,500.  Licensee will have the same renewal option for three consecutive renewal periods (15 years).

Licensee must report semi-monthly treatment numbers to LSI. By the 5th of each month, Licensee must include a picture of the meter for each Device.

19

© 2015 All Rights Reserved. Larada Sciences, Inc
Rev 4/15

DMWEST #12023030 v5

Licensee Initials

## EXHIBIT C
## OTHER TERMS AND CONDITIONS OF THE AGREEMENT

1    The Territory License Fee will be paid over Twenty-six months.  The payment will be part of the collective Territory Fee referred to in the Cover Letter to this Agreement.  The total Collective Territory Fee will be $65,000 (this is a modification of Paragraph 1b of the Cover Letter, due to Licensee not buying the Ashville Territory).  The Collective Territory Fee monthly payment will be $2,500 as noted in Paragraph 4 of the Cover Letter.

2.   Per the Cover Letter to this Agreement, Licensee will be required to open 4 new clinics in the collective territories of the Licensee within the 1st 5 years of the Agreement.  If the 4 territories are opened as agreed, the requirement of opening a clinic within the first 6 months of the Agreement, as outlined in Paragraph 2 (Term) of the Agreement will be satisfied.

3.   Renewal Fees will be as outlined in Section 2 of Exhibit B to the Agreement.

4.   If the Licensee purchases any LSI topical products, they will purchase them on a case by case basis at regular wholesale prices.

5.   The University of Utah developed and patented a method of using heated air for killing head lice. LSI has been granted an exclusive worldwide license by the University to practice and sublicense certain of the University's patents that relate to the use of heated air for killing head lice. Recently LSI became aware of a device known as "The Lice Device" and/or "The Dehydration Station". LSI has concluded that use of these devices infringes the above referenced patents. Accordingly, LSI, along with the University of Utah, filed a patent-infringement lawsuit in the U.S. District Court of Utah on Friday, June 5th, 2015 against several parties involved in the manufacture, distribution, and use of these devices. These devices are believed to be similar to the *AirAllé*® heated air device, and operators of the Lice Device are considered to be potential competitors of LSI's licensees. If, on the date that is two (2) years from the Effective Date, The Lice Device and/or The Dehydration Station and/or any other device that is identical to either of them, or any other device that uses heated air to eradicate head lice, regardless of the device's name, is still being legally commercially operated for lice removal purposes in the United States, Licensee will have the option, upon notice to LSI, to unwind this Agreement and receive a refund of all collected Territory License Fees and machine deposits paid to that date.

20

© 2015 All Rights Reserved.  Larada Sciences, Inc
Rev 4/15

Licensee Initials

DMWEST #12023030 v5

EXHIBIT 1

CREDIT CARD AUTHORIZATION FORM

21

© 2015 All Rights Reserved.  Larada Sciences, Inc
        Rev 4/15

DMWEST #12023030 v5

Licensee Initials

# Credit Card Payment Authorization Form

**Instructions:  To pay by credit card, please fill in requested information below. Please print.**

## Credit Card Holder Information

Please check credit card type:

◯ **Visa**          ◯ **MasterCard**          ◯ **Discover**          ◯ **American Express**

Credit card number: _____

Expiration date :_____/_____( mm/yy )  CVV Code _____

Exact name as it appears on the credit card: _____

Billing Zip Code: _____

Primary phone number: _____

Secondary phone number: _____

Cardholder Signature: _____  Date: _____

I hereby authorize Larada Sciences, Inc., (LSI) to automatically charge my credit card for amounts due to LSI and for so long as that certain Agreement dated the ____ day of _____, 20__ is in effect.

