# EXHIBIT B

Christine T. Greenwood (8187)
  greenwood@mcgiplaw.com
Geoffrey K. Biehn (13445)
  ~~biehn@mcgiplaw.com~~
  biehn@mcgiplaw.com
**MAGLEBY CATAXINOS &
GREENWOOD**
170 South Main Street, Suite 1100
Salt Lake City, Utah 84101-3605
Telephone: 801.359.9000
Facsimile: 801.359.9011

Andrew G. Strickland (*pro hac vice*)
  Andrew.Strickland@leehayes.com
**LEE & HAYES PC**
1175 Peachtree Street, NE
100 Colony Square, Suite 2000
Atlanta, Georgia 30361
Telephone: 404.815.1900
Facsimile: 509.323.8979

Sarah E. Elsden (*pro hac vice*)
  Sarah.Elsden@leehayes.com
**LEE & HAYES PC**
601 W. Riverside, Suite 1400
Spokane, Washington 99201
Telephone: 509.324.9256

Attorneys for Defendant Pediatric Hair Solutions Corporation

---

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

---

| | |
|---|---|
| LARADA SCIENCES, INC., a Delaware corporation,<br><br>   Plaintiff/Counterdefendant,<br>v.<br><br><br><br><br>PEDIATRIC HAIR SOLUTIONS CORPORATION, a North Carolina corporation,<br><br><br>   Defendant/Counterclaimant. | [PROPOSED] DEFENDANT PEDIATRIC HAIR SOLUTION'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS<br><br>JURY TRIAL DEMANDED<br><br>Civil No. 2:18-cv-00551-RJS-PMW<br><br>Honorable Robert J. Shelby<br>Magistrate Judge Paul M. Warner |

Defendant Pediatric Hair Solutions Corporation ("Defendant") answers, asserts affirmative defenses, and counterclaims against Plaintiff Larada Sciences, Inc. ("Plaintiff") as follows. Except where expressly admitted, Defendant denies each allegation in Plaintiff's Complaint and denies Plaintiff is entitled to any relief requested.

## PARTIES

1.      Paragraph 1 alleges facts concerning Plaintiff and, therefore, Defendant is without knowledge sufficient to admit or deny this allegation, and therefore denies the allegation.

2.      Defendant admits the allegations in paragraph 2.

3.      Defendant admits that it operates multiple head lice treatment centers in North Carolina and South Carolina, but only one head lice treatment center in Ohio.

## JURISDICTION AND VENUE

4.      Defendant admits the allegations in paragraph 4.

5.      Defendant admits the allegations in paragraph 5.

6.      Defendant admits the allegations in paragraph 6.

7.      Defendant admits the allegations in paragraph 7.

8.      Defendant admits the License Agreements entered between Plaintiff and Defendant provide the jurisdiction and venue for any proceeding related to the Agreements shall be in a court of competent jurisdiction in Salt Lake City, Utah. Defendant denies the rest of the allegations in paragraph 8.

9.      Defendant admits the License Agreements entered between Plaintiff and Defendant provide the jurisdiction and venue for any proceeding related to the Agreements shall be in a court of competent jurisdiction in Salt Lake City, Utah. Defendant denies the rest of the allegations in paragraph 9.

## GENERAL ALLEGATIONS

10.     Paragraph 10 alleges facts concerning Plaintiff and, therefore, Defendant is without knowledge sufficient to admit or deny this allegation, and therefore, denies the same.

11.     Paragraph 11 alleges facts concerning Plaintiff and, therefore, Defendant is without knowledge sufficient to admit or deny this allegation, and therefore, denies the same.

12.     Defendant admits the allegations in paragraph 12.

13.     Defendant admits that some, but not all, of the License Agreements contain the language quoted in paragraph 13. Defendant denies the remaining allegations in paragraph 13.

14.     Defendant admits it made payments to Plaintiff, but denies the remaining allegations in paragraph 14.

15.     Defendant admits that Sheila Fassler sent an email on February 1, 2017, to Claire Roberts, which contains, in part, the quoted language identified in paragraph 15, but denies the remaining allegations in paragraph 15.

16.     Defendant admits the allegations in paragraph 16.

17.     Defendant admits that on or about February 17, 2017, counsel for Defendant proposed an amendment to the License Agreements to Claire Roberts to reflect a lower per-use fee calculation structure under the License Agreements "to represent a compromise position" which would allow Plaintiff "to avoid the substantial financial liability of refunding [Defendant] its license fees" due to Plaintiff's anticipated breach of the License Agreements.

18.     Defendant admits that on or around February 22, 2017, Ms. Roberts informed PHS that Larada would respond to PHS's proposal if PHS were to bring its account(s) current and pay all of the amounts presented as due, but denies the remaining allegations in paragraph 18.

19.     Defendant admits that, due to ~~Larada's breach of~~PHS's belief that Larada breached the License Agreements, PHS offered depositing the January 2017 fees in escrow in its counsel's law firm's trust account while the parties

finalized an agreement on the new proposed rate structure to be retroactively applied to January 1, 2017, but denies the remaining allegations in paragraph 19.

20.     Defendant denies the allegations in paragraph 20.

21.     Defendant admits the allegations in paragraph 21.

22.     Defendant admits the allegations in paragraph 22.

23.     Defendant admits it has not paid the amounts Plaintiff alleges are due and owing, but denies the remaining allegations in paragraph 23.

24.     Defendant denies the allegations in paragraph 24.

25.     Defendant denies the allegations in paragraph 25.

26.     Defendant denies the allegations in paragraph 26.

27.     Defendant admits that it has not paid the amounts Plaintiff alleges are due and owing, but denies the remaining allegations in paragraph 27.

28.     Defendant denies the allegations in paragraph 28.

29.     Defendant denies the allegations in paragraph 29.

## FIRST CAUSE OF ACTION
### *(Breach of Contract)*

30.     Defendant incorporates, as if fully set forth herein, its answers to the allegations contained in the foregoing paragraphs.

