Christine T. Greenwood (8187)
  greenwood@mcgiplaw.com
Geoffrey K. Biehn (13445)
  biehn@mcgiplaw.com
MAGLEBY CATAXINOS & GREENWOOD
170 South Main Street, Suite 1100
Salt Lake City, Utah 84101-3605
Telephone: 801.359.9000
Facsimile: 801.359.9011

Andrew G. Strickland (*pro hac vice*)
  Andrew.Strickland@leehayes.com
William B. Dyer III (*pro hac vice*)
  Bill.Dyer@leehayes.com
LEE & HAYES P.C.
75 14th Street, Ste. 2500
Atlanta, Georgia 30309
Telephone: 404.815.1900
Facsimile: 509.323.8979

Sarah E. Elsden (*pro hac vice*)
  Sarah.Elsden@leehayes.com
LEE & HAYES P.C.
601 W. Riverside, Suite 1400
Spokane, Washington 99201
Telephone: 509.324.9256

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| LARADA SCIENCES, INC., a Delaware corporation, <br><br>       Plaintiff/Counterdefendant, <br> v. <br><br> PEDIATRIC HAIR SOLUTIONS CORPORATION, a North Carolina corporation, JOHN E. FASSLER, M.D., SHEILA M. FASSLER, and FLOSONIX VENTURES, LLC, <br><br>       Defendant/Counterclaimant. | PEDIATRIC HAIR SOLUTION'S ANSWER TO AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND SECOND AMENDED COUNTERCLAIMS <br><br> JURY TRIAL DEMANDED <br> Civil No. 2:18-cv-00551-RJS-PMW <br><br> Honorable Robert J. Shelby <br><br> Magistrate Judge Paul M. Warner |

Defendant/Counterclaimant Pediatric Hair Solutions Corporation ("PHS")

answers and asserts affirmative defenses and asserts amended counterclaims

against Plaintiff Larada Sciences, Inc. ("Plaintiff"). Except where expressly

admitted, PHS denies each allegation in Plaintiff's Amended Complaint and denies

Plaintiff is entitled to any relief requested.

## INTRODUCTORY STATEMENT

Plaintiff's introductory statement purports to broadly summarize the

allegations and claims described in the body of its Amended Complaint. Therefore,

PHS will respond to each enumerated allegation and claim rather than the

collective summary. In the event an admission or denial is required, PHS denies

the allegations in the Introductory Statement.

## PARTIES

1.      Paragraph 1 alleges facts concerning Plaintiff and, therefore, PHS is

without knowledge sufficient to admit or deny this allegation, and therefore denies

the same.

2.      PHS admits that it is a corporation incorporated under the laws of

North Carolina with its principal address at 6923 Shannon Willow Rd., Ste 100,

Charlotte, NC 28226-1331. PHS further admits that it operates head lice treatment

centers in North Carolina and South Carolina, but denies the remaining allegations in paragraph 2.

3.      Paragraph 3 alleges facts concerning Defendant FloSonix Ventures, LLC and, therefore, PHS is without knowledge sufficient to admit or deny this allegation, and therefore denies the same.

4.      PHS admits the allegations in paragraph 4.

5.      PHS admits the allegations in paragraph 5.

## JURISDICTION AND VENUE

6.      PHS admits the allegations in paragraph 6.

7.      PHS admits the allegations in paragraph 7.

8.      PHS admits the allegations in paragraph 8.

9.      PHS admits the allegations in paragraph 9.

10.     PHS admits the License Agreements entered between Plaintiff and PHS provide the jurisdiction and venue for any proceeding related to the Agreements shall be in a court of competent jurisdiction in Salt Lake City, Utah. PHS denies the rest of the allegations in paragraph 10.

11.     Paragraph 11 alleges facts concerning Defendant Dr. John Fassler and, therefore, PHS is without knowledge sufficient to admit or deny this allegation, and therefore denies the same.

12.     Paragraph 12 alleges facts concerning Defendant FloSonix Ventures, LLC and, therefore, PHS is without knowledge sufficient to admit or deny this allegation, and therefore denies the same.

13.     Paragraph 13 alleges facts concerning Defendant Sheila Fassler and, therefore, PHS is without knowledge sufficient to admit or deny this allegation, and therefore denies the same.

14.     PHS admits the License Agreements entered between Plaintiff and PHS provide the jurisdiction and venue for any proceeding related to the Agreements shall be in a court of competent jurisdiction in Salt Lake City, Utah. PHS denies the rest of the allegations in paragraph 14.

## <u>GENERAL ALLEGATIONS</u>

15.     Paragraph 15 alleges facts concerning Plaintiff and, therefore, PHS is without knowledge sufficient to admit or deny this allegation, and therefore, denies the same.

16.     Paragraph 16 alleges facts concerning Plaintiff and, therefore, PHS is without knowledge sufficient to admit or deny this allegation, and therefore, denies the same.

17.     Paragraph 17 alleges facts concerning Plaintiff and, therefore, PHS is without knowledge sufficient to admit or deny this allegation, and therefore, denies the same.

18.     Paragraph 18 alleges facts concerning Plaintiff and, therefore, PHS is without knowledge sufficient to admit or deny this allegation, and therefore, denies the same.

19.     PHS admits that it entered into an agreement with Plaintiff in or around November 2010. PHS admits that Sheila Fassler signed the agreement, but denies the remaining allegations in this paragraph 19.

20.     PHS admits the allegations in paragraph 20.

21.     PHS admits that the Lousebuster Service Provider Lease Agreement term was two years. PHS also admits that it entered into a Medical Device Rental Agreement with Larada on or around January 1, 2013, but denies the remaining allegations in this paragraph 21.

22.     PHS admits the allegations in paragraph 22.

23.     PHS admits that some, but not all, of the License Agreements contain the language quoted in paragraph 23. PHS denies the remaining allegations in paragraph 23.

24. Paragraph 24 alleges facts concerning Defendant Dr. John Fassler and, therefore, PHS is without knowledge sufficient to admit or deny this allegation, and therefore denies the same.

25. Paragraph 25 alleges facts concerning Plaintiff and, therefore, PHS is without knowledge sufficient to admit or deny this allegation, and therefore, denies the same.

26. Paragraph 26 alleges facts concerning and agreement between Plaintiff and Defendant Dr. John Fassler and, therefore, PHS is without knowledge sufficient to admit or deny this allegation, and therefore, denies the same.

27. Plaintiff omitted Paragraph 27. Therefore, no response is required.

28. Paragraph 28 alleges facts concerning Defendant Dr. John Fassler and, therefore, PHS is without knowledge sufficient to admit or deny this allegation, and therefore denies the same.

