IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| LARADA SCIENCES, INC., a Delaware Corporation,<br><br>Plaintiff/Counterdefendant,<br><br>v.<br><br>PEDIATRIC HAIR SOLUTIONS CORPORATION, a North Carolina corporation, JOHN E. FASSLER, M.D., SHEILA M. FASSLER, and FLOSONIX VENTURES, LLC, a Wyoming LLC,<br><br>Defendants/Counterclaimants. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION TO DISMISS**<br><br>Case No. 2:18-cv-00551<br><br>Chief Judge Robert J. Shelby<br><br>Magistrate Judge Jared C. Bennett |

This case involves the alleged misappropriation of Plaintiff Larada Sciences, Inc.'s trade secrets by Defendants Pediatric Hair Solutions Corp. (PHS), FloSonix Ventures, LLC, Dr. John Fassler, and Sheila Fassler. On May 7, 2020, Larada filed its First Amended Complaint (FAC) asserting various causes of action against Defendants.[1] On July 13, 2020, FloSonix filed a Motion to Dismiss, arguing Larada's claims against FloSonix should be dismissed for lack of personal jurisdiction.[2] For the reasons explained below, FloSonix's Motion is GRANTED.

### BACKGROUND[3]

Larada is a corporation organized under the laws of Delaware with its principal place of business in Utah.[4] PHS is a corporation organized under the laws of North Carolina and is

---

[1] Dkt. 86.

[2] Dkt. 118.

[3] Because this case is before the court on a motion to dismiss, the court accepts as true all well-pleaded factual allegations in the complaint. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether Larada has made a prima facie showing of personal jurisdiction over FloSonix, the court will accept as true the allegations of the FAC except to the extent they are controverted by any affidavit submitted by FloSonix. *Behagen v. Amateur Basketball Ass'n of USA*, 744 F.2d 731, 733 (10th Cir. 1984).

[4] Dkt. 86 ¶ 1.

headquartered in North Carolina.[5] FloSonix is a Wyoming limited liability corporation and is headquartered in North Carolina.[6] John and Sheila Fassler are residents and citizens of North Carolina.[7] Sheila Fassler is the President of PHS[8] and is the sole owner and member of FloSonix.[9]

Larada manufactures and markets devices for the treatment of head lice (Larada Devices).[10] Beginning in 2010, PHS entered into a series of agreements with Larada under which Larada would allow PHS to use Larada Devices in PHS clinics.[11] These agreements contained certain restrictions on PHS's use of Larada's confidential or proprietary information.[12] Relevant here, the agreements contain prohibitions on disassembling, reverse-engineering, or otherwise copying the Larada Devices.[13] The agreements also provide that, upon termination of the agreements, PHS shall return all Larada Devices to Larada within five business days.[14]

Sometime by late 2014, PHS and the Fasslers began planning to create a competing head lice removal device.[15] And sometime in 2016, PHS provided one of the Larada Devices to an engineering firm for purposes of designing a competing device.[16]

---

[5] Dkt. 86 ¶ 2.
[6] Dkt. 86 ¶ 3.
[7] Dkt. 86 ¶ 4.
[8] Dkt. 86 ¶ 29.
[9] Dkt. 119 ¶ 1–2.
[10] Dkt. 86 ¶ 15.
[11] Dkt. 86 ¶ 19–23.
[12] Dkt. 86 ¶ 19–23.
[13] Dkt. 86 ¶ 23.
[14] Dkt. 86 ¶ 23.
[15] Dkt. 86 ¶ 32.
[16] Dkt. 86 ¶ 32.

In November 2016, Larada provided PHS with a beta version of Larada's upcoming second-generation Device.[17]  Around this same time, PHS stopped making payments under the agreements.[18]  The parties engaged in negotiations concerning PHS's failure to make payments, but those talks eventually broke down.[19]  On March 10, 2017, Larada sent PHS a letter in which it explained the agreements were terminated by virtue of PHS's default.[20]  The letter instructed PHS to, among other things, return all Larada Devices in PHS's possession within five business days.[21]  PHS returned the last of the first-generation Larada Devices on May 17, 2017, but it never returned the second-generation Larada Device it received in November 2016.[22]

On May 4, 2017, Sheila Fassler formed FloSonix.[23]  FloSonix is currently developing and testing its own head lice removal device (FloSonix Device).[24]  FloSonix is currently leasing FloSonix Devices to a limited number of United States customers, none of whom are located in Utah.[25]

Larada filed its First Amended Complaint (FAC) on May 7, 2020, asserting various causes of action against Defendants.[26]  Relevant here, Larada asserts four causes of action against FloSonix: (1) misappropriation of trade secrets; (2) trespass to chattels; (3) conversion;

