Jose A. Abarca (12762)
Nicolas C. Wilde (15768)
ARMSTRONG TEASDALE LLP
201 S Main Street, Suite 750
Salt Lake City, UT 84111
Telephone: (801) 401-1600
jabarca@atllp.com
nwilde@atllp.com

Attorneys for Defendants

### IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

| | |
|---|---|
| LARADA SCIENCES, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>PEDIATRIC HAIR SOLUTIONS CORPORATION, a North Carolina Corporation, et al.<br><br>Defendants. | **DEFENDANTS' RESPONSE TO PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF SHORT FORM DISCOVERY MOTION**<br><br>Case No. 2:18-cv-00551-RJS-JCB<br><br>Chief Judge Robert J. Shelby<br><br>Magistrate Judge Jared C. Bennett |

Pursuant to the Court's June 7, 2021 Order, (ECF No. 140), Defendants hereby submit their Response to Plaintiff's Supplemental Memorandum in Support of Short-Form Discovery Motion. As Larada concedes, it bears the burden to modify the Stipulated Protective Order. The standard that Larada must meet to justify modification of the agreed upon Protective Order is not simply good cause. It must meet the heightened standard of demonstrating that modification is *necessary*.

I.   Larada Did Not Move to Modify the Protective Order in Its Short-Form Motion.

As Chief Judge Shelby provided at the May 29, 2020 preliminary injunction hearing: "[P]arties can waive arguments and it is incumbent on the parties to choose what motions they file, what arguments they rely on, what evidence they submit and what legal authorities they present." (ECF No. 123 at 113–14.) Larada chose to file a motion seeking "to designate David

1

Washburn as its Technical Advisor *under this matter's Protective Order . . . ."* (ECF No. 134 at 1 (emphasis added).) As has already been explained, Larada is not entitled to the relief it actually sought in its Motion.[1]

    II.    <u>Larada Cannot Meet Its Burden to Show that David Washburn's Examination of the FloSonix Devices Is Necessary.</u>

Generally, "'[t]he party seeking to modify a protective order bears the burden of showing good cause for the modification . . . ." *Mod. Font Applications v. Alaska Airlines*, No. 219CV00561DBBCMR, 2021 WL 364189, at *5 (D. Utah Feb. 3, 2021). But because the parties here agreed to the Protective Order at issue, and because the District of Utah's Local Rules Committee already recognizes the inherent risk of allowing a party's employee to access its opponent's confidential material, the Court should apply a heightened standard. Larada must demonstrate that modification is necessary. *C.f. MSC.software Corp. v. Altair Eng'g, Inc.*, No. CIV.A.07CV12807-DT, 2008 WL 2478313, at *1 (E.D. Mich. June 17, 2008). It cannot meet this standard.

Larada and PHS stipulated and moved the Court to enter the governing Protective Order. (ECF No. 43 at 2.) "Because the parties agreed on the protective order . . . that is currently in place, the standard is not simply to determine whether [Mr. Washburn] is involved in competitive decision-making and whether denying [Mr. Wasburn] access to the confidential

---

[1] Larada also raises a completely new argument in its supplemental briefing. Larada argues that "[t]he Protective Order does not . . . need to be modified for Larada to receive the relief it seeks" because "this Court may designate Mr. Washburn as a Qualified Recipient of AEO in the interest of justice." (ECF No. 141 at 2.) Larada's new argument is wholly inappropriate. Larada never sought to designate Mr. Washburn as a Qualified Recipient. Further, the Court was clear that the purpose of supplemental briefing was to provide the Court with information related to "the standard and burden for **modifying** the [Stipulated] Protective Order" (ECF No. 140 (bold added))—not to raise new argument. Larada's moving target tactic should not be tolerated. Defendants move the Court to strike Larada's unsanctioned argument. If the Court is inclined to consider Larada's new argument, Defendants hereby request an opportunity to respond.

[device] will work a substantial hardship on" Larada.[2] *C.f. MSC.software Corp.*, 2008 WL 2478313, at *1.[3] "Rather, the party seeking the modification must explain why its need for the materials outweighs **existing privacy concerns**." *MSC.software*, 2008 WL 2478313 at *1. (bold added).

As recognized by the District of Utah's Local Rules Committee Members, the existing privacy concerns of allowing a Larada employee to inspect Defendants' devices are self-evident. The Rules Committee, in its wisdom, promulgated the regular use of the Standard Protective Order. The Standard Protective Order forbids parties from designating their own employees as

---

[2] To be sure, even if no protective order were already in place, Larada would not be entitled to have Mr. Washburn examine Defendants' devices. Rule 26 authorizes the Court to protect Defendants from undue burden, including misuse of confidential information by competitors. *See MD Helicopters, Inc*, 2017 WL 495778, at *2 "[T]he relevant determination for denial of access under a protective order is whether an unacceptable opportunity for inadvertent disclosures exists." *Voice Domain Techs*, 2014 WL 5106413, at *3. "This determination turns on the extent to which the person to whom the information is to be disclosed is involved in 'competitive decisionmaking' with the client." *Id*.

Larada and PHS are direct competitors. Washburn, as VP, oversees "product development" for Larada. (*See* ECF No. 134-1 at 1.) This makes him especially situated to take positions directly harmful to PHS should he be allowed to inspect the FloSonix device. Risk of disclosure of PHS's confidential development information is not just high—it is all but guaranteed if Washburn is allowed to inspect the FloSonix device.

