Douglas C. Smith (#10805)
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
1218 East 7800 South, Suite 300
Sandy, UT 84094
tel: (801) 251.7341
fax: (801) 562.5510
douglas.smith@lewisbrisbois.com

Peter Stasiewicz (IL No. 6290832) (*pro hac vice*)
**ARCTURUS LAW FIRM**
211 West Wacker Drive # 323
Chicago, Illinois, 60606
tel: (312) 957-6194
fax: (312)
pete.stasiewicz@arcturuslaw.com

---

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF UTAH, CENTRAL DIVISION**

---

| | |
|---|---|
| **LARADA SCIENCES, INC., a Delaware Corporation,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**PEDIATRIC HAIR SOLUTIONS CORPORATION, a North Carolina Corporation, JOHN E. FASSLER, M.D., SHEILA M. FASSLER, and FLOSONIX VENTURES, LLC,**<br><br>**Defendants.** | **RESPONSE TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>**Case No.: 2:18-cv-00551-RJS-PMW**<br><br>**Judge Robert J. Shelby**<br><br>**Magistrate Judge Jared C. Bennett** |

Plaintiff Larada Sciences, Inc. hereby responds to Defendants' Motion for Judgment on the

Pleadings. None of Defendants' arguments have merit, and the Motion should be denied in its

entirety.

**ADDITIONAL FACTS**

In addition to the facts listed in Defendants' Motion, Larada provides the following additional paragraphs from its First Amended Complaint, verbatim.

32. Larada was not aware that by late 2014, PHS and the Fasslers had begun planning to use Larada's Device to create a competing duplicate. Larada was also not aware that before the end of 2016 PHS had sent at least one of Larada's Devices to an engineering firm to use to design a competing device.

35. Also around this time, without Larada's knowledge or approval, Dr. Fassler and Sheila Fassler met with a group of Larada's licensees to discuss ways of competing with Larada. Larada did not know about this meeting until after the filing of the initial Complaint of this matter.

36. On or about February 1, 2017, PHS's President, Sheila Fassler, sent an email to Claire Roberts, Larada's Chief Executive Officer, acknowledging that PHS had not made its payments "in a timely fashion," because it was "trying to get a loan," and had been advised to "keep [its] revolving debt low and [its] cash flow high.

38. Also at that February 10, 2017 meeting, Sheila Fassler and Dr. Fassler, on behalf of PHS, demanded that Larada drastically and retroactively reduce its per-treatment use fee if Larada wanted PHS to become current with its payments.

39. Dr. Fassler threatened that PHS would go into direct competition with Larada if Larada did not accede to PHS's demands.

40. Although Larada was not aware of it at the time, PHS and the Fasslers had no intention of catching up on their royalty payments, as they had already begun the process of reverse-engineering Larada Devices by sending at least one of the Devices to an outside design firm and using other Larada know-how in order to assemble the original FloSonix Device.

52. PHS has failed to take the required steps to dissociate itself from Larada including, but not limited to, failing to remove all references to Larada and/or its Marks, Devices, and/or other Intellectual Property from its online marketing materials and internet websites for which PHS has the authority or ability to do so.

56. Despite Dr. Fassler's insistence that Larada's Devices were little more than "heated air," PHS's website describes the FloSonix as delivering "heated air through the hair in a timed and specific pattern," just like the Larada Devices.

130. PHS's commercial marketing of its services on its social media sites, which are offered in the same channels of commerce and to the same class of consumers as the services associated with the AIRALLÉ mark, is aimed at and occurs across state lines and via the internet to consumers in all fifty states.

133. PHS's use of the AIRALLÉ mark is likely to cause confusion or mistake among ordinary consumers about the source, sponsorship, affiliation, connection, association, and/or approval of the goods and services offered by PHS, by creating false, deceiving, and/or misleading impression(s) that such goods and services are created by Larada, and/or are sponsored by, affiliated with, or approved by Larada. Such confusingly similar use constitutes trademark infringement and unfair competition in violation of the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a).

## ARGUMENT

**I.  Trespass to Chattels Is Recognized In Both Utah and North Carolina, And Larada Has Adequately Alleged That Claim.**

Defendants argue that Utah doesn't recognize a trespass to chattels claim, and that Larada hasn't alleged it adequately anyway.

