Douglas C. Smith (#10805)
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
1218 East 7800 South, Suite 300
Sandy, UT 84094
tel: (801) 251.7341
fax: (801) 562.5510
douglas.smith@lewisbrisbois.com

Peter Stasiewicz (IL No. 6290832) (*pro hac vice* forthcoming)
**ARCTURUS LAW FIRM**
211 West Wacker Drive # 323
Chicago, Illinois, 60606
tel: (312) 957-6194
fax: (312) 489-8307
pete.stasiewicz@arcturuslaw.com

**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| **LARADA SCIENCES, INC.**, a Delaware Corporation,<br><br>**Plaintiffs,**<br><br>v.<br><br>**PEDIATRIC HAIR SOLUTIONS CORPORATION**, a North Carolina Corporation, **JOHN E. FASSLER, M.D., SHEILA M. FASSLER,** and **FLOSONIX VENTURES, LLC,** a Wyoming LLC.<br><br>**Defendants.** | **SUR REPLY ON MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**<br><br>Case No.: 2:18-cv-00551<br><br>Judge Robert J. Shelby<br><br>Magistrate Judge Jared C. Bennett |

Pursuant to this Court's Aug. 17, 2022 Order (Dkt. # 177), Plaintiff Larada Sciences, Inc., ("Larada") hereby submits this sur-reply setting forth the law supporting the use of alter ego theories to assert personal jurisdiction, and the applicability of those theories to proposed defendant FloSonix Ventures, LLC ("FSV").

1

I. **Utah Law Supports the Use of Alter Ego To Establish Personal Jurisdiction Over Foreign Entities.**

Whether a federal court has personal jurisdiction over a nonresident defendant is determined by the law of the forum state. *Yarbrough v. Elmer Bunker Assocs.*, 669 F.2d 614, 616 (10th Cir. 1982). A court may not exercise personal jurisdiction unless it complies with both the forum state's long-arm statute and the Constitution. *Taylor v. Phelan*, 912 F.2d 429, 431 (10th Cir. 1990).

Under the Utah Nonresident Jurisdiction Act ("Act"), courts are to "appl[y] [the Act] so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution." UTAH CODE § 78B-3-201(3). That policy has been explicitly upheld by the Utah Supreme Court. *SII MegaDiamond, Inc. v. Am. Superabrasives Corp.*, 969 P.2d 430, 433 (Utah 2000). Thus, if there is an alter ego theory of jurisdiction that "comports with due process principles, the legislature has already made the policy decision that [Utah courts] must interpret the Act to include it." *See Raser Techs., Inc. v. Morgan Stanley*, 449 P.3d 150, 166 (Utah 2019)(approving theory of imputation of contacts to co-conspirators because the theory comported with due process)

A. *Alter Ego Approaches to Personal Jurisdiction Comport with Due Process.*

Federal courts have long recognized that one defendant's personal jurisdiction analysis may be attributed to another defendant in certain circumstances, including under an alter ego theory. Courts in other circuits have specifically held that imputing contacts via alter ego theories are consistent with due process. *See e.g. In re Commodity Exchange, Inc.*, 213 F. Supp. 3d 631, 680 (S.D.N.Y. 2016); *Minnesota Min. & Mfg. Co. v. Eco Chem, Inc.*, 757 F.2d 1256, 1265 (Fed. Cir. 1985) ("[I]f the corporation is [the defendant's] alter ego, its contacts are his and due process is satisfied").

2

District courts in the Tenth Circuit have exercised personal jurisdiction over an alter ego. *See US Magnesium, LLC v. ATI Titanium LLC*, No. 2:17-cv-923-DB, 2019 WL 1755427, at *4 (D. Utah Apr. 19, 2019) (allegations that a corporation was alter ego of a limited liability company were sufficient to subject the corporation to personal jurisdiction in Utah); *FDIC v. First Interstate Bank of Denver, NA*, 937 F. Supp. 1461 (D. Colo. 1996) (complaint made proper showing of jurisdiction over defendants under theory that defendants were alter-egos of each other; complaint alleged sharing of officers and directors and failure to observe corporate formalities of shareholder board meeting).

