Romaine C. Marshall (9654)
Jose A. Abarca (12762)
**POLSINELLI PC**
2825 E Cottonwood Parkway, Suite 500
Salt Lake City, UT 84104
rmarshall@polsinelli.com
jabarca@polsinelli.com
*Attorneys for Defendants*

### IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF UTAH

| | |
|---|---|
| LARADA SCIENCES, INC., a Delaware corporation,<br><br>Plaintiff/Counter Defendant,<br><br>vs.<br><br>PEDIATRIC HAIR SOLUTIONS CORPORATION, a North Carolina corporation, et al.,<br><br>Defendants/Counterclaimants. | **DEFENDANTS' SUR-REBUTTAL TO LARADA'S SUR-REPLY ADDRESSING IMPUTATION OF CONTACTS VIA ALTER EGO THEORY**<br><br>Case No. 2:18-cv-00551-RJS-JCB<br><br>Chief Judge Robert J. Shelby<br><br>Magistrate Judge Jared C. Bennett |

Pursuant to this Court's Aug. 17, 2022 Order (ECF 177), Defendants submit this Sur-Rebuttal to Plaintiff Larada Sciences, Inc.'s ("Larada") Sur-Reply (ECF 182) addressing: (1) whether this Court can use alter ego theory as a basis for this Court to assert personal jurisdiction over FloSonix Ventures, LLC ("FSV"); and (2) whether Larada's proposed amendment of its complaint to add previously dismissed FSV as a defendant via this alter ego theory of jurisdiction would be futile.

**A.     This Court should not presume to expand Utah common law by imputing contacts to FSV under an alter ego theory.**

Defendants do not dispute that the question of this court's personal jurisdiction over nonresident Defendant FSV is determined by Utah law.  *See* Sur-Reply (ECF 182) at 2, citing *Yarbrough v. Elmer Bunker Assocs.*, 669 F.2d 614, 616 (10th Cir. 1982).  Nor do Defendants

1

dispute that there is federal authority, including from the Tenth Circuit and its constituent district courts, applying an alter ego theory to satisfy personal jurisdiction requirements. *See* Sur-Reply (ECF 182) at 2-3.

These cases, however, do not address the specific question at issue here: does **Utah** law permit a court to exercise personal jurisdiction over a non-resident LLC based on the theory that the LLC can be reverse-pierced and thereby allow the court to impute an individual defendant's Utah contacts or consent to jurisdiction to the non-resident LLC. Larada's Sur-Reply offers no Utah Supreme Court cases, lower court cases, or other authority directly addressing this subtle legal question. *Id.* at 5 (candidly admitting that "Larada is not aware of any Utah state court decision actually imputing minimum contacts via an alter ego theory.").

In lieu of direct, on-point authority, Larada offers Utah authority recognizing alter ego or veil piercing principles generally, *id.* at 4-5; and a Utah Supreme Court case imputing one conspirator's jurisdictional contacts to another co-conspirator based on common law principles of agency, *id.* at 3, citing *Raser Techs., Inc. v. Morgan Stanley & Co., LLC*, 2019 UT 44, ¶ 76, 449 P.3d 150, 166–67. From these two lines of authority, Larada asks this Court to make the remaining analytical leap to conclude that Utah law permits this Court to exercise personal jurisdiction over a non-resident LLC through imputation of contacts under an alter ego / veil piercing theory. Sur-Reply (ECF 182) at 5.

Controlling Tenth Circuit law does not permit this federal Court to expand state law in this manner.

1. **This federal Court predicts Utah law conservatively.**

First, Larada's concession that the Utah Supreme Court has not addressed the legal issue at bar (using reverse-piercing to impute contacts or consent to jurisdiction to a non-resident LLC) means that this Court must approach this question in an *Erie*-prediction mode. The question is not

whether *this* Court would take the analytical leap that Larada urges; the question is whether the *Utah Supreme Court* would. *E.g. Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 866 (10th Cir. 2003) ("Where no controlling state decision exists, the federal court must attempt to predict what the state's highest court would do"; and describing *Erie* prediction as a "ventriloquial" function).

