IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| LARADA SCIENCES, a Delaware corporation,<br><br>        Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>PEDIATRIC HAIR SOLUTIONS, a North Carolina corporation, et al.,<br><br>        Defendants/Counterclaimants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:18-cv-00551-RJS-JCB<br><br>Chief Judge Robert J. Shelby<br><br>Magistrate Judge Jared C. Bennett |

Now before the court is Plaintiff Larada Sciences' Motion for Partial Summary Judgment.[1]  As explained below, the court concludes Larada is entitled to summary judgment on the identified claim but is not presently entitled to its requested fees and costs.  The Motion is thus GRANTED in part and DENIED in part.

## BACKGROUND[2]

Larada manufactures and markets devices that treat "head lice through a patented method of applying heated air to the scalp."[3]  It licenses the devices to head-lice treatment clinics.[4]

---

[1] ECF 192, *Plaintiff's Motion for Partial Summary Judgment* (*Motion*).

[2] Unless otherwise indicated, the recited facts are not in dispute.  The court views the facts in the light most favorable to Defendants and resolves all factual disputes and reasonable inferences in their favor. *Duda v. Elder*, 7 F.4th 899, 905 (10th Cir. 2021).  Moreover, the court assumes the parties' familiarity with this case and focuses on the facts most relevant to the Motion.  The court has provided a more complete recital of the factual background and procedural history in past orders.  *See, e.g.*, ECF 186, *Memorandum Decision and Order Granting Larada's Motion for Leave to File Second Amended Complaint* at 2–11.

[3] ECF 86, *First Amended Complaint* ¶ 15.

[4] *Id.* ¶ 17.

Defendant Pediatric Hair Solutions (PHS) "is a family-owned and operated business" founded by Defendant Sheila Fassler.[5]  PHS operates head-lice treatment clinics in several states.[6]

**The License Agreements**

On August 31, 2015, Larada and PHS entered into several License Agreements allowing PHS to use Larada devices at PHS clinics in Georgia, North Carolina, South Carolina, and Ohio.[7]  Under the Agreements, Larada provided at least twenty-five devices to PHS.[8]

The License Agreements required PHS to pay a "per-treatment use fee of $25 for each treatment" (Use Fee).[9]  Use Fees were due "on or before the tenth business day of the month following the month in which the Use Fee was calculated."[10]

Some Agreements were also subject to a "License Payment," which is a "one-time, non-refundable payment" PHS had to pay Larada to enter into a License Agreement.[11]  Although the License Payments were a precondition, Larada allowed PHS to make payments in "monthly installments of $2,500 over the course of the Agreement."[12]  Altogether, the License Payments totaled $65,000.[13]

Section 9(b) of the License Agreements permits Larada to "charge interest on the missing or late payment at the greater of eighteen precent (18%) per annum or the maximum amount

---

[5] ECF 201, *Defendant Pediatric Hair Solutions Corporation's Response in Opposition to Larada Science, Inc.'s Motion for Partial Summary Judgment* (*Opposition*) at 3.

[6] *See* ECF 192-4, *Motion: Group Exhibit 1* (*License Agreements*).

[7] *Motion* ¶ 1; *see also License Agreements*.

[8] *Motion* ¶ 2.

[9] *License Agreements* at 3 (capitalization omitted) (Section 5(a)).

[10] *Id.* at 7 (Section 9(a)).

[11] *See, e.g., id.* at 3 (Section 5(a)); *id.* at 5 (Section 7(x)).

[12] *Motion* ¶ 3.

[13] *Id.*

permitted by the law of the state" where PHS is located.[14]   Under Section 13(a)(iii), Larada could

terminate a License Agreement without allowing PHS to cure if Larada was "unable to charge

[PHS's] credit card for any amount due [under the Agreement] within ten (10) days after

receiving notice that such fees or amounts [were] overdue."[15]   Additionally, Section 18(o) states

that if either party "brings any action in reference to" the Agreements, "the 'Prevailing Party' in

such action shall be awarded all reasonable attorneys' fees, expert witness fees, court costs and

discovery costs incurred."[16]   "Prevailing Party" is defined as the party "that has prevailed on a

majority of the issues decided by the trier of fact, law or equity."[17]

Also relevant is Exhibit C to each License Agreement.[18]   Exhibit C explains concerns

Larada has with devices known as "The Lice Device" or "The Dehydration Station."[19]   It then

states if those devices "or any other device that uses heated air to eradicate head lice" is "legally

[and] commercially operated" on August 31, 2017, then PHS may "unwind" the License

Agreements and "receive a refund of all collected" License Payments and machine deposits.[20]

PHS was required to provide Larada notice if it intended to invoke Exhibit C.[21]

---

[14] *License Agreements* at 7 (Section 9(b)).

