IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| LARADA SCIENCES, a Delaware corporation,<br><br>Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>PEDIATRIC HAIR SOLUTIONS, a North Carolina corporation, et al.,<br><br>Defendants/Counterclaimants. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION TO EXCLUDE**<br><br>Case No. 2:18-cv-00551-RJS-JCB<br><br>Chief Judge Robert J. Shelby<br><br>Magistrate Judge Jared C. Bennett |

Now before the court is Plaintiff Larada Sciences' Motion to Exclude Expert Testimony of Dr. James Rice.[1] For the reasons provided below, the Motion is GRANTED.

## BACKGROUND & PROCEDURAL HISTORY[2]

Larada manufactures and markets devices that treat "head lice through a patented method of applying heated air to the scalp."[3] It licenses the devices to head-lice treatment clinics.[4] In 2015, Larada and Defendant Pediatric Hair Solutions (PHS) entered into a series of license agreements, allowing PHS to use Larada devices at PHS clinics.[5]

In 2017, the parties disagreed about payments, and Larada terminated the license agreements.[6] Larada then initiated this action in federal court, suing PHS for trademark

---

[1] ECF 193, *Motion to Exclude* [sealed at ECF 195].

[2] The court assumes the parties' familiarity with this case and focuses on the facts relevant to the Motion to Exclude. The court has more completely recited the facts and procedural history in past orders. *See* ECF 186, *Memorandum Decision and Order Granting Larada's Motion for Leave to File Second Amended Complaint* at 2–11.

[3] ECF 86, *First Amended Complaint* ¶ 15.

[4] *Id.* ¶ 17.

[5] *Id.* ¶ 22.

[6] *Id.* ¶¶ 45–46.

1

infringement, among other things.[7] The litigation proceeded, and Larada designated Jon Beck to provide expert testimony about the "design, technical, and engineering challenges" Larada faced when developing its devices.[8] It also designated Matt Germane to testify about the value of its alleged trade secrets.[9]

Defendants named Dr. James Rice as a rebuttal expert.[10] Dr. Rice is an engineer with "over 40 years of professional experience in mechanical engineering design and analysis."[11] He has directly participated "in engineering projects involving the design and development of a wide variety of fluid handling systems and components."[12] Relevant here, Dr. Rice prepared an expert report estimating the cost to develop Larada's alleged trade secrets.[13]

First, Dr. Rice examined Larada's "proprietary program for the microprocessor algorithm."[14] He estimated it would take one to two engineers with minimal experience a combined forty hours to develop a microprocessor algorithm.[15] Accordingly, he concluded this trade secret had a $5,000 value.[16] He stated his opinion was based on his "involvement with similar development projects including projects that dealt with much more complex microprocessor algorithms."[17]

---

[7] ECF 2, *Complaint* ¶¶ 30–78. Larada amended its complaint to include Sheila and John Fassler as Defendants. *See Amended Complaint*.

[8] *Motion to Exclude* ¶ 2; *see also* ECF 167, *Larada's Expert Disclosure*.

[9] *Motion to Exclude* ¶ 3; *see also Larada's Expert Disclosure*.

[10] ECF 170, *Defendants' Expert Disclosure*.

[11] ECF 195-1, *Rebuttal Report of Dr. James Rice* (*Dr. Rice Report*) [sealed] ¶ 2.

[12] *Id.* ¶ 3.

[13] *Id.* ¶¶ 35–42.

[14] *Id.* ¶ 36.

