Romaine C. Marshall (9654)
Jose A. Abarca (12762)
Charles Seby (admitted *pro hac vice*)
POLSINELLI PC
2825 E. Cottonwood Parkway, Suite 500
Salt Lake City, UT 84104
rmarshall@polsinelli.com
jabarca@polsinelli.com
cseby@polsinelli.com

*Attorneys for Defendants*

# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF UTAH

| | |
|---|---|
| LARADA SCIENCES, INC., a Delaware corporation,<br><br>Plaintiff/Counter Defendant,<br><br>vs.<br><br>PEDIATRIC HAIR SOLUTIONS CORPORATION, a North Carolina corporation, et al.,<br><br>Defendants/Counterclaimants. | **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO PARTIALLY DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>Case No. 2:18-cv-00551-RJS-JCB<br><br>Chief Judge Robert J. Shelby<br>Magistrate Judge Jared C. Bennett |

Defendants John Fassler, M.D., Sheila Fassler (together, the "Fasslers"), Pediatric Hair Solutions Corporation ("PHS"), and FloSonix Ventures, LLC ("FSV") (collectively, "Defendants") hereby reply in support of their motion to partially dismiss Plaintiff Larada Science, Inc.'s ("Larada") Second Amended Complaint ("SAC") ("Motion").

### A.     Claims 5, 6, and 9 Against the Fasslers and FSV are Time-barred, and Fail to Relate Back, as Required Under Rule 15(c)(1)(C)[1]

In its response, Larada fails to counter Defendants' arguments vis-à-vis Larada's failure to satisfy Rule 15(c)(1)(C)'s requirements. In lieu of addressing Rule 15(c)(1)(C), Larada argues only that the limitation period(s) did not expire, and thus, there is no need to consider whether Larada's claims relate back.[2] Larada initially argues that the statute of limitations did not begin to accrue until July 2017, based on its allegation that it discovered the existence of a FloSonix device at that time.[3] Larada next asserts that any statute of limitations was tolled from when Larada sought leave to file the First Amended Complaint ("FAC") (on February 28, 2020) until when the Court granted Larada leave to amend (on April 20, 2020).[4] Both arguments fail.

First, Larada's purported discovery of a FloSonix device in July 2017 is not dispositive of Defendants' argument that Claims 5 and 6 accrued no later than March 2017. Because Utah law does not recognize tolling of Utah limitations periods merely because a motion for leave to amend is pending (and Claims 5 and 6 are governed by Utah limitations periods[5]), Larada's February 28, 2020 motion for leave to amend does not save the untimely May 7, 2020 filing of Claims 5 and 6.

Second, Larada ignores numerous allegations in the SAC showing that, even if tolling applied to Claim 9 against the Fasslers or FSV, the claims were still filed late. Under any reading of the SAC, Claims 5, 6, and 9 are untimely against the Fasslers and FSV.

---

[1] Larada acknowledges that Claim 5 (trespass to chattels) should be dismissed for the reasons previously identified by the Court. *See* ECF 216 ("Resp.") at 2, 3, and 9.
[2] *See* Resp. at 1–7.
[3] *Id.* at 5.
[4] *Id.* at 6–7.
[5] *See* Utah Code. Ann. § 78B-2-305; *Ockey v. Lehmer*, 2008 UT 37, ¶ 35 (citing Section 78B-2-305 to explain that "[t]he statute of limitations for conversion is three years.").

### i. Claims 5, 6, and 9 against the Fasslers and FSV were filed after the limitation periods expired

Larada's Claims 5, 6, and 9 were filed after the close of their three-year limitation periods. *See* Mot. at 6–10. Because Claims 5 and 6 accrued no later than the date on which Larada alleges devices were not returned, despite Larada's demand for them, the limitations period for Larada's trespass to chattels and conversion claims commenced no later than March 2017.[6] This conclusion is required by the SAC, even drawing all inferences in favor of Larada.[7] Likewise, because Claim 9 accrued no later than the earliest date "on which the misappropriation with respect to which the action would relate is discovered *or by the exercise of reasonable diligence should have been discovered*[,]"[8] Claim 9 accrued as early as 2014 (if not by February 10, 2017, when Larada received notice of facts underlying the claim, and again, in March 2017).

In its response, Larada focuses on its allegation that Larada discovered the existence of a FloSonix device in July 2017. *See* Resp. at 3–5. But the date of Larada's purported discovery of a FloSonix device is not synonymous with the date when Larada discovered (or, with exercise of reasonable diligence, should have discovered) the *misappropriation* that Larada alleges began years prior. Under 18 U.S.C. § 1836(d), "a continuing misappropriation constitutes a single claim of misappropriation."

