Romaine C. Marshall (9654)
Jose A. Abarca (12762)
POLSINELLI PC
2825 E. Cottonwood Parkway, Suite 500
Salt Lake City, UT 84104
rmarshall@polsinelli.com
jabarca@polsinelli.com

*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| LARADA SCIENCES, INC., a Delaware corporation, | **DEFENDANTS' OBJECTIONS TO PLAINTIFF'S PROPOSED JURY INSTRUCTIONS** |
| Plaintiff/Counter Defendant, | Case No. 2:18-cv-00551-RJS-JCB |
| vs. | Chief Judge Robert J. Shelby |
| PEDIATRIC HAIR SOLUTIONS CORPORATION, a North Carolina corporation, et al., | Magistrate Judge Jared C. Bennett |
| Defendants/Counterclaimants. | |

Pursuant to Section 6 of the Court's October 31, 2023, Trial Order,[1] Defendants Pediatric Hair Solutions Corporation, John E. Fassler, M.D., Sheila M. Fassler, and FloSonix Ventures, LLC ("PHS Defendants"), hereby submit their objections to Plaintiff's proposed preliminary and substantive jury instructions.

---

[1] Dkt. No. 214.

## I.     PRELIMINARY INSTRUCTIONS

**Plaintiff's Proposed Instruction No. 2**

**DESCRIPTION OF THE CASE**

To help you understand what you will see and hear, I will now explain the background of the case. The parties who are bringing a lawsuit are called "plaintiffs," while the parties being sued are called "defendants."

The Plaintiff in this case is Larada Sciences, Inc., or Larada. There are four defendants. Pediatric Hair Solutions Corporation, or PHS; FloSonix Ventures, or FSV, Mrs. Fassler, and Dr. Fassler.

Larada is a Utah corporation that produces FDA-cleared head lice treatment Devices currently known as the AirAllé and formerly known as the LouseBuster. Larada licenses that technology to treatment clinics in defined exclusive territories.

Defendant PHS was a Larada licensee which operated several such clinics in North Carolina, South Carolina, Georgia, and Ohio. PHS and Larada entered into a series of contracts, called the Lease Agreement, the Rental Agreement, and the License Agreement, governing their relationship.

Mrs. Fassler is the President of PHS. Her husband, Dr. Fassler, was at one time National Medical Director for Larada. All the contracts in question contained confidentiality provisions that barred PHS, Mrs. Fassler, and Dr. Fassler from using any of Larada's proprietary or confidential materials, including the AirAllé device, other than for performing lice treatments pursuant to the contracts.

Larada alleges that beginning in 2014 or 2015, Sheila Fassler and John Fassler, individually or on behalf of PHS, began disclosing the AirAllé device to third-parties for the purpose of developing a competing heated-air louse treatment device.

In November 2016, PHS stopped making its contractual payments to Larada. Larada and PHS briefly discussed the possibility of renegotiating the License Agreements.

In March of 2017, Larada sent PHS a letter terminating the License Agreements.

In May 2017, Sheila Fassler formed FloSonix Ventures, LLC. Around the same time, a new heated air device known as the FloSonix device began being used in PHS clinics. Larada contends this device was developed by Defendants by using the technology embodied in Larada's AirAllé device for research and development

Larada has brought claims against Defendants for (1) breach of contract (2) breach of the implied duty of good faith and fair dealing (3) unjust enrichment and (4) misappropriation of trade secrets.

Prior to this trial, this Court already determined that PHS breached its agreement with Larada by failing to make its required payments under the License Agreement. You will have to determine whether PHS is liable for the above claims, and if so, the amount of damages PHS owes to Larada.

Larada has also brought an action for declaratory judgment which asserts that the FloSonix device is considered an Innovation under Section 10(k) of the License Agreement, and pursuant to the terms of the License Agreement, Larada owns all rights to the FloSonix device.

