Romaine C. Marshall (9654)
Jose A. Abarca (12762)
POLSINELLI PC
2825 E Cottonwood Parkway, Suite 500
Salt Lake City, UT 84121
rmarshall@polsinelli.com
jabarca@posinelli.com

*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| LARADA SCIENCES, INC., a Delaware corporation, <br><br>       Plaintiff/Counter Defendant, <br><br> vs. <br><br> PEDIATRIC HAIR SOLUTIONS CORPORATION, a North Carolina corporation, et al., <br><br>       Defendants/Counterclaimants. | **DEFENDANTS' BRIEF IN SUPPORT OF THEIR PROPOSED JURY INSTRUCTIONS AND SPECIAL VERDICT FORM** <br><br> Case No. 2:18-cv-00551-RJS-JCB <br> Chief Judge Robert J. Shelby <br> Magistrate Judge Jared C. Bennett |

Pursuant to sections 6(d) and 7 Court's October 31, 2023 Trial Order, Defendants Sheila Fassler, John Fassler, MD (together with Sheila Fassler, the "Fasslers"), Pediatric Hair Solutions Corporation ("PHS"), and FloSonix Ventures, LLC ("FSV" and together with the Fasslers and PHS, "Defendants"), submit this brief in support of their Proposed Jury Instructions and Special Verdict Form.

I.      **Defendants' Proposed Jury Instructions**

   A.      *Defendants' Proposed Instruction No. 36 – Plaintiff's Claims*

Defendants' Proposed Jury Instruction modifies Plaintiff's misappropriation of trade secrets claim to be against only PHS, Dr. Fassler and Mrs. Fassler and omits Plaintiff's unjust enrichment claim entirely.

   1.      Jury Instruction No. 36 Should Only Include Misappropriation of Trade Secrets Against PHS, Dr. Fassler, and Mrs. Fassler

At the July 31, 2023, Pretrial Conference, Plaintiff argued it should be entitled to bring claims for misappropriation of trade secrets and unjust enrichment directly against FSV, despite Plaintiff's Second Amended Complaint alleging this Court only had personal jurisdiction over FSV as an alter ego defendant. At this Court's direction, Plaintiff filed a brief outlining its legal support for abandoning its pled alter ego theory[1] and Defendants filed a brief in reply of why direct claims against FSV are without merit.[2] In support of Defendants' Proposed Jury Instruction No. 36 as drafted, Defendants incorporate its brief in reply as if stated in full herein.

   2.      Plaintiff's Claim for Unjust Enrichment Should be Removed.

Defendants are not contesting the validity of the contracts between Plaintiff, PHS, Dr. Fassler, and Mrs. Fassler. At the July 31, 2023, Pretrial Conference, Plaintiff made clear to this Court that Plaintiff was not "going to be doing anything further" on its unjust enrichment claim as Plaintiff acknowledged and conceded that all of the contracts had been stipulated."[3] Because it is

---

[1] Dkt. No. 307. As noted in Defendants' brief in reply, Plaintiff's brief only addressed it's misappropriation of trade secrets against FSV and based on this silence, Defendants conclude Plaintiff has abandoned any argument asserting a direct claim for unjust enrichment against FSV.

[2] Dkt. No. 308.

[3] Ex. A, July 31 Pretrial Conference Transcript ("PCT") at 24:17-25:10.

stipulated that there are existing and enforceable agreements with each defendant, Plaintiff's unjust enrichment claim is precluded.[4]   *See Cardon v. Jean Brown Rsch.*, 2013 UT App 35, ¶¶ 12-13, 327 P.3d 22, 25 ("[A] prerequisite for recovery on unjust enrichment theory is the absence of an enforceable contract governing the rights and obligations of the parties to the conduct at issue.").

B.      *Defendants' Proposed Instruction No. 46 – Trade Secrets Defined*

Plaintiff's Second Amended Complaint brings a claim for misappropriation of trade secrets under the Defend Trade Secrets Act.  Defendants' Proposed Jury Instruction No. 46 defines "trade secrets" directly from Defend Trade Secret Act, specifically section 1839(3).

