Romaine C. Marshall (9654)
Jose A. Abarca (12762)
POLSINELLI PC
2825 E Cottonwood Parkway, Suite 500
Salt Lake City, UT 84121
rmarshall@polsinelli.com
jabarca@posinelli.com

*Attorneys for Defendants*

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| LARADA SCIENCES, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>PEDIATRIC HAIR SOLUTIONS CORPORATION, a North Carolina corporation, et al.,<br><br>Defendants. | **DEFENDANT DR. JOHN FASSLER'S BRIEF IN REPLY TO PLAINTIFF'S RESPONSE FOR JUDGMENT AS A MATTER OF LAW**<br><br>Case No. 2:18-cv-00551-RJS-JCB<br>Chief Judge Robert J. Shelby<br>Magistrate Judge Jared C. Bennett |

Defendant John Fassler, MD ("Dr. Fassler"), by and through his counsel of record, hereby submits this brief in reply to Plaintiff Larada Sciences, Inc.'s ("Larada") response (the "Response")[1] to Dr. Fassler's Motion for Judgment as a Matter of Law (the "Motion").[2] Despite

---

[1] Dkt. No. 335.

[2] As the jury did not rule in favor of Dr. Fassler, the Motion is not moot, and therefore Dr. Fassler submits this brief in reply to Plaintiff's Response. However, to the extent the jury's verdict requires a Renewed Motion for Judgment as a Matter of Law pursuant to Rule 50(b), Dr. Fassler does not waive, and fully intends to seek a renewed judgment as a matter of law and will file the appropriate motion within 28-days after the entry of judgment in this matter.

Plaintiff's assertions in its Response, there simply is no direct evidence of misappropriation and any "circumstantial" evidence presented at trial was insufficient to support the jury's findings against Dr. Fassler.

Plaintiff's misappropriation claim is premised on the idea that Dr. Fassler acquired, used, and/or disclosed Plaintiff's trade secrets through improper means—i.e., by breach of Dr. Fassler's duty to maintain secrecy under the Consulting Agreement. Therefore, to even achieve a showing of "improper means," as required by the Defend Trade Secrets Act ("DTSA"), the actions of Dr. Fassler must have occurred while he was under contract with Plaintiff—between August 31, 2015 and March 10, 2017. Plaintiff's Response has shone a spotlight on the dearth of sufficient evidence within this time period to sustain a verdict against Dr. Fassler for misappropriation of trade secrets.

A. **The 2017 Clinical Study and Purchasing the Flying Pig do not support a finding of Dr. Fassler using Plaintiff's trade secrets.**

The lack of evidence showing Dr. Fassler used Plaintiff's trade secrets renders it immaterial whether all or just a substantial portion of the trade secret is required to be used for there to be liability for misappropriation.

Plaintiff relies nearly entirely on the 2017 "Clinical Results Comparison Study" ("Study") as circumstantial evidence that a jury could "infer" that Dr. Fassler had "direct involvement" with the study sufficient to show use of Plaintiff's trade secrets. But Plaintiff can point to **nothing** in the record to show that Dr. Fassler had anything to do with the Study other than being labeled as PHS' Medical Director on the front page. The only evidence in the record pertaining to the Study does not demonstrate anything beyond this. When Dr. Fassler was asked about the Study, he

acknowledged he had seen it before.³ But the only questions Plaintiff's counsel asked Dr. Fassler were for Dr. Fassler to corroborate information clearly written on the front page of the Study.⁴ Merely agreeing with what is written on a page hardly suggests Dr. Fassler is at all familiar with the study, its contents, results, or for that matter, had anything to do with its creation.

Notwithstanding the lack of any evidence Plaintiff elicited to suggest Dr. Fassler had a role in the study, he was clearly identified in his role as Medical Director for PHS—not in any individual capacity. Plaintiff takes issue with a lack of authority to differentiate Dr. Fassler's personal liability with that of the liability of PHS. As a general rule, corporate officers are not personally liable for the torts of the corporation when acting in the course of their duty as an officer.⁵ An exception to this is when there is actual evidence that would establish that the officer actively participated in, or cooperated in, the commission of the tort.⁶ However, no such evidence exists here. The Tenth Circuit explained this exception by making clear that there must be "[s]pecific direction or sanction of, or active participation, or wrongful cooperation in, a positively wrongful act."⁷ This same standard was used in a 1996 Colorado trade secrets case where the

---

³ Ex. A, Daily Transcript of August 23, 2024 - Dr. Fassler's Testimony, ("Dr. Fassler Tr."), 7:1.

