Romaine C. Marshall (9654)
Jose A. Abarca (12762)
POLSINELLI PC
2825 E Cottonwood Parkway, Suite 500
Salt Lake City, UT 84121
rmarshall@polsinelli.com
jabarca@posinelli.com

*Attorneys for Defendant Dr. John Fassler*

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| LARADA SCIENCES, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>PEDIATRIC HAIR SOLUTIONS CORPORATION, a North Carolina corporation, et al.,<br><br>Defendants. | **DEFENDANTS' BRIEF IN REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR A NEW TRIAL AND/OR REMITTITUR**<br><br>Case No. 2:18-cv-00551-RJS-JCB<br>Chief Judge Robert J. Shelby<br>Magistrate Judge Jared C. Bennett |

Defendants Pediatric Hair Solutions Corp. ("PHS"), Sheila Fassler ("Ms. Fassler"), and Dr. John Fassler M.D. ("Dr. Fassler" and collectively, "Defendants")), by and through their counsel of record, hereby submit this brief in reply to Plaintiff Larada Sciences, Inc.'s ("Plaintiff") Response (the "Response") (Dkt. 364) to Defendants' Motion for a New Trial and/or Remittitur (the "Motion") (Dkt. 360.)

## ARGUMENT

Defendants do not "misunderstand the nature of the unjust enrichment remedy" nor "repeatedly focus on the injury to Larada." (Resp., 1). Rather, Defendants' Motion focuses on Plaintiff's damages theory that the amount of unjust enrichment damages were equal to cost to

develop the AirAllé. Defendants' Motion is replete with testimony from Plaintiff's damages expert that the total amount that Defendants, together, were unjustly enriched was $1,952,986. When compared to Plaintiff's sole citation to one line of testimony from Mr. Germane (and no reference to his report), it is not Defendants who are "ignore[ing] trial evidence." In fact, it was Mr. Stasiewicz that ignored the evidence leading to his improper and highly prejudicial comments made during closing argument resulting in an inflated jury award. Contrary to Plaintiff's assertion, the law and evidence elicited at trial supports Defendants' request for a new trial[1] or, in the alternative, a remittitur to lower the jury's award to conform to the evidence.

## I.    Defendants are Entitled to a New Trial.

### A.    No Evidence Shows Each Defendant Benefitted Individually.

While Plaintiff's recitation of the law of the measure of unjust enrichment damages may be correct, Plaintiff's application of the law ignores substantial evidence, and its own theory of damages presented at trial. Instead, Plaintiff uses its Response to move the goalposts and reframe its damages theory. Rather than the jury's verdict being based on the evidence at trial, Plaintiff is turning the case on its head and morphing its own case theory to match the jury's award.

*1.    No evidence shows a calculation with reasonable certainty that PHS, Ms. Fassler, and Dr. Fassler individually, distinctly, and separately benefitted from Plaintiff's trade secrets.*

Plaintiff solely cites an Eastern District of Texas case, *ResMan, LLC v. Karya Prop. Mgmt., LLC*, which is both nonbinding and does not mirror the evidence in this case. In *ResMan*, two separate and distinct defendants worked together to create a software platform but "benefitted from

---

[1] Plaintiff's argument that Defendants' did not object is unavailing. (Resp., 2-3). Failure to object is not fatal to a motion for new trial because of an improper and prejudicial closing argument. (Mot., 8-9). Plaintiff's argument regarding the jury verdict form is equally unpersuasive. The design of the form is not the issue here, rather the amounts awarded by the jury on the form are against the weight of the evidence in the record.

