Romaine C. Marshall (9654)
Jose A. Abarca (12762)
POLSINELLI PC
2825 E Cottonwood Parkway, Suite 500
Salt Lake City, UT 84121
rmarshall@polsinelli.com
jabarca@posinelli.com

*Attorneys for Defendant Dr. John Fassler*

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| LARADA SCIENCES, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>PEDIATRIC HAIR SOLUTIONS CORPORATION, a North Carolina corporation, et al.,<br><br>Defendants. | **DEFENDANT DR. JOHN FASSLER'S BRIEF IN REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT DR. JOHN FASSLER'S RENEWED PARTIAL MOTION FOR JUDGMENT AS A MATTER OF LAW**<br><br>Case No. 2:18-cv-00551-RJS-JCB<br>Chief Judge Robert J. Shelby<br>Magistrate Judge Jared C. Bennett |

Defendant John Fassler M.D. ("Dr. Fassler"), by and through his counsel of record, hereby submits this brief in reply to Plaintiff Larada Sciences, Inc.'s ("Plaintiff") Response (the "Response") (Dkt. 363) to Dr. Fassler's Renewed Partial Motion for Judgment as a Matter of Law (the "Motion") (Dkt. 359).

## ARGUMENT

For Plaintiff to survive Dr. Fassler's Motion, it must point to a legally sufficient evidentiary basis that would lead a reasonable jury to find Dr. Fassler liable. *See Keylon v. City of Alburquerque*, 535 F.3d 1210, 1215 (10th Cir. 2008). "Legally sufficient" evidence "must be supported by **substantial** evidence." *Braun v. Medtronic Sofamor Danek, Inc.*, 141 F.Supp.3d

1177, 1187 (D. Utah 2015) (quotations and citations omitted) (emphasis added). The evidence Plaintiff relies on to argue a reasonable jury could find Dr. Fassler liable for misappropriating Plaintiff's four specific trade secrets is inadequate and not substantial and this Court should grant Dr. Fassler's Motion.

I. **Plaintiff Has Not Provided Evidence that Mr. Beck's Narrowly Defined and Specific Trade Secrets Were Ever Misappropriated by Dr. Fassler.**

Plaintiff's Response does not address the fact that its own expert, Jon Beck ("Mr. Beck"), narrowly and specifically defined Plaintiff's trade secrets, and instead generally asserts that the AirAllé device equals the trade secrets.

Mr. Beck specifically defined Plaintiff's trade secrets as follows:

1. Larada's specific output parameter values for temperature and volumetric flow rate;

2. The method by which Larada achieves efficacy with a single de-lousing treatment alone, by only pairing the Larada multi-nozzle tip with the AirAllé unit and vice-versa;

3. Larada's method, process and design they developed and applied for effectively fast thermal response in a high-discharge heated air device;

4. Larada's specified selection and method of utilization for the blower-related components as applying them for the purposes of precise volumetric deliver and flow control.

(Ex. A, Def.s' Ex. 1097 at 7-10.)

While it is true that misappropriation need not extend to every aspect or feature of the trade secret (Resp., 5), there must be evidence of actual misappropriation of the trade secret or a substantial portion thereof, for a reasonable jury to have found Dr. Fassler liable. *See* 18 U.S.C. § 1836(b)(3) (requiring misappropriation for liability); *Bradbury Co., Inc. v. Teissier-duCros*, 413 F.Supp.2d 1209, 1222 (D. Kan. 2006) ("Even if the plaintiff establishes the existence of a valuable trade secret . . . the plaintiff must establish that there has been a misappropriation of the trade secret

2

by the defendant.") To this end, even Plaintiff concedes that for use of a trade secret, there must be "use of any **substantial** portion of the trade secret" to show misappropriation. (Resp., 5 (emphasis added).)

