## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| LARADA SCIENCES, INC., a Delaware corporation, | **MEMORANDUM DECISION AND ORDER** |
| Plaintiff, | Case No. 2:18-cv-00551-RJS-JCB |
| v. | Chief Judge Robert J. Shelby |
| PEDIATRIC HAIR SOLUTIONS CORPORATION, a North Carolina corporation, et al., | Magistrate Judge Jared C. Bennett |
| Defendants. | |

Before the Court are four Motions: (1) Defendant John Fassler (Dr. Fassler)'s Renewed Partial Motion for Judgment as a Matter of Law;[1] (2) Defendants' Motion for a New Trial and/or Remittitur;[2] (3) Defendants' Emergency Motion to Stay Proceedings to Enforcement of Judgment;[3] and (4) Plaintiff Larada Sciences, Inc. (Larada)'s Motion for Attorneys' Fees[4] and Bill of Costs.[5]  For the reasons explained below, the court DENIES Dr. Fassler's Motion for Judgment as a Matter of Law, DENIES Defendants' Motion for a New Trial and/or Remittitur, DENIES Defendants' Motion to Stay, GRANTS IN PART Larada's Motion for Attorneys' Fees, and GRANTS Larada's Bill of Costs.

---

[1] Dkt. 359, *Defendant Dr. John Fassler's Renewed Partial Motion for Judgment as a Matter of Law* (*JMOL Motion*).

[2] Dkt. 360, *Defendants' Motion for a New Trial and/or Remittitur* (*New Trial Motion*).

[3] Dkt. 369, *Defendants' Emergency Motion to Stay Proceedings to Enforcement of Judgment* (*Motion to Stay*).

[4] Dkt. 348, *Plaintiff's Motion for Attorneys' Fees* (*Attorneys' Fees Motion*).

[5] Dkt. 346, *Bill of Costs*.

### BACKGROUND[6]

This action concerns the conduct of Defendants Pediatric Hair Solutions Corporation (PHS), Dr. John Fassler, and Sheila Fassler (Defendants), which resulted in a unanimous jury verdict against them for trade secrets misappropriation, related breaches of contract, and breach of the duty of good faith and fair dealing by PHS.[7]

In 2006, several individuals formed Larada to build a new device to treat head lice.[8] Larada engaged in research and development for several years, and it brought its first device, the LouseBuster, to market in 2010.[9]  The LouseBuster later became known as the AirAllé.[10]  The AirAllé works by directing heated air onto patients' scalps, and it is highly effective at eliminating lice.[11]  It is the only FDA-cleared device of its kind on the market.[12]  Larada has developed newer versions of the AirAllé over the last decade.[13]

To operate, the AirAllé employs Larada's four trade secrets: (1) the specific air output parameter values for temperature and volumetric flow rate; (2) the method by which Larada achieves efficacy with a single de-lousing treatment alone, by only pairing Larada's multi-nozzle tip with the AirAllé unit and vice-versa; (3) the method, process and design Larada developed and applied for effectively fast thermal control response in a high-discharge heated air device;

---

[6] Relying on the evidence Larada introduced at trial, the court recites the facts in the light most favorable to Larada because it is considering Defendants' Motions under Federal Rules of Civil Procedure 50 and 59.  *See Lompe v. Sunridge Partners, LLC*, 818 F.3d 1041, 1061–62 (10th Cir. 2016).

[7] Dkt. 332, *Jury Verdict Form*.

[8] Dkt. 374, *Trial Testimony of Claire Roberts* at 5145:14–5146:13.

[9] *Id.* at 5149:4–15.

[10] *Id.* at 5149:10–11.

[11] *Id.* at 5166:10–19, 5206:5–5207:7.

[12] *Id.* at 5177:11–21.

[13] *Id.* at 5162:14–5166:9.

and (4) Larada's specific selection and method of utilization of the blower-related components as applying them for the purpose of precise volumetric delivery and flow control.[14]

Larada licenses the use of the AirAllé to independent clinics and works with over one hundred such clinics across the country.[15]  One of these clinics was PHS, a company based in North Carolina.[16]  Ms. Fassler, a nurse, is the sole owner of PHS, and Dr. John Fassler is its National Medical Director.[17]  The Fasslers are married.[18]

Beginning in 2010, Defendants entered into a series of agreements with Larada governing their use of Larada's devices (the Agreements).[19]  The Agreements include License Agreements, a Lease Agreement, and a Consulting Agreement.[20]  The Agreements contain restrictions on Defendants' use of Larada's confidential or proprietary information,[21] including prohibitions on disassembling, reverse-engineering, or otherwise copying Larada's devices.[22]

Over the next several years, Defendants participated in a systematic and deliberate effort to exploit Larada's trade secrets by building, marketing, and benefiting from their own, competing devices.  More specifically, Dr. Fassler first reached out to a product designer, Kevin

---

[14] *See Post Evidence Instruction No. 33*; Dkt. 268-2, Defendants' Ex. 1097, *Expert Report of Jon Beck* at 8–11.

[15] *Trial Testimony of Claire Roberts* at 5166:10–5167:15, 5170:19–20.

[16] *Id.* at 5171:3–14; Dkt. 386, *Trial Testimony of Sheila Fassler (Day 1)* at 5941:10–17.

[17] *Trial Testimony of Sheila Fassler (Day 1)* at 5935:16–22, 5947:2–10.

[18] *Id.* at 5936:4–17.

[19] *See* Defendants' Exs. 1003, 1212–18, *License Agreements* (various agreements between Larada and PHS signed by Ms. Fassler); Plaintiff's Ex. 81, *Lease Agreement* (binding PHS and Ms. Fassler personally); Plaintiff's Ex. 118, *Consulting Agreement* (signed by Dr. Fassler).  *See also Trial Testimony of Claire Roberts* at 5171:6–5179:20; *Trial Testimony of Sheila Fassler (Day 1)* at 5938:10–5940:9.

[20] *See Agreements*.

[21] *See id.*; *see also Trial Testimony of Claire Roberts* at 5172:12–5179:20; *Trial Testimony of Sheila Fassler (Day 1)* at 5938:23–5940:9.

[22] *Trial Testimony of Sheila Fassler (Day 1)* at 5942:23–5943:20; *see also* Defendants' Exs. 1003, 1212–18, *License Agreements*; Plaintiff's Ex. 81, *Lease Agreement*.

Dahlquist, and his firm, Caliber Design, in late 2014.[23]  Dr. Fassler inquired about assistance with "manufacturing" a device "similar" to the AirAllé.[24]  After engaging Mr. Dahlquist's services, Defendants provided him with "at least five" Larada devices, which he then used to design and manufacture competing devices for Defendants.[25]  Defendants later involved another firm, Enventys Partners, to continue product development.[26]  Defendants named their resulting device the FloSonix.[27]  The AirAllé and Larada's trade secrets within it were crucial to Defendants' development of the FloSonix.[28]

For several months in early 2017, one or more Defendants oversaw the "Clinical Results Comparison Study," which tested the efficacy of the FloSonix against the AirAllé.[29]  The Study report indicates it took place at PHS, and it lists Dr. Fassler and Ms. Fassler on its front page as "Medical Director" and "CEO," respectively.[30]  In May of that same year, Ms. Fassler formed FloSonix Ventures, LLC (FSV).[31]  While Ms. Fassler is FSV's sole owner,[32] at some point Dr. Fassler provided FSV with a $100,000 loan.[33]  Through FSV, Defendants began encouraging clinic owners who licensed the AirAllé from Larada to use the FloSonix instead.[34]  Then, after

---

[23] Plaintiff's Ex. 216, *Sept. 26, 2014 Email from John Fassler to Kevin Dahlquist*.

[24] *Id.*

[25] *See Trial Testimony of Sheila Fassler (Day 1)* at 5951:12–5962:20; Dkt. 378, *Trial Testimony of Sheila Fassler (Day 2)* at 5296:23–5297:2.

[26] *See* Dkt. 384, *Trial Testimony of Jeremy Losaw* at 5747:20–5771:20.

[27] *Trial Testimony of Sheila Fassler (Day 2)* at 5351:12–25.

[28] *See, e.g.*, Dkt. 373, *Trial Testimony of Jon Beck (Day 1)*, at 5135:18–5137:22.

[29] *See* Plaintiff's Ex. 110, *Clinical Results Comparison Study*.

[30] *Id.*

[31] *Trial Testimony of Sheila Fassler (Day 2)* at 5342:4–16.

[32] *Trial Testimony of Sheila Fassler (Day 1)* at 5935:23–5936:3.

[33] Dkt. 376, *Trial Testimony of John Fassler* at 5244:24–20.

[34] *Trial Testimony of Claire Roberts* at 5193:14–5194:24.

Defendants failed to make payments to Larada as required by the Agreements and negotiations concerning potential amendments broke down, Larada terminated the relationship with Defendants.[35]  Around that time, Defendants began returning the AirAllé devices in their possession to Larada and replacing them with FloSonix devices.[36]  While the Agreements required PHS and Ms. Fassler to return all Larada devices in their possession,[37] they retained one device to continue development on the FloSonix.[38]  Defendants maintained their efforts to market the FloSonix to other clinics at least up to the time of trial.[39]

Larada sued Defendants on July 11, 2018.[40]  It initially brought claims only against PHS, but later filed its First Amended Complaint adding the Fasslers and FSV as Defendants.[41]  After the court dismissed FSV for lack of personal jurisdiction on September 3, 2020,[42] Larada filed a Second Amended Complaint, which again sought to pursue claims against FSV, but this time under an alter ego theory.[43]  In its Second Amended Complaint, Larada asserted claims for (1) breach of various contracts against all Defendants; (2) breach of the implied duty of good faith and fair dealing against PHS; (3) trespass to chattels against all Defendants; (4) conversion against all Defendants; (5) unjust enrichment against all Defendants; (6) trademark infringement and unfair competition under the Lanham Act against PHS; (7) misappropriation of trade secrets

---

[35] *Id.* at 5190:7–5191:20.  Larada's intellectual property rights survived termination of the Agreements.  *Id.* at 5173:23–5176:13; *see also Agreements.*

[36] *Trial Testimony of Sheila Fassler (Day 2)* at 5313:13–21.

[37] *See* Plaintiff's Ex. 81, *Lease Agreement* ¶ 10.2.

[38] *Trial Testimony of Sheila Fassler (Day 2)* at 5327:18–5328:11; Plaintiff's Ex. 188, *Sept. 28, 2017 Email from Kevin Dahlquist to Benjamin Gatti* at 1 ("I understand that Sheila [Fassler] still has a Larada device . . . .").

[39] *Trial Testimony of Claire Roberts* at 5193:14–5194:3.