**Authorization can be emailed to accounting@laradasciences.com or faxed to 801-355-5423.**

**Information contained herein shall be subject to LSI's privacy policy.**

22

© 2015 All Rights Reserved. Larada Sciences, Inc
Rev 4/15

DMWEST #12023030 v5

Licensee Initials

**EXHIBIT 2**

**CERTIFIED OPERATOR AGREEMENT**

23

© 2015 All Rights Reserved.  Larada Sciences, Inc
Rev 4/15

DMWEST #12023030 v5

Licensee Initia

**Certified AirAllé Operator™ Agreement**

I, _____ (name and title if applicable; the "Operator"), have successfully completed the *Certified Airallé Operator*™ Training Program. In order to ensure the safe and effective use of the *AirAllé*® device (Device), I agree to the following:

1. *AirAllé*® treatments shall only be given by Operators that have an active Certified *AirAllé Operator*™ Certificate in good standing with Larada Sciences. A Certificate can only be obtained by successfully completing Larada Sciences' Training Program and signing a *Certified AirAllé Operator*™ Agreement. Operators shall provide treatments in strict adherence to the methods, procedures and quality standards taught in Larada Sciences' Training Program and provided within the *AirAllé*® Operator's Manual.

2. The single-use Applicator Tip cannot be re-used. Each Applicator Tip shall be used once and discarded / destroyed. As proof of this, the Operator must comply with Section 3{b} below.

3. To keep the following required records:

   a) *Consent for Treatment* form, fully filled-out and signed.

   b) *Certificate of Treatment* card, fully filled-out, Proof of Authenticity sticker applied, and given to each Client.

   c) *Client Information* sheet given to each Client.

   d) *Billing Invoices*, as required by the *AirAllé*® Device Renter or Owner.

4. Complaint Reporting. You must immediately report and forward all Complaints to Larada Sciences' Customer Service department. "Complaints" include any communication from any source, including you, that allege deficiencies related to the identity, quality, durability, reliability, safety, effectiveness, or performance of a Larada Sciences product.

5. To submit to audit by Larada. In order to ensure your compliance with the terms of this Agreement, you agree:

   a) that Larada Sciences or its duly authorized representatives shall have the right, at Larada Sciences' expense, to inspect, at reasonable times during normal business hours, each Device in your possession, any Larada Sciences products in your possession and all or any portion of your records with regard to

24

© 2015 All Rights Reserved. Larada Sciences, Inc
Rev 4/15

DMWEST #12023030 v6

Licensee Initials

       i.      the use of the Device or other Larada Sciences products, and

       ii.     your compliance with this Agreement.

b)    to cooperate with Larada or its representatives in good faith to facilitate the foregoing right of inspection.

c)    upon request, to submit to Larada or its duly authorized representative a digital, date-stamped photograph of the back of each *AirAllé®* Device within your possession, that clearly shows the serial number of the device and the number of hours on the hour meter.

d)    upon request, to submit to Larada or its duly authorized representative a copy of all Consent for Treatment forms relating to the *AirAllé®* Device being audited.

6.    <u>Revocation of Certificate</u>. Larada Sciences has the right to revoke your *Certified AirAllé Operator*™ Certificate if you are found to be in noncompliance with this Agreement. You will surrender your Certificate to Larada Sciences if requested as a result of noncompliance.

The undersigned hereby executes and agrees to the terms and conditions set forth in this *Certified AirAllé Operator*™ Agreement as of the date set forth below.

Dated this 24 day of September, 2015.

Signature: _Sheila Fassler_

Print Name: _Sheila Fassler_

Company: 

Address: 
Pediatric Hair Solutions
6923 Shannon Willow Rd.
Suite 100
Charlotte, NC 28226

Telephone: 

*Certified AirAllé Operator*™ Certificate Number: _____

25

© 2015 All Rights Reserved. Larada Sciences, Inc
LB 00 64-1 EN Rev 2

DMWEST #12023030 v5

Initials

Name of Trainer: _____

Email Address of Operator: _____

Upon execution of this Agreement, one copy must be sent to Larada Sciences at the following street address, fax number, or email address:

Larada Sciences, Inc.
370 S 300 E Ste 201
Salt Lake City, UT 84111   U.S.A.
Fax: +1 (801) 355-5423
training@laradasciences.com

*©2014 Larada Sciences, Inc. All Rights Reserved. U.S. Pats. 7,789,902; 8,162,999; D626,287; EC Regd.Des.No. 001685595-0001 and 001685595-0002; Australia Pat. No. 2006247084; China Pat. No. ZL200990100491.X.  AirAllé, Certified AirAllé Operator, and Larada Sciences trademarks are the property of Larada Sciences, Inc.*

© 2015 All Rights Reserved. Larada Sciences, Inc
LB 00 64-1 EN Rev 2

Initials

DMWEST #12023030 v5