31.     Defendant admits it entered into License Agreements with Plaintiff on or around August 31, 2015. The remaining allegations in paragraph 31 state a legal

conclusion to which no answer is required. To the extent a response is required, Defendant denies the same.

32.     Defendant denies the allegations in paragraph 32.

33.     Defendant denies the allegations in paragraph 33.

34.     Defendant denies the allegations in paragraph 34.

35.     Defendant denies the allegations in paragraph 35.

36.     Defendant denies the allegations in paragraph 36.

## SECOND CAUSE OF ACTION
### *(Breach of Implied Covenant of Good Faith and Fair Dealing)*

37.     Defendant incorporates, as if fully set forth herein, its answers to the allegations contained in the foregoing paragraphs.

38.     Defendant admits it entered into License Agreements with Plaintiff on or around August 31, 2015. The remaining allegations in paragraph 38 state a legal conclusion to which no answer is required. To the extent a response is required, Defendant denies the same.

39.     Defendant denies the allegations in paragraph 39.

40.     Defendant denies the allegations in paragraph 40.

41.     Defendant denies the allegations in paragraph 41.

42.     Defendant denies the allegations in paragraph 42.

43.     Defendant denies the allegations in paragraph 43.

## THIRD CAUSE OF ACTION
### *(Trespass to Chattels)*

44.    Defendant incorporates, as if fully set forth herein, its answers to the allegations contained in the foregoing paragraphs.

45.    Defendant admits that under the License Agreements, Plaintiff licensed the right to use one or more of its devices. The remaining allegation in paragraph 45 states a legal conclusion to which no answer is required. To the extent a response is required, Defendant denies the same.

46.    Defendant admits that Plaintiff provided it with notice that the License Agreements were terminated and demanded devices and unused consumables be returned to Plaintiff, but denies the remaining allegations in paragraph 46.

47.    Defendant denies the allegations in paragraph 47.

48.    Defendant denies the allegations in paragraph 48.

49.    Defendant denies the allegations in paragraph 49.

50.    Defendant denies the allegations in paragraph 50.

## FOURTH CAUSE OF ACTION
### *(Conversion)*

51.    Defendant incorporates, as if fully set forth herein, its answers to the allegations contained in the foregoing paragraphs.

52.     Defendant admits that under the License Agreements, Plaintiff licensed the right to use one or more of its devices. The remaining allegation in paragraph 52 states a legal conclusion to which no answer is required. To the extent a response is required, Defendant denies the same.

53.     Defendant denies the allegations in paragraph 53.

54.     Defendant denies the allegations in paragraph 54.

55.     Defendant denies the allegations in paragraph 55.

56.     Defendant denies the allegations in paragraph 56.

**FIFTH CAUSE OF ACTION**
***(Unjust Enrichment)***

57.     Defendant incorporates, as if fully set forth herein, its answers to the allegations contained in the foregoing paragraphs.

58.     Defendant admits it entered into License Agreements with Plaintiff on or around August 31, 2015. Defendant also admits that under the License Agreements, Plaintiff licensed the right to use one or more of its devices, but denies the remaining allegations in paragraph 58.

59.     Defendant denies the allegations in paragraph 59.

60.     Defendant denies the allegations in paragraph 60.

61.     Defendant denies the allegations in paragraph 61.

62.     Defendant denies the allegations in paragraph 62.

## SIXTH CAUSE OF ACTION
### *(Trademark Infringement and Unfair Competition)*

63.     Defendant incorporates, as if fully set forth herein, its answers to the allegations contained in the foregoing paragraphs.

64.     Defendant admits that, on its face, Plaintiff is the apparent owner of the registration referred to in paragraph 64. Defendant is without knowledge sufficient to admit or deny the remaining allegations in paragraph 64, and therefore denies the allegations.

65.     Defendant admits that an apparent copy of the federal registration for the AIRALLE mark is attached to Plaintiff's Complaint, but Defendant is without knowledge sufficient to admit or deny the remaining allegations as to the authenticity of the attachment described in paragraph 65, and therefore denies the allegations.

66.     The allegations in paragraph 66 state legal conclusions to which no answer is required. To the extent a response is required, Defendant denies the same.

67.     Defendant is without knowledge sufficient to admit or deny the allegations in paragraph 67, and therefore denies the allegations.

68.     Defendant is without knowledge sufficient to admit or deny the allegations in paragraph 68, and therefore denies the allegations.

69.     Defendant is without knowledge sufficient to admit or deny the allegations in paragraph 69, and therefore denies the allegations.

70.     Defendant denies the allegations in paragraph 70.

71.     Defendant admits that it undertakes commercial marketing efforts on its social media sites related to its services. The remaining allegations in paragraph 71 state a legal conclusion to which no answer is required. To the extent a response is required, Defendant denies the same.

72.     Defendant admits the allegations in paragraph 72.

73.     Defendant denies the allegations in paragraph 73.

74.     Defendant denies the allegations in paragraph 74.

75.     Defendant denies the allegations in paragraph 75.

76.     Defendant denies the allegations in paragraph 76.

77.     Defendant denies the allegations in paragraph 77.

78.     Defendant denies the allegations in paragraph 78.

## **PRAYER FOR RELIEF**

The remainder of Plaintiff's Complaint consists of Plaintiff's request for relief, to which no response is required. To the extent a response is required, Defendant denies Plaintiff is entitled to the relief sought in the Complaint or to any relief whatsoever.

## <u>AFFIRMATIVE DEFENSES</u>

As affirmative defenses to Plaintiff's Complaint, Defendant states:

~~1.      Plaintiff's claims are barred by Plaintiff's own material breaches of contract, which excused Defendant from further performance under the License Agreements.~~

~~2.~~1.    Plaintiff's claims are barred or must be reduced by Plaintiff's failure to avoid or mitigate damages.