29. PHS admits that in late 2014, Sheila Fassler was appointed to the LCA Network Affiliate Advisory Board, but denies that it was at her request. PHS is without knowledge sufficient to admit or deny the remainder of this allegation, and therefore denies the same.

30. PHS admits that Sheila Fassler attended an Affiliated Advisory Board meeting in January 2015, and received certain information from Plaintiff, but PHS

5

is without knowledge sufficient to admit or deny the remainder of this allegation, and therefore denies the same.

31.      Paragraph 31 alleges facts concerning Defendant John Fassler and, therefore, PHS is without knowledge sufficient to admit or deny this allegation, and therefore denies the same. However, PHS admits it entered into License Agreements with Plaintiff on or around August 31, 2015, but the remaining allegations in paragraph 31 purport to state a legal conclusion to which no answer is required. To the extent a response is required, PHS denies the same.

32.      Paragraph 32 alleges facts concerning Plaintiff and, therefore, PHS is without knowledge sufficient to admit or deny this allegation, and therefore, denies the same.

33.      PHS admits only that Larada sent PHS a non-functioning, non-testable device that Larada refers to as the "beta version of its second generation device", but PHS denies all remaining allegations in paragraph 33.

34.      PHS denies the allegations in paragraph 34.

35.      Paragraph 35 alleges facts concerning Plaintiff and, therefore, PHS is without knowledge sufficient to admit or deny this allegation, and therefore, denies the same. To the extent this paragraph 35 contains additional allegations, PHS denies the same.

36.     PHS admits that Sheila Fassler sent an email on February 1, 2017, to Claire Roberts, which contains, in part, the quoted language identified in paragraph 15, but denies the remaining allegations in paragraph 36.

37.     Paragraph 37 alleges facts and conduct concerning Defendant John Fassler and, therefore, PHS is without knowledge sufficient to admit or deny this allegation, and therefore denies the same.

38.     PHS admits that PHS and Plaintiff met in Park City, Utah to discuss renegotiating the per-treatment use fee, but denies the remaining allegations in paragraph 38.

39.     Paragraph 39 alleges facts and conduct concerning Defendant John Fassler and, therefore, PHS is without knowledge sufficient to admit or deny this allegation, and therefore denies the same.

40.     PHS denies the allegations in paragraph 40.

41.     PHS admits the allegations in paragraph 41.

42.     PHS admits that on or about February 17, 2017, counsel for PHS sent a letter to propose an amendment to the License Agreements to Claire Roberts to reflect a lower per-use fee calculation structure under the License Agreements "to represent a compromise position" which would allow Plaintiff "to avoid the substantial financial liability of refunding [PHS] its license fees" due to Plaintiff's

anticipated breach of the License Agreements, but denies the remaining allegations in paragraph 42.

43.     PHS admits that on or around February 22, 2017, Ms. Roberts informed PHS that Larada would respond to PHS's proposal if PHS were to bring its account(s) current and pay all of the amounts presented as due, but denies the remaining allegations in paragraph 43.

44.     PHS admits that, due to PHS's belief that Larada breached the License Agreements, PHS offered depositing the January 2017 fees in escrow in its counsel's law firm's trust account while the parties finalized an agreement on the new proposed rate structure to be retroactively applied to January 1, 2017, but denies the remaining allegations in paragraph 44.

45.     PHS denies the allegations in paragraph 45.

46.     PHS admits the allegations in paragraph 46.

47.     PHS admits the allegations in paragraph 47.

48.     PHS admits it has not paid the amounts Plaintiff alleges are due and owing, but denies the remaining allegations in paragraph 48.

49.     PHS denies the allegations in paragraph 49.

50.     PHS admits that it has not paid the amounts Plaintiff alleges are due and owing, but denies the remaining allegations in paragraph 50.

51.     PHS admits that it began returning the Larada devices shortly after the March termination letter. The remaining allegations in paragraph 51 state a legal conclusion to which no answer is required. To the extent a response is required, PHS denies the same.

52.     PHS denies the allegations in paragraph 52.

53.     Paragraph 53 alleges facts concerning Plaintiff and, therefore, PHS is without knowledge sufficient to admit or deny this allegation, and therefore, denies the same.

54.     PHS denies the allegations in paragraph 54.

55.     PHS admits the allegations in paragraph 55.

56.     PHS admits that its website includes the phrase "heated air through the hair in a timed and specific pattern" but denies the remaining allegations in paragraph 56.

57.     PHS denies the allegations in paragraph 57.

58.     PHS admits that FloSonix Ventures, LLC, a Wyoming limited liability company, was formed on May 4, 2017, and is owned by Sheila Fassler, its sole member. Paragraph 58 alleges additional facts concerning Defendant FloSonix Ventures, LLC, but PHS is without knowledge sufficient to admit or deny the remainder of this allegation, and therefore denies the same.

59.     PHS denies the allegations in paragraph 59.

60.     PHS admits it entered into License Agreements with Plaintiff and that a third party viewed the AirAlle, but PHS denies all remaining allegations in paragraph 60 including those that state a legal conclusion to which no answer is required. To the extent a response is required, PHS denies the same.

61.     PHS denies the allegations in paragraph 61.

62.     PHS admits that it has tested certain FloSonix prototypes at its clinics, but denies the remaining allegations in paragraph 62.

63.     PHS denies the allegations in paragraph 63.

64.     PHS denies the allegations in paragraph 64.

65.     PHS admits that the FloSonix prototype it is currently testing is not FDA approved, but denies the remaining allegations in paragraph 65.

66.     PHS denies the allegations in paragraph 66.

67.     PHS denies the allegations in paragraph 67.

68.     PHS denies the allegations in paragraph 68.

69.     PHS denies the allegations in paragraph 69.

70.     PHS denies the allegations in paragraph 70.

71.     PHS denies the allegations in paragraph 71.

## FIRST CAUSE OF ACTION
### (Breach of Contract against PHS)

72.     PHS incorporates, as if fully set forth herein, its answers to the allegations contained in the foregoing paragraphs.

73.     PHS admits it entered into License Agreements with Plaintiff on or around August 31, 2015. The remaining allegations in paragraph 73 state a legal conclusion to which no answer is required. To the extent a response is required, PHS denies the same.