---

[17] Dkt. 86 ¶ 33.
[18] Dkt. 86 ¶ 35.
[19] Dkt. 86 ¶¶ 36–45.
[20] Dkt. 86 ¶ 46.
[21] Dkt. 86 ¶ 47.
[22] Dkt. 86 ¶ 51.
[23] Dkt. 119 ¶¶ 1–2 (Sheila Fassler Declaration).
[24] Dkt. 119 ¶ 3.
[25] Dkt. 119 ¶ 3.
[26] Dkt. 86.

and (4) unjust enrichment.[27]  On July 13, 2020, FloSonix filed a Motion to Dismiss, arguing—among other things—that the court does not have personal jurisdiction over FloSonix.[28]

## LEGAL STANDARD

When the court considers a defendant's motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the plaintiff need only make a prima facie showing that personal jurisdiction exists.[29]  In evaluating whether the plaintiff has made such a showing, the court must accept as true all well-pleaded factual allegations in the plaintiff's complaint and any factual disputes are resolved in the plaintiff's favor.[30]  In the absence of an evidentiary hearing, the court's evaluation is based on the pleadings and any affidavits submitted in support thereof.[31]

## ANALYSIS

To establish personal jurisdiction over a defendant, a plaintiff must show "first, that jurisdiction is authorized under Utah law and, second, that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment."[32]  Utah's long-arm statute permits the exercise of jurisdiction "over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution."[33]

---

[27] Dkt. 86 at 21–22, 25–26.

[28] Dkt. 118.  FloSonix's Motion also argues that venue is improper and that Larada's claims for trespass to chattel, conversion, and unjust enrichment fail to state a claim upon which relief can be granted.  Dkt. 118.  The court does not address these arguments because it concludes it lacks personal jurisdiction over FloSonix.

[29] *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1100 (10th Cir. 2009).

[30] *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).

[31] *See Ten Mile Indus. Park v. W. Plains Serv. Corp.*, 810 F.2d 1518, 1524 (10th Cir. 1987) ("[I]n the absence of a full evidentiary hearing . . . the determination involves an application of the law to the facts as set forth in the affidavits and complaints . . . .").

[32] *Dudnikov*, 514 F.3d at 1063.

[33] Utah Code § 78B-3-201.

Accordingly, the two-step jurisdictional analysis effectively collapses into a one-step constitutional inquiry.

"The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts."[34] And "[a]lthough a nonresident's physical presence within the territorial jurisdiction of the court is not required, the nonresident generally must have 'certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"[35]

A court may exercise either general or specific personal jurisdiction over a nonresident defendant.[36] Here, Larada asserts only specific jurisdiction.[37] Further, FloSonix challenges the FAC only on the ground that "FloSonix does not have minimum contacts in Utah."[38] Thus, the court focuses its analysis on whether FloSonix has certain minimum contacts with Utah such that the court can exercise specific jurisdiction over FloSonix.

Specific jurisdiction "means that a court may exercise jurisdiction over an out-of-state party only if the cause of action relates to the party's contact with the forum state."[39] Thus, for a court to exercise specific jurisdiction, "the *suit* must aris[e] out of or relat[e] to the defendant's contacts with the *forum*."[40] The relationship between the defendant and the forum state "must arise out of contacts that the 'defendant *himself*' creates with the forum State."[41] Further, the

---

[34] *Walden v. Fiore*, 571 U.S. 277, 283 (2014).

[35] *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

[36] *See Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*, 137 S. Ct. 1773, 1779–80 (2017).

[37] In its Motion, FloSonix argues it is subject to neither specific nor general jurisdiction. Dkt. 118 at 6. In its Opposition, Larada argues only that FloSonix is subject to specific jurisdiction. *See* dkt. 125 at 3–7.

[38] Dkt. 125 at 7.

[39] *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 904 (10th Cir. 2017).

[40] *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1780.

[41] *Walden*, 571 U.S. at 284.

minimum contacts analysis is concerned with "defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there."[42] "In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'"[43] Once a plaintiff demonstrates a defendant has purposefully directed its activities at the forum state, the plaintiff must then show that their injuries arise out of the defendant's forum-related activities.[44]

"The purposeful direction requirement 'ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, . . . or of the unilateral activity of another party or a third person.'"[45] The "[m]ere foreseeability of causing injury in another state is insufficient to establish purposeful direction."[46] Instead, it must be shown that "the defendant deliberately has engaged in significant activities within [the] State."[47] The Tenth Circuit has developed three primary frameworks for determining whether the purposeful direction requirements has been satisfied: "(1) continuing relationships with forum state residents ('continuing relationships'); (2) deliberate exploitation of the forum state market ('market exploitation'); and (3) harmful effects in the forum state ('harmful effects')."[48] This case implicates the harmful effects framework.[49]

---

[42] *Id.* at 285.

[43] *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1780 (quoting *Goodyear*, 564 U.S. at 919).