If no protective order were already in place, the next step in the analysis would be for the Court to balance the risk of disclosure against the (alleged) harm to Larada. Larada, in a conclusory fashion, argued in its original Motion that Washburn is "necessary to the inspection" because he has "years of in-depth expertise with the [AirAlle] 2.0, having designed numerous iterations of it." (ECF No. 134 at 2.) Similarly, in an email, Larada's counsel argued that "Mr. Washburn is" "familiar with the development of the AirAlle 2.0 device": "Larada provided PHS with both an AirAlle 1.0 and 2.0," "and thus familiarity with both these units is required for an adequate inspection of the FloSonix devices."

But what Larada omitted is that Mr. Washburn began working for Larada in 2017—after the November 2016 date that Larada alleges it "sent a beta version of its second-generation Device to PHS." (FAC ¶ 33.) Mr. Washburn was therefore not even involved in the development of whatever iteration of the device that was sent to PHS in November 2016. Larada's "need" for Washburn rings hollow.

Even if no protective order were already in place, the balance of harms would weigh heavily against allowing Washburn to inspect the FloSonix device.

[3] *See also Hochstein v. Microsoft Corp.*, No. 04-73071, 2008 WL 4387594, at *2 (E.D. Mich. Sept. 24, 2008) ("The burden is especially high where the parties stipulate to the protective order.").

3

Technical Advisors. The Rules Committee's decision to preclude parties from designating their own employees as Technical Advisors evinces the Committee's judgment that risk of inadvertent disclosure is high when a competitive decision-maker is allowed to review an opposing party's confidential material.[4]

Larada has alleged that the FloSonix Device was created to "compete with Larada," (FAC ¶ 59) which would make PHS and Larada direct competitors. Mr. Washburn, as Vice President of Operations for Larada, oversees "product development" for Larada. (*See* ECF No. 134-1 at 1.) He is, by definition, a competitive decisionmaker. "The parties and their attorneys agreed to the protective order now in place which governs the exchange of such confidential information," and who may be designated as a technical advisor. *C.f. MSC.software*, 2008 WL 2478313 at *1. The parties plainly agreed that each other's employees could not be designated as Technical Advisors when they entered into the Stipulated Protective Agreement. Because Larada agreed to this term, it must show that modification of the Stipulated Protective Order to allow Mr. Washburn to examine Defendants' FloSonix devices "is necessary." *C.f. MSC.software*, 2008 WL 2478313 at *1. Larada cannot meet this high standard because it bases its argument on a false premise.

Larada argues that Washburn is "necessary to the inspection" because "PHS had access to AirAllé 1.0 and 2.0 devices," and because "Washburn has years of in-depth expertise with the 2.0, having designed numerous iterations of it." (ECF No. 134 at 2.) But Larada's own counsel represents that "Mr. Washburn was hired by Larada Sciences in **2017**" (ECF No. 138 at 4 (bold added),)—after the date that Larada alleges PHS received a prototype of the second generation AirAllé device.

---

[4] The Stipulated Protective Order that the parties agreed to is very similar to this District's Standard Protective Order. (*Compare* ECF No. 44 *with* The United States District Court for the District of Utah's Standard Protective Order, available at: https://www.utd.uscourts.gov/usdc-forms (last visited June 16, 2021). Both the Stipulated Protective Order and the Standard Protective Order forbid a party's employee from being designated as a Technical Advisor.

4

In the operative Complaint, Larada alleges that "[i]n or around November **2016**, Larada sent a beta version of its second-generation Device to PHS." (FAC ¶ 33, ECF No. 86 at 10 (bold added).) Similarly, at the May 29, 2020 hearing before Chief Judge Shelby, Larada's counsel provided: "I think what the testimony shows is that the conveyance of the device **occurred in 2016** under the 2015 agreements." (ECF No. 123 at 120 (bold added).)

The point is simple. If Mr. Washburn began his employment with Larada in 2017, (as Larada's counsel has represented) he could not have developed whatever iteration of the AirAllé 2.0 device was provided to PHS in 2016. Larada's "need" for Mr. Washburn's attendance at the inspection therefore rings hollow. Larada has not demonstrated that Washburn's inspection is necessary.

In Defendants' view, the Court should strike Claire Roberts and David Washburn's recent declarations, (ECF Nos. 141-1, 141-2,) as they go beyond the scope of the briefing ordered by the Court. But if the Court chooses to consider the unsanctioned declarations, the Court should afford them little, if any, weight. They are conclusory and self-serving. Mr. Washburn suggests it would be impossible to have a third party compare the devices at issue. (ECF No. 141-2 at 2.) Mr. Washburn's assertion is impermissible ipse dixit. Parties before this Court routinely hire outside experts to compare products. Ms. Roberts asserts that Larada has no interest in copying the FloSonix device. If the Court accepts Ms. Roberts' self-serving declaration, any party in any case could simply make a similar representation and have its employees examine a competitor's proprietary devices. The Court should reject Larada's arguments and should award Defendants' their attorneys' fees.

DATED: June 18, 2021.

ARMSTRONG TEASDALE LLP

/s/ *Jose A. Abarca*
Jose A. Abarca
Nicolas C. Wilde
*Attorneys for Defendants*

5

## CERTIFICATE OF SERVICE

I hereby certify that on June 18, 2021, the foregoing **DEFENDANTS' RESPONSE TO PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF SHORT FORM DISCOVERY MOTION** was sent via the Court's electronic filing system to all parties on record.

/s/ *Sarah Nielsen*