First, it is not at all clear that Utah law would necessarily apply to Larada's trespass to chattels claim. Defendants correctly note that a federal court sitting in Utah should apply the "most significant relationship" test in deciding what law applies to tort claims. However, in cases like this one where there is an injury to property, the state where the injury to property occurred should be the place where the injury took place. RESTATEMENT (SECOND) CONFLICT OF LAWS § 147. Here, that injury occurred in North Carolina. The conduct causing the injury was done by Defendants who are all located in North Carolina, and they have failed to return Larada's chattel which was being used by the North Carolina defendants. That injury is unlikely to be outweighed by the fact that Larada is a company in Utah.

But regardless of whether Utah or North Carolina law applies, it should be clear that trespass to chattels remains a valid cause of action in either state. Under North Carolina law, the elements of trespass to chattels are: (1) that the plaintiff had "actual or constructive possession of the personalty or goods in question at the time of the trespass"; and, (2) that there was an "unauthorized, unlawful interference or dispossession of the property." *See Shontay House v. Fed. Home Loan Mortg. Corp.*, 261 F. Supp. 3d 623, 636 (E.D.N.C. 2016) (citing *Fordham v Eason*, 351 N.C. 151, 155, 521 S.E.2d 701, 704 (1999); *Motley v. Thompson*, 259 N.C. 612, 618, 131 S.E.2d 447, 452 (1963).

There is no basis to believe that Utah has ceased to recognize this tort. *Walker v. Union Pac. R. Co.*, 844 P.2d 335, 343 n.9 (Utah App. Ct. 1992) states in dicta that the tort has fallen into "general disuse" – hardly a statement that the cause of action is not recognized. In fact, *Walker* implicitly acknowledges the tort's continued validity by stating that damages must be alleged, citing PROSSER AND KEETON ON THE LAW OF TORTS. The successor LAW OF TORTS treatise, taken over by Professor Dobbs, still recognizes the trespass to chattels tort. "The tort of trespass to

4

chattels . . . is committed by intentionally interfering with the plaintiff's possession in a way that causes legally recognizable harm. The defendant may interfere with the chattel by interfering with the plaintiff's access or use[1] or by causing actual harm to the chattel." Dan B. Dobbs et al, THE LAW OF TORTS § 60 (2d ed.) *See also* PROSSER AND KEETON ON THE LAW OF TORTS § 14 (5th ed. 1985) ; RESTAT 2D OF TORTS, § 217 ("A trespass to a chattel may be committed by intentionally (a) dispossessing another of the chattel, or (b) using or intermeddling with a chattel in the possession of another.")

Larada has adequately pleaded a cause of action for trespass to chattels. It is true that damages must be alleged. *Walker v. Union Pac. R. Co.*, 844 P.2d 335, 343 n.9 (Utah App. Ct. 1992). But in *Walker*, the plaintiff alleged no damage at all. As noted above, *Walker* cited to PROSSER AND KEETON.  That source goes on to say ". . . to the extent that any loss of possession by the plaintiff is regarded as necessarily a loss of something of value, even if only for a brief interval . . . the requirement of actual damage is satisfied." PROSSER AND KEETON ON THE LAW OF TORTS § 14, P. 87. (5th ed. 1985); *accord* Dobbs et al, THE LAW OF TORTS § 60 (2d ed.) "Three kinds of harm are sufficient to make a trespass to chattel claim actionable. These are: (1) actual dispossession, which implies that the plaintiff's access to the chattel is barred or substantially limited for something more than a few moments;[11] (2) physical harm to the chattel; or (3) physical harm to the plaintiff or to someone or something in which the plaintiff had a legal interest."

Larada's allegations clearly fall into the dispossession category. PHS possessed a device belonging to Larada, and denied Larada access to the chattel for something more than a few moments – in this case, years, and counting. (FAC ¶¶ 104-107). Larada has adequately alleged a hornbook common law tort and PHS is clearly on notice of what Larada is alleging. Defendants' motion for judgment on the pleadings as to the Fifth Cause of Action should be DENIED.

II. **Larada Has Alleged An Implied Covenant of Good Faith and Fair Dealing Distinct From Its Contract Claims.**

Utah contracts generally contain an implied covenant of good faith and fair dealing. Under the implied covenant of good faith and fair dealing, each party impliedly promises that it will not intentionally or purposely do anything which will destroy or injure the other party's right to receive the fruits of the contract. *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 199-200 (Utah 1991)(citing *Bastian v. Cedar Hills Investment & Land Co.*, 632 P.2d 818, 821 [*200] (Utah 1981). The purpose, intentions, and expectations of the parties should be determined by considering the contract language and the course of dealings between and conduct of the parties. *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 200 (Utah 1991).