The Tenth Circuit has recognized the viability of the alter ego doctrines in the personal jurisdiction context. *Home-Stake Production Co. v. Talon Petroleum, C.A.*, 907 F.2d 1012 (10th Cir. 1990). *Home-Stake* recognized that courts have attributed a corporation's contacts to an individual "alleged to dominate the corporation" for personal jurisdiction purposes, because such imputation "merely reflects the reality that, although the contacts were ostensibly those of the corporation, the true actor was the individual." *Id.* at 1021. *Home-Stake* further acknowledged that the "same situation obtains in cases holding a corporate parent to answer for conduct within the forum carried out by an alter ego subsidiary." *Id.* Thus, there is no general due process bar to imputing contacts to a defendant via an alter ego theory.

### B. Utah Courts Hold that Personal Jurisdiction Can Be Imputed to Third Parties.

In *Raser Techs.*, the Utah Supreme Court expressly acknowledged that minimum contacts can be imputed to an out-of-state defendant for personal jurisdiction purposes when the two are co-conspirators. In expressly adopting this theory, the *Raser* court noted "the acts of a third-party—such as an agent—can, in some circumstances, provide a basis to exercise jurisdiction over an out-of-state defendant." 449 P.3d at 167-68. (examining *Walden v. Fiore*, 571 U.S. 277 (2014) and *Calder v. Jones*, 465 U.S. 783 (1984)). In formulating the conspiracy theory of jurisdiction,

the *Raser Techs.* court included a requirement that the defendant could have reasonably anticipated that the co-conspirator's actions would connect the conspiracy to the forum state in such a way that the defendant could expect to defend itself in the forum, as a reflection of "the bedrock principle that for jurisdiction to comport with due process, an individual defendant's contacts must be 'such that he should reasonably anticipate being haled into court there.'" 449 P.3d at 170 (quoting *World-Wide Volkswagen Corp v. Woodson*, 444 U.S. 286 (1980)).

### C.  Utah Recognizes Alter Ego Liability Theories.

Utah has long recognized alter ego liability theories, although the theory is generally expressed in terms of "veil piercing" rather than alter ego. *See e.g.*, *Dockstader v. Walker*, 510 P.2d 526, 528 (Utah 1973). Classic veil piercing treated a legal entity as an individual's alter ego when the individual abused the corporate form. *Id.*  In *M.J. v. Wisan*, 371 P.3d 21, 36 (Utah 2016), the Utah Supreme Court expressly recognized "reverse veil-piercing," *i.e.* the ability to reach the assets of a corporate entity for the acts of an individual where they have become each other's alter ego. The *Wisan* court recognized that reverse veil piercing had evolved from "a little-recognized theory" to one that "has now gained widespread acceptance" and which followed logically from direct veil-piercing. *Id.* at 35-36.

> Where an individual so abuses the corporate form that it becomes his alter ego, and where honoring its separate existence "would sanction a fraud or promote injustice," it would make no sense for the law to preclude a claimant from treating the two as if they were identical.

*Id*. at 36, (quoting *Grover v. Garn*, 464 P.2d 598, 603 (Utah 1970)). *See also United States v. Badger*, 818 F.3d 563 (10th Cir. 2016)("One can attempt to improperly escape a payment responsibility using any manner of entity, regardless of the formal connection between the two alter egos.")

Whether under direct piercing or reverse piercing theories, Utah law requires the movant to meet a two-part test. *Norman v. Murray First Thrift & Loan Co.*, 596 P.2d 1028, 1030 (Utah 1979). The first part of the *Norman* test requires the movant to show "such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist." *Id.* Second, the test requires the movant to show that observance of the corporate form would sanction a fraud, promote injustice, or condone an inequitable result." *Id.* The *Wisan* court adopted the *Norman* test for reverse piercing inquires, finding they should be parallel. *Wisan*, 371 P.3d at 36.