An additional well-established principle of *Erie* prediction that applies in this situation is that federal courts do not presume to blaze new theories of state law – especially where (as here) the plaintiff had the option of filing its case in state court and could thereby develop state law through ordinary channels. *E.g. Douglas v. York County*, 433 F.3d 143, 149 (1st Cir. 2005) ("It is not our role to expand [state] law; that is left to the courts of [the state]."); *Birchler v. Gehl Co.*, 88 F.3d 518, 521 (7th Cir. 1996) ("plaintiffs desirous of succeeding on novel state law claims [should] present those claims initially in state court.").[1]

The Tenth Circuit has repeatedly applied this principle of federalism in addressing novel issues of Utah law: "We are generally reticent to expand state law without clear guidance from the highest court." *SCO Grp., Inc. v. IBM*, 879 F.3d 1062, 1082 (10th Cir. 2018) (cleaned up, quoting *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1284 (10th Cir. 2013)). In both opinions, the Tenth Circuit

---

[1] Larada's claims in this action are primarily state law claims which it brings here through diversity jurisdiction. Larada's proposed Second Amended Complaint asserts a claim against all Defendants under the federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. 1826; and a Lanham Act claim against Pediatric Hair Solutions Corporation ("PHS"). Neither of these federal claims is subject to exclusive federal jurisdiction, like *e.g.* a patent or copyright claim. Since these DTSA and Lanham Act claims are subject to concurrent state/federal jurisdiction, 28 U.S.C. 1331 and 1332, Larada could have filed this action in Utah state court.

Moreover, Larada is the Utah resident in this litigation, so it did not need to avail itself of diversity jurisdiction to avoid prejudice. *E.g. Wallace v. HealthOne*, 79 F. Supp. 2d 1230, 1232 (D. Colo. 2000) ("The history and purpose of diversity jurisdiction is to provide a neutral forum for out-of-state parties who fear that they will be subjected to local prejudice if forced to litigate as strangers in a state court."); *McPhail v. Deere & Co.*, 529 F.3d 947, 952-56 (10th Cir. 2008) (same, with deeper analysis).

explained how "a party encouraging a federal court to apply a new legal principle under state law must make a 'strong showing' that the highest court of that state would adopt that principle if presented with the question." *SCO*, 879 F.3d at 1083. And in both cases, the Tenth Circuit concluded that it should not presume to expand Utah common law the way one of the parties urged it to. *Id.* at 1283; *Schrock*, 727 F.3d at 1296.

As a result, this Court properly applies a conservative approach to predicting Utah law per the above authorities: this Court discerns Utah law and predicts it where needed, but this Court may not presume to blaze the way by developing new principles of Utah common law – that is the proper province of Utah's courts.

With this approach in mind, this Court should begin by carefully considering exactly how far Utah has gone in its common law development and application of veil piercing principles, and how it has applied those principles to imputing jurisdictional contacts.

**2.    This federal Court should not expand Utah common law by applying veil piercing to LLCs.**

The first prong of Larada's argument is that Utah recognizes veil piercing principles. Defendants acknowledge that Utah courts recognize and apply the common law equitable doctrine of veil piercing **to corporations**. *See* Sur-Reply (ECF 182) at 4-5, citing cases. However, Larada does not cite a single case applying veil piercing principles to LLCs. This does not mean that the Utah Supreme Court would not apply veil piercing principles to LLCs, as other jurisdictions have. But the Court must proceed cautiously on this point by asking *what would the Utah Supreme Court do*, and with mindfulness of its obligation not to create Utah common law.

**a.  Recent Utah legislation forecloses applying veil piercing to LLCs.**

The Utah Supreme Court would begin any analysis of veil piercing for LLCs by looking first to the Legislature. The Utah Supreme Court defers to the Utah State Legislature on policy

matters, so that where the Legislature has spoken on a matter the courts will not presume to speak contrarily.  *E.g. Carter v. Lehi City*, 2012 UT 2, ¶ 50, 269 P.3d 141, 155 (the "legislature's role is to make policy judgments and create law for resolving future cases, and the judiciary's role is to apply that law to specific cases"), citing *Jones v. Barlow*, 2007 UT 20, ¶¶ 34–36, 154 P.3d 808.