[15] *Id.* at 12 (Section 13(a)(iii)).

[16] *Id.* at 16 (Section 18(o)).

[17] *Id.*

[18] *See, e.g.*, *id.* at 21 (Exhibit C).

[19] *Id.*

[20] *Id.*

[21] *Id.*

**PHS's Missing Payments**

On February 1, 2017, Sheila Fassler emailed Larada CEO Claire Roberts to discuss payments.[22]  Fassler explained she "had to delay paying [her] usage fees in a timely fashion" because she was "trying to get a loan."[23]  She stated she "should be able to pay both December and January usage fees no later than the end" of February 2017.[24]  Roberts responded on February 12, stating "treatment fees" were "past due" and the License Agreements would be terminated if payment was not made in ten days.[25]

On February 17, PHS sent Larada a letter proposing the parties settle their disagreement by "restructuring" the Use Fees from January 1, 2017, forward.[26]  The letter also quoted Exhibit C to the License Agreements and explained PHS believed it would "have the right to terminate its agreements with [Larada] and demand a refund in full of its license fees."[27]  PHS further offered to negotiate removing Exhibit C in exchange for a "significant reduction" in the License Payments.[28]

Larada responded on February 22, declining to negotiate and demanding payment.[29]  PHS replied it would not make the January 2017 payment because if Larada agreed to

---

[22] ECF 192-7, *Motion: Exhibit 4* (*Feb. 2017 Emails*) at 2. PHS does not dispute Fassler sent the February 1, 2017 email, but it disputes Larada's characterization "to the extent it is inconsistent with the language" of the email. *Opposition* at 2.  The court quotes the email or otherwise describes it in a way consistent with its language.

[23] *Feb. 2017 Emails* at 2.

[24] *Id.*

[25] *Id.* at 1 (citing *License Agreements* at 12 (Section 13(a)(iii))).  As with Fassler's email, PHS does not dispute Roberts sent the February 12, 2017 email but rather disputes Larada's characterization.  *Opposition* at 2.  The court quotes the email and describes it consistently with its language.

[26] *Opposition* at 6; *see also* ECF 199-1 at 10–14, *Opposition: Exhibit 1 to Exhibit A* (*Feb. 17, 2017 Letter*).

[27] *Opposition* at 6; *Feb. 17, 2017 Letter* at 13.

[28] *Opposition* at 6–7; *Feb. 17, 2017 Letter* at 13.

[29] *Opposition* at 7; *Motion* ¶ 7.

restructure, the change would retroactively apply to January 1, 2017.[30]  PHS also offered to place

the January 2017 fees in escrow while the parties negotiated, but Larada refused the offer.[31]

On March 10, 2017, Larada terminated the License Agreements, demanded PHS return

the devices, and informed PHS it owed Larada $33,960.[32]  In May 2017, Larada prepared a

statement reflecting the amount PHS owed under the License Agreements[33]:

| | |
|---|---|
| Orders Fees | $      560.00 |
| January 2017 Use Fees | $ 19,425.00 |
| February 2017 Use Fees | $ 15,225.00 |
| March and April 2017 Use Fees | $ 29,600.00 |
| License Payments | $ 20,000.00 |
| Security Deposit Refund | $  (4,800.00) |
| Total Due | $ 80,010.00 |

PHS does not argue Larada incorrectly calculated these amounts.[34]  Nor does PHS argue it paid

these amounts to Larada.[35]

On October 4, 2017, PHS sent Larada a letter, stating Larada had breached the License

Agreements by offering a "home use device for sale."[36]  It also stated the conditions provided in

---

[30] *Opposition* at 7.

[31] *Id.*

[32] *Id.*; *see also* ECF 192-5, *Motion: Exhibit 2* (*Termination Notice*).  Larada states it received twenty-four devices back, while PHS states it returned all twenty-five.  *Compare Motion* ¶ 10, *with Opposition* at 8.  This dispute is not material, so the court does not address it further.

[33] *Motion* ¶¶ 11–16; ECF 192-6, *Motion: Exhibit 3* (*Statements*) at 1.  PHS does not dispute Larada "prepared a statement dated May 18, 2017 characterizing amounts Larada claims PHS owed under the License Agreements." *Opposition* at 3.  However, it disputes Larada's characterization of the statement "to the extent it is inconsistent with the language contained therein." *Id.*  The court has reproduced the statement as reflected in Larada's exhibit and thus discerns no dispute.

[34] *Opposition* at 2–3.