[15] *Id.*

[16] *Id.* (40 hours × $125 per hour = $5,000). Dr. Rice used Beck's hourly rate for his calculations. *Id.*

[17] *Id.*

Dr. Rice explained the engineers would need to complete four tasks to develop the microprocessor algorithm.[18]  At Dr. Rice's deposition, Larada's counsel asked how much time each task would take.[19]  Dr. Rice provided the following estimates:

| Task[20] | Time[21] |
|---|---|
| "choosing a methodology to measure flow rate and temperature" | 20–30 hours |
| "developing a software program to measure flow rate and temperature" | 50 hours |
| "developing a control system to vary the desired flow rate and temperature" | 40–50 hours |
| "integrating the control system with the system's other software" | 50 hours |

Conservatively, the task estimates total 160 hours—120 hours more than the estimate Dr. Rice provided in his report.[22]

Second, Dr. Rice assessed the "method, process and design [Larada] developed and applied for effectively fast thermal control response in a high-discharge heated air device."[23]  He estimated it would take two or three engineers with minimal experience 240 hours combined to develop this program.[24]  He thus determined this trade secret had a $30,000 value.[25]  His opinion is based on his experience "developing similar mechanical systems in automotives."[26]

---

[18] *Id.*

[19] ECF 195-3, *James Rice Deposition Transcript* (*Dr. Rice Deposition*) [sealed] at 67–69.

[20] *Dr. Rice Report* ¶ 36.

[21] *Dr. Rice Deposition* at 67–68.

[22] *See id.* at 69:3–15.

[23] *Dr. Rice Report* ¶ 37.

[24] *Id.*

[25] *Id.* (240 hours × $125 per hour = $30,000).

[26] *Id.*

Dr. Rice explained that developing this program would require the engineers to complete three tasks.[27] Larada's counsel again asked how long each task would take, and Dr. Rice gave the following estimates:

| Task[28] | Time[29] |
|---|---|
| "finding the necessary components" | "Hard to say. It depends on how difficult it would be." |
| "testing the components" | "40 hours, maybe" |
| "developing the software programs to control these devices" | 40–50 hours |

Based on these estimates, the second and third tasks would take at most ninety hours combined. That is 150 hours short of the estimate from Dr. Rice's report, without factoring in the first task.[30]

Third, Dr. Rice analyzed "Larada's specified selection and method of utilization for the blower-related components as applied for the purpose of precise volumetric delivery and flow control."[31] He estimated two engineers with minimal experience would need 320 hours combined to create this program, resulting in a $40,000 value.[32] He further explained the engineers would need to assemble and test necessary components, and develop the software program to run the components.[33] Dr. Rice's opinion is based on his "40 years of experience

---

[27] *Id.*

[28] *Id.*

[29] *Dr. Rice Deposition* at 69–70.

[30] *See Dr. Rice Report* ¶ 37.

[31] *Id.* ¶ 38.

[32] *Id.* (320 hours × $125 per hour = $40,000).

[33] *Id.*

developing mechanical systems."[34]  When deposed, Dr. Rice confirmed the estimate for this alleged trade secret.[35]

Fourth, Dr. Rice concluded it would take two engineers with minimal experience eighty hours combined "to identify a suitable blower/heater with the required output, noise, and electrical characteristics."[36]  He thus concluded this alleged trade secret had a $10,000 value,[37] and he confirmed that estimate when deposed.[38]

Fifth, Dr. Rice estimated it would take an engineer with minimal experience twenty hours "to identify a hose with the required flexibility, diameter, and length that would work for its intended purpose."[39]  This resulted in a $2,500 value.[40]  Dr. Rice confirmed his time estimate when deposed.[41]

Finally, Dr. Rice explained it would take a more experienced engineer 80 hours to design the multi-nozzle tip and 70 hours to test it in trial and error, totaling 150 hours.[42]  This resulted in a $37,500 value.[43]

---

[34] *Id.*

[35] *Dr. Rice Deposition* at 71–72.  Unlike with the previous two alleged trade secrets, Larada's counsel did not ask Dr. Rice to estimate how much time each individual task would take.  *See id.*

[36] *Dr. Rice Report* ¶ 39.

[37] *Id.* (80 hours × $125 per hour = $10,000).

[38] *Dr. Rice Deposition* at 73.

[39] *Dr. Rice Report* ¶ 39.

[40] *Id.* (20 hours × $125 per hour = $2,500).

[41] *Dr. Rice Deposition* at 78:11–19.