---

[6] *Compare* Mot. at 9 (identifying allegations in SAC showing that Larada was on notice of alleged trespass to chattels and conversion no later than March 2017), *with Anderson v. Dean Witter Reynolds, Inc.*, 920 P.2d 575, 578 (Utah Ct. App. 1996) ("[A] cause of action accrues and the relevant statute of limitations begins to run when the last event that will complete the cause of action occurs, and simple ignorance of or obliviousness to the existence of a cause of action will not prevent the running of the statute of limitations.").

[7] *See* SAC ¶¶ 132–44 (alleging trespass and/or conversion when the Devices were not returned in March 2017).

[8] 18 U.S.C. § 1836(d) (emphasis added).

Larada alleges that misappropriation began in 2014 and "continued" *through* May 1, 2016. *See* SAC ¶¶ 32–34, and 172. Larada further alleges that it was aware that PHS had allegedly stopped making payments to use Larada's trade secrets and confidential information as early as November 2016 (despite all parties being allegedly aware that the Defendants could only use the trade secrets with permission).[9] Larada further alleges that, by the time payments ceased to Larada in November 2016, "PHS and the Fasslers had already provided the [Larada] Devices to third-parties and begun the process of reverse-engineering[.]"[10] Larada further alleges that, on February 10, 2017, at a meeting with the Fasslers, John Fassler (on behalf of PHS) contested the notion that the information received from Larada included trade secrets.[11] John Fassler also allegedly threatened that PHS might compete with Larada at that time.[12] Given the foregoing, the SAC demonstrates that more than 3 years prior to May 2020, Larada believed or was placed on notice of the "*disclosure or use* of [the] trade secret of [Larada] without express or implied consent by [Defendants] who . . . [either] used improper means to acquire knowledge of the trade secret [or] *at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret*

---

[9] SAC ¶¶ 33–34 (alleging PHS stopped making payments under the License Agreement around November 2016), ¶ 168 (alleging "Larada reasonably protected its trade secrets, *by entering into confidentiality agreements* with PHS and the Fasslers personally *prior to communicating any trade secrets to any of them.*") (emphasis added), ¶ 170 (alleging Defendants "knew that Larada was providing them with trade secrets pursuant to confidentiality agreements"). *See also* SAC ¶ 20 (defining Confidential Information under the Lease Agreement as including trade secrets), ¶ 23 (setting forth restrictions on Proprietary Information under the License Agreements), ¶ 27 (setting forth restrictions on Confidential Information under the Consulting Agreement), ¶¶ 46–51 (alleging i) Larada demanded return of the Devices on March 10, 2017; and 2) PHS continued "us[ing]" the Devices, without paying Larada from January 2017 "through" and "beyond April 2017").
[10] SAC ¶ 58.
[11] *See* SAC ¶ 37.
[12] *See* SAC ¶ 39.

4

*was . . .* acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret *or limit the use of the trade secret*[.]"[13] (emphasis added).

Even at the 12(b)(6) stage, courts may find that a plaintiff received notice of a trade secret misappropriation claim if the plaintiff alleges it was aware that its confidential information was used or withheld contrary to contract terms.[14] Here, Larada alleges that its confidential information—which allegedly includes trade secrets—was being improperly disclosed and used without payment as early as late 2016. Larada also alleges that Defendants challenged the trade secrets' status, and threatened to compete with Larada, as early as February 10, 2017.[15] Thus, Larada had all the information necessary to discover its claims, by exercise of reasonable diligence, more than 3 years prior to May 7, 2020.

Contrary to Larada's argument that the statutes of limitations paused on February 28, 2020, neither of the limitation periods governing Claims 5 and 6 against the Fasslers and FSV were

---

[13] 18 U.S.C. § 1839(5). *See also* SAC ¶ 37 (alleging Larada's devices continued to be used without payment from January 2017 forward).