**Citation:** J. Shelby Stock Jury Instructions, modified to fit facts of case.

**<u>Defendants' Objection:</u>** Defendant do not believe there should be a jury instruction for Plaintiff's declaratory judgement claim. Through its declaratory judgement claim Plaintiff is seeking equitable relief. For example, in Paragraphs 178 and 179 in Second Amended Complaint [Dkt No. 213], Plaintiff states:

> "Aside from the financial injuries Larada has suffered,
> Larada is also being injured by Defendants' actions.  These
> injuries include diminishment of Larada's goodwill and the
> disruption of business relationships.  A declaration that
> Larada owns all rights to the FloSonix Devices is necessary
> to protect Larada from irreparable harm."

Generally speaking, when a plaintiff seeks equitable relief, it is not entitled to jury on the issues

at hand.  *Fischer Imaging Corp. v. General Elec. Co.*, 187 F.3d 1165, 1169 (10th Circ.

1999).  As such, the Court, not the jury, should decide Plaintiff's declaratory judgment claim,

and there should be no jury instruction for Plaintiff's declaratory judgment claim.

## Defendants' Proposed Instruction No. 2

## DESCRIPTION OF THE CASE

The parties who are bringing a lawsuit are called "plaintiffs," while the parties being sued

are called "defendants."  To help you understand what you will see and hear, I will now explain

the background of the case.

The plaintiff here is Larada Sciences, Inc.  I may refer to Larada Sciences, Inc. as Larada,

LSI, or Plaintiff.  The defendants here are Pediatric Hair Solutions Corporation, John E. Fassler,

M.D., Sheila M. Fassler, and FloSonix Ventures, LLC.  I may refer to Pediatric Hair Solutions

Corporation as PHS, John E. Fassler, M.D. as Dr. Fassler, Sheila M. Fassler as Mrs. Fassler, and

FloSonix Ventures, LLC as FSV.  When I say Defendants, I mean PHS, Dr. Fassler, Mrs.

Fassler, and FSV.  When I refer to just PHS, Dr. Fassler, Mrs. Fassler, or FSV, I only mean that

specific party and not the other defendants.

Larada is a company that developed and licenses a lice and lice egg treatment device

known as the AirAllé.  The AirAllé uses hot air to desiccate lice and lice eggs.  PHS began using

the AirAllé, through an agreement with Larada, in November 2010.  Mrs. Fassler is the sole

owner of PHS.  PHS opened and operated lice clinics in North and South Carolina, Georgia, and

Ohio.  In March 2017 the relationship between Larada and PHS ended.  Mrs. Fassler, through PHS and FSV, developed her own hot air lice treatment device called the FloSonix.  PHS and Mrs. Fassler have been using the FloSonix in their clinics since 2017.

Larada has brought claims against Defendants for (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) unjust enrichment; and (4) misappropriation of trade secrets.  I will further explain these claims to you after all the evidence has been presented.

Defendants deny liability for Plaintiff's claims.

**Citation:** J. Shelby Stock Preliminary Jury Instructions.  This stock instruction has been modified to include a brief description of the case.

**Plaintiff's Proposed Instruction No. 3e**

To make a declaratory judgment that Pediatric Hair Solutions (PHS) has breached section

10(k) of the License Agreement, you must be convinced that Larada has proved each of the

following elements by a preponderance of the evidence:

| | | |
|---|---|---|
| First: | that a contract existed between Larada and PHS; |
| Second: | that Larada did what the contract required of it to do, or that Larada was excused from performing its contractual obligations under the contract; |
| Third: | that PHS created an Innovation as that term is defined in the License Agreement; |
| Fifth: | that Larada was harmed by PHS's conduct. |

**Defendants' Objection:** Defendant do not believe there should be a jury

instruction for Plaintiff's declaratory judgment claim.  Through its declaratory

judgment claim, Plaintiff is seeking equitable relief.  For example, in Paragraphs

178 and 179 of its Second Amended Complaint [Dkt No. 213], Plaintiff states:

> "Aside from the financial injuries Larada has suffered,
> Larada is also being injured by Defendants' actions.  These
> injuries include diminishment of Larada's goodwill and the
> disruption of business relationships.  A declaration that
> Larada owns all rights to the FloSonix Devices is necessary
> to protect Larada from irreparable harm."