Plaintiff's support for its Proposed Jury Instruction No. 46 is the jury instruction used in *Bimbo Bakeries, Inc. v. Leland Sycamore et al.*, No. 2:13-cv-00749-DN (D. Utah Oct. 6, 2017). However, *Bimbo Bakeries* involved a misappropriation of trade secrets claim brought under state law and the Utah Uniform Trade Secrets Act ("UUTSA")—not the Defend Trade Secrets Act ("DTSA") as is the case here.

While the DTSA is derived from and largely resembles the Uniform Trade Secrets Act (i.e., the UUTSA as adopted by Utah), the definition of a trade secret under both acts differ.  The UUTSA, as quoted by Plaintiff in its draft Jury Instruction No. 46, requires the owner of an alleged secret to use "efforts that are reasonable under the circumstances to maintain its secrecy."[5]  But, the DTSA requires the owner of an alleged trade secret to use "reasonable measures to keep such

_____

[4] For these same reasons, Plaintiff's Proposed Jury Instruction No. 44 ("Unjust Enrichment") should be omitted.

[5] Utah Code. Ann. Section 13-4-2(4)(b).

3

information secret."[6]  This nuance has not been heavily discussed by the courts, but determining what is a reasonable measure is a jury issue, so ensuring the correct definition is imperative.[7]

Indeed, the legislative history indicates that Congress expressly contemplated the Uniform Trade Secrets Act when drafting the DTSA.[8]  Therefore, it is conceivable that Congress could have used the term "reasonable under the circumstances" but purposefully chose to omit "under the circumstances" use "reasonable measures."  The omission of "under the circumstances" suggests a plaintiff's burden under the DTSA to lack any temporal limitations of when secrecy must be maintained, and that owner's efforts should be reasonable under *any* circumstance—regardless of the type of trade secret or facts relating thereto.

Plaintiff had every opportunity to bring a state law misappropriation claim under the UUTSA but decided instead to bring a claim under the DTSA.  Therefore, the Court should use the definition of a trade secret as defined by the act that Plaintiff elected to bring its claim.

C.    *Defendants' Proposed Instruction No. 48. – Plaintiff's Alleged Trade Secrets*

Defendants' Proposed Jury Instruction No. 48 defines Plaintiff's alleged trade secrets directly from Plaintiff's expert, Jon Beck's report.  Plaintiff's Proposed Jury Instruction No. 48 abbreviates Mr. Beck's first trade secret regarding the specific output parameters of Larada's device, which is specifically limited to its values for "temperature and volumetric flow rate."  Plaintiff's Proposed Jury Instruction as it relates to the first trade secret attempts to broaden the alleged trade secret by omitting these key terms and subvert likely evidence that will come out at

---

[6] 18 U.S.C. § 1839(3)(A).

[7] *ATS Group, LLC v. Legacy Tank and Industrial Servs. LLC*, 407 F.Supp.3d 1186, 1199 (W.D. Okla. 2019) ("The issue of reasonable measures is generally one of fact for the jury.").

[8] *See* Senate Report on Defend Trade Secrets Act of 2016, 114th Cong., S12213 (2016).

trial that temperature and volumetric flow rate were publicly disclosed through Plaintiff's patents and other published materials.  The jury should be instructed of Plaintiff's alleged trade secrets exactly as they are defined by Plaintiff's expert and reminded that it was Plaintiff's expert who outlined these trade secrets.

D.      *Defendants' Proposed Instruction No. 50 – Reasonable Efforts to Maintain Secrecy Explained*

Defendants' Proposed Jury Instruction No. 50 incorporates all of the factors outlined in Plaintiff's Proposed Jury Instruction but includes six additional factors that the jury could consider in determining whether Plaintiff used reasonable efforts to maintain the secrecy of its alleged trade secrets.  Defendants' list is derived, verbatim, from the Intellectual Property & Technology Law Journal, which authored template jury instructions to be used specifically with misappropriation claims brought under the Defend Trade Secrets Act—as Plaintiff did here.