⁴ For example, Plaintiff's counsel asked: "This is a study that directly compared the AirAllé and the FloSonix Right?" or inquires whether Dr. Fassler can "see the data was collected from February 1ˢᵗ of 2017 to May 31ˢᵗ of 2017?" *Id*. at 7:10-14. The other questions pertaining to the study are equally as surface level, including whether he sees the data present on the page, if "A.A." stands for the AirAllé device, and if "F.S." refers to FloSonix. *Id.*, 7:17-8:5.

⁵ *Q.E.R., Inc. v. Hickerson*, 880 F.3d 1178, 11-82 (10th Cir. 1989).

⁶ *See id.*

⁷ *Id*. at 1183.

court evaluated arguments as to whether officers could be held personally liable.[8]  There, the evidence was circumstantial, but far stronger than the evidence elicited by Plaintiff at trial against Dr. Fassler.  In *Powell*, there was actual evidence of the officers coordinating the misappropriation and use of trade secrets.[9]  No such evidence exists here, and thus there is no support for the jury's finding of liability for actions taken while in his capacity as Medical Director for PHS.

Even more attenuated still is Plaintiff's reliance on evidence that purportedly suggests Dr. Fassler relied on Kevin Dahlquist's ("Mr. Dahlquist") measurements taken of the AirAllé.  There is nothing in the record to suggest this was the case.  In fact, when asked on direct examination whether Dr. Fassler purchased the Flying Pig at the direction of Mr. Dahlquist, Dr. Fassler (while under oath), answered that he selected the Flying Pig on his own accord.[10]  But purchasing the Flying Pig to use in the initial iterations of the FloSonix device does nothing in the way of demonstrating use of trade secrets.  In fact, it establishes the exact opposite—that Dr. Fassler had no interest in using Plaintiff's trade secrets and was instead seeking out an alternative to use in the FloSonix device.

Plaintiff's evidence was insufficient, attenuated, and its arguments contradict the actual evidence it elicited from Dr. Fassler at trial.  Therefore, there is insufficient support for the findings of Dr. Fassler's liability as it relates to using Plaintiff's trade secrets.

---

[8] *Powell Prods., Inc v. Marks*, 948 F.Supp. 1469, 1483 (D. Colo. 1996).

[9] *See id*. at 1482-83.

[10] Ex. A, 9:10-11.

### B. Plaintiff has pointed to no evidence showing Dr. Fassler disclosed Plaintiff's trade secrets.

Plaintiff's Response points to no evidence that Dr. Fassler disclosed Plaintiff's trade secrets. The only **actual** evidence Plaintiff relies on for its assertion that it presented sufficient evidence of disclosure is the 2014 email from Dr. Fassler to Dahlquist.[11] But this email does not disclose anything remotely close to one of Plaintiff's trade secrets. It simply states that the Fasslers were "exploring the possibility" of creating a device and makes it abundantly clear this was to be done "without infringing on [Plaintiff's patent]."[12] At the time this email was sent, Dahlquist had not reviewed the AirAllé, had not taken any measurements of the AirAllé, and was not given any information about the AirAllé at all by Dr. Fassler or anyone else.

Plaintiff also asserts that Dr. Fassler "glosses over substantial evidence of Dr. Fassler's early involvement and meeting with Mr. Dahlquist in late 2014 and early 2014, including numerous emails about the project from Mr. Dahlquist to Dr. Fassler . . . and testimony regarding meetings with [Dr. Fassler] and Sheila with the AirAllé present."[13] But to which emails or testimony is Plaintiff referring in support of this overbroad statement? Certainly, the testimony it cites in its Response does nothing to support this assertion. The cited testimony reads as follows:

> Q. This is the AirAllé?
> A. Yes,
> Q. Do you know if at this time you had seen the AirAllé?
> A. I believe I had. I mean if I met with John and Sheila I'm sure I would have seized the opportunity to look at the unit that they were working with now.[14]

---

[11] Pl.'s Ex. 216.