such misappropriation, **in individualized ways**." *ResMan, LLC v. Karya Prop. Mgmt.*, No. 4:19-cv-00402, 2021 WL 3423345, at *7 (E.D. Tex. 2021) (emphasis added.) There, defendant Karya provided proprietary software to another defendant Expedien but because the end product did "not necessarily transpose into the same benefits conferred onto Defendants by their misappropriation[,]"each defendant was analyzed individually. *Id*. at *7. For **each defendant**, the plaintiff elicited evidence at trial of exacting calculations for the jury to determine by how much each defendant benefited from misappropriating plaintiff's trade secrets. *See id.* For Karya, evidence showed Karya "receiv[ed] property management software functionality at much less time and expense than if Karya had not given Expedien access to the ResMan Platform." *Id*. at *7. For Expedien, because it received the software from Karya, it "avoided paying its developers for time and energy spent creating" the new platform. *Id*. The benefits conferred on each defendant were distinct and individualized and thus the award of development costs against each was supported.[2]

*ResMan* is distinguishable. Karya was a property management company that contracted with ResMan for the use of its software. *Id*. at *1. While under contract with ResMan, Karya provided user IDs and passwords to Expedien "for the purposes of Expedien producing a competing software." *Id*. Karya is akin to both PHS and Ms. Fassler, as Karya provided proprietary technology to another to aid in the development of a competing product. However, Expedien would be analogous to the role of Enventys and Caliber Design, because like Expedien, Enventys and Caliber Design were tasked with developing the competing technology. But Plaintiff did not

---

[2] As further evidence of the individualized nature of each defendant's benefit, ResMan's damages expert, Dr. Kursh, made specific calculations for each defendant to determine their unique benefits conferred. For example, Dr. Kursh calculated the percentage saved on development costs for Karya and the value of the contract Expedien had with Karya. In this case, Plaintiff did not offer expert testimony regarding the individualized benefits received by each of the Defendants.

sue Enventys or Caliber Design—it only brought claims against Defendants for their role in the misappropriation of Plaintiff's trade secrets. Unlike *ResMan*, the evidentiary record in this case clearly established that Defendants' roles in misappropriating Plaintiff's trade secrets are not individualized or distinct like those of the defendants in *ResMan*.[3]

*ResMan* is further inapposite because the evidentiary here is without specific calculations as to the exact benefits of PHS, Ms. Fassler, and Dr. Fassler. As Plaintiff noted, when measuring unjust enrichment damages as a benefit conferred upon a defendant, the "'calculation is done with reasonable certainty.'" (Resp., 3 (quoting *Epic Sys. Corp. v. Tata Consultancy Servs. Ltd*. 980 F.3d 1117, 1130 (7th Cir. 2020).) But unlike *ResMan*, the record here is bereft of any evidence to support that PHS, Ms. Fassler, and Dr. Fassler each **individually, distinctly, and separately** were unjustly enriched by any amount. Instead, the record is replete with Plaintiff and its own expert confirming that the **total** amount of unjust enrichment damages, for all Defendants combined, was Plaintiff's research and development costs.

Taken a step further, the Fifth Circuit, from which *ResMan* originates, does not uniformly apply the theory that a plaintiff is able to automatically recoup individualized damages from each separately named defendant. For example, in *Matther of AmeriSciences, L.P.,* a plaintiff brought trade secret misappropriation claims to trial against three defendants and awarded an amount that comprised, in part, of the research and development costs incurred by the plaintiff. *See Matter of AmeriSciences, L.P.*, 781 Fed.Appx. 298, 303, 310 (5th Cir. 2019). There, the unjust enrichment damages were equal to what "would have been paid for the trade secret and the development costs

---

[3] As set forth in Dr. Fassler's Renewed Partial Motion for Judgment as a Matter of Law (Dkt. 359), Plaintiff did not present sufficient evidence to establish Dr. Fassler's liability in misappropriating Plaintiff's trade secrets. Defendants incorporate, as if set forth herein, Dr. Fassler's Motion (Dkt. 359).

avoided by [Defendants]." *Id.* at 310. The damages were assessed against all defendants **together** because that is what the evidence elicited at trial required. *See id.*