In Post-Evidence Jury Instruction No. 28, the jury was instructed that to find misappropriation it "must be convinced . . . by a preponderance of the evidence" that there was "acquisition of the trade secret, or the use or disclosure of the trade secret without consent." Post-Evidence Instruction No. 33 specifically limited the term "trade secrets" to be only the four unique and narrow trade secrets set forth above, and specifically states "Plaintiff contends that Defendants misappropriated these Alleged Trade Secrets." The jury was never instructed that "the device as a whole equals the four narrow trade secrets."

Plaintiff had the opportunity to make the argument that the AirAllé itself constituted the trade secrets, but it did not. Instead, Plaintiff retained Mr. Beck, who defined the four specific and narrow trade secrets. Mr. Beck explained that these were "essential trade secrets that were developed and **are utilized** in the LouseBuster/AirAllé device" and that they were so intricate and exacting that to even fully understand the trade secrets, it required a "thorough understanding of the underlying science, technology and design rationale" employed by Plaintiff. (Def.s' Ex. 1097 at 7, 14.) In fact, Mr. Beck found these trade secrets to be of such complexity that he doubted that Defendants even understood them at all, going so far as to say that the FloSonix device was a "poor outcome . . . due to blatant and irresponsible lack of attention to all the project development and design essentials mentioned in [his] report . . . [and an] inability to control and apply the technology competently." (*See id.*, 14-15.)

To find that Dr. Fassler misappropriated Plaintiff's trade secrets, the jury had to find that Dr. Fassler misappropriated Mr. Beck's four narrowly defined, complex, and specific compilation

trade secrets (or a portion thereof). *See e.g., Uhlig LLC v. Shirley*, No. 2012 WL 292342, at *5 (D.S.C. July 17, 2012) ("A plaintiff must adequately identify and describe the subject matter of its trade secrets in sufficient detail to establish each statutory element of a trade secret and to enable the jury to differentiate that which is claimed as a trade secret from matters of general knowledge in the trade.") (citations and quotations omitted)).

Whether it be use, acquisition, or disclosure, none of the circumstantial evidence that Plaintiff relies on shows that a reasonable jury could have concluded Dr. Fassler misappropriated any portion (much less a "substantial portion") of Plaintiff's narrowly defined and specific combination trade secrets.

## II. Plaintiff's Evidence of Dr. Fassler's "Use" of Plaintiff's Four Trade Secrets is Insufficient for a Reasonable Jury to Have Found Dr. Fassler Liable for Trade Secret Misappropriation.

### A. The 2017 Clinical Results Comparison Study (the "Study") does not show Dr. Fassler "used" Plaintiff's trade secrets.

Plaintiff relies heavily on the Study (Pl.s' Ex. 110) to argue a reasonable jury could have found Dr. Fassler used Plaintiff's four specific trade secrets. Not so.

Plaintiff argues that it would be a "simple inference for the jury" to conclude that because Dr. Fassler's name appears on the front page of the Study and "he was able to explain the meaning of the data contained in the study," he used Plaintiff's trade secrets. (Resp., 6.) But nothing in the record substantiates the premise that Dr. Fassler "explain[ed] the data." In Dr. Fassler's direct examination, he never explains the data—to the extent data even exits therein—but rather simply states that the study involved the AirAllé and FloSonix Device and that "provided within the cost of the treatment [was] a 30-day post head check to make sure that we were successful." (Ex. B, Dr. Fassler Direct Examination, 8:11-12.) The Study is not, as Plaintiff portrays, a "side-by-side

use of the AirAllé and FloSonix" but rather is a three-month snapshot of treatments at a PHS clinic.[1] Plaintiff has no response to the unrefuted fact that the Study does not contain any performance indicators of the AirAllé (or FloSonix Device), or whether the AirAllé was used as a barometer to determine the performance of the FloSonix in comparison to the AirAllé. Instead, according to Plaintiff, the jury was simply required to infer that because the two devices were listed on the same study, Dr. Fassler was personally using Plaintiff's trade secrets. That is far from a reasonable inference.