[40] Dkt. 2, *Complaint.*

[41] Dkt. 86, *First Amended Complaint.*

[42] Dkt. 126, *Memorandum Decision and Order Granting Motion to Dismiss.*

[43] *See* Dkt. 213, *Second Amended Complaint.*

under the Defend Trade Secrets Act (DTSA) against all Defendants; and (8) declaratory judgment and injunctive relief against PHS.[44]  Defendants filed several counterclaims against Larada but none survived.[45]

Prior to trial, the court dismissed Larada's claims for trespass to chattels, conversion, unjust enrichment, and Lanham Act trademark infringement and unfair competition.[46]  The court also granted summary judgment to Larada on one of its breach of contract claims against PHS for failure to make required payments under the Agreements, for which the court awarded Larada $80,010.00 plus prejudgment interest at a rate of 18%.[47]

The court held a jury trial beginning on August 20, 2024.[48]  Dr. Fassler timely moved for judgment as a matter of law under Rule 50(a),[49] which the court denied by submitting the case to the jury.[50]  However, the court entered a directed verdict in favor of FSV after finding Larada failed to put FSV on notice of the claims against it.[51]  On August 30, 2024, the jury returned a unanimous verdict in favor of Larada on all claims.[52]  The jury found (1) PHS breached the License Agreements and the duty of good faith and fair dealing; (2) Ms. Fassler breached the Lease Agreement; (3) Dr. Fassler breached the Consulting Agreement; and (4) all Defendants willfully and maliciously misappropriated Larada's trade secrets under the DTSA.[53]  The jury

---

[44] *See id.*

[45] *See* Dkt. 309, *Pretrial Order.*

[46] *See* Dkt. 184, *Minute Order*; Dkt. 303, *Minute Order.*

[47] *See* Dkt. 209, *Memorandum Decision and Order*; *see also* Dkt. 344, *Judgment in a Civil Case* at 3.

[48] *See* Dkt. 313, *Minute Entry.*

[49] *See* Dkt. 320, *Defendant Dr. John Fassler's Motion for Judgment as a Matter of Law.*

[50] Dkt. 328, *Minute Entry*; Dkt. 343, *Docket Text Order.*

[51] *See* Dkt. 328, *Minute Entry*; *Aug. 28, 2024 Proceedings Held Before Judge Robert J. Shelby.*

[52] *See Jury Verdict Form.*

[53] *Id.*

awarded Larada nominal damages on the breach of contract and breach of the duty of good faith and fair dealing claims.[54]  But on the misappropriation claims, the jury awarded Larada (1) $1,750,000.00 in compensatory damages and $3,500,000.00 in exemplary damages from PHS; (2) $1,750,000.00 in compensatory damages and $3,500,000.00 in exemplary damages from Ms. Fassler; and (3) $1,000,000.00 in compensatory damages and $2,000,000.00 in exemplary damages from John Fassler.[55]  After finding Larada withdrew its claims for declaratory judgment and injunctive relief,[56] the court then entered judgment consistent with the jury's verdict.[57]

Dr. Fassler has renewed his motion for judgment as a matter of a law,[58] and all Defendants move for a new trial or, in the alternative, remittitur.[59]  In addition, Defendants have moved on an emergency basis to stay execution of the Judgment and reduce, or completely dispense with, the usual supersedeas bond requirement.[60]  Larada also moves for its attorneys' fees.[61]  The court temporarily stayed its Judgment to benefit from further briefing on the Motion

---

[54] *Id.*

[55] *Id.*

[56] Dkt. 343, *Docket Text Order.*

[57] Dkt. 344, *Judgment in a Civil Case.*

[58] *JMOL Motion.*

[59] *New Trial Motion.*

[60] *Motion to Stay.*

[61] *Attorneys' Fees Motion.*

to Stay.[62]  The Motions are fully briefed and ripe for review,[63] and the court heard oral argument

on May 22, 2025.[64]

## ANALYSIS

The court begins by addressing Defendants' Motions and then turns to Larada's request

for attorneys' fees and costs.

### I.    Dr. Fassler's Renewed Motion for Judgment as a Matter of Law

The court first considers Dr. Fassler's Renewed Motion for Judgment as a Matter of Law.

For the reasons stated below, the court denies the Motion.

#### A.  Legal Standard

"If the court does not grant a motion for judgment as a matter of law made under Rule

50(a), . . . the movant may file a renewed motion for judgment as a matter of law . . . ."[65]

Judgment as a matter of law is "appropriate in very limited circumstances,"[66] and it is to be

"cautiously and sparingly granted."[67]  A district court will grant a motion for judgment as a

matter of law only if "all of the evidence in the record reveals no legally sufficient evidentiary

basis for a claim under the controlling law"[68]—that is, when "the evidence so overwhelmingly

---

[62] *See* Dkt. 370, *Docket Text Order*.

[63] Dkt. 363, *Plaintiff's Response to Defendant Dr. John Fassler's Renewed Partial Motion for Judgment as a Matter of Law* (*JMOL Opposition*); Dkt. 368, *Defendant Dr. John Fassler's Brief in Reply to Plaintiff's Response to Defendant Dr. John Fassler's Renewed Partial Motion for Judgment as a Matter of Law* (*JMOL Reply*); Dkt. 364, *Response to Defendants' Motion for a New Trial and/or Remittitur* (*New Trial Opposition*); Dkt. 367, *Defendants' Brief in Reply to Plaintiff's Response to Defendants' Motion for a New Trial and/or Remittitur* (*New Trial Reply*); Dkt. 371, *Plaintiff's Opposition to Defendants' Emergency Motion to Stay Proceedings to Enforcement of Judgment*; Dkt. 372, *Defendants' Reply in Support of Their Emergency Motion to Stay Proceedings to Enforcement of Judgment*; Dkt. 361, *Defendants' Opposition to Plaintiff's Motion for Attorneys' Fees* (*Attorneys' Fees Opposition*); Dkt. 365, *Reply in Support of Motion for Attorneys Fees* (*Attorneys' Fees Reply*).

[64] *See* Dkt. 390, *Minute Entry*.

[65] Fed. R. Civ. P. 50(b).

[66] *Symons v. Mueller Co.*, 493 F.2d 972, 976 (10th Cir. 1974).

[67] *Weese v. Schukman*, 98 F.3d 542, 547 (10th Cir. 1996).

[68] *Bill Barrett Corp. v. YMC Royalty Co.*, 918 F.3d 760, 766 (10th Cir. 2019) (citation omitted).

favors the moving party as to permit no other rational conclusion."[69]  Judgment as a matter of law is thus warranted "only if the evidence points but one way and is susceptible to no reasonable inferences which may support the nonmoving party's position."[70]  This poses "a high hurdle [for the movant] to overcome."[71]

As a corollary to these standards, the court must sustain a jury verdict on a Rule 50(b) motion if it is "supported by substantial evidence when the record is viewed most favorably to the prevailing party."[72]  "Substantial evidence is something less than the weight of the evidence, and is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, even if different conclusions also might be supported by the evidence.'"[73] Notably, "the mere existence of contrary evidence does not itself undermine the jury's findings as long as sufficient other evidence supports the findings."[74]  In deciding a motion for judgment as a matter of law, the court may not weigh the evidence, evaluate witnesses' credibility, or substitute its judgment for the jury's.[75]

---

[69] *Shaw v. AAA Eng'g & Drafting, Inc.*, 213 F.3d 519, 529 (10th Cir. 2000) (citation omitted).

[70] *Mountain Dudes v. Split Rock Holdings, Inc.*, 946 F.3d 1122, 1129 (10th Cir. 2019) (citation omitted).

[71] *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1099 (10th Cir. 2001).

[72] *Webco Indus., Inc. v. Thermatool Corp.*, 278 F.3d 1120, 1128 (10th Cir. 2002) (citation omitted).  The court notes Dr. Fassler misstates the applicable rule of law.  *See JMOL Motion* at 5–6.  Dr. Fassler quotes *Braun v. Medtronic Sofamor Danek, Inc.*, 141 F. Supp. 3d 1177, 1187 (D. Utah 2015), as stating "the record is viewed most favorably to the *moving* party."  *JMOL Motion* at 5–6 (emphasis added).  But the court in *Braun* states "the record is viewed most favorably to the *prevailing* party."  *Braun*, 141 F. Supp. 3d at 1187 (emphasis added).  Here, where Dr. Fassler is the moving party, and Larada is the prevailing party, this misstatement is both legally incorrect and material to the outcome of the Motion.

[73] *Webco Indus., Inc.*, 278 F.3d at 1128 (quoting *Beck v. N. Natural Gas Co.,* 170 F.3d 1018, 1022 (10th Cir. 1999)).

[74] *Id.* (citation omitted).

[75] *See Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 557 (10th Cir. 1996).

### B. Application

Dr. Fassler seeks judgment as a matter of law on Larada's misappropriation of trade secrets claim.  To prove misappropriation, Larada needed to establish that Dr. Fassler either (1) disclosed, (2) used, or (3) acquired Larada's trade secrets.[76]  Dr. Fassler argues Larada failed to present sufficient evidence at trial establishing that he engaged in any of the prohibited acts.[77]  Dr. Fassler then argues Larada necessarily could not prove willful and malicious misappropriation.[78]  While any one of these acts alone is sufficient to establish a misappropriation claim, the court addresses each of Dr. Fassler's arguments.  And for the reasons stated below, the court finds Larada presented sufficient evidence to sustain the jury's verdict against Dr. Fassler on each theory.

### 1. Disclosure

The court begins with Dr. Fassler's disclosure argument.  Misappropriation includes:

(1) disclosure of a trade secret of another by a person who used improper means to acquire knowledge of the trade secret; or
(2) disclosure of a trade secret of another by a person who, at the time of the disclosure, knew or had reason to know that his knowledge of the trade secret was:
   (i)   derived from or through a person who had used improper means to acquire it;
   (ii)  acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
   (iii) derived from or through a person who owed a duty to the trade secret's owner to maintain its secrecy or limit its use; or
(3) disclosure of a trade secret of another by a person who knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by

---

[76] *See Post-Evidence Instruction No. 38*; 18 U.S.C. § 1839(5).  As a threshold matter, Dr. Fassler repeatedly argues Larada presented insufficient evidence at trial to support a finding he misappropriated the "very specific and complex combination trade secrets" contained within the AirAllé device.  *See JMOL Motion* at 7, 8; *JMOL Reply* at 2–4.  The court disagrees.  As explained below, overwhelming evidence adduced at trial supports the jury's verdict.  The court finds a reasonable jury could conclude, based on the testimony of Larada's expert, Jon Beck, that use or disclosure of the AirAllé device constitutes misappropriation of Larada's trade secrets.  *See* Dkt. 385, *Trial Testimony of Jon Beck (Day 2)* at 5927:2–5929:1.