~~3.~~2.    Plaintiff's claims are barred or must be reduced due to payment and/or set off amounts owed, if any.

~~4.~~3.    Plaintiff's claims are barred by unclean hands.

~~5.~~4.    Plaintiff's claims are barred, in whole or in part, because Plaintiff fails to satisfy the legal and factual requirements sufficient to maintain the cited causes of action.

~~6.~~5.    Plaintiff's claims are barred in whole or in part by the doctrine of justification, waiver, and/or equitable estoppel.

~~7.~~6.    Plaintiff, by its acts, conduct, and/or omissions, has ratified the acts, conduct and omissions, if any, of Defendant; therefore, Plaintiff is barred from seeking any relief.

8.7.    Plaintiff's trademark infringement claim is barred by de minimus copying, if any.

Defendant reserves the right to rely on any additional defenses that become available or apparent during the proceedings in this action and specifically reserves the right to amend its Answer and Affirmative Defenses.

## COUNTERCLAIMS

Defendant/Counterclaimant Pediatric Hair Solutions Corporation, by and through its undersigned counsel, incorporates its answers and affirmative defenses as set forth above, and alleges against Plaintiff/Counterdefendant Larada Sciences, Inc. as follows:

## NATURE OF THE COUNTERCLAIM

1.      Defendant/Counterclaimant Pediatric Hair Solutions Corporation ("PHS") and Plaintiff/Counterdefendant Larada Sciences, Inc. ("Larada") (collectively, the "Parties") entered into a series of License Agreements on or around August 31, 2015, for the exclusive use of a lice treatment device.

2.      PHS brings counterclaims against Larada for breach of contract, breach of the covenant of good faith and fair dealing, and copyright infringement, and seeks a permanent injunction and declaratory judgment.

3.      Specifically, Larada breached the License Agreements between the Parties, and unlawfully infringed and continues to infringe PHS's federally-registered copyright.

4.      ~~Despite PHS's repeated attempts to convince Larada that its actions were wrongful and in violation of state and federal laws, Larada instead terminated the License Agreements, refused to stop using PHS's copyrighted work, and initiated the instant action.~~

~~5.~~4.     PHS asserts these counterclaims to recover damages to which it is entitled under United States Copyright Law and Utah state law, to unwind the License Agreements, and to offset amounts, if any, owed by ~~Larada~~PHS.

**PARTIES**

~~6.~~5.     PHS is a corporation organized and existing under the laws of the State of North Carolina, with its principal place of business located at 6923 Shannon Willow Road, Ste. 100, Charlotte, NC 28226-1331.

~~7.~~6.     Larada is a corporation organized under the laws of the State of Delaware, with its principal place of business located at 154 East Myrtle Ave., Ave. 304, Murray, Utah 84107.

~~8.~~7.     PHS operates head lice treatment centers in North Carolina, South Carolina, and Ohio.

## JURISDICTION AND VENUE

9.8.    This Court has subject matter jurisdiction over this dispute under 28 U.S.C. §§ 1331 and 1338(a) because the copyright counterclaim arises under the copyright laws of the United States, 17 U.S.C. §§ 101, et seq. and under the Declaratory Judgment Act, 28 U.S.C. § 2201.

10.9.   This Court has supplemental jurisdiction over PHS's state-law counterclaims under 28 U.S.C. § 1367.

11.10. This Court has personal jurisdiction over Larada because Larada (a) maintains its principal place of business is in this District; (b) transacts business in this District; (c) has substantial contacts in this District; and/or (d) has availed itself of the jurisdiction of this Court.

12.11. Venue is proper in this District because the License Agreements provide that the venue for any proceeding related to the Agreements shall be in a court of competent jurisdiction in Salt Lake City, Utah.

### FACTUAL BACKGROUND

13.12. PHS is a family-owned and operated business founded in December 2010 by Sheila Fassler, RN and operated by John Fassler, MD, its Medical Director.

14.13. Prior to PHS's inception, Sheila extensively helped families with childhood ailments, including the treatment of head lice infestation, while working as a school nurse for nearly a decade.

15.14. Through her work, Sheila recognized the need for a professional resource for parents within her community. That realization inspired Sheila to form PHS.

16.15. PHS began with one clinic and now includes eight clinics scattered throughout North Carolina, South Carolina, and Ohio.

17.16. PHS's success is attributed to Sheila Fassler's 30-year nursing and school health background together with Dr. John Fassler's extensive medical background. PHS provides families with safe, effective, and professional care to combat head lice infestation through its full-service professional lice treatment centers.

18.17. In or around November 2010, PHS entered into a lease agreement with Larada for use of a lice treatment device used to kill head lice in a single, one-hour treatment through the application of direct heat.

18.     At the outset of the Parties' relationship, Larada recognized PHS had quickly become one of its most successful licensees.

19.    PHS informed Larada its success was attributed to the fact that PHS is a medical clinic offering personalized professional care.

20.    On information and belief, Larada's other lessees and, later, licensees, did not offer medical services.

21.    On information and belief, following PHS's proven success as a full-service medical clinic, Larada formed Lice Clinics of America Network in 2014 to provide personalized lice treatment services.

22.    On or around August 31, 2015, Larada entered into a Consulting Agreement with Dr. John Fassler to become Lice Clinics of America Network's Medical Director.

23.    By virtue of PHS's proven success and the long-standing working relationship between the Parties, in or around 2016, Sheila Fassler was appointed to Lice Clinics of America Network's Executive Board.

19.24.On or around August 31, 2015, the Parties converted thatthe lease agreement for Larada's lice treatment device to multiple license agreements.

20.25.The license agreements provided PHS with exclusive rights to use Larada's lice treatment device in defined territories ("License Agreements").

21.26.Section 1 of the License Agreements providedprovides, in part, that the "license granted by [Larada] to [PHS] hereunder shall be exclusive, meaning

that [Larada] shall not grant a license or permission to any party of than [PHS] to use one or more Devices and related products in the Territory during the Term . . . ."