74.     PHS denies the allegations in paragraph 74.

75.     PHS denies the allegations in paragraph 75.

76.     PHS denies the allegations in paragraph 76.

77.     PHS denies the allegations in paragraph 77.

78.     PHS denies the allegations in paragraph 78.

79.     PHS denies the allegations in paragraph 79.

80.     PHS admits that it entered into an agreement with Plaintiff in or around November 2010. The remaining allegation in paragraph 80 states a legal conclusion to which no answer is required. To the extent a response is required, PHS denies the same.

81.     PHS admits that it entered into an agreement with Plaintiff in or around November 2010, but denies the remaining allegations in paragraph 81.

82.     PHS denies the allegations in paragraph 82.

## SECOND CAUSE OF ACTION
### (*Breach of Implied Covenant of Good Faith and Fair Dealing*)

83.     PHS incorporates, as if fully set forth herein, its answers to the allegations contained in the foregoing paragraphs.

84.     PHS admits it entered into License Agreements with Plaintiff on or around August 31, 2015. The remaining allegations in paragraph 84 state a legal conclusion to which no answer is required. To the extent a response is required, PHS denies the same.

85.     PHS denies the allegations in paragraph 85.

86.     PHS denies the allegations in paragraph 86.

87.     PHS denies the allegations in paragraph 87.

88.     PHS denies the allegations in paragraph 88.

89.     PHS denies the allegations in paragraph 89.

## THIRD CAUSE OF ACTION
### (Breach of Lease Agreement against Sheila Fassler)

90.     PHS incorporates, as if fully set forth herein, its answers to the allegations contained in the foregoing paragraphs.

91.     Paragraph 91 concerns a claim against Sheila Fassler and, therefore, does not purport to require a response by answering Defendant PHS. However, to the extent a response is required, PHS denies the same.

92.     Paragraph 92 concerns a claim against Sheila Fassler and, therefore, does not purport to require a response by answering Defendant PHS. However, to the extent a response is required, PHS denies the same.

93.     Paragraph 93 concerns a claim against Sheila Fassler and, therefore, does not purport to require a response by answering Defendant PHS. However, to the extent a response is required, PHS denies the same.

94.     Paragraph 94 concerns a claim against Sheila Fassler and, therefore, does not purport to require a response by answering Defendant PHS. However, to the extent a response is required, PHS denies the same.

95.     Paragraph 95 concerns a claim against Sheila Fassler and, therefore, does not purport to require a response by answering Defendant PHS. However, to the extent a response is required, PHS denies the same.

96.     Paragraph 96 concerns a claim against Sheila Fassler and, therefore, does not purport to require a response by answering Defendant PHS. However, to the extent a response is required, PHS denies the same.

## THIRD CAUSE OF ACTION
### (Breach of Consulting Agreement against Dr. John Fassler)

97.     PHS incorporates, as if fully set forth herein, its answers to the allegations contained in the foregoing paragraphs.

98.     Paragraph 98 concerns a claim against Dr. John Fassler and, therefore, does not purport to require a response by answering Defendant PHS. However, to the extent a response is required, PHS denies the same.

99.     Paragraph 99 concerns a claim against Dr. John Fassler and, therefore, does not purport to require a response by answering Defendant PHS. However, to the extent a response is required, PHS denies the same.

100.    Paragraph 100 concerns a claim against Dr. John Fassler and, therefore, does not purport to require a response by answering Defendant PHS. However, to the extent a response is required, PHS denies the same.

101.    Paragraph 101 concerns a claim against Dr. John Fassler and, therefore, does not purport to require a response by answering Defendant PHS. However, to the extent a response is required, PHS denies the same.

102.    Paragraph 102 concerns a claim against Dr. John Fassler and, therefore, does not purport to require a response by answering Defendant PHS. However, to the extent a response is required, PHS denies the same.

## FIFTH CAUSE OF ACTION
### *(Trespass to Chattels)*

103.   PHS incorporates, as if fully set forth herein, its answers to the allegations contained in the foregoing paragraphs.

104.   PHS admits that under the License Agreements, Plaintiff licensed the right to use one or more of its devices. The remaining allegation in paragraph 104 states a legal conclusion to which no answer is required. To the extent a response is required, PHS denies the same.

105.   PHS admits that Plaintiff provided it with notice that the License Agreements were terminated and demanded devices and unused consumables be returned to Plaintiff, but denies the remaining allegations in paragraph 105.

106.   PHS denies the allegations in paragraph 106.

107.   PHS denies the allegations in paragraph 107.

108.   PHS denies the allegations in paragraph 108.

109.   PHS denies the allegations in paragraph 109.

## SIXTH CAUSE OF ACTION
### *(Conversion against all Defendants)*

110.   PHS incorporates, as if fully set forth herein, its answers to the allegations contained in the foregoing paragraphs.

111.   PHS admits that under the License Agreements, Plaintiff licensed the right to use one or more of its devices. The remaining allegation in paragraph 111 states a legal conclusion to which no answer is required. To the extent a response is required, PHS denies the same.

112.   PHS denies the allegations in paragraph 112.

113.   PHS denies the allegations in paragraph 113.

114.   PHS denies the allegations in paragraph 114.

115.   PHS denies the allegations in paragraph 115.

**SEVENTH CAUSE OF ACTION**
*(Unjust Enrichment against all Defendants)*

116.   PHS incorporates, as if fully set forth herein, its answers to the allegations contained in the foregoing paragraphs.

117.   PHS admits it entered into certain agreements with Plaintiff and that under those agreements, PHS had the right to use one or more of Larada's devices, but denies the remaining allegations in paragraph 117.

118.   PHS denies the allegations in paragraph 118.

119.   PHS denies the allegations in paragraph 119.

120.   PHS denies the allegations in paragraph 120.

121.   PHS denies the allegations in paragraph 121.

## EIGHTH CAUSE OF ACTION
### *(Trademark Infringement and Unfair Competition*
### *Under the Lanham Act, 15 U.S.C. §§ 1051, et seq.)*

122.   PHS incorporates, as if fully set forth herein, its answers to the allegations contained in the foregoing paragraphs.

123.   PHS admits that, on its face, Plaintiff is the apparent owner of the registration referred to in paragraph 123. PHS is without knowledge sufficient to admit or deny the remaining allegations in paragraph 123, and therefore denies the same.

124.   PHS admits that an apparent copy of the federal registration for the AIRALLE mark was attached to Plaintiff's original Complaint, but denies that it is attached to Plaintiff's Amended Complaint as described therein. PHS is without knowledge sufficient to admit or deny the remaining allegations as to the authenticity of the registration attached to Plaintiff's original Complaint, and therefore denies the same.