[44] *Old Republic*, 877 F.3d at 904.

[45] *Id.* at 904–05 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

[46] *Id.* at 905.

[47] *Id.* (citation omitted).

[48] *Id.*

[49] *See* dkt. 122 (Larada arguing minimum contacts test satisfied under the harmful effects framework).

A plaintiff proceeding under the harmful effects test must establish three elements: "(a) an intentional action [by defendant] . . . , that was (b) expressly aimed at the forum state . . . , with (c) knowledge that the brunt of the injury would be felt in the forum state."[50]  FloSonix argues Larada has failed to establish that any of FloSonix's action were expressly aimed at Utah.[51]  The court agrees.

As the Tenth Circuit has explained, it has taken a "somewhat more restrictive approach" to the "expressly aimed" element, "holding that the forum state itself must be the 'focal point of the tort.'"[52]  Larada's four causes of action against FloSonix all implicate the same general set of facts: FloSonix received trade secrets relating to the Larada Devices—including at least one Larada Device itself—from PHS and the Fasslers and used those trade secrets to develop and market the FloSonix Device.[53]  Larada has not established that Utah was the focal point of any of these actions.

FloSonix maintains no business presence in Utah.[54]  It does not have any employees in Utah.[55]  Nor has it marketed the FloSonix Device to or conducted commercial transactions with anyone in Utah.[56]  FloSonix has never had any contractual relationship with Larada.[57]  Nor is FloSonix's receipt of Larada's trade secrets alleged to have occurred in Utah.

---

[50] *Old Republic*, 877 F.3d at 907 (quoting *Dudnikov*, 514 F.3d at 1072).

[51] Dkt. 125 at 7–11.  FloSonix does not contest the first and third elements of the harmful effects test.

[52] *Dudnikov*, 514 F.3d at 1074 n.9.

[53] Larada's trade secret claim obviously implicates FloSonix's alleged receipt of trade secrets from PHS and the Fasslers.  Larada's unjust enrichment claim is likewise premised on FloSonix's alleged receipt of trade secrets from PHS and the Fasslers.  *See* dkt. 122 at 10 (Larada arguing "[t]o the extent [FloSonix] has wrongly received Larada's technology and has used it to develop its own competing technology, it is unjustly enriched").  And Larada's trespass to chattels and conversion claims are premised on FloSonix's alleged receipt of at least one Larada Device.

[54] Dkt. 119 ¶ 5.

[55] Dkt. 119 ¶ 6.

[56] Dkt. 119 ¶ 7.

[57] Dkt. 119 ¶ 8.

In its Opposition, Larada argues FloSonix has nonetheless expressly aimed its actions at Utah because it received trade secrets—which originated from Larada's Utah headquarters—from PHS and the Fasslers, and PHS and the Fasslers obtained those trade secrets through their own contacts with Utah.[58] This argument misses the point. The focus of the "expressly aimed" element is on FloSonix's *own* contacts with Utah, not whether FloSonix has contacts with other parties who have their own contacts with Utah. Larada cites two cases from this court—*Ivanti, Inc. v. Shea*[59] and *Vivint, Inc. v. Alert Holdings Group*[60]—in support of its argument. But neither case supports Larada's position.

In *Ivanti*, this court found personal jurisdiction existed over a nonresident defendant who was alleged to have misappropriated Utah plaintiffs' trade secrets. The nonresident defendant worked as a remote employee for the plaintiffs for 13 years.[61] In the course of his employment, the defendant was in frequent contact with the plaintiffs' Utah headquarters and plaintiffs' Utah-based employees.[62] The plaintiffs alleged the defendant received "sensitive information about strategy, products, and pricing" through these contacts.[63] The court found jurisdiction over the defendant existed, concluding:

> Even under the more restrictive view, Plaintiffs have alleged facts supporting that Defendant purposefully directed his activities at Utah. The alleged offending conduct arises from Defendant's frequent contacts with Plaintiffs' headquarters in Utah. As a result of these Utah-based contacts, Defendant obtained sensitive information over years of employment. Upon leaving his employment with the Utah-based company, Defendant allegedly misappropriated this sensitive information for the benefit of himself and Plaintiffs' direct competitor, fully aware

---

[58] Dkt. 122 at 5.

[59] No. 2:18-cv-92 TS, 2018 WL 1033205 (D. Utah Feb. 21, 2018).

[60] No. 2:19-cv-215, 2019 WL 5637591 (D. Utah Oct. 31, 2019).

[61] 2018 WL 1033205, at *1.

[62] *Id.* at *3.