Defendants maintain that Larada's claim for breach of implied covenant of good faith and fair dealing is duplicative of Larada's express breach of contract claim, but this is not so. Larada's complaint alleges actions taken by PHS that go beyond any express provisions contemplated by the License Agreements. For example, Larada had no knowledge of PHS's attempts to create a competing device, efforts which dated back to 2014. (FAC ¶ 32). Defendants attempted to renegotiate their payment structure with Larada under a wrongful pretense that they were attempting to acquire loans and were tight on cash. (FAC ¶ 36) Unbeknownst to Larada, Defendants were actually moving forward rapidly on those competing devices based on the Larada device. (FAC ¶ 40). PHS's wrongful withholding of funds and sham negotiations not only denied Larada money it was due under the License Agreements, but it also bought PHS time and freed up funding for the development of the competing device. (*See* FAC ¶ 40). Furthermore, the retention of the device and Larada consumables provided PHS with information needed to design and produce a new product based on Larada's Device. (*See id.*, ¶¶ 40, 51).

6

Taken together, these allegations evidence an implied duty to not have PHS manipulate the relationship with Larada to buy time to develop a competing device, based on Larada's Device, without notice to Larada, and funded in part by money that was owed to Larada. It is this wrongful action by Defendants that led to Larada being deprived of the benefits of the License Agreements.

The First Amended Complaint adequately states a claim for breach of implied covenant of good faith and fair dealing, and the motion for judgment on the pleadings should be DENIED as to the Third Cause of Action.

### III.  Larada Has Adequately Alleged All Elements Of Trademark Infringement.

Finally, Defendants claim that Eighth Cause of Action, for federal trademark infringement and unfair competition, fails to state a claim.

Defendants first argue that Larada only makes a conclusory allegation regarding Defendants' use of Larada's AIRALLÉ mark. However, Defendants ignore the allegations in Paragraph 52 of the First Amended Complaint, which allege that PHS failed to remove references to Larada's Marks (including its Trademark, AIRALLÉ) on its "online marketing materials and internet websites." Defendants also ignore Paragraph 133 of the First Amended Complaint, which expands on PHS's use of Larada's trademarks in their online materials, noting that PHS's social media sites are "offered in the same channels of commerce and to the same class of consumers as the services associated with the AIRALLÉ mark. (FAC ¶ 133). These allegations are more than sufficient to place PHS on notice of the claim it is defending against.

Defendants argue that they do not know "which of Defendants' products or services" they are alleged to have used the AIRALLÉ trademark in connection with – but Defendants offer only one service – the treatment of lice with a heated air device that looks remarkably similar to Larada's (FAC ¶ 39, 56).

Moreover, Larada does not claim that PHS was using a "similar" mark that could create confusion – Larada alleges that PHS was using its *identical* mark. (FAC ¶ 52).  The possibility of confusion from a company in the same business as Larada, using similar products as Larada, using Larada's *actual* trademark, must be patently obvious.

Accordingly, Larada has adequately alleged a claim for trademark infringement, and the motion for judgment on the pleadings as to the Eighth Cause of Action should be DENIED.

## CONCLUSION

For the foregoing reasons, Larada respectfully requests that PHS's Motion for Judgment on the Pleadings be DENIED in its entirety.

DATED this 29th day of November 2021.

/s/Peter M. Stasiewicz
Peter Stasiewicz
ARCTURUS LAW FIRM.

Douglas C. Smith
LEWIS BRISBOIS BISGAARD & SMITH LLP

*Attorneys for Plaintiff Larada Sciences, Inc.*

8

9

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct of copy of the foregoing **RESPONSE TO MOTION FOR JUDGMENT ON THE PLEADINGS** was served to the following this 29th day of November 2021, in the manner set forth below:

[ x]    Through the CM/ECF System for the U.S. District Court
[  ]    Hand Delivery
[  ]    U.S. Mail, postage prepaid
[  ]    E-mail

Romaine C. Marshall
Jose A. Abarca
Nicolas C. Wilde
Armstrong Teasdale LLP
201 South Main Street, Suite 2400
Salt Lake City, Utah 84111
Telephone: (720) 200-0676
rmarshall@atllp.com
jabarca@atllp.com

/s/ Peter M. Stasiewicz

9