Larada is not aware of any Utah *state* court decision actually imputing minimum contacts via an alter ego theory. However, the recognition of alter ego liability theories, taken together with *Raser Tech.'s* recognition that third-parties may have minimum contacts imputed from other defendants consistent with due process, and *SII MegaDiamonds* instruction to apply Utah's long-arm statue to the fullest limits of due process, compels a conclusion that alter ego theories are a viable method of imputing personal jurisdiction to an out-of-state defendant under Utah law.

**II. Plaintiff's Allegations Adding FSV as a Defendant Are Not Futile.**

Plaintiff's proposed amendments are not futile. "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal for any reason . . . ." *Watson ex rel. Watson v. Beckel*, 242 F.3d 1237, 1239-40 (10th Cir. 2001)."

### A. FSV is the Alter Ego of PHS, and FSV and PHS are the Alter Egos of the Fasslers Personally.

It is unclear whether a movant would need to comply with both parts of Utah's alter ego under *Norman*. Some courts also found the jurisdictional alter ego standard to be lower than the liability alter ego standard. *See International Equity Invest. v. Opportunity Equity*, 475 F. Supp. 2d 456, 459 (S.D.N.Y. 2007) ("standard is relaxed where the alter ego theory is used not to impose liability, but merely to establish jurisdiction.")(citing *Marine Midland Bank, N.A. v. Miller*, 664

F.2d 899, 904 (2d Cir. 1981). But regardless of whether Larada has to prove only the first prong of the *Norman* test or both for jurisdictional purposes, Larada has met its burden here.

To meet the first *Norman* prong, a movant must show "such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist." *Id*. This requirement is determined by examining seven factors laid out in *Colman v. Colman*, 743 P.2d 782, 786 (Utah Ct. App. 1987). These *Colman* factors include:

> (1) undercapitalization of a one-[person] corporation; (2) failure to observe corporate formalities; (3) nonpayment of dividends; (4) siphoning of corporate funds by the dominant stockholder; (5) nonfunctioning of other officers or directors; (6) absence of corporate records; [and] (7) the use of the corporation as a facade for operations of the dominant stockholder or stockholders....

*Colman*, 743 P.2d at 786. In *Jones & Trevor Mktg., Inc. v. Lowry*, 284 P.3d 630, 636 (Utah 2012), the Utah Supreme Court adopted the *Colman* factors "as useful considerations to aid courts in determining whether to pierce the corporate veil," nevertheless emphasizing that "they are merely helpful tools and not required elements." Indeed, "it is possible that evidence of even one of the *Colman* factors may be sufficient to suggest both elements of a party's alter ego theory and therefore preclude summary judgment." *Id.* at 638.

Here, the *Colman* factors strongly support a finding that PHS and FloSonix are alter egos for Sheila Fassler and John Fassler personally, and that PHS and FloSonix are alter egos of each other.

Some of the *Colman* factors, such as nonpayment of dividends or nonfunctioning of other officers, are only properly applicable to the context of corporations, and not a single-member LLC like FSV. But the other *Colman* factors overwhelmingly favor an alter ego finding. With regard to the second Colman factor, the failure to observe corporate formalities, PHS has been administratively dissolved twice since 2017 by the North Carolina Secretary of State (including

6

once during the pendency of this lawsuit, in 2019), and Dana Buffo, a PHS employee "shared" with PHS (despite FSV having no payroll of its own) was held out as PHS's Chief Operating Officer, although she was never listed as an officer in filings with the North Carolina Secretary of State.

With regard to the seventh factor, the use of the corporation as a facade for operations of the dominant stockholder or stockholders, "[f]ailure to distinguish between corporate and personal property, the use of corporate funds to pay personal expenses without proper accounting, and failure to maintain complete corporate and financial records are looked upon with extreme disfavor." *Citing Roylex v. Langson Bros. Constr. Co.*, 585 S.W.2d at 772." *Colman*, 743 P.2d 782, 790 n.3 (Utah App. 1987).