The Utah Legislature has recently spoken on the subject of the permeability of an LLC's corporate veil.  In the Utah Revised Uniform Limited Liability Company Act (the "New Utah LLC Act"), effective generally in 2016, the Legislature provided:

> (1) A debt, obligation, or other liability of a limited liability company is solely the debt, obligation, or other liability of the limited liability company. A member or manager is not personally liable, directly or indirectly, by way of contribution or otherwise, for a debt, obligation, or other liability of the limited liability company solely by reason of being or acting as a member or manager. This Subsection (1) applies regardless of the dissolution of the limited liability company.
>
> (2) The failure of a limited liability company to observe formalities relating to the exercise of its powers or management of its activities and affairs is not a ground for imposing liability on a member or manager of the limited liability company for a debt, obligation, or other liability of the limited liability company.

Utah Code § 48-3a-304.

The Utah Supreme Court follows the familiar *we're all textualists now* approach to statutory interpretation, starting and often stopping with the statute's plain language.  *E.g. Scott v. Scott*, 2017 UT 66, ¶ 22, 423 P.3d 1275, 1281 ("Since the best evidence of the legislature's intent is the plain language of the statute itself, we look first to the plain language of the statute.... When we can ascertain the intent of the legislature from the statutory terms alone, no other interpretive tools are needed, and our task of statutory construction is typically at an end.") (cleaned up, quoting *Bagley v. Bagley*, 2016 UT 48, ¶ 10, 387 P.3d 1000)).  The plain language of section 48-3a-304 precludes applying the common law doctrine of veil piercing to LLCs.

Perhaps the Utah Supreme Court might see fit to undertake some sort of alternative statutory construction in order to interpret this statutory provision as permitting veil piercing

5

principles to apply to LLCs under the New Utah LLC Act. Or perhaps the Utah Supreme Court might signal to the Legislature that it should reconsider this legal issue. Either way, such a course is for the Utah Supreme Court – not a federal court predicting Utah law. *SCO*, 879 F.3d at 1083; *Douglas*, 433 F.3d at 149.

### b. Utah courts have not applied veil piercing to LLCs.

Additionally, there is no Utah common law of applying veil piercing to LLCs either before or after then enactment of the New Utah LLC Act.

The Utah Supreme Court has never addressed the application of veil piercing to LLCs. In *Yuanzong Fu v. Rhodes*, 2015 UT 59, ¶¶ 10-11, 355 P.3d 995, 997–98, the high court summarily affirmed a judgment that pierced an LLC's veil to reach individual LLC members, but **only** because the LLC and its members never objected or raised any arguments about veil piercing in the trial court. *Rhodes* is a pure waiver case; it does not address veil piercing at all.

The Utah Court of Appeals has similarly never applied principles of veil piercing to LLCs. In earlier intermediate appellate cases, before the New Utah LLC Act, the Utah Court of Appeals "assumed" that corporate principles of veil piercing could be applied to LLCs, but the courts there affirmed the trial court's <u>rejection</u> of the doctrine. *Lodges at Bear Hollow Condominium Homeowners Association Inc. v. Bear Hollow Restoration, LLC*, 2015 UT App 6, ¶ 21, 344 P.3d 145, 151–52. In a case that followed shortly after *Bear Hollow,* the Court of Appeals specifically noted that how *Bear Hollow* "assumed" the doctrine could apply but did not apply it; and the appellate court similarly affirmed the trial court decision not to apply the doctrine in the case at bar. *Simons v. Park City RV Resort, LLC*, 2015 UT App 168, 354 P.3d 215, 218, n.3 (affirming trial court's rejection of veil piercing claim against LLC). The same results occurred in *d'Elia v. Rice Dev., Inc.,* 2006 UT App 416, ¶¶ 30-34, 147 P.3d 515, 522–23 (affirming trial court's rejection of veil piercing claim against LLC); and *Eskelsen v. Theta Inv. Co.,* 2019 UT App 1, ¶¶

31-32, 437 P.3d 1274, 1283 (affirming trial court's rejection of veil piercing claim as to LLC). Thus, no published Utah decision has applied veil piercing to an LLC before the enactment of Utah Code § 48-3a-304.