[35] *Id.*

[36] ECF 199-1 at 18–20, *Opposition: Exhibit 3 to Exhibit A* (*Oct. 4, 2017 Letter*) at 19.

Exhibit C were met and Larada was thus required to refund PHS's License Payments.[37]  Larada did not refund PHS.[38]

The parties appear to dispute the content of the October 2017 letter.  PHS's Opposition gives the impression it invoked Exhibit C in the October 2017 letter because a California company, Picky Pam at the Beach LLC, was legally and commercially operating The Dehydration Station.[39]  But as Larada points out, the letter does not reference Picky Pam and instead states Larada breached the License Agreements by "offering [a] home use device for sale."[40]  PHS includes other letters from its attorney to Larada, but they likewise reference Larada's sale of a home use device, not Picky Pam.[41]  Accordingly, if PHS intended to argue the October 2017 letter invoked Exhibit C because of Picky Pam, the court doubts a rational jury could read the letter that way.[42]  Regardless, this fact is immaterial.  The parties' disagreement is ultimately about whether the letter provided the notice required by Exhibit C.[43]  As explained below, the court concludes that even if Exhibit C's conditions (including notice) were met, Larada is still entitled to partial summary judgment.[44]

---

[37] *Id.*

[38] *Opposition* at 9.

[39] *See id.* at 8–13.

[40] *Oct. 4, 2017 Letter* at 19.  The court previously concluded Larada did not breach the License Agreements by offering its home use device for sale.  ECF 46, *Transcript: April 2, 2019 Hearing on Larada's Motion to Dismiss Counterclaims* at 65–67.

[41] *See Feb. 17, 2017 Letter* at 13 ("Ironically, the sale of [Larada's] own home-use heated air device would trigger [Exhibit C]."); ECF 199-1 at 15–17, *Opposition: Exhibit 2 to Exhibit A (May 11, 2017 Letter)* at 16 ("Larada breached its license agreement with PHS by advertising and offering the home use device for sale . . . .").

[42] A dispute "is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented." *Doe v. Univ. of Denver*, 952 F.3d 1182, 1189 (10th Cir. 2020) (quoting *Jones v. Norton*, 809 F.3d 564, 573 (10th Cir. 2015)).

[43] *Compare Opposition* at 9 (stating the October 2017 letter provided notice), *with* ECF 203, *Reply in Support of Plaintiff's Motion for Summary Judgment (Reply)* at 4 (stating the October 2017 letter did not provide notice).

[44] *See infra* Part I.  *See also Univ. of Denver*, 952 F.3d at 1189 (explaining a fact is material if "it could have an effect on the outcome of the lawsuit" (quoting *Jones*, 809 F.3d at 573)).

## PROCEDURAL HISTORY

In 2018, Larada initiated this action in federal court.[45]  Relevant here, it asserts a breach of contract claim against PHS that is based on several alleged breaches.[46]  One alleged breach is PHS's failure to make required payments.[47]  Larada moved for summary judgment on this alleged breach only.[48]  The Motion is fully briefed,[49] and the court issues the following ruling.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law."[50]  The moving party bears "the burden of showing beyond a reasonable doubt that it is entitled to summary judgment."[51]  Once the initial burden is met, the nonmoving party must "set forth specific facts showing there is a genuine issue for trial."[52]  The court views the evidence and draws all reasonable inferences in the nonmoving party's favor.[53]

A "more stringent summary judgment standard applies" when, as here, the movant has the burden at trial.[54]  In this scenario, "the moving party must establish, as a matter of law, all essential elements of the issue before the nonmoving party can be obligated to bring forward any specific facts alleged to rebut the movant's case."[55]

---

[45] ECF 2, *Complaint*; *see also First Amended Complaint*.

[46] *Id.* ¶¶ 75–78.

[47] *Id.* ¶ 75.

[48] *Motion* at 2.

[49] *Id.*; *Opposition*; *Reply*.

[50] Fed. R. Civ. P. 56(a).

[51] *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002) (quotation simplified).

[52] *Id.*

[53] *Id.* at 982.

[54] *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008).

[55] *Id.*

**ANALYSIS**

The court will first explain why Larada is entitled to summary judgment on its claim that

PHS breached the License Agreements by not making required payments.  The court then

explains why Larada is entitled to an 18% prejudgment interest rate.  Finally, the court denies

Larada's request for fees and costs.

## I.   Larada is entitled to partial summary judgment.

PHS argues genuine issues exist concerning whether Larada breached the License

Agreements by not fulfilling its obligations under Exhibit C.[56]  Larada argues it did not have to

follow through with Exhibit C because PHS breached first.[57]  The court concludes there is no

genuine dispute of material fact because the first breach rule excused Larada from performing.