[42] *Id.*

[43] *Id.* (150 hours × $250 per hour = $37,500).  Dr. Rice used $250 to represent a more experienced engineer's rate.  *Id.*  Larada's counsel did not ask Dr. Rice to confirm this estimate.  *See generally Dr. Rice Deposition*.

During Dr. Rice's deposition, Larada's counsel asked him to explain his method for estimating how long each project would take.[44] Dr. Rice responded, "Personal experience."[45] Moreover, he agreed the estimates could vary "wildly."[46]

Larada moved to exclude Dr. Rice's testimony about the value of its alleged trade secrets.[47] It argues Dr. Rice "provides improper rebuttal opinions" and his method is unreliable.[48] The Motion is fully briefed,[49] and having reviewed the relevant papers, the court issues the following ruling.

## LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence imposes a "gatekeeping" function on district courts—they "must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."[50] Evaluating expert testimony typically involves two steps.[51] First, the court "must determine whether the expert is qualified 'by knowledge, skill, experience, training, or education.'"[52] Second, "the court must determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology."[53] The party offering the expert bears the burden of showing "it is more likely than not that . . . the testimony is the product of reliable

---

[44] *Dr. Rice Deposition* at 63:3–5.

[45] *Id.* at 63:6.

[46] *Id.* at 71:2–9.

[47] *Motion to Exclude* at 4 (requesting the court "bar Dr. Rice from testifying as to the value or cost to develop the AirAllé device or any of the trade secrets contained therein").

[48] *Id.* at 2.

[49] ECF 198, *Defendants' Response in Opposition to Larada Science, Inc.'s Motion to Exclude Expert Testimony of Dr. James Rice* (*Opposition*); ECF 204, *Reply in Support of Plaintiff's Motion to Exclude Expert Testimony of Dr. James Rice* (*Reply*).

[50] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). This gatekeeping function is equally necessary when the expert's opinion is nonscientific. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999).

[51] *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009).

[52] *Id.* (quoting Fed. R. Evid. 702).

[53] *Id.*

principles and methods" and "the expert has reliably applied the principles and methods to the facts of the case."[54]

When considering reliability, courts should generally "focus on an expert's methodology rather than the conclusions it generates."[55] "Importantly, the court is not required 'to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.'"[56] "A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."[57]

## ANALYSIS

Larada argues Dr. Rice's method for valuing the alleged trade secrets is not reliable.[58] For the reasons explained below, the court concludes Defendants have not met their burden of showing Dr. Rice's opinion is reliable.

Dr. Rice testified that his method for valuing the alleged trade secrets was "[p]ersonal experience."[59] "An expert witness's testimony can rely solely on experience."[60] But when testimony is based on experience, "the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts."[61] Accordingly, courts properly exclude experience-

---

[54] Fed. R. Evid. 702; *see also Nacchio*, 555 F.3d at 1241.

[55] *Nacchio*, 555 F.3d at 1241 (quoting *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003)).

[56] *Schulenberg v. BNSF Ry. Co.*, 911 F.3d 1276, 1283 (10th Cir. 2018) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

[57] *Joiner*, 522 U.S. at 146.

[58] *Motion to Exclude* at 4; *Reply* at 2–3.  Larada does not challenge Dr. Rice's expert qualifications, so the court will skip the first step of the typical Rule 702 analysis.  Also, because the court excludes the challenged opinion under Rule 702, it does not address Larada's additional argument that Dr. Rice provides improper rebuttal testimony.

[59] *Dr. Rice Deposition* at 63:3–6; *see also Opposition* at 5–6 (citing Dr. Rice's experience).

[60] *Nacchio*, 555 F.3d at 1258.

[61] *Id.* (quoting Fed. R. Evid. 702 advisory committee's note to 2000 amendments).

based testimony when the party offering the expert does not explain how the experience renders the opinion reliable.[62] For two primary reasons, the court concludes PHS has not shown Dr. Rice's experience-based opinion is reliable.