[14] *See Innovasis, Inc. v. Michael Francis English, et al.*, No. 2:23-CV-00228-DAK, 2023 WL 8627757, at *3 (D. Utah Dec. 13, 2023) ("Plaintiff's allegations [that Defendant withheld confidential and trade secret information in May 2019] confirm that it should have discovered the alleged trade secret misappropriation forming the basis of its claims more than three years before it filed this lawsuit. … [Here,] Plaintiff's allegations leave no doubt that it had reason to investigate Defendant upon his departure in May 2019. Plaintiff, however, did not file a lawsuit until April 2023. It is, therefore, clear that the trade secret misappropriation claims are time barred."); *Alta Devices, Inc. v. LG Elecs., Inc.*, No. 18-CV-00404-LHK, 2019 WL 1924992, at *13 (N.D. Cal. Apr. 30, 2019) ("[Plaintiff] was on inquiry notice of potential misappropriation of trade secrets when [Defendant allegedly] breached its duty to return confidential information on June 13, 2012, which was more than three years before [Plaintiff] filed its complaint on January 18, 2018. … [B]ecause the violation of the [agreement to return confidential information] was sufficient to put [Plaintiff] on inquiry notice, it is of no matter that [Plaintiff] alleges that it was put on actual notice by mid-2016. … [As Plaintiff's] DTSA claims are time barred, the Court GRANTS [Defendant's] motion to dismiss these claims.").

[15] *See* SAC ¶¶ 32–39.

5

"tolled"—let alone for a period long enough to render the claims timely—merely because Larada sought leave to amend its pleadings to file the FAC. Claims 5 and 6 have a limitations period established by Utah law,[16] and Utah law governs to determine whether the period may be tolled.[17] Though Larada argues that the Court should toll limitations periods for the claims at issue (and cites to federal decisions in which federal claims were tolled pending the outcome of a motion for leave to amend),[18] the Utah Supreme Court has rejected Larada's argument.[19] Because Claims 5 and 6 are Utah law claims that were not filed until more than 3 years after their latest possible accrual and were not tolled under applicable Utah law, these claims are untimely as to the Fasslers and FSV.

Further, even if tolling were entertained as to Count 9 against the Fasslers or FSV, the claims would still be late. Again, a "continuing" misappropriation constitutes a single misappropriation per 18 U.S.C. § 1836(d), and 18 U.S.C. § 1839(5) defines misappropriation to include various forms of unauthorized use or disclosure. Even drawing all inferences in favor of Larada, Larada's allegations show that it knew or should have known of the facts placing it on

---

[16] *See Bean v. United States*, No. 1:06-CV-105, 2009 WL 2168737, at *2 (D. Utah July 17, 2009) ("State law claims asserted in federal court are governed by the applicable state statutes of limitations.").

[17] *Cf. Macquarie Mortgages USA, Inc. v. Premier Title Ins. Agency, Inc.*, No. 2:12-CV-674, 2014 WL 722410, at *4 (D. Utah Feb. 24, 2014) (in a case involving Utah state law claims based on diversity jurisdiction, explaining that "[t]he issue of tolling is governed by state law.").

[18] *See* Resp. at 6, fn. 26.

[19] *See Gables & Villas at River Oaks Homeowners Ass'n v. Castlewood Builders, LLC*, 2018 UT 28, ¶¶ 18–21, 422 P.3d 826, 829 ("It is true that a party can't control when a motion for leave to amend is granted. But the ability to file another lawsuit within the statutory period is within the plaintiff's control. In the face of the looming time bar, the [plaintiff] could have filed a new, independent action . . . and that would have saved the [plaintiff] from the statutory time bar. . . . To show that it commenced an action within the requisite time frame the [plaintiff] must point to an actual complaint filed with the court—not just to the [] motion for leave to amend.").

notice of Claim 9 on February 10, 2017 (if not before).[20] Claim 9 was not filed against the Fasslers until May 7, 2020, with the FAC, and it was not filed against FSV as an alter ego until October 30, 2023. Considering no tolled period would render Claim 9 timely as to the Fasslers (when it was filed with the FAC) or as to FSV as an alter ego (when it was filed with the SAC), Claim 9 is untimely even with tolling against the Fasslers and FSV.

Finally, the claims against FSV in the FAC are not interchangeable with the claims against FSV (as an alleged alter ego of PHS) in the SAC. The FAC claims were against FSV *directly*, and they were dismissed by this Court on September 3, 2020. *See* ECF 126. Because "the filing of a complaint that is dismissed without prejudice does not toll the statutory filing period[,]"[21] and because the claims in the FAC against FSV were dismissed for lack of jurisdiction,[22] Larada's motion for leave to file the FAC did not toll the statute of limitations for Larada's *current* claims against FSV made via an alter ego theory.