Generally speaking, when a plaintiff seeks equitable relief, it is not entitled to jury

on the issues at hand.  *Fischer Imaging Corp. v. General Elec. Co.*, 187 F.3d

1165, 1169 (10th Circ. 1999).  As such, the Court, not the jury, should decide

Plaintiff's declaratory judgment claim, and there should be no jury instruction for

Plaintiff's declaratory judgment claim.

## II.   POST-EVIDENCE INSTRUCTIONS

### Plaintiff's Proposed Instruction No. 36

### PLAINTIFF'S CLAIMS

The plaintiff asserts <mark>six</mark> against the defendants, which are summarized as follows:

(1)     Breach of the License Agreement against PHS.

(2)     Breach of the Implied Covenant of Good Faith and Fair Dealing against PHS

(3)     Breach of the Lease Agreement against Sheila Fassler

(4)     Breach of the Consulting Agreement against Dr. John Fassler.

(5)     Misappropriation of Trade Secrets under 18 USC 1836 against all Defendants

(6)     <mark>Unjust Enrichment against all Defendants.</mark>

It is the plaintiff's burden of proof to establish one or more of their claims. I will now explain the elements the plaintiff must prove for you to find the defendant liable on the respective claims.

Citation: Shelby, J. Stock Civil Jury Instructions, modified for facts of case.

**Defendants Objection:** Defendants contend that Plaintiff's unjust enrichment claims against PHS, Mrs. Fassler, and Dr. Fassler are precluded by the existence of an enforceable contract between Plaintiff and PHS, Mrs. Fassler, and Dr. Fassler. *See Cardon v. Jean Brown Rsch.*, 2014 UT App 35, ¶¶ 12-13, 327 P.3d 22, 25 ("a prerequisite for recovery on an unjust enrichment theory is the absence of an enforceable contract governing the rights and obligations of the parties to the conduct at issue"); *AGTC Inc. v. CoBon Energy LLC*, 2019 UT App 124, ¶ 23, 447 P.3d 123, 130 (same); *Ashby v. Ashby*, 2019 UT 7, ¶ 14, 227 P.3d 246, 250-51 (same). Further, Larada's unjust enrichment claim against PHS, Mrs. Fassler, and Dr. Fassler is preempted by its trade secret misappropriation claim. *See Surgenex, LLC v. Predictive Therapeutics, LLC*, 462 F.Supp.3d 1160, 1175 (D. Utah 2020) (when factual allegations

supporting an unjust enrichment claim mirror those supporting a trade secret claim, an unjust enrichment claim is preempted by the trade secret claim).

### Defendants' Proposed Instruction No. 36

### PLAINTIFF'S CLAIMS

Plaintiff asserts five claims against Defendants, which are summarized as follows:

(1)     breach of the license and lease agreements against PHS;

(2)     breach of the implied covenant of good faith and fair dealing in the license agreements against PHS;

(3)     breach of the lease agreement against Mrs. Fassler;

(4)     breach of the consulting agreement against Dr. Fassler; and

(5)     misappropriation of trade secrets against PHS, Dr. Fassler, and Mrs. Fassler.

It is Plaintiff's burden of proof to establish one or more of its claims.  I will now explain the elements Plaintiff must prove for you to find Defendants liable on the respective claims.

**Citation:** J. Shelby Stock Post-Evidence Jury Instructions; modified to include Plaintiff's claims and to reflect multiple defendants.

## Plaintiff's Proposed Instruction No. 44

## UNJUST ENRICHMENT

You should not find a defendant liable for unjust enrichment if you have already found them liable for the same conduct under either a breach of contract claim or a misappropriation of trade secrets claim.