The additional factors included by Defendants are relevant for a jury to consider.  Part of Plaintiff's burden, especially as a "combination-trade-secret" plaintiff, is to describe its trade secrets with sufficient particularity so that its protectability can be assessed and a jury might be able to distinguish its alleged trade secrets from the other components or information that went into its device.[9]  Therefore, the factor relating to the specificity of Plaintiff's description of their alleged trade secrets must be considered by the jury.  Additionally, whether Plaintiff publicly disclosed, either partially or in full, its alleged trade secrets is highly relevant for the jury to consider.  Publicly disclosed information cannot be maintained as a trade secret and such

---

[9] *Caudill Seed & Warehouse Co., Inc. v. Jarrow Formulas, Inc.*, 53 F.4th 369, 380-81 (6th Cir. 2022) ("A combination-trade-secret plaintiff must describe the secret with sufficient specificity **that its protectability can be assessed** and to show that its compilation is unique.") (emphasis added) (quotations and citations omitted).

disclosure has an obvious impact on a jury determining whether Plaintiff enacted reasonable efforts to maintain secrecy.[10]  Plaintiff's Proposed Jury Instruction has clearly eliminated relevant factors because they are inconvenient for Plaintiff's theory and narrative.  This Court should provide the jury with a full list of *all* relevant factors to consider in determining whether Plaintiff undertook reasonable efforts to maintain secrecy of its alleged trade secrets.

> E.  *Defendants' Proposed Instruction Nos. 53 and 54 – Independent Economic Value Explained and Readily Ascertainable by Proper Means*

Defendants' Proposed Jury Instructions Nos. 53 and 54 specifically inform the jury what the terms "independent economic value" and "readily ascertainable by proper means" refer to in the context of defining a trade secret under the Defend Trade Secrets Act ("DTSA").  Under section 1839(3)(B) of the DTSA, a trade secret can only exist if:

a)  it "derives independent economic value, actual or potential, from **not being generally known**"; and

b)  "not be[] **readily ascertainable** through proper means by, another person who can obtain economic value from the disclosure or use of the information."

These requirements are tantamount to a jury determining the existence of Plaintiff's alleged trade secret.  Plaintiff has provided no objection to the inclusion of Defendants' Proposed Instruction No. 53[11] (relating to the definition of "independent economic value"), likely because

---

[10] *See Utah Med. Prods., Inc. v. Clinical Innovations Assocs., Inc.*, 79 F.Supp.2d 1290, 1312 (D. Utah 1999) ("[The] subject matter of a trade secret must be unknown, it should not be in the public domain or within the knowledge of the trade"); *On-Line Tech, Inc. v. Bodenseewerk Perkin-Elmber GmbH*, 386 F.3d 1133, 1141 (Fed. Cir. 2004) ("After a patent has issued, the information contained within is ordinarily regarded as public and not subject to the protection as a trade secret.").

[11] *See* Dkt. No. 297.

there is no consequence to simply providing the jury with a definition of a concept that is a legal term of art and would likely not be generally well-known to an average juror.[12]

Plaintiff only specifically objects to Defendants' Proposed Instruction No. 54 (relating to the definition of "readily ascertainable by proper means") because of its inclusion of "reverse engineering and benchmarking."[13]  According to Plaintiff, these terms are not appropriate to use in this instruction because of the existence of a confidential relationship between the parties, and in support, cites *Port-a-Pour v. Peak Innovations, Inc*., 49 F.Supp.3d 841, 862 (D. Colo. 2014).