[12] *Id.*

[13] Pl.'s Response at 6-7.

[14] Ex. B, Daily Transcript of August 27, 2024 - Kevin Dahlquist's Testimony, 46:1-6.

This testimony does not rise to the level of "numerous emails about the project from Mr. Dahlquist to Dr. Fassler" or testimony about Dr. Fassler being present with the AirAllé. In fact, Mr. Dahlquist does not even state Dr. Fassler was actually present at any meeting and instead states that "**if**" he had met with them, he would have wanted to see the AirAllé. This does not establish disclosure of trade secrets in the slightest.

More damaging still to Plaintiff's assertions, Plaintiff concedes in its Response that the 2014 email to Mr. Dahlquist and any other alleged emails were sent before Dr. Fassler was under contract with Plaintiff via the Consulting Agreement. This means that Plaintiff cannot show improper means under the DTSA to show misappropriation since he was under no duty to maintain secrecy with Plaintiff. Any discussion of Dr. Fassler's "failure to mention at any time prior to termination" the contemplation of building a FloSonix device is relevant (perhaps) to Plaintiff's breach of contract claim—not its misappropriation of trade secrets claim. Accordingly, there is zero evidence of disclosure of Plaintiff's trade secrets that would substantiate a jury verdict of liability for misappropriation by Dr. Fassler.

**C.    One forwarded email from Sheila Fassler is insufficient to show Dr. Fassler acquired Plaintiff's trade secrets.**

Plaintiff asserts that Dr. Fassler being forwarded a September 2016 email[15] by Sheila Fassler, originally sent from Mr. Dahlquist, constitutes direct evidence of acquisition of a trade secret.

Essentially, Plaintiff contends that a reasonable jury should infer that Dr. Fassler improperly acquired Plaintiff's trade secrets when Sheila Fassler forwarded an email from

---

[15] Pl.'s Ex. 98.

Dahlquist. However, Plaintiff's counsel never asked Dr. Fassler about this email at trial. Dr. Fassler was never asked whether he received the email, read the email, understood what the email was, or what Mr. Dahlquist was doing to precipitate sending the email to Sheila Fassler.

To insinuate that a jury should have imputed knowledge or awareness upon Dr. Fassler because of the actions of Sheila Fassler disregards entirely Post-Evidence Instruction No. 2—Multiple Parties. This instruction makes clear that Dr. Fassler is not responsible for the conduct of Sheila Fassler just because they are husband and wife and that the jury is required to evaluate the evidence separately as to each defendant. There was no evidence to substantiate that Dr. Fassler had any idea what Sheila Fassler was discussing with Mr. Dahlquist other than the fact that he was forwarded this email. Sheila Fassler's alleged wrongdoing cannot be imputed to Dr. Fassler.

The forwarded email from Sheila Fassler to Dr. Fassler does not show Dr. Fassler had acquired Plaintiff's trade secrets. Plaintiff has presented no other evidence other than Sheila Fassler stating she did forward Dr. Fassler Mr. Dahlquist's email, but nothing in the way of Dr. Fassler acknowledging reading the email or what his actions were after receiving the email. This lone email is far too attenuated to suggest a reasonable jury verdict of liability could be substantiated.

**D.   Conclusion**

No reasonable jury or jury verdict could be substantiated against Dr. Fassler given the lack of evidence elicited by Plaintiff at trial. For each of the foregoing reasons, Dr. Fassler requests that this Court grant his Motion, dismiss the claim of misappropriation of trade secrets against him, and enter judgment in his favor as a matter of law and breach of contract.

DATED this 4th of September 2024.

                                             **POLSINELLI PC**

                                             */s/ Jose A. Abarca*
                                             Romaine C. Marshall
                                             Jose A. Abarca

                                             *Attorney for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on September 4, 2024, I caused a true and correct copy of **DEFENDANT DR. JOHN FASSLER'S BRIEF IN REPLY TO PLAINTIFF'S RESPONSE FOR JUDGMENT AS A MATTER OF LAW** to be served via CM/ECF.

    /s/ *Kathryn Adair*