In an effort to demonstrate individual benefits conferred on each defendant, Plaintiff asserts PHS was "able to stay in business;" Ms. Fassler "provided the AirAllé device and its trade secrets to FloSonix Ventures" to market the gray-top device; and Dr. Fassler "provided loan funding" to FloSonix Ventures to develop and market the gray-top device and was involved with Kevin Dalquist to create the first black top for PHS. (Resp., 8.) There is no testimony in the record that suggest that any of these "benefits" were tied to specific dollar amounts that were individualized per defendant. Instead, Mr. Germane's report and testimony groups all defendants together in calculating the total unjust enrichment damages at issue. (*See* Ex. A, Def.'s Ex. 1108 at 2; Ex. B, Direct Examination of M. Germane ("Germane Direct"), 8:24-9:23, 23:16-24:3; Ex. C, Cross-Exam and Re-Direct of M. Germane ("Germane Cross"), 31:1-3, 32:1-4; 33:21-34:17.)[4]

2.  *The only calculations with reasonable certainty to substantiate total unjust enrichment damages were elicited from Mr. Germane and these calculations show the total damages against all Defendants combined is, at most, $1,952,986.*

To show the individualized benefits received by PHS, Ms. Fassler, and Dr. Fassler, Plaintiff does not cite a single piece of evidence. To this end, Plaintiff only actually cites Mr. Germane, once: a singular line from Mr. Germane's cross-examination. (Resp., 6). From this sole evidentiary citation, Plaintiff expects this Court to accept that instead of calculating the **total** benefit received

---

[4] During Mr. Germane's direct examination, Plaintiff's counsel simply used the term "PHS." A generous interpretation of the examination suggests Plaintiff's counsel was simply using this term to refer to all three defendants. This liberal interpretation, Defendants are inclined to believe, is what Plaintiff's counsel meant by using this singular term. If, however, a narrower interpretation is used, then Plaintiff's argument is even weaker because there was not a single question to Mr. Germane about Ms. Fassler or Dr. Fassler, individually.

by **all Defendants**, Mr. Germane was stating that his calculation of $1,952,986 was per defendant. But this conclusion defies credulity. It requires ignoring Mr. Germane's report and testimony.

The damages model Plaintiff put forward at trial was that the benefit conferred to Defendants was equal to Plaintiff's development costs. Plaintiff agrees with Defendants that Mr. Germane, "provided a value for the benefit received . . . by calculating the cost Plaintiff incurred through the research and development of the AirAllé and its trade secrets." (Resp., 5 (citing Mot., 15).) Despite this concession, Plaintiff paints in broad strokes that it "presented evidence that each Defendant misappropriated Plaintiff's trade secrets embodied in the AirAllé and obtained benefits therefrom." (Resp., 5.) But again, Plaintiff does not cite a single exhibit or line of testimony to bolster this statement. Instead, Plaintiff concedes the only source calculating Defendants' conferred benefits with any reasonable certainty was Mr. Germane. (Resp., 5.)

Mr. Germane framed his opinion as follows: "**The Defendants** have been unjustly enriched by at least $1,952,986 as of the date of my report, which is the value of the Larada device including Larada Trade secrets measured as the cost to develop the Larada Device and Larada's Trade Secrets." (Ex. A, Def.s' Ex. 1108 at 2.) "The Defendants"—not PHS, Ms. Fassler, or Dr. Fassler individually, but rather all Defendants combined. There were no individualized calculations made by Mr. Germane, no calculations of whether PHS, Ms. Fassler, or Dr. Fassler each benefited on their own by this amount, just a total calculation for **all Defendants**. (*See generally, id.*)