What is more, Plaintiff did not adequately address Dr. Fassler's argument that he cannot be held personally liable for simply appearing on the front page of the Study as PHS' National Medical Director. As stated in the Motion, corporate officers are not personally liable for the torts of the corporation when acting in the course of their duty as an officer unless Plaintiff can show "[s]pecific direction or sanction of, or active participation" in the wrongful act. *See Q.E.R., Inc. v. Hickerson*, 880 F.3d 1178, 1182 (10th Cir. 1989). To combat this roadblock, Plaintiff argues that *Powell Prods., Inc. v. Marks*, 948 F.Supp. 1469 (D. Colo. 1996) does not refer to a standard based on "actual evidence." (Resp. 6.) Plaintiff misses the mark on *Powell*. *Powell* emphasizes the importance of presenting sufficient evidence, even if circumstantial, that would lead a reasonable jury to conclude that a corporate officer personally participated in the coordination of the misappropriation and use of trade secrets. *See Powell Prods., Inc.*, 948 F.Supp. at 1182-83 (finding a reasonable jury could conclude corporate officers used trade secrets through substantial circumstantial evidence). Dr. Fassler's name on the front page of the Study as the National Medical

---

[1] The Study notes the gender and age of the patient, whether an AirAllé or FloSonix device was used in treatment, and whether the patient was positive or negative for lice at the 30-day post-treatment check-up. (*See* Pl.s' Ex. 110).

5

Director for PHS does not constitute sufficient circumstantial evidence that would show "specific direction" or "active participation" in PHS' use of Plaintiff's specific trade secrets through the creation of the Study.[2]

Accordingly, Plaintiff's reliance on the Study is insufficient to lead a reasonable jury to conclude that Dr. Fassler "used" Plaintiff's trade secrets.

B.  *Dr. Fassler's Purchase of the Flying Pig Does Not Show Use of Plaintiff's Specific Trade Secrets.*

Plaintiff's only other piece of circumstantial evidence that it asserts would cause a reasonable jury to find that Dr. Fassler used Plaintiff's trade secrets was his purchase of the Flying Pig. (Resp., 7.) According to Plaintiff, Dr. Fassler only purchased the Flying Pig at the recommendation of Mr. Dalquist and that he "relied on the information (particularly the output specifications) measured." (*Id*.) But this argument also falls short and does not show use of any of Plaintiff's trade secrets. For one, Plaintiff's theory is contradicted by testimony Plaintiff elicited from Dr. Fassler at trial. Dr. Fassler testified that while he purchased the Flying Pig, he did so on his own accord. (Ex B, Dr. Fassler Direct, 9:2-11.) Next, Plaintiff cites to no legal authority to substantiate that Dr. Fassler's purchase of a completely different product (*i.e.*, a dog dryer) would constitute use of a trade secret. Plaintiff would like a reasonable jury to believe that Dr. Fassler's purchase of a different product—regardless of whether he learned of it from Mr. Dalquist or not—constitutes use of trade secrets. But all it shows is Dr. Fassler made a purchase, nothing more.

---

[2] To this end, Dr. Fassler never testified that he actively participated in or directed the production of the Study. Dr. Fassler did not say that he authored the study, only that his name appears on the front page, along with Ms. Fassler as PHS' Chief Executive Officer, and Kathy Sawrey, as "Data Collection." (Pl.'s Ex. 110, at 1.)

Plaintiff is trying to fit a square peg into a round hole. Dr. Fassler's purchase of the Flying Pig is not substantial evidence of use of any of Plaintiff's four specific trade secrets.

### III. Plaintiff's Evidence of Dr. Fassler's "Disclosure" of Plaintiff's Four Trade Secrets is Insufficient for a Reasonable Jury to Have Found Dr. Fassler Liable for Trade Secret Misappropriation.

The circumstantial evidence Plaintiff highlights to show Dr. Fassler disclosed Plaintiff's narrowly defined trade secrets is no more successful. Plaintiff points to two pieces of circumstantial evidence: "numerous emails about the project from Dalquist to Dr. Fassler"[3] and an email forwarded to Dr. Fassler from Mr. Dalquist showing a disassembled AirAllé. (Resp., 8.)