[77] *JMOL Motion* at 6–16.

[78] *Id.* at 16.

accident or mistake.[79]

Dr. Fassler argues no reasonable jury could find he disclosed Larada's trade secrets based on the evidence put forth by Larada.[80]  According to Dr. Fassler, his email to Mr. Dahlquist in September 2014 discussing the AirAllé device is not sufficient because it was sent "before Dr. Fassler was under contract with [Larada] via the Consulting Agreement" and before Defendants presented any AirAllé device to Mr. Dahlquist.[81]  That is, the initial email is "divorced in time from any of the allegations of misappropriation in this case."[82]  Dr. Fassler also argues his name's presence on an invoice Mr. Dahlquist sent to PHS is not relevant to his liability because it was not sent to him "in his individual capacity," and he was not asked about it on direct examination.[83]  In addition, Dr. Fassler contends Larada failed to prove disclosure because it provided no other evidence of further communications between him and Caliber or Enventys.[84]

The court finds Dr. Fassler's disclosure arguments unpersuasive.  When considered together, significant evidence exists to support at least an inference that Dr. Fassler disclosed Larada's trade secrets to Mr. Dahlquist on one or more occasions.  In his initial email to Mr. Dahlquist in September 2014, Dr. Fassler explains "PHS is exploring the possibility of manufacturing a similar device" to the AirAllé, which his "business is built around."[85]  He

---

[79] *See Post-Evidence Instruction No. 38*; *see also* 18 U.S.C. § 1839(5)(B).

[80] *JMOL Motion* at 8.

[81] *Id.* at 9.

[82] *Id.*

[83] *Id.* at 9–10.

[84] *Id.*

[85] *See* Plaintiff's Ex. 216, *Sept. 26, 2014 Email from John Fassler to Kevin Dahlquist.*

claims he seeks to do so "without infringing on [Larada's] patent."[86]  While Dr. Fassler had not yet signed a contract restricting his use of Larada's trade secrets when he sent the email, his discussion of Larada's patent indicates he knew Larada had at least some protectable intellectual property interests.[87]  A jury could reasonably infer from this evidence that Dr. Fassler "knew or had reason to know" about the License Agreements Ms. Fassler had signed on PHS's behalf prohibiting disclosure of Larada's trade secrets.[88]  This inference is bolstered by emails containing information about Defendants' plan to build a competing device that document at least one subsequent meeting between Dr. Fassler and Mr. Dahlquist related to this plan,[89] as well as Mr. Dahlquist's testimony that he met with Dr. Fassler on more than one occasion.[90]  A jury could reasonably infer from this evidence that Dr. Fassler disclosed Larada's trade secrets to Mr. Dahlquist to facilitate his construction of Defendants' competing devices.

Dr. Fassler's argument regarding an invoice sent from Caliber to PHS fails as well.  The invoice at issue catalogues work Caliber completed for PHS between September 10 and November 9, 2016, including: "Meeting re: AirAlle 2.0," "Research, manufacturing options,

---

[86] *Id.*

[87] Dr. Fassler argues his lack of a contract with Larada is dispositive because "he was under no duty to maintain secrecy" at the time he sent the email, which precludes Larada from demonstrating he disclosed any trade secrets by "improper means."  *See JMOL Motion* at 9.  But the DTSA does not require a contract to establish the liability of a person who discloses a trade secret.  *See* 18 U.S.C. § 1839(5)(B).  Nor does it "requir[e] a defendant disclose a trade secret by 'improper means'" to trigger liability.  *See JMOL Motion* at 9.  At bottom, while the existence of a contract may have been sufficient for Larada to establish Dr. Fassler wrongfully disclosed Larada's trade secrets, its existence is not necessary for the jury to reach that conclusion under a plain reading of the statute.

[88] *See, e.g.*, Plaintiff's Ex. 81, *Lease Agreement* ¶ 10.1.

[89] *See* Plaintiff's Ex. 84, *Nov. 2, 2014 Email from Kevin Dahlquist to John Fassler* ("I plan to have some of the preliminary materials assembled this week for your review . . . . Thanks again for meeting with me and I look forward to working with you & Sheila on your project!"); Plaintiff's Ex. 87, *Dec. 31, 2014 Email from Kevin Dahlquist to John Fassler & Sheila Fassler* ("Attached is the document we reviewed at our last meeting and also an invoice for work completed so far . . . . In the meantime I have also ordered the meter that we discussed that will allow us to accurately validate both air velocity and temperature of sample units we receive in order to confirm that they perform comparably to your current equipment.").

[90] *See* Dkt. 384, *Trial Testimony of Kevin Dahlquist* at 5640:17–21.

components," "CAD- digitize parts received & assembly," "Receive, disassemble, & digitize existing unit," and "Vendor meetings/correspondence."[91]  Listed in the invoice's "Name/contact" field is "John Fassler, MD."[92]  Notably, the invoice bills for work completed nearly a year after Dr. Fassler signed the Consulting Agreement, which prohibited his disclosure of Larada's confidential information (including its trade secrets) to third parties.[93]  The inference that Dr. Fassler disclosed Larada's trade secrets to Mr. Dahlquist for him to complete the work included on the invoice flows logically from these facts.[94]  To put a finer point on it, *someone* gave the "existing unit" to Mr. Dahlquist—and a jury could reasonably conclude Dr. Fassler, whose name appears on the invoice as a "contact" for PHS, did so on his own or in concert with someone else.[95]

Dr. Fassler's arguments that Larada provided "no other exhibits that show further communications between Dr. Fassler and Dahlquist" and its witnesses "provided no testimony that would suggest, indicate, or demonstrate that Dr. Fassler disclosed any of Plaintiff's trade secrets" misunderstand the nature of the evidence necessary to sustain the jury's verdict and the

---

[91] Plaintiff's Ex. 46, *Invoice No. 003*.

[92] *Id.*

[93] *See* Plaintiff's Ex. 118, *Consulting Agreement* at 1 (effective date of August 31, 2015); *id.* ¶ 6 (prohibiting disclosure of Larada's trade secrets).

[94] Dr. Fassler objects to the persuasive value of the invoice because he was not presented with it during his testimony.  *JMOL Motion* at 9–10.  But he provides no legal authority suggesting this was necessary.  Indeed, whether Larada's counsel discussed this Exhibit or any other with Dr. Fassler on his direct examination is immaterial; the evidence speaks for itself.  Moreover, if Dr. Fassler wished to distance himself from the evidence, he was welcome to testify about it.

[95] The court finds unpersuasive Dr. Fassler's assertion that the invoice is irrelevant to his individual liability because Caliber sent it to PHS, not Dr. Fassler.  *Id.* at 9–10.  The fact that Caliber billed PHS is certainly probative of PHS's liability.  But Caliber did not need to bill Dr. Fassler in his individual capacity for the jury to find the invoice relevant to the question of his liability.  This is because Dr. Fassler may be held personally liable for the illegal acts of PHS in which he "actively participated."  *Q.E.R., Inc. v. Hickerson*, 880 F.2d 1178, 1182–83 (10th Cir. 1989).  The existence of the invoice and the information contained within it are probative of Dr. Fassler's active participation in PHS's misappropriation of Larada's trade secrets regardless of the invoice's recipient.

court's role at this juncture.[96]  The court may not weigh the evidence when reviewing the jury's

verdict on a motion for a judgment as a matter of law.[97]  And Larada did not need to produce a

smoking gun to convince the jury; circumstantial evidence was enough.[98]  For the reasons

explained above, the court concludes Larada introduced more than sufficient evidence at trial for

a reasonable jury to find Dr. Fassler disclosed Larada's trade secrets, which alone requires denial

of Dr. Fassler's Motion.

### 2.  Use

The court now turns to Dr. Fassler's use argument.  The Tenth Circuit has not defined

"use" under the DTSA, and the parties do not agree on how the court should define it.[99]  The

Third Circuit, focusing on the word's "ordinary meaning" and its context within the statute,

explains "use" under the DTSA "encompasses all the ways one can take advantage of trade

secret information to obtain an economic benefit, competitive advantage, or other commercial

value, or to accomplish a similar exploitative purpose, such as 'assist[ing] or accelerat[ing]

research or development.'"[100]  The court finds this definition persuasive.

---

[96] *JMOL Motion* at 10.

[97] *Greene*, 98 F.3d at 557.

[98] *Dillon v. Fibreboard Corp.*, 919 F.2d 1488, 1490 (10th Cir. 1990).

[99] Rather than defining "use," the parties' submissions largely focus on the extent to which a trade secret must be used to demonstrate misappropriation.  *Compare JMOL Motion* at 11 (arguing a trade secret "as a whole" must be used), *with JMOL Opposition* at 5–6 (arguing use of any "substantial portion" of a trade secret is sufficient), *and JMOL Reply* at 2–3 (agreeing a "substantial portion" is sufficient).  In particular, the parties direct the court, *see JMOL Opposition* at 5–6; *JMOL Reply* at 2–3, to an Eleventh Circuit case interpreting the Georgia Trade Secrets Act, *Penalty Kick Mgmt. Ltd. v. Coca Cola Co.*, 318 F.3d 1284, 1292–93 (11th Cir. 2003).  In *Penalty Kick*, the Eleventh Circuit held use "need not extend to every aspect or feature of the trade secret; use of any *substantial portion* of the secret is sufficient to subject the actor to liability."  *Id.* (citing *Restatement (Third) of Unfair Competition* § 40 cmt. c (1995)).  But the court finds it unnecessary to reach this issue because sufficient evidence exists for the jury to find Dr. Fassler used Larada's trade secrets in their entirety.

[100] *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 910 (3d Cir. 2021) (alterations in original) (*quoting Gen. Universal Sys., Inc. v. HAL, Inc.*, 500 F.3d 444, 451 (5th Cir. 2007)).

Dr. Fassler argues no reasonable jury could have found he used Larada's trade secrets because the 2017 Clinical Results Comparison Study is "the only evidence" Larada introduced at trial suggesting he used the trade secrets.[101]  Dr. Fassler further contends there is "nothing in the record" showing he "had anything to do with the Study other than being labeled as PHS's Medical Director on the front page."[102]

Not so.  First, the court finds a jury could reasonably infer from the placement of his name and title on the Study report's cover page that Dr. Fassler commissioned, oversaw, or participated in the Study—that is a simple, common-sense inference.[103]  Second, Dr. Fassler's testimony at trial also supports an inference that he participated in the Study:

> Q: This is a study that directly compared the AirAllé and the FloSonix, right?
> A: Correct.
> . . .
> Q: Then where it says A.A. for the device, that is an AirAllé, right?
> A: I believe so.
> . . .
> Q: [T]here are some entries that say F.S.?
> A: Yes.
> Q: Does that refer to FloSonix?
> A: I suppose so, yeah.
> Q: There is also a line written at the top of the column that says 30 day post at the top of these columns.  Do you see that?
> A: Yes.
> Q: What does that refer to to your understanding?
> A: We provided within the cost of the treatment a 30 day post head check to make sure that we were successful, and that was not a change from the original study in 2012.
> Q: The date listed on the study there, that is the date of the initial treatment, right?
> A: Correct.[104]

---

[101] *JMOL Motion* at 12; *see also* Plaintiff's Ex. 110, *Clinical Results Comparison Study*.