~~22.~~27. The License Agreements required Larada to use commercially reasonable efforts to attempt to support PHS's business in the defined territories through training, certification, and website development.

~~23.~~28. Similarly, Larada was required to provide ~~nationwide~~ support as PHS expanded its business from one clinic to nine, and to use its best efforts to send treatment leads to PHS to support PHS's business efforts.

~~24.~~29. The "device" exclusively licensed to PHS under the License Agreements is referred to as the "AirAllé" device and defined as "the patented LSI Heated Air Device also known as the 'AirAllé® device.'"

~~25.~~30. In exchange for PHS's exclusive right to use the AirAllé device in the defined territories and to receive support from Larada to promote PHS's business, PHS was required to pay a one-time license payment; a per-treatment use fee; a refundable deposit; shipping and handling costs per device; and certain territory license fees.

26.31. Larada explicitly disclosed in the License Agreements its knowledge of "potential competitors of [Larada's] licensees" using devices known as the "The Lice Device" and/or "The Dehydration Station" in the License Agreements.".

32.    Specifically, Paragraph 5 of Exhibit C to the License Agreements provided provides:

> The University of Utah developed and patented a method of using heated air for killing head lice. LSI has been granted an exclusive worldwide license by the University to practice and sublicense certain of the University's patents that "[i]relate to the use of heated air for killing head lice. Recently LSI became aware of a device known as "The Lice Device" and/or "The Dehydration Station". LSI has concluded that use of these devices infringes the above referenced patents. Accordingly, LSI, along with the University of Utah, filed a patent-infringement lawsuit in the U.S. District Court of Utah on Friday, June 5th, 2015 against several parties involved in the manufacture, distribution, and use of these devices. These devices are believed to be similar to the AirAlle® heated air device, and operators of the Lice Device are considered to be potential competitors of LSI's licensees. If, on the date that is two (2) years from the Effective Date, The Lice Device and/or The Dehydration Station and/or any other device that is identical to either of them, or any other device that uses heated air to eradicate head lice, regardless of the device's device's name, is still being legally commercially operated for lice removal purposes in the United States, [PHS]Licensee will have the option, upon notice to [Larada],LSI, to unwind [the]this Agreement and receive a refund of all collected Territory License Fees and machine deposits paid to that date.".

28.33. The "Effective Date" is defined in the Lease License Agreements as August 31, 2015.

34.     Picky Pam at the Beach, LLC ("Picky Pam") is one of the "several parties" referred to in Exhibit C that Larada ("LSI" in the License Agreements) and the University of Utah sued for patent infringement due to manufacturing, distribution, and use of "The Dehydration Station."

29.35. Section 18(f) of the License Agreements provided provides that "[a]ny provision, term, covenant or condition of [the] Agreement that by its terms must extend beyond termination or expiration of [the] Agreement in order to remain enforceable shall continue in full force and effect subsequent to and notwithstanding the termination or expiration of [the] Agreement."

### *Pediatric Hair Solutions' success*

30.1.   At the outset of the Parties' relationship, Larada recognized PHS had quickly become one of its most successful licensees.

31.1.   PHS informed Larada its success was attributed to the fact that PHS is a medical clinic offering personalized professional care.

32.1.   On information and belief, Larada's other lessees and, later, licensees, did not offer medical services.

33.1.   On information and belief, following PHS's proven success as a full-service medical clinic, Larada formed Lice Clinics of America Network in 2014 to provide personalized lice treatment services.

34.1.  When the Parties entered into the License Agreements, Larada entered into a Consulting Agreement with Dr. Fassler to become Lice Clinics of America Network's Medical Director.

35.1.  By virtue of PHS's proven success and the long-standing working relationship between the Parties, in or around 2016, Sheila Fassler was appointed to Lice Clinics of America Network's Executive Board.

### *Larada breaches the License Agreements through its Home Treatment Kit marketing campaign*

36.     Unbeknownst to PHS and the Fasslers, and despite the purpose of and exclusivity provisions in the License Agreements, Larada began developing a handheld "Home Treatment Kit" to market nationwide ("HTK").("HTK") that used heated air to eradicate lice outside of a clinical setting.

37.     On or around August 26, 2016, Larada's Chief Executive Officer Claire Roberts and Kelly Broadback presented the HTK device to the Lice Centers of America Network's Executive Board.

38.     Understandably, the Executive Board— comprised primarily of top revenue producing licensees throughout the country, including Sheila Fassler on PHS's behalf— were incensed because businessesLarada's clinic licensees like PHS would suffer.likely be harmed by Larada's introduction of the HTK because

Larada's HTK device would put Larada in direct competition with its clinic-based licensees.

39.     Larada's spokesman and AirAllé alleged inventor Dr. Dale Clayton affirmed on the Good Morning America Utah television show aired on ABC in or around January 2017, that the HTK is wonderful because usually someone with a lice infestation would normally have to go to a clinic to get heated air treatment, but with the HTK heated air lice treatment can be performed at home.

39.40. On information and belief, Larada began marketing and advertising its the HTK in 2016.

40.41. By December 2016, Larada reconfirmed its intent to sell the HTK despite Larada's existing exclusive License Agreements with and contractual obligations to PHS.

41.42. On January 31, 2017, Larada transmitted a letter to PHS stating Larada intended to roll out its HTK over 2017.

42.     On information and belief, Larada began selling its HTK on January 3, 2017.

43.     The exclusivity provision in Section 1 of the License Agreements, provides, in part, that the exclusive license granted by Larada to PGS covers the AirAllé device and "related products."

44.    Similarly, Exhibit C to the License Agreements provides, in part, that Larada must ensure that "any other device that uses heated air to eradicate head lice, regardless of the device's name" must not be "legally commercially operated for lice removal purposes in the United States."