125.   The allegations in paragraph 125 state legal conclusions to which no answer is required. To the extent a response is required, PHS denies the same.

126.   PHS is without knowledge sufficient to admit or deny the allegations in paragraph 126, and therefore denies the same.

127.   PHS is without knowledge sufficient to admit or deny the allegations in paragraph 127, and therefore denies the same.

128.   PHS is without knowledge sufficient to admit or deny the allegations in paragraph 128, and therefore denies the same.

129.   PHS denies the allegations in paragraph 129.

130.   PHS admits that it undertakes commercial marketing efforts related to its services. The remaining allegations in paragraph 130 state a legal conclusion to which no answer is required. To the extent a response is required, PHS denies the same.

131.   PHS admits the allegations in paragraph 131.

132.   PHS denies the allegations in paragraph 132.

133.   PHS denies the allegations in paragraph 133.

134.   PHS denies the allegations in paragraph 134.

135.   PHS denies the allegations in paragraph 135.

136.   PHS denies the allegations in paragraph 136.

137.   PHS denies the allegations in paragraph 137. Paragraph 137 also purports to state a request for relief to which no response is required. To the extent a response is required, PHS denies Plaintiff is entitled to the relief sought in the Amended Complaint or to any relief whatsoever.

## NINTH CAUSE OF ACTION
### *(Misappropriation of Trade Secrets under 18 U.S.C. § 1836 against all Defendants)*

PHS incorporates, as if fully set forth herein, its answers to the allegations contained in the foregoing paragraphs.

138.   PHS denies the allegations in paragraph 138.

139.   PHS admits it entered into certain agreements with Plaintiff, but denies the remaining allegations in paragraph 139.

140.   PHS denies the allegations in paragraph 140.

141.   PHS admits it entered into certain agreements with Plaintiff, but denies the remaining allegations in paragraph 141.

142.   PHS denies the allegations in paragraph 142.

143.   PHS denies the allegations in paragraph 143.

144.   PHS denies the allegations in paragraph 144.

145.   PHS denies the allegations in paragraph 145.

146.   PHS denies the allegations in paragraph 146.

## TENTH CAUSE OF ACTION
### *(Declaratory Judgment against PHS)*

PHS incorporates, as if fully set forth herein, its answers to the allegations contained in the foregoing paragraphs.

147.   PHS denies the allegations in paragraph 147.

148.    PHS denies the allegations in paragraph 148.

149.    PHS denies the allegations in paragraph 149.

150.    Paragraph 150 purports to state a request for relief to which no response is required. To the extent a response is required, PHS denies Plaintiff is entitled to the relief sought in the Amended Complaint or to any relief whatsoever.

## PRAYER FOR RELIEF

The remainder of Plaintiff's Amended Complaint consists of Plaintiff's request for relief, to which no response is required. To the extent a response is required, PHS denies Plaintiff is entitled to the relief sought in the Amended Complaint or to any relief whatsoever.

## AFFIRMATIVE DEFENSES

As affirmative defenses to Plaintiff's Complaint, PHS states:

1.     Plaintiff's claims are barred or must be reduced by Plaintiff's failure to avoid or mitigate damages.

2.     Plaintiff's claims are barred or must be reduced due to payment and/or set off amounts owed, if any.

3.     Plaintiff's claims are barred by unclean hands.

4.      Plaintiff's claims are barred, in whole or in part, because Plaintiff fails to satisfy the legal and factual requirements sufficient to maintain the cited causes of action.

5.      Plaintiff's claims are barred in whole or in part by the doctrine of justification, waiver, and/or equitable estoppel.

6.      Plaintiff, by its acts, conduct, and/or omissions, has ratified the acts, conduct and omissions, if any, of PHS; therefore, Plaintiff is barred from seeking any relief.

7.      Plaintiff's trademark infringement claim is barred by de minimus copying, if any.

PHS reserves the right to rely on any additional defenses that become available or apparent during the proceedings in this action and specifically reserves the right to amend its Answer and Affirmative Defenses.

## COUNTERCLAIMS

PHS/Counterclaimant Pediatric Hair Solutions Corporation, by and through its undersigned counsel, incorporates its amended answers and affirmative defenses as set forth above, and alleges against Plaintiff/Counterdefendant Larada Sciences, Inc. as follows:

## NATURE OF THE COUNTERCLAIM

1.      PHS/Counterclaimant Pediatric Hair Solutions Corporation ("PHS")

and Plaintiff/Counterdefendant Larada Sciences, Inc. ("Larada") (collectively, the

"Parties") entered into a series of License Agreements on or around August 31,

2015, for the exclusive use of a lice treatment device.

2.      PHS brings counterclaims against Larada for breach of contract and

copyright infringement and seeks a permanent injunction and declaratory

judgment.

3.      Specifically, Larada breached the License Agreements between the

Parties, and unlawfully infringed and continues to infringe PHS's federally-

registered copyright.

4.      PHS asserts these counterclaims to recover damages to which it is

entitled under United States Copyright Law and Utah state law, to unwind the

License Agreements, and to offset amounts, if any, owed by PHS.

## PARTIES

5.      PHS is a corporation organized and existing under the laws of the

State of North Carolina, with its principal place of business located at 6923

Shannon Willow Road, Ste. 100, Charlotte, NC 28226-1331.

6.      Larada is a corporation organized under the laws of the State of Delaware, with its principal place of business located at 154 East Myrtle Ave., Ave. 304, Murray, Utah 84107.

7.      PHS operates head lice treatment centers in North Carolina and South Carolina.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this dispute under 28 U.S.C. §§ 1331 and 1338(a) because the copyright counterclaim arises under the copyright laws of the United States, 17 U.S.C. §§ 101, et seq. and under the Declaratory Judgment Act, 28 U.S.C. § 2201.

9.      This Court has supplemental jurisdiction over PHS's state-law counterclaims under 28 U.S.C. § 1367.

10.      This Court has personal jurisdiction over Larada because Larada (a) maintains its principal place of business is in this District; (b) transacts business in this District; (c) has substantial contacts in this District; and/or (d) has availed itself of the jurisdiction of this Court.

11.      Venue is proper in this District because the License Agreements provide that the venue for any proceeding related to the Agreements shall be in a court of competent jurisdiction in Salt Lake City, Utah.

## FACTUAL BACKGROUND

12.     PHS is a family-owned and operated business founded in December 2010 by Sheila Fassler, RN and operated by John Fassler, MD, its Medical Director.

13.     Prior to PHS's inception, Sheila extensively helped families with childhood ailments, including the treatment of head lice infestation, while working as a school nurse for nearly a decade.