[63] *Id.*

8

that such conduct would directly harm Plaintiffs' Utah-based business. Such conduct certainly connects Defendant to Utah "in a meaningful way."[64]

Indeed, the court found that "Defendant acquired Plaintiffs' alleged trade secrets over the years he worked for Plaintiffs and through his regular contact and exchange with Plaintiffs' employees in Utah."[65]

But the facts of *Ivanti* are demonstrably different from the facts of this case. FloSonix was never employed by Larada. Indeed, FloSonix has never had any contractual relationship with Larada. Nor does Larada allege that FloSonix obtained any trade secrets through contacts with persons in Utah. Instead, FloSonix is alleged to have received those trade secrets from PHS and the Fasslers—none of whom are located in Utah. As a result, the court finds *Ivanti* unhelpful.

In *Vivint*, this court found personal jurisdiction existed over a nonresident defendant who was alleged to have obtained trade secrets through one of the Utah plaintiff's Utah-based employees. The defendant in *Vivint* reached out to one of its ex-employees, who was then employed by plaintiff in plaintiff's Utah headquarters.[66] The defendant told the employee it would "'make it worth [the employee's] while' if [the employee] would access, and turn over to [defendant], information on [plaintiff's] customers in Hawaii."[67] The defendant then allegedly used this information to target and solicit the plaintiff's customers in Hawaii.[68] The defendant argued it was not subject to personal jurisdiction in Utah because the actions taken to acquire and misappropriate the trade secrets were taken by the employee, not the defendant.[69] The court

---

[64] *Id.* at *5.

[65] *Id.*

[66] 2019 WL 5637591, at *1.

[67] *Id.*

[68] *Id.*

[69] *Id.* at *3.

9

rejected this argument, explaining that the defendant's argument "overlooks [defendant's] role in those actions."[70] The court continued, "[defendant] allegedly 'reached out' to [the employee] to initiate a conversation about obtaining the Hawaii customer lists from [plaintiff], and [the employee] only acquired the lists as a result of [defendant's] request and enticement."[71] Thus, the court concluded, "[defendant's] hands are not clean as to the acquisition of [plaintiff's] information, and it should not be permitted to avoid personal jurisdiction in Utah because it remained in Hawaii while its agent in Utah performed its dirty work."[72]

Unlike the defendant in *Vivint*, FloSonix is not alleged to have directed PHS or the Fasslers to acquire Larada's trade secrets for its own benefit. Indeed, FloSonix did not yet exist at the time that PHS and the Fasslers are alleged to have acquired Larada's trade secrets. As a result, personal jurisdiction over FloSonix cannot be premised on the agency theory adopted in *Vivint*.[73]

In sum, Larada has failed to establish that FloSonix expressly aimed its actions at Utah.[74] At most, Larada has established that FloSonix received trade secrets from PHS and the Fasslers that originated in Utah and were acquired through PHS's and the Fasslers' contacts with Utah. But PHS's and the Fasslers' contacts with Utah are alone insufficient to establish purposeful

---

[70] *Id.*

[71] *Id.*

[72] *Id.*

[73] Although the Tenth Circuit has not—to the court's knowledge—decided whether a court may exercise personal jurisdiction over a defendant based solely on the actions of the defendant's agent, the Circuit recently noted that it has not "foreclose[d] the possibility that jurisdiction over a defendant could be based solely on activities of its agents." *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 847 (10th Cir. 2020).

[74] To be sure, FloSonix must have foreseen that its actions would cause injury to Larada in Utah. But this alone is insufficient to establish personal jurisdiction. *See, e.g.*, *Dudnikov*, 514 F.3d at 1077 ("We surely agree that under *Calder* the mere foreseeability of causing an injury in the forum state is, standing alone, insufficient to warrant a state exercising its sovereignty over an out-of-state defendant.").

direction on the part of FloSonix—as is required under the "expressly aimed" test.[75] FloSonix did not acquire the trade secrets through its own contacts with anyone in Utah. Nor did FloSonix direct PHS or the Fasslers to obtain the trade secrets on its behalf. And Larada has not directed the court to any authority suggesting that FloSonix's after-the-fact receipt of trade secrets is sufficient to establish personal jurisdiction. As a result, the court concludes it lacks personal jurisdiction over FloSonix.

## CONCLUSION

For the reasons stated above, FloSonix's Motion[76] is GRANTED and Larada's claims against FloSonix are DISMISSED.

**SO ORDERED** this 3rd day of September 2020.

BY THE COURT:

_____
ROBERT J. SHELBY
United States Chief District Judge

---

[75] *See id.* ("As we understand this passage, the Court was *not* saying that personal jurisdiction can be based merely on contacts with the State by third persons whose activities are in some way intertwined with those of the defendant. Rather it is saying that jurisdiction must be based on the conduct of the defendant itself."); *see also Walden*, 571 U.S. at 286 ("[A] defendant's relationship with a plaintiff or third party, standing, alone is an insufficient basis for jurisdiction.").

[76] Dkt. 118.