This seventh factor is the most relevant factor here. The allegations of the Second Amended Complaint ("2AC") allege that development of the FloSonix Device was initiated by the Fasslers, purportedly on behalf of PHS, years prior to the formation of FSV. (2AC ¶ 76) However, the funding for the initial FloSonix Device came from the Fasslers personally. (*Id.* ¶ 77). While FSV is now ostensibly the entity that continues development and marketing of the FloSonix Devices, there is no written evidence of the transfer of the FloSonix Device to FSV (neither from the Fasslers nor from PHS) – also implicating the sixth *Colman* factor. (*Id.* ¶ 78). Additionally, John Fassler has made an undocumented $100,000 loan to FSV, and has stated that money is transferred between the Fasslers, PHS and FloSonix all the time. (*Id.* ¶ 81, 82).

The line between the PHS and FSV entities is further blurred because PHS uses the FloSonix Devices (purportedly belonging to FSV) in its clinics pursuant to an unwritten "oral agreement" entered into by Sheila Fassler on behalf of both companies. (*Id.* ¶ 79). PHS at various times owed undefined sums of money to FSV under that purported agreement. PHS was

7

allegedly unable to keep up with its obligations to FSV. (*Id.* ¶ 80). PHS often pays FSV's obligations to third party designers relating to the FloSonix Device, and vice versa. (*Id.* ¶¶ 83-84). Those third-party designers routinely refer to PHS as the design client for the FloSonix Device. (*Id.* ¶ 85). Although FSV has no employees, at least one PHS employee regularly conducts business related to the development of the FloSonix Device from a PHS email account. (*Id.* ¶ 86), and Sheila Fassler uses multiple email accounts, variously referencing FSV and PHS, to conduct development of the FloSonix Device. These allegations represent the kind activities viewed with "extreme disfavor" under the Colman factors.

The second part of the *Norman* test is also met here. Applying the alter ego doctrine to FSV here is necessary to avoid injustice. The allegations of the Second Amended Complaint demonstrate that FSV was created so that the Fasslers would have a new entity that was not bound by PHS's contractual obligations, including (a) obligations relating to confidential information it had received from Larada that helped create the FloSonix Device, and (b) consent to personal jurisdiction in Utah that was part of the bargain between the parties. Allowing FSV to escape liability here would create an easy method for individuals and entities to avoid such bargained-for contractual obligations. *See also US Magnesium, LLC v. ATI Titanium LLC*, No. 2:17-cv-923-DB, 2019 WL 1755427 * 7-8 (lack of separate financial records noted as factor in finding that denying alter ego jurisdiction would cause inequitable result). Moreover, the undocumented nature of certain liabilities as between the Fasslers, PHS, and FSV may result in Larada being unable to recover damages from the appropriate parties. These are all the types of injustices that the alter ego theory seeks to prevent.

    **B.** *Waivers and Consents to Personal Jurisdiction By Other Defendants Can Be Imputed To FSV.*

"Federal Rule of Civil Procedure 12(h)(1) provides that a party waives the defenses listed in Rule 12(b)(2)–(5), including lack of personal jurisdiction, Rule 12(b)(2), by failing to assert them in a responsive pleading or an earlier motion." *Am. Fid. Assurance Co. v. Bank of N.Y. Mellon*, 810 F.3d 1234, 1237 (10th Cir. 2016).