The Utah Court of Appeals has decided two relevant cases since the enactment of Utah Code § 48-3a-304. In *H&P Investments v. iLux Capital Management LLC*, the Utah Court of Appeals applied the above statutory language of Utah Code § 48-3a-304 to <u>reverse</u> a trial court's judgment assessing individual liability on an LLC's members, albeit without discussing veil piercing. 2021 UT App 113, ¶¶ 50-51, 500 P.3d 906, 920. And in *Diversified Striping Systems Inc. v. Kraus*, 2022 UT App 91, ¶ 74, the Court of Appeals affirmed a trial court's decision to hold LLC members personally liable for the LLC's liability based on the members' breach of fiduciary duty – not based on veil piercing principles.

As a result, while the Utah state courts have seen their share of cases in which a party sought to develop Utah common law by applying corporate veil piercing principles to LLCs, no Utah court has actually addressed and approved of the practice. And while applying veil piercing principles to LLCs might seem like an ordinary course common law development, it is either foreclosed or at least highly questionable in light of Utah Code § 48-3a-304 and the Utah Supreme Court's commitment to plain language statutory interpretation and deference to legislative policy choices. This is not to say that, if presented with the issue, the Utah Supreme Court *might* not somehow reason its way around the statutory language and expand Utah common law by holding that veil piercing applies to LLCs just like corporations. (Indeed, the Utah Supreme Court might simply signal to the Legislature that it should consider revising the New Utah LLC Act to permit veil piercing for LLCs.) But since Larada has made no showing, let alone the required "strong showing," that this is what the Utah Supreme Court would do, any such expansion of Utah common

law is for Utah state courts, not federal courts in this *Erie*-prediction posture – especially where, as here, Larada (a Utah resident) could have filed this action in state court. *SCO*, 879 F.3d at 1083; *Douglas*, 433 F.3d at 149.

### 3. The Court should not expand Utah common law by applying veil piercing as a basis for imputing jurisdictional contacts.

The second prong of Larada's argument is similarly lacking. Larada offers the Utah case of *Raser Technologies, Inc. v. Morgan Stanley*, 449 P.3d 150, 166 (Utah 2019) as "approving theory of imputation of contacts to co-conspirators because the theory comported with due process." Sur-Reply (ECF 182) at 2, 3-4.[2]

As relevant here, *Raser* does not generally approve of using veil piercing principles to impute one defendant's jurisdictional contacts to another defendant, as Larada suggests. Rather, *Raser* uses <u>agency</u> principles for this imputation. 449 P.3d at 166-68 (explaining how conspiracy liability is based on agency principles because conspirators, as principals, voluntarily assume liability for acts of all other co-conspirators, as agents). The law governing LLCs, by contrast, functions in the opposite direction. A person forms an LLC precisely to create a new and legally distinct entity, and thereby <u>prevent imputation</u> of the LLC's actions and resulting liability to its member. Utah Code § 48-3a-304. Again, in this Court's conservative *Erie*-predictive posture, it must leave any such extraordinary development of Utah common law to Utah courts. *SCO*, *supra*; *Douglas*, *supra*.

### B. Larada's claims against FSV would be subject to dismissal.

A proposed amendment is futile if the complaint, as amended, would be subject to

---

[2] *Raser* emphasizes how courts must separately analyze "each defendant's connections to the forum in relation to those claims," rather than analyze personal jurisdiction on some kind of collective basis. *Id.* at 164. That was precisely what this Court correctly did in dismissing FSV two years ago. ECF 126.

dismissal for any reason." *Watson ex rel. Watson v. Beckel,* 242 F.3d 1237, 1239-40 (10th Cir. 2001).  Larada's claims against FSV in the proposed Second Amended Complaint (ECF 160-1) would indeed be subject to dismissal under Rule 12.