Under Utah law, the "elements of a prima facie case for breach of contract are (1) a

contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other

party, and (4) damages."[58]  Utah law incorporates a "first breach" rule, whereby "a party first

guilty of a substantial or material breach of contract cannot complain if the other party thereafter

refuses to perform."[59]  The first breaching party cannot "insist on performance by the other

party."[60]

It is undisputed that the parties entered into the License Agreements, that PHS was

required to pay Use Fees and License Payments, and that Larada provided the contracted-for

---

[56] *Opposition* at 12–13.

[57] *Reply* at 4–5.

[58] *Am. W. Bank Members, L.C. v. State*, 2014 UT 49, ¶ 15, 342 P.3d 224 (quoting *Bair v. Axiom Design, L.L.C.*, 2001 UT 20, ¶ 14, 20 P.3d 388).

[59] *CCD, L.C. v. Millsap*, 2005 UT 42, ¶ 29, 116 P.3d 366 (quoting *Jackson v. Rich*, 499 P.2d 279, 280 (1972)).

[60] *Id.* (quoting *Jackson*, 499 P.2d at 280).

8

devices.[61]  PHS does not argue it paid the fees identified by Larada, nor does it argue Larada

miscalculated the fees.[62]  Accordingly, it is undisputed that before October 2017, PHS breached

the Agreements and owed Larada $80,010.[63]

Nevertheless, PHS argues there are genuine issues concerning whether Larada breached

the Agreements in October 2017 when it refused to unwind the Agreements and refund PHS

after PHS invoked Exhibit C.[64]  PHS's argument appears to be that its breach was excused by

Larada's alleged breach.[65]  But PHS breached first by not making the required payments.[66]  And

its breach was material because Larada could terminate the Agreements after ten days' notice if

it could not charge PHS's "credit card for any amount due" under the Agreements.[67]

Accordingly, under the first breach rule, PHS's material breach excused Larada from

performing its obligations under the License Agreements.[68]  Even assuming Exhibit C survived

---

[61] *Compare Motion* ¶¶ 1–3, *with Opposition* at 2–3; *see also Opposition* at 4 (stating "PHS was required to pay a one-time license payment; a per-treatment use fee; a refundable deposit; shipping and handling costs per device; and certain territory license fees").

[62] *Compare Motion* ¶¶ 12–16 (listing amounts owed), *with Opposition* at 2–3 (not disputing these facts).

[63] *Id.*

[64] *Opposition* at 12–13.

[65] *Id.* at 12 ("Regardless of whether PHS failed to pay certain Territory License Fees prior to August 2017, material issues of fact remain over whether damages are owed and whether Larada breached the License Agreements by its refusal to agree in October 2017 to unwind the agreements and its refusal to refund all collected Territory License Fees and machine deposits paid.").

[66] *See id.*; *see also Motion* ¶¶ 12–16.

[67] *License Agreements* at 12 (Section 13(a)(iii)).  Utah courts often consider several factors when determining whether a breach was material.  *See Cross v. Olsen*, 2013 UT App 135, ¶ 28, 303 P.3d 1030 (identifying the factors). However, the Utah Court of Appeals held a breach was material when it was "sufficient to trigger the right to terminate," and in doing so, it did not identify and address the factors.  *Backbone Worldwide Inc. v. LifeVantage Corp.*, 2019 UT App 80, ¶ 26 n.8, 443 P.3d 780.  The court here follows the same approach, especially because PHS has not argued its breach was immaterial.  *See Opposition*.  And although materiality is typically resolved by the jury, summary judgment is appropriate where no reasonable jury could disagree.  *See Arlington Mgmt. Assocs., Inc. v. Urology Clinic of Utah Valley, LLC*, 2021 UT App 72, ¶ 16, 496 P.3d 719.  No reasonable jury could disagree here because the License Agreements identified failure-to-pay as a breach that triggered the right to terminate.  *See License Agreements* at 12; *see also Backbone Worldwide*, 2019 UT App 80, ¶ 26 n.8.

[68] *See CCD*, 2005 UT 42, ¶ 29.

termination and its conditions were satisfied,[69] Larada was not required to unwind the

Agreements and refund PHS.  There are thus no genuine disputes of material fact, and Larada is

entitled to summary judgment on its breach of contract claim premised on PHS's failure to make

required payments.