First, Dr. Rice did not explain how his experience informed his opinions. Dr. Rice stated his opinions were based on forty years of experience and his work on projects like those he was assessing.[63] However, he did not explain how that experience led to his conclusions. He did not, for example, identify specific projects he worked on and explain why they were sufficiently comparable to provide a reliable estimate here.[64] While the court does not doubt Dr. Rice's education or experience, it does not have enough information to assess how reliably he applied his experience to this case. And it cannot simply take Dr. Rice's "word for it."[65]

Second, Dr. Rice's deposition testimony indicates he did not reliably apply his experience. In his report, Dr. Rice estimated it would take forty hours to develop Larada's "proprietary program for the microprocessor algorithm."[66] But when deposed, he provided an estimate that totaled 160–180 hours.[67] That is a difference of at least 120 hours. Similarly, Dr. Rice's report estimated it would take 240 hours to develop Larada's "method, process and design for effectively fast thermal control response in a high-discharge heated air device."[68] He later

---

[62] *See, e.g.*, *Nacchio*, 555 F.3d at 1257–58 (holding district court did not abuse its discretion by excluding experience-based expert testimony when there was not a sufficient showing of reliability); *Ho v. Michelin N. Am., Inc.*, 520 F. App'x 658, 663 (10th Cir. 2013) (unpublished) (same); *see also United States v. Medina-Copete*, 757 F.3d 1092, 1103–04 (10th Cir. 2014) (holding district court abused its discretion by admitting experience-based expert testimony that was not reliable).

[63] *Dr. Rice Report* ¶¶ 1–4, 6–7, 36–38.

[64] The court is merely providing an example of what information Dr. Rice might have provided. It is not stating this is the only information that could have satisfied PHS's burden.

[65] *Nacchio*, 555 F.3d at 1258 (quoting Fed. R. Evid. 702 advisory committee's note to 2000 amendments).

[66] *Dr. Rice Report* ¶ 36.

[67] *Dr. Rice Deposition* at 67–69.

[68] *Dr. Rice Report* ¶ 37.

testified it would take at most ninety hours to complete two out of the three necessary tasks.[69] But when asked how long it would take to complete the third task, he said it was "[h]ard to say" because it "depend[ed] on how difficult it would be."[70] Moreover, he agreed that estimates could vary "wildly."[71]

In sum, Dr. Rice provided two estimates for the same alleged trade secret that varied by at least 120 hours. For another alleged trade secret, he provided a concrete estimate in his report but was noncommittal when deposed. Based on these inconsistencies—and Dr. Rice's agreement that estimates could vary "wildly"—the court is not persuaded Dr. Rice reliably applied his experience to the facts of this case.

Nevertheless, PHS argues any inconsistencies go towards credibility and are best addressed on cross-examination.[72] To be sure, not all defects are disqualifying, and some are best left for the jury to consider. But the court must make an initial reliability determination before the jury can weigh the expert's credibility. Here, the court cannot conclude the opinions are sufficiently reliable.

PHS also emphasizes Dr. Rice's education and experience.[73] The court acknowledges those qualifications, but it is not required "to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."[74] Because Dr. Rice did not adequately explain how his experience informed his estimates and because there were inconsistencies between his report and

---

[69] *Dr. Rice Deposition* at 69–71.

[70] *Id.* at 70:11–14.

[71] *Id.* at 71:2–9.

[72] *Opposition* at 6.

[73] *Id.* at 5–6.

[74] *Joiner*, 522 U.S. at 146.

deposition testimony, the court cannot conclude PHS met its burden of showing his opinions are reliable.[75]

## CONCLUSION

For these reasons, PHS has not shown Dr. Rice's opinions about the value of the alleged trade secrets are reliable, and they are thus excluded. The Motion to Exclude[76] is GRANTED.

SO ORDERED this 10th day of October 2023.

BY THE COURT:

ROBERT J. SHELBY
United States Chief District Judge

---

[75] Larada also argues Dr. Rice's opinions are unreliable because he "did not consider most non-engineering phases of the design process" and "the actual time" spent developing the devices. *Motion to Exclude* at 4. Because the court excludes Dr. Rice's opinions on other grounds, it does not consider this additional argument.

[76] ECF 193.