> ii. Counts 5, 6, and 9 against the Fasslers and FSV do not relate back to the filing of the Original Complaint per Rule 15(c)(1)(C), and Larada provides no analysis to the contrary

Though it insists that no statute of limitations has run (*see supra*, Resp. at 1–7), Larada provides no analysis showing that Larada satisfied the requirements of Rule 15(c)(1)(C). In particular, Larada does not contend that, "within the period provided by Rule 4(m) for serving the

---

[20] *See* SAC ¶¶ 32–39, 167–75.
[21] *Goldwyn v. Donahoe*, 562 F. App'x 655, 656 (10th Cir. 2014); *see also Chaney v. Wal-Mart Stores Inc.*, No. CIV-16-111-R, 2016 WL 4083502, at *2 (W.D. Okla. Aug. 1, 2016) ("[T]he timely filing of a lawsuit which is subsequently dismissed without prejudice does not toll, or 'pause' the running of the statute of limitations.").
[22] *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006) ("A longstanding line of cases from this circuit holds that where the district court dismisses an action for lack of jurisdiction, as it did here, the dismissal must be without prejudice.").

summons and complaint" (i.e., 90 days), the Fasslers or FSV, as an alter ego, somehow "received such notice of the action that it will not be prejudiced in defending on the merits" and "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."[23]  Thus, upon finding that Counts 5, 6, and 9 were filed outside the limitations periods, the Court should find that those claims do not relate back under Rule 15(c)(1)(C).

> **B.     Larada's Tort Claims are Barred Under Utah's Economic Loss Rule ("ELR")**

Because Utah's ELR precludes tort claims premised on an alleged breach of a contractual duty, Larada's claims for conversion and trespass to chattels fail against Defendants.  In the SAC, Larada alleges that the Devices were converted by Defendants because the property was not returned *per contract terms* and *only once Larada terminated such contractual relationship*.[24]  In its response, Larada acknowledges that it "understands that it cannot recover on both a conversion claim and a breach of contract claim to the extent the contract claim covers the return of the Larada Devices."[25]  Such concession undermines Claims 5 and 6 against Defendants.

Here, as the alleged property interference under Claims 5 and 6 entails termination of the License Agreements, PHS's alleged failure to return any devices under the License Agreements is *governed by* the License Agreements.  *See* SAC, ¶¶ 139–44.  Though Larada argues that an unjust enrichment claim should survive insofar as *FSV* is concerned (due to the lack of a direct agreement with Larada),[26] that argument contravenes the limited grounds by which FSV is included in this

---

[23] Fed. R. Civ. P. 15(c)(1)(C)(i)–(ii).
[24] SAC ¶¶ 132–44.
[25] Resp. at 7.
[26] *Id.* at 9.

suit. Indeed, Larada ignores prior rulings by the Court recognizing that FSV is not subject to personal jurisdiction to the extent it is not an alter ego *of* PHS.[27] Finally, the plain language of the Consulting Agreement and Lease Agreements (which Larada expressly alleges bind the Fasslers to return confidential information demanded by Larada) demonstrate that any trespass to chattels or conversion claim would necessarily overlap with duties under those contracts.[28] Because Larada's claims for trespass to chattels and conversion are based on alleged violations of contractual duties, Utah's ELR warrants dismissal of Claims 5 and 6 against Defendants.

### C. Larada's Unjust Enrichment Claim Fails Against Defendants

Larada also concedes that it "is aware it cannot recover on both unjust enrichment and contract claims for the same injury." Resp. at 8. This is fatal to Larada's Claim 7 against Defendants. Both PHS and the Fasslers are alleged to be parties to contracts that, by their plain terms, specifically cover the subject matter of this litigation. *See* Mot. at 14–15. Notably, Defendants do not contest the validity of these contracts.[29] Thus, Claim 7 must be dismissed with prejudice.

---

[27] *Cf.* ECF 126 (dismissing Larada's direct claims against FSV, for lack of personal jurisdiction), *with* ECF 186 at 2 ("Larada's proposed amendments appear to resolve the jurisdictional defects present in the [FAC] because Larada has sufficiently alleged new facts tending to show that [FSV] acted *as an alter ego* of the other Defendants, allowing imputation of *their* contacts *to* [FSV] for purposes of this lawsuit.") (emphasis added).

[28] Larada's argument that its unjust enrichment claim is viable against the Fasslers *individually* merely because certain devices at issue might not have been delivered under the License Agreements (versus the Lease Agreement or Consulting Agreement) ignores the agreements the Fasslers signed establishing their commercial relationship with Larada. *See* Mot. at 12–13.