If you have not found a defendant liable for either of those claims, you may still find the defendant liable for unjust enrichment to the extent that

1.     Larada conferred a benefit on that Defendant by providing Larada's technology, including the AirAllé, for use.

2.     The Defendant knew of and appreciated that benefit.

3.     The Defendant retained that benefit without payment to Larada.

4.     It would be inequitable for Defendants to retain the benefit without paying Larada sufficient value in return.

**Defendants Objection:** As set forth above, Defendants contend that Plaintiff's unjust enrichment claims against PHS, Mrs. Fassler, and Dr. Fassler are precluded by the existence of an enforceable contract between Plaintiff and PHS, Mrs. Fassler, and Dr. Fassler. *See Cardon v. Jean Brown Rsch.*, 2014 UT App 35, ¶¶ 12-13, 327 P.3d 22, 25 ("a prerequisite for recovery on an unjust enrichment theory is the absence of an enforceable contract governing the rights and obligations of the parties to the conduct at issue"); *AGTC Inc. v. CoBon Energy LLC*, 2019 UT App 124, ¶ 23, 447 P.3d 123, 130 (same); *Ashby v. Ashby*, 2019 UT 7, ¶ 14, 227 P.3d 246, 250-51 (same).  Further, Larada's unjust enrichment claim against PHS, Mrs. Fassler, and Dr. Fassler is preempted by its trade secret misappropriation claim.  *See Surgenex, LLC v. Predictive Therapeutics, LLC*, 462 F.Supp.3d 1160, 1175 (D. Utah 2020) (when factual allegations supporting an unjust enrichment claim mirror those supporting a trade secret claim, an unjust

enrichment claim is preempted by the trade secret claim).  Therefore, if the unjust enrichment claim is precluded, there should be no jury instruction for Plaintiff's unjust enrichment claim.

**Plaintiff's Proposed Instruction No. 46**

**TRADE SECRETS DEFINED**

To evaluate Larada's trade secret claim, you must first decide whether Larada possessed protectable trade secrets. A trade secret means information, including a formula, pattern, compilation, program, device, method, technique, or process that:

1.  Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

2.  Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Whether something is generally known or readily ascertainable under this definition concerns whether information was generally known and readily ascertainable to the defendant based on the defendant's knowledge and experience, not whether the information is generally known and readily ascertainable to the general public.

If a defendant could reverse-engineer the components of a formula or process by performing basic research, or if the information is available from public sources, the information cannot constitute a trade secret.

Citation: Bimbo Bakeries, USA, Inc. v. Leland Sycamore et al., No. 2:13-cv-00749-DN (D. Utah 10/6/2017), Doc. 452 (Jury Instructions no. 34)

**Defendants Objection:** The parties' competing instructions are similar.  Defendants' instruction is more congruent with the definition set forth in 18 U.S.C. § 1839(3).

### Defendants' Proposed Instruction No. 46

### TRADE SECRETS DEFINED

A "trade secret" involves information that Plaintiff owned or licensed and covers any form of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, or in writing, if:

(1) The information is not generally known to, or readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information;

(2) Plaintiff has taken reasonable measures to keep such information secret; and

(3) The information derives independent economic value, actual or potential, from being secret; and

Whether or not any particular information qualifies as a trade secret depends upon factors that I will describe in a moment.

It is Plaintiff's burden to prove the existence of a trade secret.  You should not presume a trade secret exists.

**Citation:** 18 U.S.C. § 1839(3); *MedSpring Grp., Inc. v. Feng*, 368 F.Supp.2d 1270, 1276 (D. Utah 2005).

**Plaintiff's Proposed Instruction No. 47**

**COMPILATIONS OF INFORMATION AS TRADE SECRETS**

A unique combination of generally known elements or steps can qualify as a trade secret, so long as the combination itself is outside the general knowledge and not readily ascertainable by proper means. In determining whether a compilation of information is a trade secret, it is improper to consider only whether each individual component of the compilation is a trade secret in isolation.

Citation: Bimbo Bakeries, USA, Inc. v. Leland Sycamore et al., No. 2:13-cv-00749-DN (D. Utah 10/6/2017), Doc. 452 (Jury Instructions no. 35)

**Defendants Objection:** Defendants' proposed instruction is more congruent with the facts of this case in that it instructs the jury that the AirAlle device in and of itself cannot be a trade secret.