But *Port-a-Pour* only dealt with "reverse engineering" and not "benchmarking."[14]  These two concepts are different.  "Reverse engineering" involves deconstructing an existing product to understand its components while "benchmarking" refers to the process of comparing performance metrics to industry best practices, with a focus on identifying areas of improvement or where strengths can be enhanced.[15]   While a confidential relationship might preclude "reverse

---

[12] In addition to 18 U.S.C. § 1839(3)(B), Defendants Proposed Instruction No. 53 is also derived directly from Template Instruction 2.7, Intellectual Property & Technology Law Journal Vol. 33, No. 7, July-August 2021, which cites Judicial Council of California Civil Jury Instruction 4412 as authority for the instruction.

[13] Dkt. No. 397 at 13.

[14] *Port-a-Pour v. Peak Innovations, Inc*., 49 F.Supp.3d 841, 862 (D. Colo. 2014) (making mention to only "reverse engineering" but saying nothing about "benchmarking").

[15] *Compare* Reverse Engineering, BLACK'S LAW DICTIONARY (12th ed 2024) ("The process of discovering how an invention works by inspecting and studying it, esp. by taking it apart in order to learn how it works and how to copy and improve it); *with J.S.T. Corp. v. Robert Bosch LLC*, 2020 WL 111232873, at *5 (E.D. Mich. July 22, 2020) (quoting a party's expert defining "benchmarking" as "a commonly used practice where businesses compare processes and performance metrics to industry standards and best practices from other companies . . . . [and] through benchmarking, businesses are not . . . attempting to copy other's designs[,] [i]nstead, benchmarking is used by companies to take lessons learned . . . to incorporate into our own designs for our unique design." (quotations and citations omitted)).

engineering," this Court should include Defendants' Proposed Jury Instruction No. 54 and its use of the term "benchmarking."

F.      *Defendants' Proposed Instruction No. 58 – Independent Development and Reverse Engineering*

Plaintiff objects to Defendants' Proposed instruction no. 58 insofar as it includes the following sentence: "Competitors are also entitled to lawfully obtain a competitor's product or service and try to deconstruct it to determine its component parts."[16] According to Plaintiff, neither 18 U.S.C. 1839(6) nor Template Instruction 3.1.2 of the Intellectual Property & Technology Law Journal, "contain this information." Plaintiff also argues that "[t]here is no indication that Defendant lawfully obtained Larada's product or service."

First, a plain reading of Template Instruction 3.1.2 clearly shows that it *does* include this sentence as a relevant consideration for a jury when determining independent development and reverse engineering.[17] Second, whether Defendants lawfully obtained Plaintiff's product through proper means is a question for the jury. This is precisely why the jury is given Proposed Instruction No. 57, defining improper means of acquiring an alleged trade secret. If the evidence at trial suggests, as Plaintiff asserts, that Defendants did not lawfully obtain its products, then it is up to the jury to determine the significance of this instruction in determining Defendants' ability to independently develop their own product and reverse engineer Plaintiff's device.

G.      *Defendants' Proposed Instruction Nos. 59 and 60 – Misappropriation By Use and Misappropriation By Disclosure*

---

[16] Dkt. No. 297 at 14.

[17] *See* Template Instruction 3.1.2, Intellectual Property & Technology Law Journal Vol. 33, No. 7, July-August 2021.

Plaintiff has made clear in its opposition to Defendants' Motion in Limine No. 5 that it intends to present evidence at trial to show misappropriation of trade secrets under the Defend Trade Secrets Act by showing Defendants misappropriated its alleged trade secrets by use, disclosure, or both.[18]  Defendants' Proposed Instructions Nos. 59 and 60 instruct the jury as to what "use" and "disclosure" means in the context of trade secret misappropriation.[19]

In its objection to Defendants' Proposed Instruction No. 59, Plaintiff argues "[t]here is no requirement that the trade secrets be incorporated" to be considered "use."[20]  While the term "use" is undefined, it has been construed to mean "when one directly exploits [a trade secret] for his own advantage, e.g., by incorporating it into his own manufacturing technique or product."[21]  Use is "not present when the conduct consists entirely of possessing, and taking advantage of, something that was made using the secret."[22]  Defendants expect evidence at trial will show that while Defendants may have possessed Plaintiff's alleged trade secrets (to the extent the jury determines such trade secrets even exist), Defendants did not use any of Plaintiff's alleged jury instructions

[18] *See* Dkt. No. 272 at 3-4.