But Mr. Germane's report is not the only source that fails to show individualized benefits conferred on Defendants. Notwithstanding Defendants' counsel's cross examination question (which was simply clarifying the law of unjust enrichment as Mr. Germane understood it to be) using the term "a person" or "a defendant," (Resp., 6), Mr. Germane repeatedly framed his opinion to be for all three defendants combined. Plaintiff ignores the two lengthy lines of questioning on

direct examination wherein Plaintiff's counsel asks Mr. Germane to reiterate his calculations, and each time, Mr. Germane states that when Defendants had the device, the benefit received was $1,952,985. (Ex. B, Germane Direct, 8:24-9:23; 23:16-24:3). Mr. Germane was not asked a single question about each defendant individually nor was he asked whether his total calculation was to be applied to each defendant individually. Repeatedly, on direct examination, cross-examination, and re-direct examination, Mr. Germane stated that that the **total amount of damages** that he believed Plaintiff was entitled to was only $1,952,985 for **all Defendants**. (*See e.g.*, *id.*, at 8:24-9:23; 23:16-24:3; Ex. C, Germane Cross, 33:21-34:17)

**B.     Mr. Stasiewicz's Comments During Closing Were Not Supported By Evidence Elicited At Trial.**

Based on the above, Mr. Stasiewicz's comments during closing asking for $1,952,986 against each defendant were improper as they were not supported by the evidence. Plaintiff attempts to distance itself from *Whittenburg v. Werner Enterprises*, 561 F.3d 1122 (10th Cir. 2009) by asserting that the case is "inapposite" because it was decided on an abuse of discretion standard and because the underlying substance of the closing in *Whittenberg* differs from Mr. Stasiewicz's closing argument. (Resp., 6-7.) But Plaintiff fails in its attempts to distinguish this case from *Whittenberg*.

*Whittenberg* emphasizes the universal legal concept that statements in closing must be confined to the evidence present in the record—a concept that Mr. Stasiewicz chose to ignore when presenting his own closing argument in this case. *Whittenburg*, 561 F.3d at 1128-29. Contrary to Plaintiff's assertion that "Defendants can point to nothing in Mr. Stasiewicz's closing argument

that was not introduced at trial" (Resp., 7), the entire damages model put forth to the jury by Mr. Stasiewicz was wholly unsupported by the evidence present in the record.

*Whittenberg* also emphasizes what a court considers when determining whether a new trial is required—all of which are largely ignored by Plaintiff in its Response. Like *Whittenberg*, and as explained at length in Defendants' Motion, a significant portion of Mr. Stasiewicz's closing argument pertained to Plaintiff's damages. *See Whittenberg*, 561 F.3d at 1131. Mr. Stasiewicz made clear that Plaintiff was "asking for the costs they would have incurred, and the best estimate of that is [Plaintiff's] costs[, a]nd that's the work Matt Germane put in to explain our costs in developing the trade secret information." (Ex. D, Pl.'s Closing Argument 48:18-41:1.) Specifically, that number was told to the jury to be "$1.95 million and some change." (*Id.*, 41:23-25.) After setting this stage, Mr. Stasiewicz proceeded to display a verdict form[5] that instructed the jury to award $1,952,986 against each defendant. (*Id.*, 51:2-4.)

This display was far from proper. Even though the jury instructions instructed the jury that liability for each defendant was dealt with separately, as explained above and in Defendants' Motion, the evidence only supported that the **total** amount of unjust enrichment damages at issue was $1,952,986. Mr. Stasiewicz ignored the report and testimony of Mr. Germane (despite stating that this was the source of Plaintiff's damages model) and instead, shocked the conscious and asked for triple the amount of damages that the evidence at trial supported.

The third factor outlined in *Whittenberg* is whether the size of the jury award would demonstrate the prejudicial effect of the remarks. See *Whittenberg*, 561 F.3d 1132. Plaintiff asserts

---

[5] Defendants' Motion stated Mr. Stasiewicz used an enlarged copy of the verdict form. (Mot., 16.) Plaintiff is correct that Mr. Stasiewicz showed the jury his demonstrative via an electronic display. (Resp., 7.)