Plaintiff failed to address the caselaw cited in Dr. Fassler's Motion regarding the level of evidence required to find disclosure of a trade secret. Plaintiff ignores the multiple Utah federal cases cited that found disclosure only when there was actual and definitive evidence to show the defendants in question disclosed the specific trade secrets at issue. *See e.g.*, *John Bean Technologies Corp. v. B GSE Group, LLC*, 480 F.Supp.3d 1274, 1303 (D. Utah 2020) (finding there were "distinct misappropriations" of the trade secrets in question through disclosure of those trade secrets to third parties); *API Americas Inc. v. Miller*, 380 F.Supp.3d 1141, 1149 (D. Kan. 2019) (finding sufficient evidence for disclosure of a trade secret when the defendant "transmitted multiple emails containing Plaintiff's trade secrets" without the plaintiff that included specific trade secrets defined in the case).

---

[3] Plaintiff failed to cite to the trial record for the purported numerous emails supporting its argument, so Dr. Fassler is dubious as to what "numerous emails" Plaintiff is referring to. "It is not the responsibility of the court to search the record and find justification for representations made in the briefs." *Estate of McIntire ex rel. McIntire v. City of Boulder*, 61 Fed.Appx. 639, 643 (10th Cir. 2003) (citations omitted).

Plaintiff cites only Plaintiff's Exhibit 41 as potential circumstantial evidence to conclude that disclosure occurred "into 2016." (*Id.*) Exhibit 41 consists of an email sent from Mr. Dalquist to Sheila Fassler that outlines options for Ms. Fassler to consider in the 3D printing process for unnamed "parts" and the cost associated therewith. (Ex. C, Pl.'s Ex. 41; Ex. D, Pl.'s Ex. 98).[4] Mr. Dalquist discusses that at this stage in the process, the actual development of any prototyping for a potential device cannot begin and he then proceeds to explain various options of how Ms. Fassler could create her own, independent device. (*Id.*) Mr. Dalquist makes no reference to the AirAllé beyond a photo of the device with its cover removed. (*Id.*)

But this "smoking gun" for Plaintiff is hardly smoking at all. A picture of the device, with nothing more, does not show disclosure of the four exacting and narrowly defined trade secrets at issue here. Mr. Dalquist's photo does not show any disclosure of the "specific output parameter values for temperature or volumetric flowrate" to suggest disclosure of Plaintiff's first trade secret. Nor does the photo show Plaintiff's specific method to "achieve[] efficacy with a single de-lousing treatment alone, by pairing [Plaintiff's] multi-nozzle tip with the AirAllé unit and vice-versa." The photo does not even show the "multi-nozzle tip." It certainly does not show disclosure of Plaintiff's "method, process and design" developed for "fast thermal response in a high-discharged heated air device" and nothing of the same was suggested by Mr. Dalquist in the body of his email accompanying the photo. It also does nothing to show disclosure of the "specified selection and method of utilization for the blower-related components . . . for the purposes of precise volumetric deliver and flow control."

---

[4] Plaintiff's lone evidentiary citation is wrong. Exhibit 41 does not show Mr. Dalquist's email was forwarded by Ms. Fassler to Dr. Fassler. Rather, Plaintiff's Exhibit 98 shows that Ms. Fassler forwarded Dr. Fassler the email sent by Mr. Dalquist.

Plaintiff ignores the argument that a reasonable jury should not have imputed Ms. Fassler's knowledge or awareness to Dr. Fassler. (Mot., 15.) The jury was instructed in Post-Evidence Instruction No. 2 that Dr. Fassler was not responsible for the conduct of Ms. Fassler just because they are husband and wife. Plaintiff has not provided any evidentiary support to show Dr. Fassler had any knowledge, context, or understanding of why Ms. Fassler forwarded Mr. Dalquist's email, what Ms. Fassler and Mr. Dalquist were discussing that precipitated the email, nor the context of any of the information contained in the email, including the photograph. A reasonable jury could not have imputed Ms. Fassler's understanding of those things to Dr. Fassler in light of the foregoing jury instruction.