[102] *JMOL Motion* at 12.

[103] Dr. Fassler again argues he cannot be held personally liable for actions he took in the course of his duties as PHS's Medical Director.  *Id.* at 12–13.  But as the court has already explained, Dr. Fassler may be held personally liable for the illegal acts of PHS in which he "actively participated."  *Q.E.R., Inc.*, 880 F.2d at 1182–83.  A jury could reasonably infer from his name appearing on the front cover of the Study that he "actively participated" in PHS's misappropriation of Larada's trade secrets.

[104] *Trial Testimony of John Fassler* at 5237:10–5238:16.

In this testimony, Dr. Fassler acknowledges the Study "compared the AirAllé and FloSonix devices," expresses familiarity with notations used in the document, and answers in the affirmative when asked, "the date listed on the study there, that is the date of the initial treatment, right?"[105]  Dr. Fassler also appears to directly admit he participated in the Study when he says, "*We* provided within the cost of treatment . . . ."[106]  A reasonable jury could therefore find Dr. Fassler participated in the Study in some capacity based on his testimony at trial.[107]

Dr. Fassler further argues that, even if he was involved in the Study, Larada failed to explain how his involvement demonstrates "use" of Larada's trade secrets.[108]  But "use" includes "all the ways one can take advantage of trade secret information to obtain an economic benefit, competitive advantage, or other commercial value, or to accomplish a similar exploitative purpose, such as 'assist[ing] or accelerat[ing] research or development.'"[109]  Conducting a study comparing the device that contains Larada's trade secrets with a new device is thus quintessential "use" under the DTSA.  Accordingly, a reasonable jury could conclude from the evidence supporting Dr. Fassler's participation in the Study that he used Larada's trade secrets by

---

[105] *Id.*

[106] *Id.* at 5238:11 (emphasis added).

[107] Dr. Fassler argues "the only evidence in the record is that [he] acknowledged seeing the Study and that his name appears on it.  The other questions by Plaintiff's counsel to Dr. Fassler were aimed at corroborating information clearly written on the front page of the Study." *JMOL Motion* at 12 (citation omitted).  This is a misleading characterization of Dr. Fassler's testimony.  Understanding the meaning of abbreviations and terms such as "30-day post," as well as Dr. Fassler's answer in the affirmative when asked the question, "This is a study that directly compared the AirAllé and the FloSonix, right?" goes well beyond mere corroboration and suggests—at a minimum—in-depth knowledge of the Study.

[108] *JMOL Motion* at 13–14.

[109] *Oakwood Lab'ys LLC*, 999 F.3d at 910 (alterations in original) (*quoting Gen. Universal Sys., Inc.*, 500 F.3d at 451).

attempting to gain economic value or a competitive advantage through research and development of the FloSonix.[110]  This finding independently compels denial of Dr. Fassler's Motion.

### 3. Acquisition

The court now turns to Dr. Fassler's acquisition argument.  Misappropriation includes the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means."[111]  Dr. Fassler argues a reasonable jury could not have found he acquired Larada's trade secrets because the only supporting evidence Larada provided at trial is that Ms. Fassler forwarded to Dr. Fassler the 2016 email she received from Mr. Dahlquist containing a top-down photo of the AirAllé's components.[112]  Without further evidence of the extent of his knowledge of the email, Dr. Fassler contends, a finding of acquisition improperly imputes Ms. Fassler's wrongdoing to him.[113]  Additionally, Dr. Fassler argues Larada's failure to question him at trial regarding his knowledge of the email precludes an acquisition finding.[114]

The court disagrees.  Contrary to Dr. Fassler's contention, Larada did not need to ask him at trial whether he read the email or understood it.  This is not only because it is a simple inference for a jury to deduce people tend to read emails they receive (especially from a spouse), but also because additional evidence in the record suggests Dr. Fassler knows how to access and use his email account.[115]  And the jury need not rely on the email in isolation because Larada

---

[110] Because the evidence supporting his participation in the Study is sufficient for a reasonable jury to find he used Larada's trade secrets, the court need not address Dr. Fassler's additional use arguments.

[111] 18 U.S.C. § 1839(5)(A).

[112] *JMOL Motion* at 15; *see also* Plaintiff's Ex. 98, *Sept. 20, 2016 Email from Sheila Fassler to John Fassler*.

[113] *JMOL Motion* at 15.

[114] *Id.* at 15–16.

[115] *See, e.g.*, Plaintiff's Ex. 216, *Sept. 26, 2014 Email from John Fassler to Kevin Dahlquist*.

presented a constellation of evidence at trial pointing toward Dr. Fassler's improper acquisition of Larada's trade secrets.

Dr. Fassler first reached out to Mr. Dahlquist on September 26, 2014.[116]  In December of that same year, Mr. Dahlquist sent an email to Dr. Fassler and Ms. Fassler explaining he had finished "preliminary R&D" and is "ready to present [his] results" at "another meeting."[117]  A reasonable jury could infer from these emails that Dr. Fassler—a medical doctor, not an engineer—sought to enlist Mr. Dahlquist's assistance in acquiring Larada's trade secrets, and then did so.  In addition, relying on the email Ms. Fassler forwarded to Dr. Fassler on September 20, 2016,[118] followed by data collection beginning just a few months later on the Clinical Results Comparison Study, a jury could reasonably conclude (1) Dr. Fassler participated in the Study (as evidenced by his name appearing on the Study report's cover as PHS's "Medical Director"[119] and his testimony at trial[120]) and (2) that he improperly acquired Larada's trade secrets to do so because such acquisition would have been a necessary condition of conducting the Study.  That is, without acquiring Larada's trade secrets, there would be no FloSonix and no Study.  The court therefore finds Larada presented sufficient evidence at trial for a jury to reasonably infer Dr. Fassler acquired Larada's trade secrets by improper means, which again independently requires denial of his Motion.[121]

---

[116] *Id.*

[117] Plaintiff's Ex. 85, *Dec. 15, 2014 Email from Kevin Dahlquist to John Fassler & Sheila Fassler*.

[118] Plaintiff's Ex. 98, *Sept. 20, 2016 Email from Sheila Fassler to John Fassler*.

[119] *See* Plaintiff's Ex. 110, *Clinical Results Comparison Study*.

[120] *See Trial Testimony of John Fassler* at 5237:10–5238:16.

[121] Dr. Fassler also argues the top-down photograph of the AirAllé components in the email is not sufficient to demonstrate acquisition because the components are not themselves the specific trade secrets at issue.  *JMOL Reply* at 9–10.  The court finds this argument unpersuasive because it is not the photograph itself, but the inferences that follow from its existence and Dr. Fassler's actions taken after his receipt of the email, that would lead a jury to find he wrongfully acquired the trade secrets.

18

### 4. Willful and Malicious Misappropriation

Dr. Fassler's only argument against the jury's finding of willful and malicious misappropriation is Larada lacked a viable misappropriation claim against him.[122] The court has already found Larada presented substantial evidence of Dr. Fassler's misappropriation by disclosure, use, and acquisition of Larada's trade secrets, so this argument fails.

For the reasons explained above, the court denies Dr. Fassler's Renewed Motion for Judgment as a Matter of a Law.

## II.  Defendants' Motion for a New Trial and/or Remittitur

Defendants move the court to set aside the jury's verdict and grant a new trial or, in the alternative, order a remittitur.[123] For the reasons stated below, the court denies Defendants' Motion.

### A. Legal Standard

The court may grant a new trial under Rule 59 when the jury's verdict is "against the weight of the evidence" or "the damages are excessive."[124] But such motions are "generally disfavored" and "should only be granted with great caution."[125] "Where a new trial motion asserts that the jury verdict is not supported by the evidence, the verdict must stand unless it is clearly, decidedly, or overwhelmingly against the weight of the evidence."[126] As to damages, "the jury's award is inviolate unless" it is "so excessive that it shocks the judicial conscience and

---

[122] *JMOL Motion* at 16.

[123] *New Trial Motion* at 5–6.

[124] *Megadyne Med. Prods. v. Aspen Lab.*, 864 F. Supp. 1099, 1102 (D. Utah 1994), *aff'd*, 52 F.3d 344 (Fed. Cir. 1995).

[125] *Klein-Becker USA, LLC v. Englert*, No. 2:06-cv-378-TS, 2011 WL 4079225, at *1 (D. Utah Sept. 13, 2011), *aff'd*, 711 F.3d 1153 (10th Cir. 2013).

[126] *Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1284 (10th Cir. 1999) (citation modified).

raises an irresistible inference that passion, prejudice, corruption, or other improper cause invaded the trial."[127] "The amount of damages awarded by a jury can be supported by any competent evidence tending to sustain it."[128] And as an alternative to granting a new trial, when a jury award is excessive or against the weight of the evidence, "the court may order a remittitur" and "direct that there be a new trial if the plaintiff refuses to accept it."[129] The court considers the evidence "in the light most favorable to the prevailing party."[130]

### B. Application

Defendants argue the court should set aside the jury's verdict and grant a new trial for two reasons. First, they contend opposing counsel's remarks during closing argument unfairly prejudiced them.[131] Second, they argue the jury awarded excessive damages against the weight of the evidence.[132]

As to their first argument, Larada argues Defendants waived it by failing to object at trial.[133] The court agrees. A party who moves for a new trial because of an attorney's allegedly

---

[127] *M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 766 (10th Cir. 2009) (citation omitted). Defendants suggest the court should consider the propriety of the jury's award under Utah state law, *New Trial Motion* at 23, pointing the court to *Biocore, Inc. v. Khosrowshahi*, 80 F. App'x 619, 626–27 (10th Cir. 2003). But *Biocore* was a diversity action, and the court's jurisdiction in this case arises under federal law. To the extent the court exercised supplemental jurisdiction over Larada's state law claims, which it must analyze under Utah law, *see BancOklahoma Mortg. Corp. v. Cap. Title Co.*, 194 F.3d 1089, 1103 (10th Cir. 1999), the portion of the jury's verdict challenged by Defendants arises under federal law. The court therefore considers Defendants' New Trial Motion under federal law.