45.    The HTK uses heated air to eradicate head lice and, therefore, is a "related product" under the License Agreements that, like AirAllé, uses heated air to eradicate head lice.

46.    Under the License Agreements' explicit provisions, Larada was prohibited from marketing, using, commercially operating, or offering for sale its HTK for lice removal purposes in the United States.

47.    Notwithstanding, Larada's spokesman and AirAllé alleged inventor Dr. Dale Clayton affirmed on the Good Morning America Utah television show aired on ABC in or around January 2017, that the HTK is wonderful because usually you would have to go to a clinic to get this kind of treatment but now you can do it at home.

48.    Larada's blatant HTK marketing and advertising campaign was designed to effectively obliterate the need for PHS's medical clinic services by promoting a nearly identical heated air device available to the public for in-home use.

49.    Larada breached the License Agreements by failing to use commercially reasonable efforts to attempt to support PHS's business in its defined territories.

50.    Larada also breached the License Agreements by violating the exclusivity provisions in the License Agreements.

***Larada continues to disregard its contractual obligations
under the License Agreements***

51.    At or around the time PHS discovered Larada's intent to compete with PHS's lice treatment services by openly marketing the HTK, PHS learned Larada also failed to prevent The Lice Device and/or The Hydration Station from commercially operating for license removal purposes in the United States.

52.    On information and belief, Larada entered into a settlement with the owner of The Lice Device and/or The Hydration Station, Picky Pam at the Beach, LLC, in or around May 2016.

53.    On information and belief, that settlement, however, did not enjoin Picky Pam at the Beach, LLC's use of The Lice Device and/or The Hydration Station heated air devices to eradicate head lice.

54.    Larada breached the License Agreements by failing to prevent Picky Pam at the Beach, LLC from operating its device(s) for lice removal purposes in the United States.

55.1.   PHS is entitled to unwind the License Agreements.

56.     PHS is entitled to receive a refund of all collected territory fees and machine deposits paid to Larada to date.

57.     Larada has been unjustly enriched by retaining the territory fees and machine deposits PHS paid.

### *PHS seeks to modify the License Agreements*

58.43. Left without any other recourse to thwart Larada's cannibalization of PHS's business through its HTK marketing efforts— short of litigation —, PHS sought to renegotiate the terms of the License Agreements to compensate PHS for Larada's material breaches the potential harm the HTK may cause PHS.

59.44. Up to January 2017, PHS had never missed a single payment to Larada over the course of the Parties' seven-year business relationship.

60.45. On January 17, 2017, Dr. John and Sheila Fassler sent an email to Claire Roberts to request a meeting in Utah to "discuss recent developments at Larada and [the Parties'] relationship moving forward."

61.46. Dr. and Sheila Fassler traveled to Utah on or around February 10, 2017, to meet with Claire Roberts.

62.47. During the Parties' meeting on February 10, 2017, PHS put Larada on notice of its belief that Larada was in breach of the License Agreements for its marketing and promotion of the HTK devices.

63.48. Notwithstanding, Larada refused to renegotiate the terms of the License Agreements and, instead, on February 12, 2017, demanded payments from PHS under the License Agreements.

64.   On February 17, 2017, PHS's counsel reiterated PHS's serious concerns about Larada's HTK rollout and reiterated PHS's right to terminate its agreements with Larada under the License Agreements.

65.49. In a February 17, 2017 letter to Clarie Roberts, PHS's counsel proposed settling the issues between the Parties by restructuring the per-use fees as defined in the License Agreements, which were to be retroactively applied to January 1, 2017.

50.   In the February 17, 2017 letter, PHS's counsel also directed Ms. Roberts's attention to a "Termination and Refund Provision" in the License Agreements and quoted paragraph 5 of Exhibit C.

51.   In the February 17, 2017 letter, PHS's counsel advised Ms. Roberts that "it is likely that PHS will have the right to terminate its agreements with LSI and demand a refund in full of its license fees at some point this year . . . [and that]

PHS is willing to negotiate the removal of [paragraph 5 of Exhibit C] from its license agreements in exchange for a significant reduction in the calculation of its territory fees."

66.52. On February 22, 2017, Claire Roberts advised PHS's counsel in an email that Larada refused to renegotiate and, again, demanded payment.

67.53. That same day, PHS's counsel informed Claire Roberts that PHS was current on all amounts owed to Larada as of December 31, 2016, but the January 2017 payment would not be made because the proposed fee restructuring, if effectuated, would be retroactively applied to January 1, 2017.

68.54. In a good faith effort, PHS's counsel offered to deposit the January 2017 fees in escrow at PHS's counsel's law firm's trust account while the Parties continued to renegotiate the terms of the License Agreements.

69.55. Larada refused to accept PHS's offer to place the January 2017 fees in an escrow account.

70.56. Instead, on On March 10, 2017, Larada provided a "termination notice" to PHS, claiming PHS owed Larada $33,960, and demanding the return of 25 devices.

71.57. On March 24, 2017, PHS's counsel confirmed to Larada's counsel that PHS would ship Larada's devices and any unused consumables to Larada.

72.58. As of May 11, 2017, PHS returned all AirAllé devices and unused consumables to Larada.

59.     On May 11, 2017, counsel for PHS sent a letter to counsel for Larada stating that "PHS maintains its position[] that . . . Larada will be obligated to refund PHS's previously-paid license fees assuming conditions for the refund are met later this year."

60.     PHS also took all steps to immediately dissociate itself from Larada, including, but not limited to, removing all references to Larada, Larada's trademarks, devices, and any other intellectual property of Larada, if any, from PHS's websites and marketing materials.

### *Larada fails to refund all collected Territory License Fees and machine deposits after Exhibit C, paragraph 5 condition is triggered*

61.     At or around the time PHS discovered Larada's intent to compete with PHS's lice treatment services by openly marketing the HTK, PHS learned Larada also failed to prevent The Lice Device and/or The Dehydration Station from commercially operating for license removal purposes in the United States.