14.     Through her work, Sheila recognized the need for a professional resource for parents within her community. That realization inspired Sheila to form PHS.

15.     PHS began with one clinic and now includes seven clinics scattered throughout North Carolina and South Carolina.

16.     PHS's success is attributed to Sheila Fassler's 30-year nursing and school health background together with Dr. John Fassler's extensive medical background. PHS provides families with safe, effective, and professional care to combat head lice infestation through its full-service professional lice treatment centers.

17.     In or around November 2010, PHS entered into a lease agreement with Larada for use of a lice treatment device used to kill head lice in a single, one-hour treatment through the application of direct heat.

18.     At the outset of the Parties' relationship, Larada recognized PHS had quickly become one of its most successful licensees.

19.     PHS informed Larada its success was attributed to the fact that PHS is a full-service lice clinic offering personalized professional care.

20.     On information and belief, Larada's other lessees and, later, licensees, did not offer such services.

21.     On information and belief, following PHS's proven success as a full-service lice clinic, Larada formed Lice Clinics of America Network in 2014 to provide personalized lice treatment services.

22.     On or around August 31, 2015, Larada entered into a Consulting Agreement with Dr. John Fassler to become Lice Clinics of America Network's Medical Director.

23.     By virtue of PHS's proven success and the long-standing working relationship between the Parties, in or around 2016, Sheila Fassler was appointed to Lice Clinics of America Network's Executive Board.

24.     On or around August 31, 2015, the Parties converted the lease agreement for Larada's lice treatment device to multiple license agreements.

25.     The license agreements provided PHS with exclusive rights to use Larada's lice treatment device in defined territories ("License Agreements").

26.     Section 1 of the License Agreements provides, in part, that the "license granted by [Larada] to [PHS] hereunder shall be exclusive, meaning that [Larada] shall not grant a license or permission to any party of than [PHS] to use one or more Devices and related products in the Territory during the Term . . . ."

27.     The License Agreements required Larada to use commercially reasonable efforts to attempt to support PHS's business in the defined territories through training, certification, and website development.

28.     Similarly, Larada was required to provide support as PHS expanded its business from one clinic to nine, and to use its best efforts to send treatment leads to PHS to support PHS's business efforts.

29.     The "device" exclusively licensed to PHS under the License Agreements is referred to as the "AirAllé" device and defined as "the patented LSI Heated Air Device also known as the 'AirAllé® device.'"

30.     In exchange for PHS's exclusive right to use the AirAllé device in the defined territories and to receive support from Larada to promote PHS's business,

PHS was required to pay a one-time license payment; a per-treatment use fee; a refundable deposit; shipping and handling costs per device; and certain territory license fees.

31.     Larada explicitly disclosed in the License Agreements its knowledge of "potential competitors of [Larada's] licensees" using devices known as the "The Lice Device" and/or "The Dehydration Station".

32.     Paragraph 5 of Exhibit C to the License Agreements provides:

> The University of Utah developed and patented a method of using heated air for killing head lice. LSI has been granted an exclusive worldwide license by the University to practice and sublicense certain of the University's patents that relate to the use of heated air for killing head lice. Recently LSI became aware of a device known as "The Lice Device" and/or "The Dehydration Station". LSI has concluded that use of these devices infringes the above referenced patents. Accordingly, LSI, along with the University of Utah, filed a patent-infringement lawsuit in the U.S. District Court of Utah on Friday, June 5th, 2015 against several parties involved in the manufacture, distribution, and use of these devices. These devices are believed to be similar to the AirAllé® heated air device, and operators of the Lice Device are considered to be potential competitors of LSI's licensees. If, on the date that is two (2) years from the Effective Date, The Lice Device and/or The Dehydration Station and/or any other device that is identical to either of them, or any other device that uses heated air to eradicate head lice, regardless of the device's name, is still being legally commercially operated for lice removal purposes in the United States, Licensee will have the option, upon notice to LSI, to unwind this Agreement and receive a refund of all collected Territory License Fees and machine deposits paid to that date.

33.     The "Effective Date" is defined in the License Agreements as August 31, 2015.

34.     Picky Pam at the Beach, LLC ("Picky Pam") is one of the "several parties" referred to in Exhibit C that Larada ("LSI" in the License Agreements) and the University of Utah sued for patent infringement due to manufacturing, distribution, and use of "The Dehydration Station."

35.     Section 18(f) of the License Agreements provides that "[a]ny provision, term, covenant or condition of [the] Agreement that by its terms must extend beyond termination or expiration of [the] Agreement in order to remain enforceable shall continue in full force and effect subsequent to and notwithstanding the termination or expiration of [the] Agreement."

36.     Unbeknownst to PHS and the Fasslers, and despite the exclusivity provisions in the License Agreements, Larada began developing a handheld "Home Treatment Kit" ("HTK") that used heated air to eradicate lice outside of a clinical setting.

37.     On or around August 26, 2016, Larada's Chief Executive Officer Claire Roberts and Kelly Broadback presented the HTK device to the Lice Centers of America Network's Executive Board.

38.     Understandably, the Executive Board—comprised primarily of top revenue producing licensees throughout the country, including Sheila Fassler on PHS's behalf—were incensed because Larada's clinic licensees like PHS would likely be harmed by Larada's introduction of the HTK because Larada's HTK device would put Larada in direct competition with its clinic-based licensees.

39.     Larada's spokesman and AirAllé alleged inventor Dr. Dale Clayton affirmed on the Good Morning America Utah television show aired on ABC in or around January 2017, that the HTK is wonderful because usually someone with a lice infestation would normally have to go to a clinic to get heated air treatment, but with the HTK heated air lice treatment can be performed at home.

40.     On information and belief, Larada began marketing and advertising the HTK in 2016.

41.     By December 2016, Larada reconfirmed its intent to sell the HTK despite Larada's existing exclusive License Agreements with and contractual obligations to PHS.

42.     On January 31, 2017, Larada transmitted a letter to PHS stating Larada intended to roll out its HTK over 2017.

43.     Left without any other recourse to thwart Larada's cannibalization of PHS's business through its HTK marketing efforts, PHS sought to renegotiate the

terms of the License Agreements to compensate PHS for the potential harm the HTK may cause PHS.

44. Up to January 2017, PHS had never missed a single payment to Larada over the course of the Parties' seven-year business relationship.

45. On January 17, 2017, Dr. John and Sheila Fassler sent an email to Claire Roberts to request a meeting in Utah to "discuss recent developments at Larada and [the Parties'] relationship moving forward."