In addition to imputing minimum contacts, alter ego can also be used to impute waivers of personal jurisdiction. *See Infomart (India), Pvt., Ltd. v. Metrowerks Corp.*, No. 3:04-cv-1299-N, 2005 WL 292433 (N.D. Tex. Feb. 7, 2005) ("When one corporation is the alter ego of another, it is consistent with due process to impute the first corporation's waiver of objection to personal jurisdiction to the other corporation."); *Patin v. Thoroughbred Power Boats Inc*. 294 F.3d 640 (5th Cir. 2002). ("an individual alter ego of a corporation that has waived personal jurisdiction cannot subsequently attempt to negate that waiver."). The Tenth Circuit has also recognized that waiver of personal jurisdiction objections can be imputed, in a similar context of successor liability. *Hetronic Int'l, Inc. v. Hetronic Germany GMBH*, 10 F.4th 1016 (10th Cir. 2021)(citing *Patin* favorably).

PHS has been a defendant in this case from the outset. It has appeared and answered. (Dkt. # 24). Its answer did not raise a personal jurisdiction defense, but rather admitted that it had consented to personal jurisdiction and venue in Utah.  (Dkt. # 24, Ans. ¶ 7). PHS's answer thus waived its personal jurisdiction defense, and both that waiver and the admission of consent to jurisdiction can be imputed to FSV. John and Sheila Fassler were added as parties on May 7, 2020. They subsequently answered without raising a defense of lack of personal jurisdiction. (Dkt. # 117). Accordingly, the Fasslers have also waived any personal jurisdiction defense, and that waiver can also be imputed to FSV.

9

### C. Even If PHS Had Not Waived Objection, PHS's Minimum Contacts Would Be Imputable To Flosonix.

Even if the other Defendants' consents or waivers of any objection to personal jurisdiction were for some reason not imputable to FSV, PHS had a contractual with Larada that was governed by Utah law and had a Utah forum-selection clause. Sheila Fassler agreed to be personally bound by that contract. (2AC ¶¶ 10, 13). PHS made regular payments to Larada in Utah pursuant to that contract, (*Id.* ¶¶ 23, 34) and John and Sheila Fassler traveled to Utah on behalf of PHS in connection with that contractual relationship. (2AC ¶¶ 37, 38). All these contacts may be imputed to FSV. *See e.g. First Interstate Bank,* at 1468 (regular correspondence between plaintiff and forum state defendant was imputed to other defendants via alter ego theory).

### D. Exercising Alter Ego Personal Jurisdiction Over FSV Is Constitutional.

Exercising jurisdiction over FSV in this matter is consistent with due process. In this case, FSV is not simply an unrelated entity that happens to be dominated by a defendant. Here, the allegations establish that FSV has a direct connection to the underlying suit, and was formed to receive the benefits of PHS's contractual relationship with Larada. After its founding, the line between FSV, PHS and the Fasslers continued to be blurred. FSV's use of PHS employees, its payment of PHS's debts, and having PHS pay FSV's debts, all demonstrate that FSV should have reasonably anticipated being haled into a court in a state where PHS and the Fasslers had minimum contacts, consented to jurisdiction, or waived the right to contest personal jurisdiction. *See Raser Techs.* 449 P.3d at 170.

### CONCLUSION

For the foregoing reasons, Plaintiff Larada Sciences, Inc. respectfully requests that this Court GRANT its motion for leave to file its Second Amended Complaint and add FloSonix Ventures, LLC as a party.

10

DATED this 31st day of August 2022.

/s/Peter M. Stasiewicz
Peter Stasiewicz
ARCTURUS LAW FIRM.

Douglas C. Smith
LEWIS BRISBOIS BISGAARD & SMITH LLP

*Attorneys for Plaintiff Larada Sciences, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct of copy of the foregoing **SUR-REPLY ON MOTION FOR LEAVE TO FILE** was served to the following this 31st day of August 2022, in the manner set forth below:

[ x]   Through the CM/ECF System for the U.S. District Court
[  ]   Hand Delivery
[  ]   U.S. Mail, postage prepaid
[  ]   E-mail

    Jose A. Abarca
    Polsinelli
    2825 E. Cottonwood Parkway, Suite 500
    Salt Lake City, UT 84121
    jabarca@polsinelli.com

                                                   */s/* Peter M. Stasiewicz