Larada's proposed Second Amended Complaint asserts ten claims; and it is not always clear which claims are asserted against which Defendants.  But a careful reading of the proposed complaint indicates that Larada asserts four claims against FSV: (1) breach of Larada's contracts with PHS; (2) conversion; (3) unjust enrichment; and (4) misappropriation of trade secrets under 18 U.S.C. § 1836.  ECF 160-1 at 19-27.

Not one of these four claims discusses FSV's actions, or explains how FSV committed the alleged tort or breach.  For example, Larada's first claim for breach of contract is stated entirely against PHS, the only party to the License Agreements and Lease Agreement at issue.  *Id.* at 19-20, ¶¶ 101-111.  Likewise with the other claims.

Assuming that this Court were to apply veil piercing principles to acquire personal jurisdiction over FSV, that does not mean that FSV can be counterfactually treated as a party to contracts that it is not a party to, or as having committed torts that it did not participate in.  Utah law makes clear that:

> An alter ego defendant has no separate primary liability to the plaintiff. **An alter ego claim is not itself a claim for substantive relief,** e.g., breach of contract or to set aside a fraudulent conveyance, but rather, procedural, i.e., to disregard the corporate entity as a distinct defendant and to hold the alter ego individuals liable on the obligations of the corporation.

*Bushnell v. Barker*, 2012 UT 20, ¶ 13, 274 P.3d 968, 971 (cleaned up, emphasis added).  As a result, Larada's attempt in its Second Amended Complaint to allege that FSV is substantively liable for contract breaches and torts fails as a matter of law.

Perhaps there is a legally cognizable way that Larada might articulate a reverse-piercing claim against FSV under Larada's alleged facts, but the proposed Second Amended Complaint

9

does not do this. Defendants need not and the Court should not tell Larada how to plead its claims. "Our adversary system of justice relies on the parties to identify the 'claims' presented for judicial decision. At the trial court level, we treat the plaintiff as the 'master of the complaint.' That means that the plaintiff has the prerogative of identifying the claims or causes of action she seeks to sustain in court. And we honor the plaintiff's prerogative." *Ramon v. Nebo Sch. Dist.*, 2021 UT 30, ¶ 16, 493 P.3d 613, 618. *Accord Nicodemus v. Union Pac. Corp.*, 440 F.3d 1227, 1232 (10th Cir. 2006) (discussing same "master of the complaint" rule under federal law, in context of triggering federal jurisdiction). Accordingly, Defendants will not conjecture whether or how Larada might cure this fatal problem with its proposed Second Amended Complaint in a hypothetical third amended complaint. Defendants simply note that:

- Larada filed this action in July 2018 (ECF 2);

- The deadline for amending pleadings was in April 2019 (ECF 73 at 4);

- Larada acknowledged on the record (at the May 29, 2020 TRO hearing) that FSV might be an alter ego of PHS (ECF 123 at 59);

- In September 2020 this Court properly dismissed Larada's claims against FSV for lack of personal jurisdiction (ECF 126);

Now, two years later, and three-and-a-half years after the deadline for amending pleadings, Larada tries again to add FSV as a defendant through a proposed amended complaint that fails to state a legally cognizable claim against FSV. Larada has had more than ample opportunity to get its legal ducks in a row.

## **CONCLUSION**

For the foregoing reasons, this Court should decline to expand Utah common law to recognize alter ego claims against LLCs and imputation of jurisdictional contacts via veil piercing; this Court should find that Larada's latest attempt to add FSV as a defendant is futile; and as a result, this Court should deny Larada's motion for leave to file a Second Amended Complaint.

DATED this 14th day of September 2022.

**POLSINELLI PC**

*/s/ Jose A. Abarca*
Romaine C. Marshall
Jose A. Abarca
*Attorney for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on September 14, 2022, I caused a true and correct copy of foregoing document to be served on all parties to this action via CM/ECF.

*/s/ Kaitlin Morgan*