## II.     Larada is entitled to an 18% prejudgment interest rate.

Larada argues that under Section 9(b) of the License Agreements, it is "entitled to

prejudgment interest of 18% from the day of the breach."[70]  Although PHS contends Larada is

not entitled to summary judgment, it does not challenge Larada's arguments concerning the

prejudgment interest rate.[71]

Section 9(b) of the License Agreements states Larada "may also charge interest on the

missing or late payment at the greater of eighteen percent (18%) per annum or the maximum

amount permitted by the law of the state in which [PHS] is located."[72]  Because PHS does not

challenge Larada's interpretation of Section 9(b), there is no genuine dispute, and the court

concludes Larada is entitled to an 18% prejudgment interest rate.[73]

Larada also argues it is entitled to prejudgment interest from the "date of the breach"

"until the date of judgment."[74]  It identifies the date of the breach as February 10, 2017.[75]

---

[69] Larada argues PHS lacks admissible evidence to show Exhibit C's conditions were satisfied.  *Reply* at 2–4.  It also argues Exhibit C did not survive termination.  *Id.* at 5.  For purposes of the Motion, the court assumes Exhibit C survived termination and its conditions were satisfied in October 2017.

[70] *Motion* at 7.

[71] *See Opposition*.

[72] *License Agreements* at 7.

[73] Larada argues Section 9(b) does not limit it "to charging interest on the Use Fee or the License Payment."  *Motion* at 7.  PHS does not challenge this reading of Section 9(b), *see Opposition*, and the court will not sua sponte read ambiguity into the Agreements, *see Johnson v. USANA Health Scis., Inc.*, 632 F. Supp. 3d 1245, 1260 (D. Utah 2022) ("The existence of an ambiguity is itself a question of law, but the court cannot recognize an ambiguity on its own volition.") (applying Utah law).

[74] *Motion* at 8.

[75] *Id.*

However, the $80,010 PHS owes Larada does not represent one breach that occurred on February 10—it represents several breaches that occurred over several months.[76]  Accordingly, the court clarifies that the 18% prejudgment interest rate applies to each "missing or late payment"[77] from the date of the corresponding breach.[78]

### III.   Larada is not presently entitled to fees and costs under Section 18(o).

Finally, Larada argues it is entitled to fees and costs under Section 18(o) of the License Agreements.[79]  The court concludes Larada has not shown it is presently entitled to fees and costs.

Section 18(o) states the "Prevailing Party" in "any action in reference to" the License Agreements is entitled to fees and costs.[80]  It defines "Prevailing Party" as the party "that has prevailed on a majority of the issues decided by the trier of fact, law or equity."[81]  PHS argues that even if Larada's Motion succeeds, it is not the prevailing party because it will have succeeded on "only a sliver of the claims at issue."[82]  Larada does not respond to this argument.[83]

Larada has secured summary judgment on only its breach of contract claim premised on PHS's failure to pay.[84]  It has not obtained summary judgment on its remaining breach of

---

[76] *See id.* ¶¶ 12–14 (identifying unpaid fees for January, February, March, and April 2017).

[77] *See License Agreements* at 7.

[78] Even though PHS did not challenge the 18% prejudgment interest rate, Larada must still show it is entitled to its requested relief.  *See Reed v. Bennett*, 312 F.3d 1190, 1193–94 (10th Cir. 2002).  On the narrow issue of whether it is entitled to an 18% prejudgment interest rate for the full $80,010 starting on February 10, 2017, the court concludes Larada has not carried that burden.

[79] *Motion* at 7.

[80] *License Agreements* at 16.

[81] *Id.*

[82] *Opposition* at 13.

[83] *See Reply*.

[84] *See Motion* at 2 (stating Larada is not seeking summary judgment on other breach of contract claims).

contract claims.[85]  Nor has it obtained summary judgment on its other claims,[86] including the claims it identified as "the most significant."[87]  For these reasons, Larada has not shown it "has prevailed on a majority of the issues decided by the trier of fact."[88]  It is thus not entitled to fees and costs under Section 18(o) at this time.

**CONCLUSION**

For the reasons provided, Larada's Motion for Partial Summary Judgment[89] is GRANTED in part and DENIED in part.  Larada is entitled to summary judgment on its breach of contract claim premised on PHS's failure to make required payments.  An 18% prejudgment interest rate will apply to each "missing or late payment" from the date of the corresponding breach.  Larada is not presently entitled to fees and costs.

SO ORDERED this 10th day of October 2023.

BY THE COURT:

_____
ROBERT J. SHELBY
United States Chief District Judge

---

[85] *Compare id.*, *with First Amended Complaint* ¶¶ 76–78.

[86] *First Amended Complaint* ¶¶ 83–150; *see also* ECF 184, *Sept. 22, 2022 Minute Order* (noting Larada's trespass to chattels claim was dismissed without prejudice).

[87] *Motion* at 2.

[88] *See License Agreements* at 16.

[89] ECF 192.