[29] While Defendants previously argued that the License Agreements should be unwound based on their belief that Larada had committed a prior material breach (ECF 199), the Court has ruled that the License Agreements are valid and that Larada's performance was excused. *See* ECF 209. As such, Defendants cannot argue at trial that the License Agreement were invalid. Further, Defendants do not challenge any of the other agreements as unenforceable.

Larada's last argument—that Claim 7 should survive against FSV, merely because FSV does not have a *direct* contract with Larada—suffers the same flaws as Larada's arguments concerning FSV and Utah's ELR. Again, Larada cannot proceed against FSV in a manner that flouts limitations under Utah law of the alter ego theory of liability.[30] Larada's alter ego claims against FSV can be successful against FSV *only* insofar as they are successful against PHS. They cannot expand liability against FSV beyond the liability imputable against PHS.[31] Moreover, there is no personal jurisdiction over FSV insofar as Larada's claims are against FSV directly. If an "unjust enrichment" claim against FSV were permitted to proceed because FSV does not have a contractual relationship with Larada (in contrast to PHS), that would contravene the Court's order granting FSV's 12(b)(2) motion to dismiss. Accordingly, Larada's Claim 7 should be dismissed against Defendants.

D. **Defendants Properly Raise the Legal Defects with the SAC**

While Rule 12(g)(2) provides that "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion[,]" such limitation is qualified by Rule 12(h)(2). Under Rule 12(h)(2), a party may assert failure to state a claim upon which relief can be granted and may state a legal defense to a claim as a defense in a pleading allowed under Rule 7(a), by a motion under

---

[30] *See Prows v. State*, 822 P.2d 764, 767 (Utah 1991) ("Plaintiffs apparently are relying on an alter ego theory as a means of achieving a greater recovery from [the alleged alter ego defendant] than that available from the [defendant with whom the plaintiff had an alleged direct contractual relationship]. There is a fundamental flaw, however, in this reliance. *Even if we allow application of an alter ego theory in this instance, and even if plaintiffs could prove this theory at trial, as the alter ego of the [other defendant], the [alleged alter ego defendant] would be liable only to the same extent that the [other defendant] is liable*.") (emphasis added).
[31] *See id.*

Rule 12(c), or at trial. Per decisions by the Tenth Circuit and this District, "it is, at most, harmless error for a court to consider a successive motion to dismiss for failure to state a claim where it would 'not affect the substantive rights of the parties.'"[32] Because "the Court applies the same standard under Rule 12(b)(6) and Rule 12(c) . . . , any prejudice to [a plaintiff] in having to respond to [a subsequent Rule 12(b)(6) motion] is of its own making due to its imprecise pleading."[33]

Contrary to Larada's assertion that Defendants' Motion is "procedurally improper" under Rule 12(g) (*see* Mot. at 4), Defendants' request to dismiss Larada's deficient claims should be considered and granted. While Defendants have previously filed Rule 12 motions, the rule articulated in *Albers* and its progeny permit the Court to grant Defendants' motion. Each pending argument establishes why the SAC fails to state a claim upon which relief can be granted. Further, even if the arguments for partial dismissal were not considered in the present Motion, Defendants would be entitled to raise them again in any answer or later motion at trial.[34]

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their Motion and enter an order dismissing Claims 5, 6, and 7 (against Defendants) and Claim 9 (against FSV and the Fasslers) with prejudice.

---

[32] *Mod. Font Applications LLC v. Peak Rest. Partners, LLC*, No. 2:19-CV-221 TS, 2020 WL 5370948, at *2 (D. Utah Sept. 8, 2020) (citing to *Albers v. Bd. of Cty. Comm'rs of Jefferson Cty.*, 771 F.3d 697, 704 (10th Cir. 2014)).

[33] *Id. See also Billy v. Edge Homes*, No. 219CV00058JNPEJF, 2020 WL 2572522, at *2 (D. Utah May 21, 2020); *Misner v. Potter*, No. 2:07-CV-330 TS, 2008 WL 410128, at *1 (D. Utah Feb. 12, 2008) ("Rule 12(c) may be invoked when claims are barred by an applicable statute of limitations.").

[34] *See* Fed. R. Civ. P. 12(h)(2).

11

DATED this 26th day of December 2023.

                                              **POLSINELLI**

                                        */s/ Jose A. Abarca*

                                        Romaine C. Marshall
                                        Jose A. Abarca
                                        Charles M. Seby

                                        *Attorney for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on December 26, 2023, I caused a true and correct copy of **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO PARTIALLY DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**, to be served *via* CM/ECF.

/s/ *Kaitlin Morgan*