**Defendants' Proposed Instruction No. 47**

**COMPILATIONS OF INFORMATION AS TRADE SECRETS**

A unique combination of generally known elements or steps can qualify as a trade secret, so long as the combination itself is outside the general knowledge and not readily ascertainable by proper means. In determining whether a compilation of information is a trade secret, it is improper to consider only whether each individual component of the compilation is a trade secret in isolation. In this case, the AirAlle device in and of itself cannot be a trade secret.  However, the components of the AirAlle and/or the methods incorporated into the AirAlle may be trade secrets.

Citation: Bimbo Bakeries, USA, Inc. v. Leland Sycamore et al., No. 2:13-cv-00749-DN (D. Utah 10/6/2017), Doc. 452 (Jury Instructions no. 35)

**Plaintiffs' Proposed Instruction No. 48**

**PLAINTIFF'S ALLEGED TRADE SECRETS**

**This trial concerns trade secrets alleged by Plaintiff, including the AirAlle device and the technology and processes contained therein. These include, but are not limited to:**

1. **The specific output parameters of Larada's device**

2. The method by which Larada achieves efficacy with a single de-lousing treatment alone, by only pairing the Larada multi-nozzle tip with the AirAlle unit and vice-versa;

3. Larada's method, process and design they developed and applied for effectively fast thermal control response in a high-discharge heated air device; and

4. **Larada's specific selection and method of utilization of the blower-related components as applying them for the purpose of precise volumetric delivery and flow control**

**Defendants' Objection:** Plaintiff's alleged trade secrets have been specifically identified by Plaintiff through their expert witness over two years ago.  They are set forth above and are, therefore, limited to these.

**Defendants' Proposed Instruction No. 48**

**PLAINTIFF'S ALLEGED TRADE SECRETS**

This trial concerns the following trade secrets alleged by Plaintiff:

(1) Larada's specific output parameter values for temperature and volumetric flow rate;

(2) The method by which Larada achieves efficacy with a single de-lousing treatment alone, by only pairing the Larada multi-nozzle tip with the AirAlle unit and vice-versa;

(3) Larada's method, process and design they developed and applied for effectively fast thermal control response in a high-discharge heated air device; and

(4)  Larada's specific selection and method of utilization of the blower-related

components as applying them for the purpose of precise volumetric delivery and flow

control.

These are referenced in the expert report of Jon Beck.  Plaintiff contends that Defendants

misappropriated these Alleged Trade Secrets.

**Citation:** Expert Report of Jon Beck

**Plaintiff's Proposed Instruction No. 50**

**REASONABLE EFFORTS TO MAINTAIN SECRECY EXPLAINED**

Reasonable efforts to keep the information secret are the efforts that would have been made by a reasonable individual or business in the same situation, and with the same knowledge and resources, as the alleged owner, exercising due care to protect important information of the same kind. In determining whether or not the owner made reasonable efforts to keep the information secret, the listed factors should be considered, among any other factors pertinent to the issue. The presence or absence of any one or more of these factors is not determinative, and the importance of any single factor depends upon all the circumstances.

   a.   Whether the owner required employees or others with access to the information to sign confidentiality or nondisclosure agreements;

   b.   Whether the owner instructed its employees to treat the information as confidential;

   c.   Whether the owner limited the access or use of the Alleged Trade Secrets to those who had a need to know the information;

   d.   Whether the owner kept the information in a restricted or secured area; and

   e.   The extent to which any general measures taken by the owner would prevent the unauthorized disclosure of the information

Citation: 18 U.S.C. §1839(3)(A). *InteliClear, LLC v. ETC Holdings, Inc.,* 978 F.3d. 653, 661 (9th Cir. 2020) (citing *MAI Sys. Corp. v. Peak Computer, Inc.,* 991 F.2d 511, 521 (9th Cir. 1993) [finding that a confidentiality agreement supported "reasonable efforts" under the California Uniform Trade Secrets Act].) CACI 4403, *Bimbo Bakeries, USA, Inc. v. Leland Sycamore* et al., No. 2:13-cv-00749-DN (D. Utah 10/6/2017), Doc. 452 (Jury Instructions no. 40)

**Defendants Objection:** Defendants' proposed provides the jury with additional factors relevant to this case to consider when determine this issue.