[19] Plaintiff makes no objection to the inclusion of Defendants' Proposed Instruction No. 60 (Misappropriation by Disclosure of the Trade Secret), and therefore this Court should adopt the jury instruction as drafted.

[20] Dkt. No. 297 at 15.

[21] *Silvaco Data Sys. v. Intel Corp.*, 194 Cal.App.4th 210, 224 (2010), *overruled on other grounds*.

[22] *Id.* Defendants' Proposed Instruction No. 59 was derived from Template Instruction 3.3, Intellectual Property & Technology Law Journal Vol. 33, No. 7, July-August 2021.  Template Instruction 3.3 was derived from Judicial Council of California Civil Jury Instruction 4412, which cites the *Silvaco* court's definition of "use" as authority for the instruction.

under this definition because none of the alleged trade secrets were actually incorporated into Defendants' devices.

Based on the foregoing, Defendants' reject Plaintiff's proposal to remove the second paragraph of proposed instruction and believe this Court should adopt the instruction as drafted.

### H.    *Defendants' Proposed Instruction No. 63 – Unjust Enrichment*

The key difference between Plaintiff's Proposed Instruction No. 63 and Defendants is the inclusion of the requirement that the jury subtract Defendants' reasonable expenses associated with any benefit received from the dollar amount of Defendants' actual benefit.  Plaintiff objects to this inclusion because it is unclear to Plaintiff "what expenses could possibly be associated here."[23] Plaintiff's awareness of Defendant's expenses is immaterial.

In *USA Power, LLC v. PacifiCorp*, the jury was instructed how to calculate unjust enrichment damages for lost profits.[24]  The jury was explicitly told it "may not include as damages those profits that are attributable to [the defendant's] own independent efforts, skill, expertise, knowledge, innovation, and investment."[25]

Here, Plaintiff does not seek unjust enrichment damages by way of lost profits, but rather damages relating to its cost to develop its alleged trade secrets.  Therefore, the jury should be instructed to not include Defendants' "own independent efforts . . . **and investment**" when calculating how much—if anything—to award to Plaintiff for unjust enrichment damages. Accordingly, Defendants' Proposed Instruction No. 63 should be adopted as drafted.

---

[23] Dkt. No. 297 at 16.

[24] *USA Power, LLC v. PacifiCorp*, 2016 UT 20, ¶ 76.

[25] *Id.*

I.     *Defendants' Proposed Instruction No. 64 – Exemplary Damages*

The parties' versions of Proposed Instruction No. 64 relating to exemplary damages are similar.   However, Plaintiff's is less clear and does not adequately portray Plaintiff's burden for receiving exemplary damages.

Defendants' proposed instruction makes clear to the jury that before it can make a determination as to whether Defendants' misappropriation was willful and malicious, the jury must first: (1) determine that Defendants engaged in misappropriation of one or more of the alleged trade secrets; and (2) find the defendant liable for unjust enrichment.[26]   Plaintiffs' proposed instruction does not make clear that the jury must first determine these two prerequisites before making a determination as to whether Defendants engaged in any willful or malicious misappropriation.   Plaintiff cannot be awarded exemplary damages absent a showing of willful and malicious misappropriation by clear and convincing evidence.[27]   Defendants' proposed instruction makes this prerequisite clear to the jury.   Further, Defendants' proposed instruction informs the jury why exemplary damages are awarded: to punish and deter misappropriation.   The jury's understanding of this rationale plays an important role in their determination of whether to award exemplary damages.[28]   Therefore, Defendants' Proposed Instruction No. 64 should be

---

[26] Plaintiffs' Proposed Instruction No. 64 includes "a reasonable royalty" as a damage category that the jury may use to calculate exemplary damages.  Plaintiff is not seeking "a reasonable royalty" and therefore this should be stricken.