that the comments were not prejudicial because "[t]he jury's award was supported by the evidence" as the Defendants "obtained knowledge not only of how to make a viable heated air device but knowledge of what not to do in development such a machine – what technology was not incorporated into the AirAllé and thus not necessary." (Resp., 8.) Essentially, Plaintiff attempts to justify Mr. Stasiewicz's comments by arguing the jury's verdict awarded less than $1,952,986 against each defendant. But this does not undo the prejudicial impact of his improper comments nor excuse his deviation from Plaintiff's entire damages theory and the evidence presented at trial. The jury clearly interpreted the evidence to mean that a full award of damages was not warranted but the jury followed Mr. Stasiewicz's improper comments to base the total damages pool off the incorrect premise that it should be deciding whether to award Plaintiff $1,952,986 against each individual defendant. Had Mr. Stasiewicz confined his closing to the actual evidence elicited at trial, the jury would have correctly based its award off a **total** amount of available damages of $1,952,986. The amount to apply to each defendant from the damages pool would have been in the jury's discretion. Instead, the jury's award was both large and excessive, only further demonstrating that Mr. Stasiewicz accomplished what he "clearly intended to accomplish; namely, the enhancement of damages." *See Whittenberg*, 561 F.3d at 1132-33.[6]

## II.     In the Alternative, Defendants Are Entitled to an Entry of Remittitur.

Plaintiff refutes Defendants' request for a remitter by reiterating its arguments made to oppose a new trial, including how Mr. Germane calculated his overall estimate of Plaintiff's

---

[6] Plaintiff ignores Defendants' argument that Defendants successfully met the plain error standard. With no individualized damages calculations for each defendant, and instead, the record demonstrates that Plaintiff's total damages are limited to $1,952,986, the jury's award to Plaintiff is a windfall. This is an error plain under current law. This error affected the substantial rights of Defendants because it greatly affected the outcome of the trial proceedings, *i.e.*, the jury award exceeding evidence present in the record. (Mot., 20-22.)

development costs. Plaintiff again misses the mark. Defendants do not take issue with **how** Mr. Germane calculated the costs Plaintiff incurred to develop its device. Nor do Defendants contest the overall total of Mr. Germane's calculations. Rather, Defendants take issue because the jury's verdict was against the weight of the evidence and was the fruit of a tainted jury after hearing improper and prejudicial remarks made during Plaintiff's closing argument. Mr. Germane's calculations were for all Defendants. Mr. Germane did not undertake individualized or separate calculations to determine how much each defendant was enriched, but rather determined that "**[t]he Defendants** have been unjustly enriched by at least $1,952,986." (Ex. A, Def.s' Ex. 1108 at 2.) To this end, Plaintiff's other expert, Jon Beck, likewise did not opine how much each defendant was enriched on an individual basis from their misappropriation of Plaintiff's trade secrets. The jury was never presented, through any calculation, argument, exhibit, nor line of testimony, that this total could be applied to each defendant—that is, until Mr. Stasiewicz's closing argument. The jury further was never presented, through any argument, exhibit, nor line of testimony, that PHS, Ms. Fassler, or Dr. Fassler were individually and separately unjustly enriched by $1,952,986. Instead, the entire weight of the evidence conformed to one singular damages model: that the total amount Defendants, together, were unjustly enriched was $1,952,986.

There is no support in the record that substantiates this Court arriving at any conclusion other than the jury's award flew in the face of the evidence presented and that the **only** source of Mr. Germane's total unjust enrichment calculation being applied to each defendant individually was Mr. Stasiewicz's improper closing remarks.

## CONCLUSION

For the reasons stated herein, and in Defendants' Motion, Defendants request this Court grant its motion for a new trial under Federal Rule 59, or, in the alternative, issue an order of remittitur to lower the jury's trade secret damages verdict.

DATED this 21st day of November 2024.

          **POLSINELLI PC**

          */s/ Jose A. Abarca*
          Romaine C. Marshall
          Jose A. Abarca

          *Attorney for Defendant Dr. John Fassler*

## CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2024, I caused a true and correct copy of **DEFENDANT DR. JOHN FASSLER'S BRIEF IN REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT DR. JOHN FASSLER'S RENEWED PARTIAL MOTION FOR JUDGMENT AS A MATTER OF LAW** to be served via CM/ECF.

 /s/ *Kaitlin Morgan*