Accordingly, a single photograph of an AirAllé with its covered removed is not sufficient to establish that Dr. Fassler disclosed Plaintiff's four unique and specific trade secrets.

### IV.  Plaintiff's Evidence of Dr. Fassler's "Acquisition" of Plaintiff's Four Trade Secrets is Insufficient for a Reasonable Jury to Have Found Dr. Fassler Liable for Trade Secret Misappropriation.

Plaintiff incorrectly states that "[t]he Motion ignores the third way trade secrets can be misappropriated, which is by acquisition." (Resp., 9.) Not so. In fact, Dr. Fassler devotes a significant portion of his Motion arguing that there is insufficient evidence to support a reasonable jury's finding that he acquired any of Plaintiff's four specific trade secrets. (Mot., 15-16.).

Nevertheless, Plaintiff again solely relies on the forwarded email from Ms. Fassler to Dr. Fassler with a photograph of an AirAllé and asserts this is "direct evidence, by itself, of improper acquisition of a trade secret." (Resp., 9.) But again, Plaintiff misses the mark. For one, what trade secret? A "top view" of the AirAllé hardly shows acquisition of any of the four specific trade secrets, as defined by Plaintiff in this case. As explained above, the photograph of the AirAllé does not show the specific output parameter values for temperature and volumetric flowrate; the method

9

of achieving efficacy with a single de-lousing treatment; the process developed and applied for fast thermal response; or the utilization of "blower-related components." Plaintiff did not put forth a theory that the device in its entirety is a trade secret. Plaintiff chose to define the only trade secrets at issue through Mr. Beck. Mr. Beck believed that Plaintiff's four trade secrets were of such complexity that it would take a "thorough understanding of the underlying science, technology and design rationale" to even understand what they were and how they impacted the overall device. (Ex. A, Def.s' Ex. 1097 at 14.) On numerous occasions during Mr. Beck's testimony at trial, he lamented the complexity of the AirAllé and how it would be near impossible to understand the trade secrets' intricacies. (*See e.g.*, Ex. E, August 21, 2024, Testimony of Jon Beck, 11:1-12:14). In fact, Mr. Beck testified that if even if an engineer saw the machine, it would be impossible to know just how intricate its functioning was. (*See* August 22, 2024, Ex. F, Testimony of Jon Beck, 90:21:91-5.) But now Plaintiff moves away from Mr. Beck's framing of the four specific trade secrets and how complex the device's functioning is and argues that a reasonable jury was to take a photograph, with no context, to be "direct evidence" of the acquisition of these four exact trade secrets. Plaintiff did not even ask Dr. Fassler about the photograph, and Plaintiff has pointed to nothing in the record to suggest that Dr. Fassler read the email, understood that the photograph depicted Plaintiff's four trade secrets, or even saw the photograph at all. Absent any of the foregoing information, all Plaintiff has is a photograph of its device and a forwarded email. This is hardly substantial evidence showing acquisition of Plaintiff's four trade secrets by Dr. Fassler and no reasonable jury would conclude otherwise.

## **CONCLUSION**

For the reasons stated herein, and in Dr. Fassler's Motion, this Court should grant Dr. Fassler's Renewed partial Motion for Judgment as a Matter of Law as Plaintiff has presented

insufficient circumstantial evidence that would lead a reasonable jury to find that Dr. Fassler used, disclosed, or acquired Plaintiff's four specifically defined and narrow trade secrets at issue in this case.

DATED this 21st day of November 2024.

**POLSINELLI PC**

/s/ Jose A. Abarca
Romaine C. Marshall
Jose A. Abarca

*Attorney for Defendant Dr. John Fassler*

## CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2024, I caused a true and correct copy of **DEFENDANT DR. JOHN FASSLER'S BRIEF IN REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT DR. JOHN FASSLER'S RENEWED PARTIAL MOTION FOR JUDGMENT AS A MATTER OF LAW** to be served via CM/ECF.

      /s/ *Kaitlin Morgan*