[128] *Hill v. J.B. Hunt Transp., Inc.*, 815 F.3d 651, 668 (10th Cir. 2016) (citation modified).

[129] *Holmes v. Wack*, 464 F.2d 86, 89 (10th Cir. 1972).

[130] *Lompe*, 818 F.3d at 1061–62 (10th Cir. 2016) (citation omitted).

[131] *New Trial Motion* at 5–22. Defendants argue the court should apply a "plain error" standard of review because they failed to raise their closing argument objection at trial. *See id.* at 8–9. But this is the standard the Tenth Circuit applies when a party fails to preserve an argument—not the district court. *See, e.g.*, *Stella v. Davis Cnty.*, No. 23-4122, 2024 WL 4764694, at *15 (10th Cir. Nov. 13, 2024).

[132] *New Trial Motion* at 23–24.

[133] *New Trial Opposition* at 2–3.

20

improper remarks during closing argument must timely object; a failure to do so is dispositive.[134] That is, "a party may not wait and see whether the verdict is favorable before deciding to object."[135]  By failing to object during or immediately after Larada's closing argument, Defendants deprived the court of any opportunity to take curative action—or even to consider whether to do so—when counsel made the challenged statements.  Defendants' decision to "wait and see" whether the jury would issue a verdict in their favor forecloses the court from granting a new trial on this basis.

Turning to their second argument, Defendants contend "the evidence at trial substantiated, at most, an award of total unjust enrichment compensatory damages of $1,952,986."[136]  According to Defendants, Larada's damages expert "was Plaintiff's sole source of the calculation for misappropriation of trade secrets damages" and his testimony constituted "the full amount of Plaintiff's unjust enrichment theory of recovery."[137]  Defendants argue the record therefore does not suggest each Defendant "separately and distinctly" damaged Larada or were "each individually enriched" by $1,952,986.00.[138]

---

[134] *Glenn v. Cessna Aircraft Co.*, 32 F.3d 1462, 1465 (10th Cir. 1994) (citation omitted) ("A party who waits until the jury returns an unfavorable verdict to complain about improper comments during . . . closing argument is bound by that risky decision and should not be granted relief.").

[135] *Spahr v. Ferber Resorts, LLC*, 419 F. App'x 796, 806 (10th Cir. 2011) (quoting *Computer Sys. Eng'g, Inc. v. Qantel Corp.*, 740 F.2d 59, 69 (1st Cir. 1984)).

[136] *New Trial Motion* at 23.

[137] *Id.*

[138] *Id.* at 23–24.  As an initial matter, Defendants have not provided the court any legal authority suggesting the jury instructions or verdict form constitute legal error.  But even if they had, the court notes Defendants likely waived this argument because they lodged no objections to either the jury instructions or verdict form that would have prevented the jury from awarding damages against each individual Defendant.  Indeed, the opposite occurred: Defendants *asked the court* to structure the verdict form as it did.  *See* Dkt. 310, *Defendants' Brief in Support of Their Proposed Jury Instructions and Special Verdict Form* at 13 n.31 ("Defendants agree with Plaintiff's proposed Special Verdict Form insofar as Plaintiff separated out each defendant individually to assess liability of misappropriation.").  The Tenth Circuit has held such conduct constitutes waiver.  *See Aves v. Shah*, 997 F.2d 762, 766 (10th Cir. 1993).  But the court nevertheless considers the merits of Defendants' request because it has an independent duty to protect against double recovery even if Defendants failed to object in the first instance.  *See*

The court disagrees. As the court instructed the jury,[139] the damages inquiry under the DTSA focuses on the benefit conferred on each Defendant by their misappropriation of the trade secrets, not on the harm done to Larada.[140] Moreover, Defendants had the opportunity to contest the jury instructions on this basis but declined to do so.[141] The court finds persuasive the reasoning in *ResMan, LLC v. Karya Property Management, LLC*.[142] In that case, the defendants made similar arguments: that the plaintiff's "only evidence of unjust enrichment" was its "own development costs," which it "used as a proxy for the costs" the defendants avoided when engaging in misappropriation.[143] The court found:

> Defendants are separate tortfeasors. Although Defendants worked together to create one platform, each Defendant misappropriated ResMan's trade secrets, and benefitted from such misappropriation, in individualized ways. While the end product . . . was the goal of both Defendants' misappropriation, such goal does not necessarily transpose into the same benefits conferred onto Defendants by their misappropriation.[144]

Here, Defendants argue their "roles in misappropriating Plaintiff's trade secrets are not individualized or distinct like those of the defendants in *ResMan*," point to how a *ResMan* defendant played a role more like Enventys or Caliber, and contend none of the benefits

---

*Mason v. Oklahoma Tpk. Auth.*, 115 F.3d 1442, 1459–60 (10th Cir. 1997), *overruled on other grounds by TW Telecom Holdings Inc. v. Carolina Internet Ltd.*, 661 F.3d 495 (10th Cir. 2011).

[139] *See Post Evidence Instruction No. 48* ("Regardless of whether you find that Plaintiff itself suffered losses, if you find that a Defendant benefited from using a trade secret belonging to Plaintiff, then you should consider whether that Defendant should pay the monetary value of those benefits to Plaintiff.").

[140] *See Russo v. Ballard Med. Prods.*, 550 F.3d 1004, 1017, 1020 (10th Cir. 2008) (discussing a similar jury instruction and finding no abuse of discretion).

[141] *See Defendants' Brief in Support of Their Proposed Jury Instructions and Special Verdict Form* at 10 (accepting the jury's calculation of any unjust enrichment award involves determining Defendants' benefit and premising their objection on whether Defendants' costs should be used to reduce any award).

[142] No. 4:19-cv-00402, 2021 WL 3423345 (E.D. Tex. Aug. 5, 2021).

[143] *Id.* at *5 (citation omitted).

[144] *Id.* at *7.

conferred on Defendants are "tied to specific dollar amounts."[145]  The court finds these arguments unpersuasive.  The jury found each Defendant individually liable for misappropriation of Larada's trade secrets.[146]  A necessary implication of this finding is each Defendant engaged in separate instances of misconduct throughout their years-long (successful) efforts to misappropriate Larada's trade secrets for their own financial benefit.  The court already described some of Dr. Fassler's conduct supporting a finding of misappropriation against him.[147]  As to Ms. Fassler's and PHS's liability, Larada presented voluminous, convincing, and in many ways undisputed evidence at trial that she and PHS employees disclosed and used Larada's trade secrets for the purpose of constructing a device similar to the AirAllé.[148]  Sufficient evidence therefore exists to support a finding that Defendants "separately and distinctly" misappropriated Larada's trade secrets.

The court also agrees with Larada that a reasonable jury could have found each Defendant benefited in distinct and individualized ways from their respective acts of misappropriation.  PHS benefited by not having to pay the costs associated with the research and development conducted by Larada to create the AirAllé,[149] and Ms. Fassler benefited as the sole owner of PHS.[150]  Dr. Fassler also benefited (1) by receiving a salary from PHS,[151] and (2) as a

---

[145] *New Trial Reply* at 3–5.

[146] *See Jury Verdict Form.*

[147] *See supra* § I.

[148] *See, e.g.*, Plaintiff's Ex. 41, *Sept. 20, 2016 Email from Kevin Dahlquist to Sheila Fassler* (including a top-down photograph of a Larada device with its components exposed); *Trial Testimony of Sheila Fassler (Day 2)* at 5288:10–5291:8 (discussing Plaintiff's Ex. 41 and confirming Ms. Fassler directed an employee to provide Mr. Dahlquist with the photograph); Plaintiff's Ex. 190, *July 7, 2017 Email from Sheila Fassler to PHS Employees* (including forwarded email from Mr. Dahlquist discussing detailed comparison of AirAllé and proposed FloSonix device).

[149] *See* Dkt. 377, *Trial Testimony of Matt Germane* at 5254:24–5256:2 ("Larada spent $1.95 million to develop the device, and PHS took that, and without spending the time or money to develop their own or to develop that device, they took that and used that as a starting point for their device.").

[150] *Trial Testimony of Sheila Fassler (Day 1)* at 5935:16–22.

[151] *Trial Testimony of John Fassler* at 5244:19–5245:16.

creditor of FSV because his misappropriation made it more likely FSV would pay back his loan.[152]  This is "competent evidence"[153] sufficient to sustain the jury's verdict against each Defendant.

The court finds it necessary to highlight an additional reason Defendants' Motion fails. With respect to the jury's verdict, Defendants had numerous opportunities to at least try to avoid the result that occurred.  Among other things, Defendants could have (1) presented an alternative damages theory at trial;[154] (2) objected to the jury instructions regarding calculating damages;[155] (3) presented evidence or proposed a jury instruction allocating damages amongst the Defendants; (4) objected to the verdict form's structure;[156] (5) objected to Mr. Stasiewicz's allegedly improper remarks when they occurred; or (6) argued in their own closing argument

---

[152] *Id.* at 5244:24–20.  The parties agree Larada had the burden to prove the amount of its damages with "reasonable certainty" as to each Defendant.  *See New Trial Opposition* at 3 (quoting *Epic Sys. Corp. v. Tata Consultancy Servs. Ltd.*, 980 F.3d 1117, 1130 (7th Cir. 2020)); *New Trial Reply* at 4 (same).  Assuming this standard is correct, the court finds no error in the jury's award of $1,000,000.00 in compensatory damages against Dr. Fassler.  A jury could have reasonably inferred from the evidence presented at trial that Dr. Fassler deliberately concealed the true extent of his benefit from misappropriating Larada's trade secrets.  *See Trial Testimony of John Fassler* at 5245:17–5246:7 (discussing fund transfers between the Fasslers, PHS, and FSV that Dr. Fassler admitted in his deposition occurred "all the time").  But instead of seeking to punish Dr. Fassler by inflating his liability for this conduct or by awarding Larada a "windfall" from him, the jury's award against Dr. Fassler is almost fifty percent less than the awards against Ms. Fassler and PHS.  *See Jury Verdict Form.*  And the awards against Ms. Fassler and PHS were also each less than the over $1.9 million amount described by Larada's damages expert.  *Compare id., with Trial Testimony of Matt Germane* at 5254:24–5256:2.  The jury's behavior indicates they took seriously their charge to evaluate each Defendant's liability separately and found Dr. Fassler less culpable than his co-Defendants.  *See Post-Evidence Instruction No. 2* ("You must evaluate the evidence fairly and separately as to each Defendant.  For example, Ms. Fassler and Dr. Fassler are not responsible for the conduct of the other simply because they are wife and husband."); *Post-Evidence Instruction No. 47* ("If you determine a Defendant caused Plaintiff to suffer damages, you must determine the amount of damages that Defendant individually caused Plaintiff.").