62.     On information and belief, in May 2016, Larada entered into a settlement with Picky Pam the owner of The Lice Device and/or The Dehydration Station.

63.     On information and belief, that settlement, however, did not enjoin Picky Pam's use of The Lice Device and/or The Dehydration Station heated air devices to eradicate head lice.

64.     On information and belief, the settlement instead allowed Picky Pam to legally commercially operate The Dehydration Station for lice removal purposes in the United States.

65.     On information and belief, Picky Pam has commercially operated The Dehydration Station for lice removal purposes in the United States from May 2016 to today.

66.     On August 31, 2017 (*i.e.*, "two (2) years from the Effective Date" of the License Agreements), the condition precedent in Exhibit C to the License Agreement triggered, which provides that if "The Lice Device and/or The Dehydration Station . . . is still being legally commercially operated for lice removal purposes in the United States, Licensee will have the option, upon notice to LSI, to unwind this Agreement and receive a refund of all collected Territory License Fees and machine deposits paid to that date."

67.     On information and belief, on August 31, 2017, Picky Pam legally commercially operated "The Dehydration Station" in the United States at the Picky Pam clinic located at 714 Adams Avenue Suite 103, Huntington Beach, CA 92648

for lice removal purposes. Specifically, an October 16, 2017 screen capture of Picky Pam's website, www.licefreekids.com, (obtained via archive.org), states "We are the ONLY lice treatment salon in Southern California with the Dehydration Station . . . a high volume, low heat device that kills nits (lice eggs), specifically newly laid microscopic nits."

68.     On October 4, 2017, counsel for PHS provided notice in writing in a letter sent by e-mail to counsel for Larada stating that "Larada is obligated to refund PHS's previously-paid license fees due to the conditions for the refund set forth in the license agreement having been met."

69.     Paragraph 18(e) of the License Agreements provides that notice was effectuated one (1) day after being sent by e-mail.

70.     Larada has collected approximately $45,000 in Territory License Fees and $4,000 in machine deposits from PHS.

71.     Despite written notice to Larada on October 4, 2017, of PHS's demand and Larada's obligation to refund PHS's previously paid fees, Larada has not refunded any Territory License Fees or machine deposits to PHS.

72.     Larada breached the License Agreements by failing to refund PHS all collected Territory License Fees and machine deposits and/or by failing to unwind the License Agreements due to Picky Pam legally and commercially operating The

Lice Device and/or The Dehydration Station for lice removal purposes in the United States as of August 31, 2017.

73.     PHS is entitled to unwind the License Agreements.

74.     PHS is entitled to receive a refund of all collected Territory License Fees and machine deposits paid to Larada to date.

75.     Larada has been unjustly enriched by retaining the Territory License Fees and machine deposits PHS paid.

73.1.   PHS also took all steps to immediately dissociate itself from Larada, including, but not limited to, removing all references to Larada, Larada's trademarks, devices, and any other intellectual property of Larada, if any, from PHS's websites and marketing materials.

### *Larada infringes PHS's federally-registered copyright*

74.76.In 2014, PHS spent a substantial amount of time and effort to create a head lice treatment comparison informational chart entitled "Get the Facts" for its patients. A true and correct copy of PHS's 2014 "Get the Facts" sheet is attached as **Exhibit A**.

75.77.PHS first published the "Get the Facts" sheet on June 1, 2014.

76.78. On October 23, 2015, the United States Copyright Office issued Registration No. TX 8-125-209 for the copyrighted work. A true and correct copy of Reg. No. TX 8-125-209 is attached hereto as **Exhibit B**.

77.79. In or around February 2016, Sheila Fassler attended a National Camping Convention in Chicago, Illinois.

78.80. Sheila Fassler visited Larada's Lice Centers of America Network booth and noticed what appeared to be PHS's "Get the Facts" sheet displayed on Larada's table.

79.81. Sheila Fassler immediately approached and informed Larada's then-Director of Marketing, Perri Simpson, that the "Get the Facts" chart is PHS's copyright-protected work that Larada unlawfully took from PHS's website.

80.82. Perri Simpson denied that chart belonged to, or derived from, PHS's copyright-protected work.

81.83. In early 2017, Sheila Fassler discovered Larada continued to use a substantially similar derivation of PHS's "Get the Facts Sheet" in its marking marketing and online materials.

82.84. Attached as **Exhibit C** is a true and correct copy of a website screenshot taken from http://lcaconnecticut.com/2016/01/11/how-lca-compares-to-our-competitors (lasted visited 09/21/201804/24/2019).

83.85.On March 24, 2017, PHS's counsel informed Larada's counsel that Larada was using PHS's treatment comparison chart in its marketing materials and online in violation of PHS's copyright registration.

84.86.Despite PHS's first notice in 2015 and second written notice on March 24, 2017, Larada shamelessly continues to post the treatment comparison chart in its online marketing materials.

85.87.Such blatant infringement has been and continues to be detrimental to PHS.

86.88.As a result of Larada's deliberate and intentional infringement and misrepresentation, Larada has unlawfully profited, and PHS has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law. *Compare* Exhibit A, *with* Exhibit C.

## FIRST COUNTERCLAIM
### Breach of Contract

87.89.PHS incorporates, as if fully set forth herein, its allegations contained in the foregoing paragraphs of its Counterclaim.

88.90.The Parties have aentered into the License Agreements, which constitute valid, binding contract whereincontracts obligating Larada is legally obligated and contractually bound to exclusively license use of the AirAllé device and related products to PHS in the defined territories.

89.   Except as excused by Larada's material breaches, PHS performed all its obligations under the License Agreements.

90.   Larada breached the License Agreements by using one or more devices or related products in the defined territories during the term of the License Agreements.