46. Dr. and Sheila Fassler traveled to Utah on or around February 10, 2017, to meet with Claire Roberts.

47. During the Parties' meeting on February 10, 2017, PHS put Larada on notice of its belief that Larada was in breach of the License Agreements for its marketing and promotion of the HTK devices.

48. Notwithstanding, Larada refused to renegotiate the terms of the License Agreements and, instead, on February 12, 2017, demanded payments from PHS under the License Agreements.

49. In a February 17, 2017 letter to Clarie Roberts, PHS's counsel proposed settling the issues between the Parties by restructuring the per-use fees as defined in the License Agreements, which were to be retroactively applied to January 1, 2017.

50.     In the February 17, 2017 letter, PHS's counsel also directed Ms. Roberts's attention to a "Termination and Refund Provision" in the License Agreements and quoted paragraph 5 of Exhibit C.

51.     In the February 17, 2017 letter, PHS's counsel advised Ms. Roberts that "it is likely that PHS will have the right to terminate its agreements with LSI and demand a refund in full of its license fees at some point this year . . . [and that] PHS is willing to negotiate the removal of [paragraph 5 of Exhibit C] from its license agreements in exchange for a significant reduction in the calculation of its territory fees."

52.     On February 22, 2017, Claire Roberts advised PHS's counsel in an email that Larada refused to renegotiate and, again, demanded payment.

53.     That same day, PHS's counsel informed Claire Roberts that PHS was current on all amounts owed to Larada as of December 31, 2016, but the January 2017 payment would not be made because the proposed fee restructuring, if effectuated, would be retroactively applied to January 1, 2017.

54.     In a good faith effort, PHS's counsel offered to deposit the January 2017 fees in escrow at PHS's counsel's law firm's trust account while the Parties continued to renegotiate the terms of the License Agreements.

55.     Larada refused to accept PHS's offer to place the January 2017 fees in an escrow account.

56.     On March 10, 2017, Larada provided a "termination notice" to PHS, claiming PHS owed Larada $33,960, and demanding the return of 25 devices.

57.     On March 24, 2017, PHS's counsel confirmed to Larada's counsel that PHS would ship Larada's devices and any unused consumables to Larada.

58.     As of May 11, 2017, PHS returned all AirAllé devices and unused consumables to Larada.

59.     On May 11, 2017, counsel for PHS sent a letter to counsel for Larada stating that "PHS maintains its position[] that . . . Larada will be obligated to refund PHS's previously-paid license fees assuming conditions for the refund are met later this year."

60.     PHS also took all steps to immediately dissociate itself from Larada, including, but not limited to, removing all references to Larada, Larada's trademarks, devices, and any other intellectual property of Larada, if any, from PHS's websites and marketing materials.

*Larada fails to refund all collected Territory License Fees*
*and machine deposits after Exhibit C, paragraph 5 condition is triggered*

61.     At or around the time PHS discovered Larada's intent to compete with PHS's lice treatment services by openly marketing the HTK, PHS learned Larada

also failed to prevent The Lice Device and/or The Dehydration Station from commercially operating for license removal purposes in the United States.

62.    On information and belief, in May 2016, Larada entered into a settlement with Picky Pam the owner of The Lice Device and/or The Dehydration Station.

63.    On information and belief, that settlement, however, did not enjoin Picky Pam's use of The Lice Device and/or The Dehydration Station heated air devices to eradicate head lice.

64.    On information and belief, the settlement instead allowed Picky Pam to legally commercially operate The Dehydration Station for lice removal purposes in the United States.

65.    On information and belief, Picky Pam has commercially operated The Dehydration Station for lice removal purposes in the United States from May 2016 to today.

66.    On August 31, 2017 (*i.e.*, "two (2) years from the Effective Date" of the License Agreements), the condition precedent in Exhibit C to the License Agreement triggered, which provides that if "The Lice Device and/or The Dehydration Station . . . is still being legally commercially operated for lice removal purposes in the United States, Licensee will have the option, upon notice

to LSI, to unwind this Agreement and receive a refund of all collected Territory License Fees and machine deposits paid to that date."

67.     On information and belief, on August 31, 2017, Picky Pam legally commercially operated "The Dehydration Station" in the United States at the Picky Pam clinic located at 714 Adams Avenue Suite 103, Huntington Beach, CA 92648 for lice removal purposes. Specifically, an October 16, 2017 screen capture of Picky Pam's website, www.licefreekids.com, (obtained via archive.org), states "We are the ONLY lice treatment salon in Southern California with the Dehydration Station . . . a high volume, low heat device that kills nits (lice eggs), specifically newly laid microscopic nits."

68.     On October 4, 2017, counsel for PHS provided notice in writing in a letter sent by e-mail to counsel for Larada stating that "Larada is obligated to refund PHS's previously-paid license fees due to the conditions for the refund set forth in the license agreement having been met."

69.     Paragraph 18(e) of the License Agreements provides that notice was effectuated one (1) day after being sent by e-mail.

70.     Larada has collected approximately $45,000 in Territory License Fees and $4,000 in machine deposits from PHS.

71.     Despite written notice to Larada on October 4, 2017, of PHS's demand and Larada's obligation to refund PHS's previously paid fees, Larada has not refunded any Territory License Fees or machine deposits to PHS.

72.     Larada breached the License Agreements by failing to refund PHS all collected Territory License Fees and machine deposits and/or by failing to unwind the License Agreements due to Picky Pam legally and commercially operating The Lice Device and/or The Dehydration Station for lice removal purposes in the United States as of August 31, 2017.

73.     PHS is entitled to unwind the License Agreements.

74.     PHS is entitled to receive a refund of all collected Territory License Fees and machine deposits paid to Larada to date.

75.     Larada has been unjustly enriched by retaining the Territory License Fees and machine deposits PHS paid.

### *Larada infringes PHS's federally-registered copyright*

76.     In 2014, PHS spent a substantial amount of time and effort to create a head lice treatment comparison informational chart entitled "Get the Facts" for its patients. A true and correct copy of PHS's 2014 "Get the Facts" sheet is attached as **Exhibit A**.

77.     PHS first published the "Get the Facts" sheet on June 1, 2014.

78.     On October 23, 2015, the United States Copyright Office issued Registration No. TX 8-125-209 for the copyrighted work. A true and correct copy of Reg. No. TX 8-125-209 is attached hereto as **Exhibit B**.

79.     In or around February 2016, Sheila Fassler attended a National Camping Convention in Chicago, Illinois.

80.     Sheila Fassler visited Larada's Lice Centers of America Network booth and noticed what appeared to be PHS's "Get the Facts" sheet displayed on Larada's table.