**Defendants' Proposed Instruction No. 50**

**REASONABLE EFFORTS TO MAINTAIN SECRECY EXPLAINED**

Reasonable efforts to keep the Alleged Trade Secrets secret are the efforts that would have been made by a reasonable individual or business in the same situation in the same industry, and with the same knowledge and resources, as Plaintiff, exercising due care to protect important information of the same kind.

In determining whether or not Plaintiff made reasonable efforts to keep the Alleged Trade Secrets, the listed factors should be considered, among any other factors pertinent to the issue. The presence or absence of any one or more of these factors is not determinative, and the importance of any single factor depends upon all the circumstances.

(1) Whether Plaintiff's Alleged Trade Secrets were specific and described well enough for their secrecy to be reasonably maintained;

(2) Whether Plaintiff required employees or others with access to the Alleged Trade Secrets to sign confidentiality or nondisclosure agreements;

(3) Whether products, hardware, documents or computer files containing the Alleged Trade Secrets were marked with confidentiality warnings;

(4) Whether Plaintiff instructed its employees to treat the Alleged Trade Secrets as confidential;

(5) Whether Plaintiff limited the access or use of the Alleged Trade Secrets to those who had a need to know the Alleged Trade Secrets;

(6) Whether Plaintiff kept the information in a restricted or secured area;

(7) Whether Plaintiff used passwords, firewalls, encryption or other electronic means

to protect the information;

(8)     Whether Plaintiff took any action to protect the specific information, or whether it relied on general measures taken to protect its Alleged Trade Secrets or assets;

(9)     The extent to which any general measures taken by Plaintiff would prevent the unauthorized disclosure of the Alleged Trade Secrets;

(10)    Whether Plaintiff publicly disclosed, partially or in full, the Alleged Trade Secrets; and

(11)    Whether there were other reasonable measures available to Plaintiff that it did not take.

**Citation:** 18 U.S.C. § 1839(3)(A); Template Instruction 2.4, Intellectual Property & Technology Law Journal Vol. 33, No. 7, July-August 2021

## Plaintiff's Proposed Instruction No. 55

## DEFINITION OF MISAPPROPRIATION

For a trade secret claim, "misappropriation" means any one of the following four acts:

a.      acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

b.      disclosure or use of a trade secret of another by a person who used improper means to acquire knowledge of the trade secret; or

c.      disclosure or use of a trade secret of another by a person who, at the time of the disclosure or use, knew or had reason to know that his knowledge of the trade secret was:

   (i)      derived from or through a person who had used improper means to acquire it;

   (ii)     acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

   (iii)    derived from or through a person who owed a duty to the trade secret's owner to maintain its secrecy or limit its use; or

d.      disclosure or use of a trade secret of another by a person who knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

Any of the four acts described above still constitutes misappropriation of the trade secret even if the person uses the trade secret with additions or modifications.

**Defendants Objection:** Defendants' proposed instruction is more concise and will be less confusing to the jury while still being congruent with 18 U.S.C. § 1839(5)-(6).

## Defendants' Proposed Instruction No. 55

## "MISAPPROPRIATION" OF ALLEGED TRADE SECRETS

Plaintiff must also prove that the Alleged Trade Secrets were "misappropriated," which means they were acquired by improper means or used or disclosed by a defendant without Plaintiff's consent.

**Citation:** 18 U.S.C. § 1839(5)-(6)

## Plaintiffs' Proposed Instruction No. 57

Improper means is defined as theft, misrepresentation, breach or inducing a breach of a duty to maintain secrecy, or espionage through electronic or other means.

**"Improper means" does not include reverse engineering, independent derivation or any other lawful means of acquisition.  Thus, if a defendant shows that it reconstructed the information without using Plaintiff's Alleged Trade Secrets, that reconstruction is lawful and proper.**

**<u>Defendants Objection:</u>** It appears the parties' proposed instruction is the same.  Defendants reserve the right to object to Plaintiff's proposed instruction to the extent Plaintiff seeks to revise such.

## Defendants' Proposed Instruction No. 57

## "IMPROPER MEANS" DEFINED

Improper means is defined as theft, misrepresentation, breach or inducing a breach of a duty to maintain secrecy, or espionage through electronic or other means.