[27] *Bimbo Bakeries USA, Inc. v. Sycamore*, 2018 WL 1578115, at *4 (D. Utah March 29, 2018) ("Exemplary damages . . . are proper based on the jury's finding by clear and convincing evidence that [the] misappropriation was willful and malicious.").

[28] *See Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 42 (1991) (O'Connor, J., dissenting) ("Punitive damages are a powerful weapon. . . . Imposed indiscriminately . . . they have a devastating potential for harm. . . . States routinely authorize civil juries to impose punitive

adopted as drafted, as this instruction gives the jury all relevant and required information to make their determination as to whether to award exemplary damages.

## II.    Defendants' Proposed Special Verdict Form

### A.    Defendants' Proposed Special Verdict Questions for Larada's Claim for Misappropriation of Trade Secrets Against PHS, Mrs. Fassler, and Dr. Fassler

1.    The Special Verdict Form must require the jury to first determine whether an alleged trade secrets exist.

Unlike Plaintiffs' proposed verdict questions relating to its misappropriation claim, Defendants' proposed version does not bypass Plaintiff's first requirement to show misappropriation of a trade secret: the actual existence of a trade secret.[29]  Only after a jury has determined the existence of a trade secret can it then determine whether the trade secret has been misappropriated.

2.    The Special Verdict Form should require the jury to make a determination of misappropriation on a case-by-case basis for each individual trade secret as defined by Plaintiff's expert Jon Beck.

Defendants' proposed version of the Special Verdict Form requires the jury to address each alleged trade secret individually, as each was defined by Plaintiff's expert Jon Beck, and make a

---

damages without providing them any meaningful instructions on how to do so.  Rarely is a jury told anything more specific than 'do what you think is best.'").

[29] *Applied Predictive Tech., Inc. v. MarketDial, Inc.*, 2024 WL 3759894, at *6 (D. Utah Aug. 12, 2024) ("Because Plaintiff lacks any entitlement to a presumption of a trade secret, it must necessarily define its claimed trade secrets in a manner that allows the fact-finder to determine if a trade secret exists under the statute" (citations and quotations omitted)); *Mint Solar, LLC v. Savage*, 2018 WL 5924410, at *5 (D. Utah Nov. 13, 2018) ("To establish a claim for misappropriation of a trade secret, the proponent of the trade secret must show . . . the existence of a trade secret" (quotations and citations omitted)); *see also* 18 U.S.C. § 1836(b)(1) (stating an "owner of a trade secret" is the party that can bring a civil claim for misappropriation); 18 U.S.C. 1839(5) (requiring there to be an actual trade secret for there to be misappropriation thereof);

determination whether Defendants have misappropriated each trade secret on a case-by-case basis. Contrastingly, Plaintiff's proposed Special Verdict Form simply groups all of its alleged trade secrets together.  It simply asks the jury to determine whether each defendant misappropriated "Larada's trade secrets" without reference to what the alleged trade secrets were and without giving the jury the opportunity to find some alleged trade secrets were misappropriated and others were not.

Plaintiff's Special Verdict Form attempts to leave the door open for it to present additional evidence at trial of the existence of more than the four trade secrets defined by its own expert, Jon Beck.  When Mr. Beck was asked how he chose what the four categories of trade secrets were in his report, Mr. Beck responded that these four specific alleged trade secrets "are the things that can be categorized and included as, in my opinion, trade secrets involved in the entire device . . . . [a]nd so, of course, there are many other categories . . . [b]ut they're not to qualify for trade secrets[,] [a]nd in my opinion, these are, you know, four areas . . . that I deemed as categories that are trade secrets."[30]  Plaintiff has given no indication that it intends to elicit evidence at trial for any other alleged trade secret other than the four that Mr. Beck has outlined in his report and testimony.