[153] *Hill*, 815 F.3d at 668.

[154] Defendants' expert, Clarke Nelson, critiqued Larada's damages theory but offered no alternative.  *See* Dkt. 383, *Testimony of Clarke Nelson* at 5548:8–5560:25.  Viewing the evidence in the light most favorable to Larada, *see Lompe*, 818 F.3d at 1061–62 (10th Cir. 2016), the court finds a reasonable jury could have found Mr. Clarke's testimony unreliable given his evasive answers on cross examination, *see Testimony of Clarke Nelson* at 5561:2–5573:20.  A reasonable jury could have therefore disregarded Mr. Clarke's testimony.

[155] *See supra* n.141.

[156] *See supra* n.138.

immediately thereafter for a different theory of damages. Defendants did none of these things.[157] Instead, Defendants now ask the court to punish Larada for Defendants' own failures and choices. In addition to lacking legal support, this result would be unjust. It is *Defendants*—the tortfeasors who a jury unanimously found each willfully and maliciously misappropriated Larada's trade secrets—who must bear the consequences of these failures, not their victim. Here, significant evidence adduced at trial supports each Defendant's liability. The verdict must stand because it is not "clearly, decidedly, or overwhelmingly against the weight of the evidence,"[158] and—far from "shock[ing] the judicial conscience"[159]—the awards against each Defendant do not strike the court as anomalous for a trade secrets misappropriation case of this magnitude. As the court has found the awards are not excessive or against the weight of the evidence, it will not disturb the jury's verdict by ordering a new trial.[160] For the same reasons, the court also will not order a remittitur. The court therefore denies Defendants' New Trial Motion.

---

[157] Defendants were aware of Larada's damages calculation presented in closing argument and, whether through unintentional oversight or deliberate strategy, chose not to respond to it. In his closing argument, Defendants' counsel described how Mr. Stasiewicz went "through the special verdict form and put huge numbers as it relates to the trade secret misappropriation." Dkt. 381, *Defendants' Closing Argument* at 5424:16–18. But at no point in his closing argument did Defendants' counsel present an alternative damages calculation beyond describing Larada's theory as a "windfall," *id.* at 5438:11, and asking the jury not to award Larada $1.9 million or $3.8 million, *id.* at 5433:19–20. Even when Defendants' counsel walked through the special verdict form individually for each Defendant, he simply asked the jury not to find Defendants liable and offered no alternative damages calculation in the event the jury found liability. *See id.* at 5441:24–5442:19.

[158] *Anaeme*, 164 F.3d at 1284 (citation modified).

[159] *M.D. Mark, Inc.*, 565 F.3d at 766.

[160] While Defendants do not challenge the jury's award of exemplary damages on this basis, the court notes the DTSA's exemplary damages provision is constitutionally sound. *See Motorola Sols., Inc. v. Hytera Commc'ns Corp. Ltd.*, 108 F.4th 458, 496 (7th Cir. 2024), *reh'g and reh'g in banc dismissed*, No. 22-2370, 2024 WL 4416886 (7th Cir. Oct. 4, 2024), and *cert. denied*, No. 24-725, 2025 WL 581667 (U.S. Feb. 24, 2025); *see also State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003) ("Single-digit multipliers are more likely to comport with due process, while still achieving the State's goals of deterrence and retribution, than awards with ratios in range of 500 to 1 . . . ." (citation omitted)). Additionally, having considered the factors set out in *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996), and *State Farm*, 538 U.S. at 418, the court finds the jury's award comports with due process. *See, e.g.*, *Motorola Sols*, 108 F.4th at 498 (affirming $271.6 million award of exemplary damages under the DTSA when "exactly double" the compensatory damages award).

## III.    Defendants' Motion to Stay

Defendants move the court to stay execution of the Judgment without requiring a full supersedeas bond pending the court's resolution of their post-trial Motions.[161]  Because the court has now resolved those Motions, it denies the Motion to Stay as moot.  Should Defendants elect to file a notice of appeal and seek to stay execution of the court's Judgment without "providing a bond or other security" as required by Federal Rule of Civil Procedure 62(b),[162] they may renew their Motion to Stay at that time.[163]

## IV.    Larada's Motion for Attorneys' Fees

Larada asks the court to award it attorneys' fees.[164]  When considering a request for attorneys' fees, the court applies the American Rule, in which "[e]ach litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise."[165]  Both circumstances are present here.  The DTSA provides for an award of reasonable attorneys' fees to the prevailing party in cases where a "trade secret was willfully and maliciously misappropriated,"[166] as the jury found here.[167]  Larada argues it is entitled to attorneys' fees under the DTSA and under the parties' License Agreements.[168]  Defendants do not dispute

---

[161] *See Motion to Stay.*

[162] Fed. R. Civ. P. 62(b).

[163] An appeal does not automatically stay the court's Judgment.  *See* 11 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2905 (3d ed. 2025).

[164] *See Attorneys' Fees Motion.*

[165] *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126 (2015) (citation omitted).

[166] 18 U.S.C. § 1836(b)(3)(D).

[167] *See Jury Verdict Form.*

[168] *See Attorneys' Fees Motion* at 2; *see also, e.g.*, Defendants' Ex. 1003, *License Agreement* at 16 ("In the event that either Party brings any action in reference to this Agreement, the 'Prevailing Party' in such action shall be awarded all reasonable attorneys' fees, expert witness fees, court costs and discovery costs incurred.  For purposes of this Agreement, the Prevailing Party shall be deemed that Party that has prevailed on a majority of the issues decided by the trier of fact, law or equity.").

Larada is entitled to some amount of attorneys' fees, instead arguing the court should reduce Larada's request on various grounds.[169]  The court therefore finds Larada is entitled to attorneys' fees and conducts its analysis accordingly.

## A.  The Lodestar

The court now considers whether Larada's requested fees are reasonable.  District courts in the Tenth Circuit use the "lodestar" approach to make that determination.[170]  To calculate the lodestar, the court multiplies (1) counsel's hours reasonably spent on the litigation by (2) a reasonable hourly rate.[171]  Under this approach, the party requesting the fees—Larada—has the burden "to prove and establish the reasonableness of each dollar, each hour, above zero."[172]  Larada must also provide evidence supporting the hours worked and the claimed rate.[173]  Where this is found lacking, "the district court may reduce the award accordingly."[174]

### 1.  Reasonable Hours

In assessing the reasonableness of counsel's claimed hours, the court examines whether counsel has provided adequate billing records, exercised billing judgment, and spent a reasonable number of hours on each task.[175]

The court first considers whether Larada provided adequate billing records.  A fee applicant must submit to the court "meticulous, contemporaneous time records that reveal, for

---

[169] *See generally Attorneys' Fees Opposition.*

[170] *See United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1233–34 (10th Cir. 2000).

[171] *See id.*; *Derma Pen, LLC v. 4EverYoung Ltd.*, No. 2:13-cv-00729-DN, 2019 WL 2929525, at *2 (D. Utah July 8, 2019), *aff'd*, 999 F.3d 1240 (10th Cir. 2021).

[172] *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1210 (10th Cir. 1986).

[173] *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

[174] *Id.*

[175] *See Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1250 (10th Cir. 1998).

each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks."[176]  Larada's counsel submitted detailed billing records for their work on the case.[177]  The records indicate sole practitioner Peter Stasiewicz billed 663.2 hours and various attorneys at the law firm Lewis Brisbois Bisgaard & Smith LLP billed 397.2 hours.[178]

Defendants argue the court should reduce Larada's claimed hours because Larada failed to comply with DUCivR 54-2(a)(2)(B)(iv),[179] which requires the fee applicant to provide "an affidavit identifying . . . each person for whom fees are claimed and a summary of that person's relevant qualifications and experience."[180]  Defendants contend the court should exclude the hours billed by Ms. Petriou and Mr. Charest because Larada failed to provide the court with their "qualifications and experience."[181]  Larada does not dispute this in reply.[182]  The court agrees with Defendants and therefore excludes the 60.2 hours billed by Ms. Petriou and 8.3 hours billed by Mr. Charest from its calculation of the lodestar.

Next, the court must ensure Larada's counsel properly exercised billing judgment. "Billing judgment consists of winnowing the hours actually expended down to the hours reasonably expended."[183]  In doing so, the fee applicant's counsel "should make a good faith

---

[176] *Id.* (citation omitted).

[177] *See* Dkt. 349, *Declaration of Peter Stasiewicz in Support of Motion for Attorneys Fees* (*Stasiewicz Declaration*); Dkt. 350, *Declaration of Douglas C. Smith in Support of Motion for Attorneys Fees* (*Smith Declaration*).

[178] *See Stasiewicz Declaration*; *Smith Declaration*.  The Lewis Brisbois attorneys billed as follows: 294.2 hours by Douglas C. Smith, 60.2 hours by Christina Petriou, and 8.3 hours by Patrick Charest.  Dkt. 350-2, *Exhibit B* at 1–9.  The Lewis Brisbois billing records also include hours billed by Jesse Frederick, Amy Olson, and Diane Weaver, but the court disregards these entries because counsel does not appear to seek fees related to their work.

[179] *Attorneys' Fees Opposition* at 3–4.

[180] DUCivR 54-2(a)(2)(B)(iv).

[181] *See Attorneys' Fees Opposition* at 3–4.

[182] *See generally Attorneys' Fees Reply*.

[183] *Case*, 157 F.3d at 1250 (citation omitted).

effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary."[184]  Where the court finds counsel has not exercised appropriate billing judgment, it may reduce the fee award by applying a percentage reduction so long as it explains the reasons for doing so.[185]

Neither party specifically addresses whether Larada's counsel exercised billing judgment.[186]  And the billing records provide no indication counsel reduced their claimed hours except for minimal redactions in the Lewis Brisbois billing records, which are not explained.[187]  The court therefore finds Larada's counsel have failed to establish they exercised billing judgment.  In addition, the provided records suggest counsel engaged in improper block-billing on several occasions.[188]  To account for this deficiency and protect against overcompensation, the court will apply a ten-percent reduction to counsel's requested hours.  Such a reduction aims to ensure Defendants are required to pay only for hours Larada's counsel reasonably spent litigating the case.  For the purpose of calculating the lodestar, this results in 596.88 hours remaining for Mr. Stasiewicz and 264.78 hours remaining for Mr. Smith.  Having closely reviewed the billing records, the court is confident Larada's counsel otherwise billed only for necessary work and no further reduction is necessary to reach a reasonable number of claimed hours.

---

[184] *Hensley*, 461 U.S. at 434.