91.   In addition, Larada breached Section 18(f) of the License Agreements provides that "[a]ny provision, term, covenant or condition of [the] Agreement that by its terms must extend beyond termination or expiration of [the] Agreement in order to remain enforceable shall continue in full force and effect subsequent to and notwithstanding the termination or expiration of [the] Agreement."

91.   Exhibit C to the License Agreements by failing to use commercially reasonable efforts to attempt to support PHS's business in includes a condition precedent clause which provides that "[i]f, on the defined territories.

92.   Larada also failed to provide nationwide support to PHS, in direct violation of date that is two (2) years from the License Agreements.

93.92. Larada also breached the License Agreements by failing to preventEffective Date, The Lice Device and/or The Dehydration Station and/or any other device that is identical to either of them, or any other device that uses heated air to eradicate head lice, regardless of the device's name, from. . . is

still being legally commercially operated for lice removal purposes in the

United States., Licensee will have the option, upon notice to LSI, to unwind this

Agreement and receive a refund of all collected Territory License Fees and

machine deposits paid to that date."

93.     Exhibit C, by its terms, must extend beyond termination or expiration

of the Agreement to remain enforceable. Under Section 18(f), therefore, Exhibit C

continues in full force and effect subsequent to and notwithstanding the

termination of the Agreement.

94.     On information and belief, on and after August 31, 2017 (*i.e*., "two (2)

years from the Effective Date" of the License Agreements), Picky Pam legally

commercially operated "The Dehydration Station" in the United States at the Picky

Pam clinic located at 714 Adams Avenue Suite 103, Huntington Beach, CA 92648

for lice removal purposes.

95.     On information and belief, at least on October 16, 2017, Picky Pam's

website, www.licefreekids.com, advertised to the public in that it is "the ONLY

lice treatment salon in Southern California with the Dehydration Station . . . a high

volume, low heat device that kills nits (lice eggs), specifically newly laid

microscopic nits."

96.     Section 18(e) of the License Agreements state that "[a]ny notice required to be given pursuant to the terms and provisions hereof shall be in writing and shall be deemed to have been given and received  . . . (iii) one (1) day after being sent by email or fax or by letter deposited with a recognized overnight courier with confirmation of next day delivery, addressed to a Party at the address provided to the other Party from time to time."

97.     On October 4, 2017, counsel for PHS provided notice via email to Larada's counsel, at an address provided to PHS's counsel by Larada, that Larada must refund PHS's previously-paid license fees because the Exhibit C condition had been met.

98.     Despite written notice to Larada on October 4, 2017 of PHS's demand and Larada's duty to refund PHS's previously paid fees, Larada has not refunded Territory License Fees or machine deposits to PHS.

99.     Larada breached the License Agreements by failing to refund all previously-paid Territory License Fees and machine deposits and/or unwind the License Agreements after the Exhibit C condition triggered on August 31, 2017 and upon PHS's notice to counsel for Larada on October 4, 2017 of Larada's obligation to do so.

100.   PHS is entitled to unwind the License Agreements.

101.   PHS is entitled to receive a refund of all collected Territory License Fees and machine deposits collected by Larada to date.

94.102.      As a direct result of Larada's breachesbreach of the License Agreements, PHS has been damaged in an amount to be determined at trial, but in any event, no less than approximately $6549,000, plus interest at the statutory rate.

95.103.      PHS is entitled to an award of its reasonable attorneys' fees, expert witness fees, court costs and discovery and costs incurred.

### SECOND  COUNTERCLAIM
### Breach of Covenant of Good Faith and Fair Dealing

96.1.  PHS incorporates, as if fully set forth herein, its allegations contained in the foregoing paragraphs of its Counterclaim.

97.   The Parties entered contractually binding License Agreements on or around August 31, 2015, which contain an implied covenant of good faith and fair dealing under Utah law.

98.   Except as excused by Larada's material breaches, PHS performed all its obligations under the License Agreements.

99.   Larada breached the covenant of good faith and fair dealing as evidence by a letter dated May 1, 2017, wherein Larada admitted that it strategically waited to "issue" its HTK to consumers "on the two year mark contemplated in Paragraph 5 of Exhibit C of the license agreement."

100.   As a direct result of Larada's breach of the covenant of good faith and fair dealing, PHS suffered damages in an amount to be determined at trial.

101.   PHS is entitled to an award of its reasonable attorneys' fees, expert witness fees, court costs and discovery costs incurred.

## ~~THIRD~~ COUNTERCLAIM
### Copyright Infringement
### 17 U.S.C. § 501

~~102.~~104.     PHS incorporates, as if fully set forth herein, its allegations contained in the foregoing paragraphs of its Counterclaim.

~~103.~~105.     Factual compilations may contain protectable expression so long as there exists an original selection or arrangement of facts.

~~104.~~106.     Under 17 U.S.C. § 101, to be copyrightable, a compilation must be a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship.

~~105.~~107.     In 2014, PHS spent a substantial amount of time and effort to create a head lice treatment comparison chart for its patients entitled "Get the Facts."

~~106.~~108.     On October 23, 2015, the United States Copyright Office issued Registration No. TX 8-125-209 to PHS for the "Get the Facts" compilation.

107.109.     The PHS's "Get the Facts" sheet, Reg. No. TX 8-125-209, is a valid copyright subject to protection under 17 U.S.C. § 103.

108.110.     On information and belief, Larada has unlawfully copied constituent elements of PHS's work that are original to PHS.

109.111.     For example, Larada's infringing work mirrors the vertical five-column by seven-column grid depicted in PHS's work.

110.112.     Larada's infringing work also includes the same "Get the Facts" main title heading.

111.113.     The selection, order, sequence, and arrangement of the information presented in Larada's infringing work is also nearly identical to and presented in the same way as PHS's copyright-protected work.

112.114.     Larada's infringing work appears to use the same typeface and nearly identical horizontal and vertical column headings as PHS's work.