81.     Sheila Fassler immediately approached and informed Larada's then-Director of Marketing, Perri Simpson, that the "Get the Facts" chart is PHS's copyright-protected work that Larada unlawfully took from PHS's website.

82.     Perri Simpson denied that chart belonged to, or derived from, PHS's copyright-protected work.

83.     In early 2017, Sheila Fassler discovered Larada continued to use a substantially similar derivation of PHS's "Get the Facts Sheet" in its marking marketing and online materials.

84.     Attached as **Exhibit C** is a true and correct copy of a website screenshot taken from http://lcaconnecticut.com/2016/01/11/how-lca-compares-to-our-competitors (lasted visited 04/24/2019).

85.     On March 24, 2017, PHS's counsel informed Larada's counsel that Larada was using PHS's treatment comparison chart in its marketing materials and online in violation of PHS's copyright registration.

86.     Despite PHS's first notice in 2015 and second written notice on March 24, 2017, Larada shamelessly continues to post the treatment comparison chart in its online marketing materials.

87.     Such blatant infringement has been and continues to be detrimental to PHS.

88.     As a result of Larada's deliberate and intentional infringement and misrepresentation, Larada has unlawfully profited, and PHS has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law. *Compare* Exhibit A, *with* Exhibit C.

## FIRST COUNTERCLAIM
### Breach of Contract

89.     PHS incorporates, as if fully set forth herein, its allegations contained in the foregoing paragraphs of its Counterclaim.

90.     The Parties entered into the License Agreements, which constitute valid, binding contracts obligating Larada to exclusively license use of the AirAllé device and related products to PHS in the defined territories.

91.     Except as excused by Larada's material breaches, PHS performed all its obligations under the License Agreements.

92.     Section 18(f) of the License Agreements provides that "[a]ny provision, term, covenant or condition of [the] Agreement that by its terms must extend beyond termination or expiration of [the] Agreement in order to remain enforceable shall continue in full force and effect subsequent to and notwithstanding the termination or expiration of [the] Agreement."

93.     Exhibit C to the License Agreements includes a condition precedent clause which provides that "[i]f, on the date that is two (2) years from the Effective Date, The Lice Device and/or The Dehydration Station . . . is still being legally commercially operated for lice removal purposes in the United States, Licensee will have the option, upon notice to LSI, to unwind this Agreement and receive a refund of all collected Territory License Fees and machine deposits paid to that date."

94.     Exhibit C, by its terms, must extend beyond termination or expiration of the Agreement to remain enforceable. Under Section 18(f), therefore, Exhibit C continues in full force and effect subsequent to and notwithstanding the termination of the Agreement.

95.     On information and belief, on and after August 31, 2017 (*i.e.*, "two (2)
years from the Effective Date" of the License Agreements), Picky Pam legally
commercially operated "The Dehydration Station" in the United States at the Picky
Pam clinic located at 714 Adams Avenue Suite 103, Huntington Beach, CA 92648
for lice removal purposes.

96.     On information and belief, at least on October 16, 2017, Picky Pam's
website, www.licefreekids.com, advertised to the public in that it is "the ONLY
lice treatment salon in Southern California with the Dehydration Station . . . a high
volume, low heat device that kills nits (lice eggs), specifically newly laid
microscopic nits."

97.     Section 18(e) of the License Agreements state that "[a]ny notice
required to be given pursuant to the terms and provisions hereof shall be in writing
and shall be deemed to have been given and received  . . . (iii) one (1) day after
being sent by email or fax or by letter deposited with a recognized overnight
courier with confirmation of next day delivery, addressed to a Party at the address
provided to the other Party from time to time."

98.     On October 4, 2017, counsel for PHS provided notice via email to
Larada's counsel, at an address provided to PHS's counsel by Larada, that Larada

must refund PHS's previously-paid license fees because the Exhibit C condition had been met.

99.     Despite written notice to Larada on October 4, 2017 of PHS's demand and Larada's duty to refund PHS's previously paid fees, Larada has not refunded Territory License Fees or machine deposits to PHS.

100.    Larada breached the License Agreements by failing to refund all previously-paid Territory License Fees and machine deposits and/or unwind the License Agreements after the Exhibit C condition triggered on August 31, 2017 and upon PHS's notice to counsel for Larada on October 4, 2017 of Larada's obligation to do so.

101.    PHS is entitled to unwind the License Agreements.

102.    PHS is entitled to receive a refund of all collected Territory License Fees and machine deposits collected by Larada to date.

103.    As a direct result of Larada's breach of the License Agreements, PHS has been damaged in an amount to be determined at trial, but in any event, no less than approximately $49,000, plus interest at the statutory rate.

104.    PHS is entitled to an award of its reasonable attorneys' fees and costs incurred.

## SECOND COUNTERCLAIM
### Copyright Infringement
### 17 U.S.C. § 501

105.    PHS incorporates, as if fully set forth herein, its allegations contained in the foregoing paragraphs of its Counterclaim.

106.    Factual compilations may contain protectable expression so long as there exists an original selection or arrangement of facts.

107.    Under 17 U.S.C. § 101, to be copyrightable, a compilation must be a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship.

108.    In 2014, PHS spent a substantial amount of time and effort to create a head lice treatment comparison chart for its patients entitled "Get the Facts."

109.    On October 23, 2015, the United States Copyright Office issued Registration No. TX 8-125-209 to PHS for the "Get the Facts" compilation.

110.    The PHS's "Get the Facts" sheet, Reg. No. TX 8-125-209, is a valid copyright subject to protection under 17 U.S.C. § 103.

111.    On information and belief, Larada has unlawfully copied constituent elements of PHS's work that are original to PHS.

112.   For example, Larada's infringing work mirrors the vertical five-column by seven-column grid depicted in PHS's work.

113.   Larada's infringing work also includes the same "Get the Facts" main title heading.

114.   The selection, order, sequence, and arrangement of the information presented in Larada's infringing work is also nearly identical to and presented in the same way as PHS's copyright-protected work.

115.   Larada's infringing work appears to use the same typeface and nearly identical horizontal and vertical column headings as PHS's work.

116.   Stripping away the non-protectable facts, the selection, coordination, and arrangement of facts as they appear in Larada's infringing work as a whole are substantially similar to PHS's work.

117.   Larada's infringing work lacks creative contributions, rendering its reproduction substantially similar to and an infringement of the elements of PHS's copyrighted work that are legally protected.