"Improper means" does not include reverse engineering, independent derivation or any other lawful means of acquisition.  Thus, if a defendant shows that it reconstructed the information without using Plaintiff's Alleged Trade Secrets, that reconstruction is lawful and proper.

**Citation:** 18 U.S.C. § 1839(6)

**Plaintiff's Proposed Instruction No. 63**

**DAMAGES FOR TRADE SECRET MISAPPROPRIATION-UNJUST**

**ENRICHMENT**

The trade secret laws allow recovery of the defendant(s) "unjust enrichment," caused by the unlawful acquisition, use, or disclosure of its Alleged Trade Secrets. Larada claims that Defendants have been unjustly enriched because they have acquired the benefits of the technological know-how reflected in Larada's AirAlle device without incurring the research and development costs that Larada incurred. Regardless of whether you find that Larada itself suffered losses, if you find that a defendant benefited from using a trade secret belonging to Larada, then you should consider whether that defendant should pay the monetary value of those benefits to Larada.

Citation: 18 U.S.C. § 1836(b)(3)(B)(i)(I), (II), CACI 4409. Bimbo No. 44

**Defendants' Proposed Instruction No. 63**

**UNJUST ENRICHMENT**

To decide the dollar amount of any unjust enrichment to a defendant, first determine the dollar value of a defendant's actual benefit from the misappropriation.  Then subtract from that amount a defendant's reasonable expenses associated with the benefit it received.

**Citation:** 18 U.S.C. § 1836(b)(3)(B)(i)

**Plaintiff's Proposed Instruction No. 64**

**EXEMPLARY DAMAGES**

If you find that a Defendant has engaged in willful and malicious misappropriation of the

22

trade secret, you may award "exemplary" damages, that is, damages meant to make an example of the Defendant. Exemplary damages may be awarded in an amount not more than two (2) times the amount awarded for compensatory damages (i.e., the amount awarded for either actual damages plus unjust enrichment or for a reasonable royalty).

Citation: 11th Circuit Civil Pattern Jury Instructions 11.5

**Defendants' Proposed Instruction No. 64**

**EXEMPLARY DAMAGES**

If you find that any defendant engaged in the misappropriation of one or more Alleged Trade Secrets and that that defendant is liable for unjust enrichment, then you may also decide whether that defendant's misappropriation of the Alleged Trade Secrets was willful and malicious. If you find that the misappropriation was willful and malicious by clear and convincing evidence, then you may award exemplary damages.

Exemplary damages are intended to punish and to deter misappropriation of trade secrets. You may determine an amount of exemplary damages up to two times any amount awarded.

**Citation:** 18 U.S.C. § 1836(b)(3)(C)

## Plaintiff's Proposed Instruction No. 65
## WILLFUL AND MALICIOUS

Larada also claims that each defendant engaged in "willful and malicious misappropriation."

Trade secret misappropriation is willful when that defendant knowingly and purposefully misappropriates a trade secret for itself, or when the defendant reasonably should have known that the information it used from Larada was a trade secret still and used that information.

An act is willful if done voluntarily and intentionally and with the specific intent to commit such an act.

An act is malicious if prompted or accompanied by ill will or such gross indifference to the rights of others as to amount to a willful act done intentionally without just cause or excuse.

If you find that a defendant misappropriated Larada's trade secret, you must decide whether the misappropriation was willful and malicious by "clear and convincing evidence."

Citation: *Bimbo Bakeries, USA, Inc. v. Leland Sycamore et al.,* No. 2:13-cv-00749-DN (D. Utah 10/6/2017), Doc. 452 (Jury Instructions no. 47)

## Defendants' Proposed Instruction No. 65
## WILLFUL AND MALICIOUS

Plaintiff also claims that Defendants engaged in willful and malicious trade secret misappropriation.

Trade secret misappropriation is *willful* when done with actual or constructive knowledge of its probable consequences.

An act is *malicious* if done with the intent to cause injury.

If you decide Defendants misappropriated Plaintiff's trade secrets, you must decide whether the misappropriation was willful and malicious by "clear and convincing evidence."