Given this, the Special Verdict Form should be exacting in depicting what Plaintiff claims its alleged trade secrets are so that the jury can make an informed decision whether Plaintiff has in fact established they are trade secrets, and whether each have been misappropriated by Defendants.[31]

---

[30] Ex. B, Dep. of Jon Beck, 115:19-116:10.

[31] Defendants agree with Plaintiff's proposed Special Verdict Form insofar as Plaintiff separated out each defendant individually to assess liability of misappropriation. However, as explained

3.    The misappropriation of trade secrets verdict question should require, asking the jury whether Plaintiff brought its misappropriation claim in bad faith.

Pursuant to 18 U.S.C. § 1836(b)(3)(D), if a plaintiff brings a claim for misappropriation of trade secrets in bad faith, a defendant is entitled to seek recovery of reasonable attorney fees. It is up to the jury to determine whether Plaintiff brought its misappropriation claim in bad faith and such a question is warranted to be included on the Special Verdict Form.[32]

4.    Plaintiff cannot maintain a direct claim against FloSonix Ventures and thus it should be removed from this portion of the Special Verdict Form.

Defendants' Proposed Verdict questions for Plaintiff's misappropriation claim removes FloSonix Ventures since Plaintiff cannot maintain a direct claim against it. In support of this, Defendants incorporate in full its filed brief arguing why direct claims against FSV are without merit.[33]

B.    *Plaintiffs' Proposed Special Verdict Questions Pertaining to Unjust Enrichment Should be Stricken.*

Plaintiff no longer has any viable claim for unjust enrichment against any defendant in this action. Its unjust enrichment claim against PHS, Mrs. Fassler and Dr. Fassler is precluded because

---

herein, Defendants argue the Special Verdict Form should allow the jury to determine misappropriation for each defendant on an individual basis, for each of the four trade secrets.

[32] *See CVD, Inc. v. Raytheon Co.*, 769 F.2d 842, 854 (1st Cir. 1985) (finding that in light of the facts presented at trial, "the jury could have concluded that Raytheon knew it had no trade secrets, yet nevertheless asserted them in bad faith in order to restrain competition and monopolize the . . . markets.").

[33] Dkt. No. 308.

of the existence of enforceable contracts governing the conduct at issue.[34]  Plaintiff conceded the only unanswered question as it relates to these three defendants related to whether there was a contract with Mrs. Fassler and at the July 31, 2024 Pretrial Conference, Defendants made clear it conceded there was an enforceable contract to preclude this claim.[35]

Plaintiff has abandoned its direct claim against FSV – it has failed to submit a filing with any legal support, as the Court requested.  Nevertheless, even if the Court were to look past this, Plaintiff is still precluded from pursuit of a direct claim against FSV.  Defendants incorporate in full its brief filed with this Court.[36]  Accordingly, Plaintiff's inclusion of its claim for unjust enrichment should be stricken from the Special Verdict Form.

DATED this 20th day of August 2024.

POLSINELLI PC

*/s/ Jose A. Abarca*
Romaine C. Marshall
Jose A. Abarca

*Attorney for Defendants*

---

[34] *Cardon v. Jean Brown Rsch.*, 2014 UT App 35, ¶¶ 12-13 ("a prerequisite for recovery on an unjust enrichment theory is the absence of an enforceable contract governing the rights and obligations of the parties at issue.").

[35] Ex. A, PCT, 24:17-25:10 (showing Plaintiff agrees to not pursue its unjust enrichment claim against Mrs. Fassler).

[36] Dkt. No. 308.

## CERTIFICATE OF SERVICE

I hereby certify that on August 20, 2024, I caused a true and correct copy of

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR PROPOSED JURY INSTRUCTIONS**

**AND SPECIAL VERDICT FORM** , to be served *via* CM/ECF.


 /s/ *Kaitlin Morgan*