[185] *See Valdez v. Macdonald*, 66 F.4th 796, 836–37, 841–43 (10th Cir. 2023); *Case*, 157 F.3d at 1250.

[186] *See generally Attorneys' Fees Motion*; *Attorneys' Fees Opposition*; *Attorneys' Fees Reply*.

[187] *See* Dkt. 350-1, *Exhibit A*.

[188] *See, e.g.*, *id.* at 37 (billing 8.5 hours for "[t]rial preparation with expert and team"); Dkt. 349-1, *Exhibit A* at 6 (billing 5.0 hours for "[r]eview[ing] documents produced by defendants"); *see also Cadena v. Pacesetter Corp.*, 224 F.3d 1203, 1215 (10th Cir. 2000) (disapproving of block-billing).

The court now turns to the factors set forth in *Case v. Unified Sch. Dist. No. 233*[189] and *Johnson v. Georgia Highway Express, Inc.*[190] to determine whether counsel expended a reasonable number of hours on each task. According to Larada, the *Case* factors support a finding of reasonableness because of: (1) the case's complexity, which caused Larada's counsel to review tens of thousands of documents produced by both Defendants and third parties to fully understand Defendants' actions; (2) Larada's reasonableness in seeking a preliminary injunction and advancing a variety of legal strategies throughout discovery as new facts came to light; (3) the necessity of adding an additional party to the litigation to fully capture Defendants' malfeasance and having to respond quickly after Defendants' expert fell ill, which required "a delay in trial, a new inspection, and a further deposition"; and (4) a lack of evidence suggesting the duplication of any services.[191] Defendants do not contest Larada's representations.[192] The court agrees with Larada and concludes no further reduction under the *Case* factors is warranted.

The *Johnson* factors lend further support to the reasonableness of Larada's fee request. While the court need not discuss every *Johnson* factor,[193] several are particularly relevant here. Counsel's thorough billing records demonstrate the significant time and labor spent on the case. And Larada's attorneys, both with nearly twenty years of litigation experience, proved to be

---

[189] 157 F.3d at 1250 (providing four factors to analyze in the reasonableness inquiry: (1) "the complexity of the case"; (2) "the number of reasonable strategies pursued"; (3) "the responses necessitated by the maneuvering of the other side"; and (4) "the potential duplication of services").

[190] 488 F.2d 714, 717–19 (5th Cir. 1974) (providing twelve factors to analyze in the reasonableness inquiry: (1) "the time and labor required"; (2) "the novelty and difficulty of the questions"; (3) "the skill requisite to perform the legal service properly"; (4) "the preclusion of other employment by the attorney due to acceptance of the case"; (5) "the customary fee"; (6) "whether the fee is fixed or contingent"; (7) "time limitations"; (8) "the amount involved and the results obtained"; (9) "the experience, reputation, and ability of the attorney"; (10) "the 'undesirability' of the case"; (11) "the nature and length of the professional relationship with the client"; and (12) "awards in similar cases").

[191] *See Attorneys' Fees Motion* at 6.

[192] *See generally Attorneys' Fees Opposition*.

[193] *See Uselton v. Com. Lovelace Motor Freight, Inc.*, 9 F.3d 849, 854 (10th Cir. 1993).

capable advocates on behalf of their client by prevailing on every claim tried before the jury.[194]

Having considered the rest of the *Johnson* factors, the court concludes these factors either

support the reasonableness of Larada's requested fees or have little bearing on the present case.

The court therefore declines to further reduce Larada's fee award.[195]

### 2. Reasonable Rates

The court next reviews the reasonableness of Larada's claimed hourly rates. As the fee

applicant, Larada has the burden to prove "the requested rates are in line with those prevailing in

the community for similar services by lawyers of reasonably comparable skill, experience, and

reputation."[196] In contrast to the broad discretion generally afforded to district courts in

assessing attorneys' fees, the Tenth Circuit cautions the court not to "ignore[] the parties' market

evidence and set[] an attorney's hourly rate using the rates it consistently grants."[197] "The court

may not use its own knowledge to establish the appropriate rate unless the evidence of prevailing

market rates before the court is inadequate."[198]

In this case, Mr. Stasiewicz charged Larada $425 per hour and Mr. Smith charged Larada

$350 per hour.[199] In support of his $425 claimed rate, Mr. Stasiewicz argues he charges more as

a sole practitioner in Chicago and directs the court to an American Intellectual Property Law

---

[194] *See Attorneys' Fees Motion.*

[195] Defendants ask the court to lower Larada's fee award by 13.3 hours because the court denied Larada's motion to designate David Washburn as a technical advisor. *See Attorneys' Fees Opposition* at 8–9. In reply, Larada notes Magistrate Judge Jared C. Bennett found "Larada's motion was substantially justified in that it had 'a reasonable basis in both law and fact.'" *Attorneys' Fees Reply* at 3–4; *see also* Dkt. 145, *Order* at 4. The court agrees with Judge Bennett and declines to reduce Larada's fee on that basis.

[196] *See Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir. 1996) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)).

[197] *Case*, 157 F.3d at 1255 (citation modified).

[198] *United Phosphorus*, 205 F.3d at 1234 (citing *Case*, 157 F.3d at 1257 ("Only if the district court does not have before it adequate evidence of prevailing market rates may the court, in its discretion, use other relevant factors, including its own knowledge, to establish the rate.")).

[199] *See Attorneys' Fees Motion* at 7.

Association (AIPLA) report finding the "mean hourly billing rate for intellectual property solo litigators in the 'Other West' area was $382."[200]  And Mr. Smith attests his claimed $350 rate is reasonable but provides the court with no market evidence in support except for reference to the AIPLA report.[201]

Defendants take issue only with Mr. Stasiewicz's requested rate, arguing Larada's decision to "hir[e] out-of-state counsel was unnecessary" and pointing out Larada does not tie Mr. Stasiewicz's rate "to the local jurisdiction" at issue here.[202]  Defendants suggest reducing Mr. Stasiewicz's rate to $350 per hour, the same rate charged by local counsel.[203]

Defendants' correctly note deficiencies in Larada's Motion.  The relevant community for determining the reasonableness of counsel's requested hourly rate is the Salt Lake City, Utah legal market, where Larada filed suit.[204]  This court has previously found an AIPLA report referencing the "expansive 'Other West' category" unhelpful because it "hardly satisfies" a plaintiff's burden to establish the market rate for legal services in Salt Lake City.[205]  Larada's lack of any additional market evidence beyond counsel's attestation that the requested rate is reasonable is insufficient.

For this reason, the court finds Larada failed to provide adequate evidence of the prevailing market rate.  But, contrary to Defendants' suggestion, reducing out-of-state counsel's

---

[200] *Id.* at 6; *see also* Dkt. 349-8, *AIPLA Report.*

[201] *See Attorneys Fees' Motion* at 6; *Smith Declaration* ¶ 8.

[202] *See Attorneys' Fees Opposition* at 4–5.

[203] *Id.* at 5–6.

[204] *See Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983) (holding the relevant market consists of "the area in which the litigation occurs" or "the area in which the court sits").

[205] *See John Bean Techs. Corp. v. B GSE Grp., LLC*, No. 1:17-cv-00142-RJS, 2023 WL 6164322, at *24 (D. Utah Sept. 21, 2023).

requested rate to match local counsel's rate as a matter of course would be improper.[206]  And to the extent Defendants suggest Larada should have hired in-state counsel instead of Mr. Stasiewicz, the court finds compelling Larada's explanation that it was unable to find local counsel to take on the case who would accept the billing structure Larada required.[207]  And because the parties have provided inadequate evidence to establish the prevailing market rate, the court may rely on its own experience to do so.[208]

Relying on its familiarity with the prevailing market rate in similar cases, the court finds Larada's counsel have requested reasonable hourly rates for their work.  Both in-state and out-of-state counsel request hourly rates significantly lower than requests granted by this court in recent years in intellectual property cases.[209]  In sum, the court finds Larada's counsel charged reasonable hourly rates based on the "skill, experience, and reputation" they brought to a complicated case and declines to lower their rates.[210]

### 3.  Calculation of the Lodestar

The court now turns to its calculation of the lodestar.  After accounting for the ten-percent reduction in hours, Mr. Stasiewicz billed 596.88 hours at a rate of $425 per hour and Mr. Smith billed 264.78 hours at a rate of $350 per hour.  Excluding from its calculation any hours billed by other attorneys, the court calculates a lodestar of $346,347.00.  The lodestar is presumptively reasonable,[211] and the court finds no reason to reduce it further.

---

[206] *See id.* ("[I]t would be inappropriate to mandate reductions based purely on a disparity with local counsel's rates.").

[207] *See Attorneys' Fees Reply* at 2.

[208] *See United Phosphorus*, 205 F.3d at 1234; *Case*, 157 F.3d at 1257.

[209] *See, e.g.*, *John Bean Techs. Corp.*, 2023 WL 6164322, at *25 (approving rates between $265.50 and $643.50 per hour in a trade secrets misappropriation case).

[210] *Blum*, 465 U.S. at 895 n.11.

[211] *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 546, 552 (2010).

### B. Non-Taxable Costs

In addition to attorneys' fees, Larada seeks reimbursement of its non-taxable costs consisting of (1) travel and trial-related expenses, and (2) expert fees.[212]  The court addresses each category in turn.

### 1. Travel and Trial-Related Costs

As part of an award of attorneys' fees under the DTSA, the court may award reasonable out-of-pocket expenses.[213]  These include "incidental and necessary expenses incurred in furnishing effective and competent representation" that are "not normally absorbed as part of law firm overhead."[214]  While the court may award certain travel costs to the prevailing party,[215] only in "unusual cases" may the court require reimbursement for out-of-state counsel to travel to "the city in which the litigation is conducted."[216]  As before, Larada has the burden of demonstrating it is entitled to non-taxable costs.[217]

Larada seeks $31,871.40 for travel and trial-related costs.[218]  These include (1) costs incurred prior to trial, including for Mr. Stasiewicz's travel to Charlottesville, Virginia and Charlotte, North Carolina to inspect AirAllé and FloSonix devices and to various locations for depositions; and (2) costs related to trial, including for Mr. Stasiewicz's travel to Salt Lake City

---

[212] *Attorneys' Fees Motion* at 7–9.

[213] *See, e.g.*, *John Bean Techs. Corp.*, 2023 WL 6164322, at *26.

[214] *See Brown v. Gray*, 227 F.3d 1278, 1297 (10th Cir. 2000).

[215] *See id.*

[216] *Ramos*, 713 F.2d at 559.

[217] *In re Williams Sec. Litig.-WCG Subclass*, 558 F.3d 1144, 1148 (10th Cir. 2009).