113.115.     Stripping away the non-protectable facts, the selection, coordination, and arrangement of facts as they appear in Larada's infringing work as a whole are substantially similar to PHS's work.

114.116.     Larada's infringing work lacks creative contributions, rendering its reproduction substantially similar to and an infringement of the elements of PHS's copyrighted work that are legally protected.

115.117.    On information and belief, Larada copied, made, and publicly displayed unauthorized reproductions of PHS's copyrighted work on its website and in its advertising materials without PHS's consent.

116.118.    Larada's conduct violates PHS's exclusive right to control reproduction, distribution, creation of derivative works, and public display of its copyrighted works, in violation of 17 U.S.C. §§ 106–122.

117.119.    Larada knew it infringed PHS's copyright, or was reckless in its disregard of that possibility by systematically copying, altering, and using PHS's copyrighted work over an extended period of time.

118.120.    Larada's misappropriation of PHS's copyrighted work is intentional and willful.

119.121.    Larada's wrongful conduct, as set forth herein, has harmed, and will continue to harm, PHS in an amount not yet ascertained.

120.122.    Larada admits that it used PHS's copyrighted work as described with specificity above.

121.123.    Notwithstanding PHS's demand to cease use of PHS's "Get the Facts" copyrighted work, Larada continues to use its infringing reproduction. This blatant disregard for the law evidences that Larada is likely to engage in future

wrongful conduct. *See Harolds Stores, Inc. v. Dillard Dept. Stores*, *Inc.*, 82 F.3d 1533, 1555 (10th Cir. 1996).

122.124.    Larada's intentional and willful infringement merits an award of reasonable attorney's fees under 17 U.S.C. § 505.

123.125.    Unless Larada is enjoined, PHS does not have an adequate remedy at law to guard against future infringement by Larada.

124.126.    As a direct and proximate result of Larada's deliberate and intentional infringement and misrepresentation, Larada has unlawfully profited, and PHS has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.

125.127.    PHS requests a permanent injunction be entered against Larada prohibiting continued infringement of PHS's copyrights pursuant to 17 U.S.C. § 502(a).

**THIRD COUNTERCLAIM**
**Declaratory Judgment**
**28 U.S.C. § 201**

128.   PHS incorporates, as if fully set forth herein, its allegations contained in the foregoing paragraphs of its Counterclaim.

129.   On Exhibit C to the License Agreements includes a condition precedent clause which provides that "[i]f, on the date that is two (2) years from the Effective Date, The Lice Device and/or The Dehydration Station . . . is still being legally commercially operated for lice removal purposes in the United States, Licensee will have the option, upon notice to LSI, to unwind this Agreement and receive a refund of all collected Territory License Fees and machine deposits paid to that date."

130.   On information and belief, on and after August 31, 2017 (*i.e.*, "two (2) years from the Effective Date" of the License Agreements), Picky Pam legally commercially operated "The Dehydration Station" in the United States at the Picky Pam clinic located at 714 Adams Avenue Suite 103, Huntington Beach, CA 92648 for lice removal purposes.

131.   On October 4, 2017, counsel for PHS provided notice via email to Larada's counsel, at an address provided to PHS's counsel by Larada, that the Exhibit C condition had been trigged and that PHS was due remedies that it is entitled to under that provision.

132.   Larada breached the License Agreements by failing to refund all previously-paid Territory License Fees and machine deposits and/or unwind the License Agreements after the Exhibit C condition triggered on August 31, 2017

and upon PHS's notice to counsel for Larada on October 4, 2017 of Larada's obligation to do so.

133.   As a result of Larada's breach for failing to refund to PHS Territory License Fees and machine deposits, PHS is entitled to unwind the License Agreements in accordance with Exhibit C.

134.   PHS therefore requests a declaratory judgment that the License Agreements are unwound.

## RESERVATION OF RIGHTS

Defendant/Counterclaimant PHS reserves the right to amend these counterclaims during discovery because, on information and belief, PHS believes Larada has engaged in other concealed acts contrary to PHS's interest under the License Agreements, and amendment of these counterclaims may be required to realize substantial justice.

## PRAYER FOR RELIEF

Wherefore, Defendant/Counterclaimant, having completely and fully provided their Answer to Plaintiff's Complaint, prays for a final judgment against Plaintiff, respectfully requesting the following relief:

1.     A judgment that the Complaint be dismissed with prejudice;

2.      A judgment ~~rescinding~~awarding PHS damages in amount to be proven at trial, but not less than $49,000.

~~2.~~3.    A declaratory judgment unwinding the License Agreements ~~and awarding PHS reimbursement of its territory fees and deposit costs~~.

~~3.~~4.    A judgment that Larada's display and use of PHS's copyrighted work constitutes an infringement of PHS's copyright;

~~4.~~5.    An order prohibiting and permanently enjoining Larada, and each of Larada's officers, agents, employees, and those acting in concert or conspiracy with Larada, from using PHS's copyrighted material;

~~5.~~6.    Judgment against Larada to the extent allowed by law, including, without limitation:

    a.    actual monetary damages sustained by PHS or statutory damages, per election by PHS prior to judgment;

    b.    statutory damages for any individual act of copyright infringement for which actual damages cannot be readily identified;

    c.    the profits unlawfully earned by Larada as a result of the unlawful acts, as set forth herein;

    d.    treble damages; and

e.    costs of suit, prejudgment interest, reasonable attorneys' fees, expert fees, consulting fees, and other fees and expenses incurred herein.

6.    Such other and further relief as the Court deems appropriate and just under the circumstances.

DATED this ~~20th~~___ day of ~~February,~~_____, 2019.

**MAGLEBY CATAXINOS & GREENWOOD**

_____
Christine T. Greenwood
Geoffrey K. Biehn

**LEE & HAYES ~~PLC~~P.C.**

_____
Andrew G. Strickland
Sarah E. Elsden

*Attorneys for Defendant Pediatric Hair Solutions Corporation*

43