118.   On information and belief, Larada copied, made, and publicly displayed unauthorized reproductions of PHS's copyrighted work on its website and in its advertising materials without PHS's consent.

119.   Larada's conduct violates PHS's exclusive right to control reproduction, distribution, creation of derivative works, and public display of its copyrighted works, in violation of 17 U.S.C. §§ 106–122.

120.   Larada knew it infringed PHS's copyright, or was reckless in its disregard of that possibility by systematically copying, altering, and using PHS's copyrighted work over an extended period of time.

121.   Larada's misappropriation of PHS's copyrighted work is intentional and willful.

122.   Larada's wrongful conduct, as set forth herein, has harmed, and will continue to harm, PHS in an amount not yet ascertained.

123.   Larada admits that it used PHS's copyrighted work as described with specificity above.

124.   Notwithstanding PHS's demand to cease use of PHS's "Get the Facts" copyrighted work, Larada continues to use its infringing reproduction. This blatant disregard for the law evidences that Larada is likely to engage in future wrongful conduct. *See Harolds Stores, Inc. v. Dillard Dept. Stores*, *Inc.*, 82 F.3d 1533, 1555 (10th Cir. 1996).

125.   Larada's intentional and willful infringement merits an award of reasonable attorney's fees under 17 U.S.C. § 505.

126.   Unless Larada is enjoined, PHS does not have an adequate remedy at law to guard against future infringement by Larada.

127.   As a direct and proximate result of Larada's deliberate and intentional infringement and misrepresentation, Larada has unlawfully profited, and PHS has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.

128.   PHS requests a permanent injunction be entered against Larada prohibiting continued infringement of PHS's copyrights pursuant to 17 U.S.C. § 502(a).

## THIRD COUNTERCLAIM
### Declaratory Judgment
### 28 U.S.C. § 201

129.   PHS incorporates, as if fully set forth herein, its allegations contained in the foregoing paragraphs of its Counterclaim.

130.   On Exhibit C to the License Agreements includes a condition precedent clause which provides that "[i]f, on the date that is two (2) years from the Effective Date, The Lice Device and/or The Dehydration Station . . . is still being legally commercially operated for lice removal purposes in the United States, Licensee will have the option, upon notice to LSI, to unwind this

Agreement and receive a refund of all collected Territory License Fees and machine deposits paid to that date."

131.   On information and belief, on and after August 31, 2017 (*i.e.*, "two (2) years from the Effective Date" of the License Agreements), Picky Pam legally commercially operated "The Dehydration Station" in the United States at the Picky Pam clinic located at 714 Adams Avenue Suite 103, Huntington Beach, CA 92648 for lice removal purposes.

132.   On October 4, 2017, counsel for PHS provided notice via email to Larada's counsel, at an address provided to PHS's counsel by Larada, that the Exhibit C condition had been trigged and that PHS was due remedies that it is entitled to under that provision.

133.   Larada breached the License Agreements by failing to refund all previously-paid Territory License Fees and machine deposits and/or unwind the License Agreements after the Exhibit C condition triggered on August 31, 2017 and upon PHS's notice to counsel for Larada on October 4, 2017 of Larada's obligation to do so.

134.   As a result of Larada's breach for failing to refund to PHS Territory License Fees and machine deposits, PHS is entitled to unwind the License Agreements in accordance with Exhibit C.

135.    PHS therefore requests a declaratory judgment that the License Agreements are unwound.

## RESERVATION OF RIGHTS

PHS/Counterclaimant PHS reserves the right to amend these counterclaims during discovery because, on information and belief, PHS believes Larada has engaged in other concealed acts contrary to PHS's interest under the License Agreements, and amendment of these counterclaims may be required to realize substantial justice.

## PRAYER FOR RELIEF

Wherefore, PHS/Counterclaimant, having completely and fully provided their Answer to Plaintiff's Amended Complaint, prays for a final judgment against Plaintiff, respectfully requesting the following relief:

1.    A judgment that the Amended Complaint be dismissed with prejudice;

2.    A judgment awarding PHS damages in amount to be proven at trial, but not less than $49,000.

3.    A declaratory judgment unwinding the License Agreements.

4.    A judgment that Larada's display and use of PHS's copyrighted work constitutes an infringement of PHS's copyright;

5.  An order prohibiting and permanently enjoining Larada, and each of Larada's officers, agents, employees, and those acting in concert or conspiracy with Larada, from using PHS's copyrighted material;

6.  Judgment against Larada to the extent allowed by law, including, without limitation:

    a.  actual monetary damages sustained by PHS or statutory damages, per election by PHS prior to judgment;

    b.  statutory damages for any individual act of copyright infringement for which actual damages cannot be readily identified;

    c.  the profits unlawfully earned by Larada as a result of the unlawful acts, as set forth herein;

    d.  treble damages; and

    e.  costs of suit, prejudgment interest, reasonable attorneys' fees, expert fees, consulting fees, and other fees and expenses incurred herein.

6.  Such other and further relief as the Court deems appropriate and just under the circumstances.

/ / /

DATED this 21st day of May, 2020.

**LEE & HAYES P.C.**

/s/ William B. Dyer
William B. Dyer, III
Andrew G. Strickland
Sarah E. Elsden

*Attorneys for PHS Pediatric Hair Solutions*
*Corporation*

**MAGLEBY CATAXINOS & GREENWOOD**

Christine T. Greenwood
Geoffrey K. Biehn

## CERTIFICATE OF SERVICE

I certify I am employed by the law firm of Lee & Hayes P.C., 601 W.

Riverside, Suite 1400, Spokane, Washington 99201, and pursuant to Federal Rules

of Civil Procedure Rule 5(b), a true and correct copy of the foregoing **Pediatric**

**Hair Solution's Answer to Amended Complaint, Affirmative Defenses, and**

**Second Amended Counterclaims** was delivered to the following this 21st day of

May, 2020, by:

[ ] Hand Delivery
[ ] Depositing the same in the U.S. Mail, postage prepaid
[X] CM/ECF System
[ ] Electronic Mail

Douglas C. Smith
douglas.smith@lewisbrisbois.com
**Lewis Brisbois Bisgaard & Smith**
1218 East 7800 South, Suite 300
Sandy, UT 84094

Peter M. Stasiewicz
pete@arcturuslaw.com
**Arcturus Law Firm**
211 W. Wacher #323
Chicago, IL 60606

*Attorneys for Plaintiff Larada Sciences, Inc.*

/s/ Sarah E. Elsden
Sarah E. Elsden (pro hac vice)
Lee & Hayes, P.C.