Clear and convincing evidence means that Plaintiff must persuade you, by the evidence, to the point that there remains no serious or substantial doubt as to the truth of the fact.

**Citation:** Milgrim on Trade Secrets § 1.01 (2018) (for the proposed definitions of "willful" and "malicious"); MUJI 2d—CV118—Clear and Convincing Evidence

Plaintiff's Proposed Instruction No. 66

**DECLARATORY JUDGMENT—OWNERSHIP OF INNOVATIONS**

You have heard evidence of a License Agreement between LSI and PHS. Provision 10(k) of that Agreement provides the following language:

"During the Term or any Renewal Term, Licensee may create, design or otherwise improve upon any component of the Proprietary Information (an "Innovation"). Any Innovation will be deemed the sole and exclusive property of LSI. Upon the creation of any Innovation, Licensee will immediately notify LSI in writing and in detail the nature of the Innovation. LSI shall have the sole and exclusive right to approve or disapprove of any such Innovation. If it is approved, LSI may permit Licensee and any other Licensees of LSI to use the Innovation. Licensee agrees to take any action necessary to insure that LSI obtains such right, title and interest in any such Innovation, all at LSI' s expense. To the extent necessary, any such innovation will be deemed to be a `work made for hire' that was specifically ordered and commissioned by LSI. Licensee acknowledges and agrees such work made for hire belongs to and shall be the sole and exclusive property of LSI."

Proprietary Information is defined under the Agreement as including, but not being limited to:

1.    The Device and the construction of, and the design, mechanics, patents, electronics, User Manuals, Consumables, and all other components and parts that make up the Device;

2.    All Documents;

3.    The Marks as they may be added, changed, or deleted from time to time;

4.    The operating procedures and processes;

5.    All common law rights to the Marks and to any copyrighted materials; and

6.      Any trade secret processes, formulae, or information.

Under the law, parties may agree in a contract how to allocate ownership of improvements made to property.

In this case, you must determine whether the agreement between PHS and Larada provides that Larada is the exclusive and sole owner of any improvements or innovations made by PHS to the AirAlle device, including the FloSonix device.

To make this determination, you should consider the following:

1.      The specific language and definitions used in the Agreement;

2.      The intent of the parties at the time they entered into the Agreement;

3.      The nature of the improvements or changes made by PHS; and

4.      Whether the improvements or changes, including the FloSonix device, fall within the definition of an "innovation" as understood in the context of this agreement and by industry standards.

If you find that PHS has created, designed or improved any component of LSI' s Proprietary Information as defined above, then you must conclude that PHS has created an "innovation" under the Agreement. You must also conclude that LSI owns any such innovation or improvement.

Defendants' Objection: Defendant do not believe there should be a jury instruction for Plaintiff's declaratory judgment claim.  Through its declaratory judgment claim Plaintiff is seeking equitable relief.  For example, in Paragraphs 178 and 179 of its Second Amended Complaint [Dkt No. 213], Plaintiff states:

> "Aside from the financial injuries Larada has suffered, Larada is also being injured by Defendants' actions.  These injuries include diminishment of Larada's goodwill and the disruption of business relationships.  A declaration that Larada owns all rights to the FloSonix Devices is necessary to protect Larada from irreparable harm."

Generally speaking, when a plaintiff seeks equitable relief, it is not entitled to jury

on the issues at hand.  *Fischer Imaging Corp. v. General Elec. Co.*, 187 F.3d 1165,

1169 (10th Circ. 1999).  As such, the Court, not the jury, should decide Plaintiff's

declaratory judgment claim, and there should be no jury instruction for Plaintiff's

declaratory judgment claim.

### III.   <u>POST-ARGUMENT INSTRUCTIONS</u>

Defendants do not have any objections to any post-argument instructions.

DATED this 23rd day of July 2024.

POLSINELLI PC

*/s/ Jose A. Abarca*
Romaine C. Marshall
Jose A. Abarca

*Attorney for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 23, 2024, I caused a true and correct copy of the foregoing to be served *via* the CM/ECF system.

*/s/ Kaitlin Morgan*