[218] *Attorneys' Fees Motion* at 9–10.

and his accommodations, nearly two dozen taxi or rideshare charges, "daily working lunches," a "trial technician," and a "litigation headquarters" at a hotel near the courthouse.[219]

As to Mr. Stasiewicz's Salt Lake City travel for depositions and trial, as well as his related accommodations, the court finds Larada has not met its burden. While Larada was free to hire out-of-state counsel, the court agrees with Defendants that the cost of his travel to Salt Lake City and lodging while there are not costs that local counsel would have incurred.[220] Such costs are therefore not "necessary expenses incurred in furnishing effective and competent representation."[221] Larada has also not provided the court with any argument suggesting this is an "unusual case"[222] in which the court may require Defendants to pay for Mr. Stasiewicz's travel to Salt Lake City. The same goes for the daily working lunches and taxi and rideshare costs related to the Salt Lake City depositions and trial because Larada has not provided argument that such costs were necessary or "not normally absorbed as part of law firm overhead."[223] The court therefore will not award Larada these costs.

However, local counsel would have incurred travel costs to inspect the devices located in Virginia and North Carolina as well as for the non-Salt Lake City deposition. The court finds these costs necessary and reasonable, and it therefore awards them to Larada.

The court now turns to the cost of Larada's trial technician, Erik Largin. Nowhere in its Motion does Larada argue Mr. Largin's assistance was necessary to "furnishing effective and

---

[219] *Id.* at 8–9; *see also* Dkt. 349-3, *Exhibit C*; Dkt. 349-4, *Exhibit D*.

[220] *Attorneys' Fees Opposition* at 5. Defendants appear to concede travel to Virginia and North Carolina is compensable. *Id.*

[221] *Brown*, 227 F.3d at 1297 (citation omitted).

[222] *Ramos*, 713 F.2d at 559.

[223] *Brown*, 227 F.3d at 1297. Furthermore, several of the rideshare charges incurred during trial are for well over $100. *See* Dkt. 349-4, *Exhibit D*. Without further information supporting such charges, the court is left with the impression that they are excessive.

competent representation" or provide any evidence suggesting such an expense is "not normally absorbed as part of law firm overhead."[224]  And, pointing the court to three cases, Defendants contend the cost of a trial technician is not recoverable.[225]  While only one of the cases cited by Defendants involved a trial technician, and none are binding, the court finds Larada has not met its burden to establish it is entitled to its trial technician costs under the DTSA.  The court therefore declines to award Larada those costs.

Larada argues "a location near the trial courthouse was necessary to serve as the trial headquarters."[226]  Defendants argue the litigation headquarters was unnecessary because local counsel's office is located around twenty minutes from the courthouse.[227]  But the court agrees with Larada that a closer location allowed counsel to save valuable time commuting to and from trial that "would have been appropriate even with local counsel."[228]  The court will therefore award Larada the cost of its litigation headquarters.[229]

---

[224] *See Brown*, 227 F.3d at 1297 (citation omitted); *see also Attorneys' Fees Motion*.  In reply, Larada argues the use of video was necessary because the "paper copies" of exhibits "were stored in massive volumes" such that there would not have been time for counsel to assist witnesses in locating documents in the time allotted for trial by the court.  *Attorneys' Fees Reply* at 3.  Larada also asks the court for the first time in its Reply to construe its trial technician costs as "court costs" under the parties' License Agreements.  *Id.*  The court declines to consider these arguments given Defendants have not had an opportunity to respond to them.

[225] *See Attorneys' Fees Opposition* at 7–8 (first citing *Battenfeld of Am. Holding Co., Inc. v. Baird, Kurtz & Dobson*, 196 F.R.D. 613 (D. Kan. 2000) (finding trial technician costs are unrecoverable); then citing *Coleman ex rel. Schefski v. Stevens*, 17 P.3d 1122 (Utah 2000) (holding trial exhibits are unrecoverable); and then citing *Young v. State*, 16 P.3d 549 (Utah 2000) (holding trial exhibits are unrecoverable)).  At least one other court in this Circuit has found such costs recoverable.  *See AECOM Tech. Servs., Inc. v. Flatiron AECOM, LLC*, No. 19-cv-2811-WJM-KAS, 2025 WL 775559, at *6 (D. Colo. Mar. 11, 2025).

[226] *Attorneys' Fees Motion* at 9.

[227] *Attorneys' Fees Opposition* at 5.

[228] *Attorneys' Fees Reply* at 2.

[229] On the bill provided to the court, Larada includes two hotel charges, one for $5,000.00 and one for $5,470.20.  Dkt. 349-4, *Exhibit D*.  Presumably, one charge is for Mr. Stasiewicz's hotel room, and one is for the litigation headquarters.  But Larada does not differentiate between them.  *See id.*  In fairness to Defendants, the court will only allow Larada to recover $5,000.00 for the litigation headquarters, the lesser of the two charges.

After deducting the disallowed charges, the court awards Larada $7,507.58 in travel and trial-related costs.

### 2. Expert Fees

Larada seeks $56,625.00 in expenses for the services of Jon Beck, who Larada retained to testify to the trade secrets contained in Larada's devices, and $136,925.00 in expenses for Matt Germane, who testified as to Larada's damages.[230]  While the court may not award expert fees under the DTSA, it may do so pursuant to a contractual agreement.[231]

Here, the License Agreements entitle Larada to expert fees.[232]  In support of its request, Larada has provided the court with invoices describing the work its experts conducted,[233] which Mr. Stasiewicz has averred was necessary.[234]  In response, Defendants argue Larada failed to comply with DUCivR 54-2(a)(2)(B) because Larada did not provide the court with any information to evaluate the experts' qualifications or the qualifications of seven individuals who billed for work related to Mr. Germane's testimony.[235]  In reply, Larada notes its experts'

---

[230] *See Attorneys' Fees Motion* at 8.

[231] *See Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 293–94 (2006) (holding "reasonable attorneys' fees" does not include "fees for services rendered by experts"); *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 439 (1987) ("[W]hen a prevailing party seeks reimbursement for fees paid to its own expert witnesses, a federal court is bound by the limit of [28 U.S.C.] § 1821(b), absent contract or explicit statutory authority to the contrary.").

[232] *See, e.g.*, Defendants' Ex. 1003, *License Agreement* at 16 ("In the event that either Party brings any action in reference to this Agreement, the 'Prevailing Party' in such action shall be awarded all reasonable attorneys' fees, expert witness fees, court costs and discovery costs incurred.").  Larada's Motion offers two bases for claiming expert fees.  First, it points the court to the relevant provision of the License Agreements.  *See Attorneys' Fees Motion* at 2–3.  Second, it argues "expert fees are included in the concept of attorneys' fees."  *Id.* at 7.  Defendants correctly note in opposition that Larada's latter contention is incorrect, but they do not address the License Agreements.  *See Attorneys' Fees Opposition* at 6–7; *see also Arlington Cent. Sch. Dist. Bd. of Educ.*, 548 U.S. at 293–94.

[233] *See* Dkt. 349-6, *Germane Invoice*; Dkt. 349-7, *Beck Invoice*.

[234] *See Stasiewicz Declaration* ¶ 14.

[235] *Attorneys' Fees Opposition* at 6–7.

qualifications were included in their reports and presented at trial but does not address Defendants' arguments related to the seven individuals who assisted Mr. Germane.[236]

After reviewing the experts' billing records and considering their qualifications as presented at trial,[237] the court finds the requested fees for Mr. Beck and Mr. Germane reasonable. However, the court agrees with Defendants that Larada has failed to provide information to assess the qualifications of the seven individuals who billed for work related to Mr. Germane's testimony. The court will thus reduce its expert fees award by $52,570.00, the amount billed by those individuals.[238] The court therefore awards Larada $56,625.00 with respect to Mr. Beck and $84,355.00 with respect to Mr. Germane.

In sum, the court awards Larada $148,487.58 in non-taxable costs.

### C. Taxable Costs

Larada also seeks the taxable costs set forth in its Bill of Costs.[239] Federal Rule of Civil Procedure 54(d)(1) provides that "costs—other than attorney's fees—should be allowed to the prevailing party."[240] This Rule applies only to taxable costs, the "relatively minor, incidental expenses" listed in 28 U.S.C. § 1920.[241] "Usually the litigant in whose favor judgment is rendered is the prevailing party for purposes of Rule 54(d)(1)."[242] Defendants do not contest

---

[236] *Attorneys' Fees Reply* at 2–3.

[237] *See Trial Testimony of Matt Germane* at 5250:18–5253:2; *Trial Testimony of Jon Beck (Day 1)* at 5124:20–5130:8. While Larada failed to comply with DUCivR 54-2(a)(2)(B) in requesting its expert fees, the court has significant evidence before it to evaluate the experts' qualifications.

[238] *See Germane Invoice*.

[239] *See Bill of Costs*.

[240] Fed. R. Civ. P. 54(d)(1).

[241] *Valdez*, 66 F.4th at 837 (quoting *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 573 (2012)).

[242] *Barber v. T.D. Williamson, Inc.*, 254 F.3d 1223, 1234 (10th Cir. 2001) (cleaned up).

awarding taxable costs to Larada.[243]  As Larada is the prevailing party under Rule 54, it is therefore entitled to its taxable costs of $21,041.47 from Defendants.

## CONCLUSION

For the reasons stated above, the court DENIES Dr. Fassler's Renewed Partial Motion for Judgment as a Matter of Law;[244] DENIES Defendants' Motion for a New Trial and/or Remittitur;[245] DENIES Defendants' Motion to Stay,[246] and TERMINATES the Stay of the court's Judgment entered on January 17, 2025.[247]  The court GRANTS IN PART Larada's Motion for Attorneys' Fees[248] and GRANTS its requested Bill of Costs.[249]  The court awards Larada (1) attorneys' fees of $346,347.00; (2) non-taxable costs of $148,487.58; and (3) taxable costs of $21,041.47.[250]

SO ORDERED this 16th day of June 2025.

BY THE COURT:

ROBERT J. SHELBY
United States Chief District Judge

---

[243] *See generally Attorneys' Fees Opposition.*

[244] Dkt. 359.

[245] Dkt. 360.

[246] Dkt. 369.

[247] Dkt. 370.

[248] Dkt. 348.

[249] Dkt. 346.

[250] While unaddressed by the parties, the court finds it may not award Larada expert fees from Dr. Fassler because he was not subject to the License Agreements.  *See* Defendants' Exs. 1003, 1212–18, *License Agreements*.  The court therefore awards Larada, jointly and severally from all Defendants, $374,896.05.  PHS and Ms. Fassler are additionally liable, jointly and severally, for the remaining $140,980.00.